USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/5/11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
                      :

**SECURITIES AND EXCHANGE**      :
**COMMISSION, INC.,**          :
          :
          :
        **Plaintiff,**       :       **10 Civ. 5760 (SAS)**
          :
      **-against-**        :
          :
**SAMUEL WYLY, CHARLES J. WYLY, JR.,**  :
**MICHAEL C. FRENCH, AND**     :
**LOUIS J. SCHAUFELE III,**      :
          :
       **Defendants.**     :
          :
------------------------------------------------------------- x

**MEMORANDUM OPINION AND ORDER ON DOCUMENTS ASSERTED BY THE**
**WYLYS TO BE PROTECTED BY THE COMMON INTEREST PRIVILEGE— CLOSE**
**TRUSTEES AND KEELEY HENNINGTON**

DANIEL J. CAPRA, SPECIAL MASTER:

On February 11, 2011, the Securities and Exchange Commission ("SEC") moved to compel production of certain materials that Defendants Sam and Charles Wyly (the "Wylys") have withheld on the basis of attorney-client privilege. The undersigned was appointed by Judge Scheindlin as Special Master to review the Wylys claims that certain of the documents in the privilege logs submitted to the SEC were protected by the "common interest" extension of the attorney-client privilege. *See generally United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1981). Familiarity with the allegations in the SEC's complaint against the Wylys and the other Defendants is presumed.

This Memorandum and Order concerns the documents in two privilege logs, submitted to the Special Master for *in camera* review on April 15, 2011. The Wylys assert a common-interest privilege for communications with: 1) counsel for Keeley Hennnington, who served as the Wylys'

chief financial officer;[1] and 2) counsel for the Trustees of foreign trusts that are a focus of this litigation — specifically Isle of Man Limited, IFG International Trust Company Limited, Inter-Continental Management Limited and Trident Trust Company Limited (collectively the "Close Trustees" or the "Trustees").

### I. Arguments of the Parties and Basic Case Law

The SEC contends that the Wylys have not shown a common legal interest shared with Hennington or the Close Trustees. The basic argument is that none of the alleged common-interest participants had anything to gain by cooperating with the Wylys — only the Wylys stood to gain because the Wylys needed access to documents held by these others. The Wylys argue that these parties had a common legal interest with the Wylys because they stood a risk that they would be swept up in all of the investigations that were going on at the time and could potentially be sued for or charged with aiding and abetting the transactions that were being investigated.

As discussed in the Report and Recommendation on the documents logged by Michael French, the parties do not need to be in exact lock-step of interest in order for the common-interest doctrine to apply to a shared communication. Rather the question is whether the particular communication is shared to further a common legal interest between or among the clients. See Saltzburg, Martin and Capra, *Federal Rules of Evidence Manual* at 501-29, 30 (9th ed.):

> Relationships between clients are often more ambiguous than the extremes of united in interest and completely adverse. Sometimes it will occur that clients share a mutual interest as to one issue (such as discrediting a witness) but are adversarial as to many or all other issues. Most courts have held that the common interest privilege can apply even if the clients are in conflict on some or most points, *so long as the communication itself deals with a matter on which the parties have agreed to work toward a mutually beneficial goal.* (emphasis added)

On the other hand, the mere fact that communications are made between parties with similar interests is insufficient to trigger the common interest rule. It must be shown by the party claiming the privilege: (1) that all clients and attorneys with access to the communication had in fact agreed upon a joint approach to the matter communicated; and (2) that the information was imparted with the intent to further the common purpose. As the *Schwimmer* court stated: "Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." 892 F.2d at 243. Where the parties have not yet agreed to proceed jointly on the matter communicated, the common interest rule will not apply. See, e.g., *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333 (4th Cir. 2005) (communications made by corporate agent to corporate counsel were not privileged as to the corporate agent; even if the agent was pursuing a common interest with the corporation, the communications were made before the parties agreed on a common defense). The party asserting the common interest rule bears the burden of showing that

---

[1] Only one document is logged for the common-interest assertion regarding Keeley Hennington.

there was "an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy." *Denney v. Jenkens & Gilchrist*, 362 F.Supp.2d 407, 416 (S.D.N.Y. 2004) (quoting *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y.2003)).

Most importantly for present purposes, the common-interest doctrine extends the privilege to information-pooling arrangements, but it does not protect communications that are not privileged in the first place. Before a communication can be protected under the common-interest doctrine, "the communication must meet the elements of the attorney-client privilege." *Allied Irish Bank v. Bank of America,* 252 F.R.D. 163, 171 (S.D.N.Y. 2008). See also *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) ("where the underlying communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply").

### II. Rulings on Logged Items

The Special Master has reviewed the logged items *in camera* and the written submissions by the parties. The parties on June 29, 2011, orally argued the motion as to all the logged documents submitted to the Special Master.  Because there is a need for expedition and a mutual interest in saving resources, the parties have agreed that these rulings will be short and to the point. Also, efforts are made to avoid extensive disclosure of the contents of the logged documents, for the obvious reason that disclosure would defeat the purpose of any valid claim of privilege.[2]

### Document 1 on Wyly Privilege Log for Communications Between Counsel for Hennington and Counsel for the Wylys.

This is a document from Hennington's lawyer to the Wylys' lawyer about developments in the investigation. It is clearly about a legal matter and the only question is whether the Wylys have established a common-interest agreement with Hennington as of the date of the document. Hennington has filed an affidavit attesting to a common interest agreement, as have Wilys counsel. It is true that Hennington might have had an interest in cooperating with the government at the Wilys' expense — but if that were enough defeat a common interest, then there could rarely if ever be an enforceable common interest agreement when there are possible charges against multiple defendants. The document itself indicates that Hennington was cooperating with the Wilys and, together with the affidavits submitted, the Wylys have sufficiently establish that the communications from Hennington's lawyer were pursuant to a common interest arrangement.

### Ruling on Document 1: Protected by the common-interest doctrine.

---

[2] One of the biggest issues of contention in this matter involves the extent of the Wyly's advice of counsel waiver with respect to tax advice. That issue is not pertinent to the present motion, however, as all the logged documents considered herein are dated after the Wylys became aware of the SEC investigation.

***Documents on Privilege Log for Communications Between Counsel for the Wylys and Counsel for the Close Trustees***

**Documents  1 and 1.1:**

Document 1 is a letter from counsel to the Trustees to counsel for the Wylys. It is not within the common interest because it indicates a substantial dispute over exchanging information, and even articulates an individual interest that the trustees have that is not shared by the Wylys.

Document 1.1 is a letter from local counsel for the Trustees  to local counsel for the Wylys, indicating substantial disagreement about disclosure of documents. It is not within the common interest because there is an insufficient showing that the parties have actually agreed about how to implement any common goal.

**Ruling on Documents 1 and 1.1:  Neither are protected.**

**Document 2:**

This is a letter from local counsel to the Wylys to local counsel for the Trustees. It is rife with dispute. The writer is trying to get the Trustees to see the error of their ways — which might be an admirable goal, but definitely does not indicate that the parties have reached a common-interest agreement.

**Ruling on Document 2 : Not protected.**

**Document 3:**

This is a letter from local counsel for the Wylys to local counsel for the Trustees, expressing puzzlement over an act of the Trustees that seems to be adversarial. It is not indicative of a common interest.

**Ruling on Document 3: Not protected.**

**Document 4:**

The document logged at #4 is another letter from local counsel for the Wylys to local counsel for the Trustees. Short of an adversary pleading, it's hard to think of a document less within a common interest. Indeed the letter expresses the fact that there is a substantial disagreement that

appears at that time to be unlikely to be rectified.

It might be argued, as to all the contentious letters reviewed so far (Documents 1 through 4), that the parties have actually agreed on a common goal — allowing the Wylys to view the documents — but are simply fighting about the means to that common goal. But given the fact that the privilege itself — not to speak of the common interest rule — is narrowly construed, it cannot be that such adversarial letters on implementation can be protected simply because the parties have agreed on a broad concept such as "we both hope the SEC will go away" or "it would be nice to have an exchange of information."[3] If a broad common endpoint like that were all that were necessary to trigger the common interest rule, it would apply in virtually all cases in which parties have the potential to be joined on the same side of the litigation. But that is not the law. As Judge Scheindlin stated in *Jenkens, supra,* 362 F.Supp.2d at 415:

> In order to invoke the common interest doctrine, it is not enough merely to show, as the doctrine's name might suggest, that [the parties] had interests in common. Nor is it sufficient to show that they shared concerns about potential litigation. [The claimant] must show a "cooperative and common enterprise towards an identical legal strategy." (Quoting *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y.2003)).

In this case, as to all the Trustee documents logged so far, the Wylys have shown nothing more than possible shared concerns about potential litigation. They have definitely not shown that the Wilys and the Trustee have agreed, as of the date of these documents, to pursue a common legal strategy.

### *Ruling on Document 4: Not protected.*


### Documents 5, 5.1 and 5.2:

Document 5 is an email from Michael Smith (lawyer for the Wileys) to Michael Mann (lawyer for the Trustees) expressing disagreement with the Trustees' position on access to documents but also speaking about a spirit of cooperation. The email attaches Document 5.1, and 5.2,  which are drafts with mark-ups.

The letter and the drafts indicate an iterative process, and they are not as adversarial as the prior documents in the log. Nonetheless, it does not come close to indicating that the parties have agreed on a common legal strategy, or  that they are engaged in a cooperative effort at this point..

### *Ruling on Documents 5 and 5.1 and 5.2: Not protected.*

---

[3] *See Denney, supra,* 362 F.Supp.2d at 415 (common-interest rule is narrowly construed).

*Documents 6 and 6.1:*

Document #6  is Mann's email response to Michael Smith's email, logged as #5 supra. Document 6.1 is Smith's email also logged at 5 (already found not protected).  Mann's email indicates more disagreement about implementing a strategy, as well as the need for the Trustees to protect their legal interest even if it will impede the Wylys. As such a common interest has not been proved.

**Ruling on Documents 6 and 6.1: Not protected.**

*Document 7:*

This is an email from Michael Mann to Michael Smith, again about disagreements regarding the process of document review. As discussed above, even assuming the parties have an intent at some time to pursue a common interest (a matter discussed below) they have not at this time agreed on a common legal strategy.

**Ruling on Document 7: Not protected.**

*Documents 8 and 8.1:*

This is an email string of two emails, both logged.  #8.1 is from Luke McGrath, counsel for the Wylys, to Paul Leder, counsel for the Trustees. It provides a progress report for implementing some of the Trustees' demands regarding access to documents, and notes some outstanding issues. Document 8 is Leder's response, noting an area of disagreement.

At this point — December 9, 2005 — the parties are closer to agreeing upon "an identical legal strategy." Id. But they are not there yet. The Wylys have the burden of showing an agreement and they have not shown it as of the date of these emails.

**Ruling on Documents 8 and 8.1: Not Protected.**

*Documents 9, 9.1 and 9.2:*

Document 9 is an email dated December 12, 2005,  from McGrath's Executive Assistant to Paul Leder, attaching two documents executed by Cheryl Wyly, which are logged at 9.1 and 9.2. The attached documents are not reasonably intended to remain confidential because they are intended for the purpose of possible public disclosure by the Trustees should legal circumstances require. They are not simply intended for the file. So even if there is a common-interest agreement between the Wylys and the Trustees at this point (see the discussion as to other documents below) the attachments are unprotected because there is no reasonable anticipation that the documents will be

kept confidential within the common-interest unit.

The email itself is not protected to the extent it simply transmits the documents. The email also contains a sentence about document production but nothing in the email is based on confidential information.

*Ruling on Documents 9, 9.1 and 9.2: Not protected.*

## Document 10:

This is an email from Paul Leder to Michael Smith, cc:d to other lawyers for the Trustees, referring to presentations to be made about a legal matter. This matter does not appear to be about the points of contention that had generated the adversarial documents reviewed previously in this Opinion. The question then is whether the Wylys and the Trustees had a common legal interest in the matter stated in the email. Given the breadth of the various investigations of the Wylys — all of them based on use of the offshore trusts — the Trustees, properly counseled would reasonably have been concerned about being swept up in the legal proceedings and subject to a legal complaint and possible legal liability. The Trustees could reasonably have believed that if the Wylys and the Trustees could pool information about the offshore trusts on the topic of the planned meeting, that pooling could provide a stronger defense to all the investigations.

The Wylys have made a sufficient showing that they had agreed with the Trustees to pursue a common defense on the matters described in the email from Leder to Smith.

*Ruling on Document 10: Protected by common-interest doctrine.*

## Documents 11 through 15:

These are all clones of the email logged as #10. Documents 11 through 15 are a series of scheduling emails in response to the original email from Leder to Smith. That email is redacted in each of the email strings. The scheduling emails are not logged — and rightly so, because as discussed in the Opinion on the Michael French log, a communication that does nothing more than schedule a meeting of lawyers is not protected by the privilege.

*Ruling on Documents 11 through 15: Redaction of email from Leder to Smith is proper in each email string, as that email is protected by the common-interest doctrine.*

## Documents 16 and 17:

This is the same email in both log numbers, from Michael Mann to Michael Smith, on a matter of operation of a particular Trust. (#17 also has a responsive email from Smith, but it

discloses no confidential information and is not logged). Notably, the topic of the email does not involve the matters in contention that were raised in earlier emails and letters in the log. The parties would clearly have a common interest and a common strategy on the issue raised in the email. And the email indicates that the parties had agreed on a common approach on this matter. Even assuming the parties had still not agreed on a protocol for document review at the time of this email, the common-interest doctrine does not require the parties to be in lock-step agreement on every single matter between them.[4]

>**Ruling on Documents 16 and 17: Protected by the common-interest doctrine.**

**Document 18:**

This email, from Michael Mann to lawyers for the Wylys (cc:d to other lawyers for the Trustees) indicates that the exchange of information goes both ways. It is not just a "one-way" arrangement for the Wylys. It also indicates that by this time — April 6, 2006 — the parties had worked out their previous disagreements about the protocol for access to documents. Moreover, it is apparent by this time that the Trustees believe they will benefit from having the Wylys look at the documents — that is, if the Wylys have access, it will help both sides in defending the investigation and also will be important for an exchange of information and strategy. In sum, the email and other supporting information provided  indicates that the parties are now pursuing a common interest with a unified strategy.

>**Ruling on Document 18: Protected by the common-interest doctrine.**

**Documents 19 and 19.1:**

Document 19.1 is the same email that was logged as 18. Document 19 is the response to Mann's email from William Brewer, counsel to the Wylys. That email elaborates upon the legal topic raised by Mann in the previous email and expresses a legal opinion, and so is within the common-interest.

>**Ruling on Documents 19 and 19.1: Protected by the common-interest doctrine.**

**Documents 20 and 20.1:**

This is the same email strong logged under 19 and 19.1. The chain continues with a response from Mann to Brewer, but that response does not relay any privileged information and is not logged.

---

[4] As discussed infra, the parties had in fact agreed by early December 2005 on a protocol for access to documents. The email logged at 16 and 17 is dated 2/17/2006.

***Ruling on Documents 20 and 20.1: Protected by the common-interest doctrine.***

**Document 21:**

Document 21 is an email from counsel for the Wylys to counsel for the Trustees, dated June 27, 2006. It discusses a matter of protocol for document review. (There is a responsive email but it does not impart confidential information and it is not logged). The disagreement between the parties that was evidenced in previous emails and letters during 2005 is gone. The parties are focused on a common legal strategy — the email is about a problem that the parties recognize that they need to address cooperatively.

***Ruling on Document 21: Redacted email is protected by the common-interest doctrine.***

**Log numbers 22-24 are left blank**

**Document 25:**

An email from Michael Smith to William Barry, counsel to the Trustees, attaches an outline about matters to be discussed between counsel for the Wylys and counsel for the Trustees. (That email itself says nothing and the Wylys correctly do not log it). The outline is extensive and indicates once again that the arrangement between the Wylys and the Trustees was not only one way, and that they shared a common objective and strategy. The topics set forth are definitely about confidential legal matters in direct response to the investigation.

***Ruling on Document 25: Outline protected by the common-interest doctrine.***

**Documents 26, 26.1 and 26.2:**

Document 26 is an email from counsel for the Wylys to counsel for the Trustees, referring documents that had already been produced pursuant to court order. Documents 26.1 and 26.2 are those documents. By email to the Special Master dated May 9, counsel for the Wylys states that they have agreed to produce the attached documents, but are still invoking the privilege for the email that refers the documents. But the email itself (#26) reveals no confidential legal communication, and indeed no legal reasoning at all. You don't have to go to law school to conclude that the Trustee's counsel might be interested in the attached documents — no judgment of relevance is necessary. Essentially the lawyer sending the documents is acting as a messenger, not as a lawyer. See Federal Rules of Evidence Manual, 9th ed. at ¶501.02[5][b] ("Where the attorney is merely acting as a

conduit for information, i.e., as a messenger, the privilege is inapplicable.") Accordingly, nothing about the email triggers the underlying privilege.

> ***Ruling on Documents 26, 26.1 and 26.2: #26 is not privileged, and the Wylys have already agreed to produce 26.1 and 26.2.***

### Document 27:

This is a compilation of documents, referred by counsel for the Wylys to counsel for the Trustees. The referring email says nothing and is not logged.

> ***By email  to the Special Master dated May 9, counsel for the Wylys states that they have agreed to produce the compilation of documents.***

### Document 28:

An email from counsel for the Wylys to counsel for the Trustee (which says nothing and is not logged) attached a draft letter to the Trustee with an attached list. The letter indicates a necessary step in the protocol of document review as to which the parties have now (in 2009) clearly agreed. And the list  is a product of the Wyly lawyer's legal thought process on what documents and matters are relevant to the defense, so the list clearly triggers an underlying protection.

> ***Ruling on Document 28: Protected by the common-interest doctrine.***

### Documents 29 through 31:

This is an email from Leder to Smith, about a request for information that is within the common interest of the parties. #29 is the email as sent to Smith and ##30 and 31 are the same email, redacted in email strings with responses that, correctly, are not logged.

As discussed previously, it is clear well before the date of the email (9/2/2009) that the parties have put the disputes about document access behind them and have agreed to exchange information in pursuit of the common interest of contesting the SEC's position concerning the offshore trusts.

> ***Ruling on 29 through 31: Protected by the common-interest doctrine.***

### Documents 32 and 32.1:

This is a two email chain, starting with an from Smith to Leder (#32.1) that refers to a previous conversation between them, and attaches a list of a draft log of documents in a different matter.  Leder responds (#32) with a request for expanded information about the list. The transmission of the underlying list  is work product as it reveals a lawyers's thought process about relevance to the current matter. The emails themselves are protected because 32.1  refers to a prior discussion pursuing a common interest, and 32 seeks a more detailed exchange of information in order to prepare a common defense in this matter.

*Ruling on Documents 32 and 32.1: Protected by the common-interest doctrine.*

**Document 33:**

This is an email from Leder to Smith asking for information about a transaction pertinent to the common defense.

*Ruling on Document 33: Protected by the common-interest doctrine.*

**Documents 34 and 34.1:**

Document 34.1 is the same Leder-to-Smith email logged as #33. Document 34 is Smith's response giving the information requested. It is an information exchange in pursuit of a common legal defense.

*Ruling on Documents 34 and 34.1: Protected by the common-interest doctrine.*

**Documents 35 and 35.1:**

This is the same email chain as logged in 34 and 34.1. The addition is a response from Leder which says nothing and is not logged.

*Ruling on Documents 35 and 35.1: Both protected by the common-interest doctrine.*

**Log Numbers 36 and 37 left blank.**

**Documents 38 and 38.1:**

#38 is an email dated June 1, 2005, from Wylys' counsel to Trustees counsel referring #38.1, which is an attached list. The list contains detailed factual information as part of the agreed-upon information-pooling between the Wylys and the Trustees. The email does more than simply refer attachments to the recipient. It also provides some description of what the attachment is. Accordingly it imparts confidential information. Notably, it is not about the access-to-document issues that was the subject of disagreement between the parties around this time. As stated above, the parties need not be in lock-step agreement in order for the common-interest doctrine to apply. Here, the parties had agreed to exchange some kinds of information that was pertinent to a common defense, but they had not yet agreed on a strategy that would allow the Wylys to access the Trustees' documents.

*Ruling on Documents 38 and 38.1: Both protected by the common-interest doctrine.*

**Documents 39 and 39.1:**

#39 is an email from counsel for the Trustees to counsel for the Wylys, attaching #39.1, which is a draft of a document pertinent to the Wylys having access to the Trustees' documents. It is apparent from the email that at this time (June 17, 2005)  the parties had  not resolved their differences on a protocol for document review. Accordingly, the email is not protected by the common-interest exception — nor of course is the attachment to the email.

Even if the email was within the common-interest doctrine, there remains a problem with the attachment. The attachment is a draft, and of course it must meet the underlying requirement that it was reasonably anticipated to remain confidential at the time it was prepared . The Special Master has had occasion to discuss the proper treatment of drafts, when the drafter intends that the final will be a public document. See  the extensive discussion in *In re New York Renu with Moistureloc Product Liability Litigation*,  2008 WL 2338552 (D.S.C.). As to #39.1, the ultimate goal of the final document was for possible public disclosure. It was not intended as a confidence between the parties and it was not simply for the file. As stated in *Renu,* drafts of documents that are intended to be disclosed to the public are not privileged to the extent the draft contains statements that are in the final. Accordingly, even if the common-interest doctrine is satisfied, which it is not, the Wylys would have to produce the attachment, redacted only insofar as it contains statements that are not found in the final document.

*Ruling on Documents 39 and 39.1: Not protected.*

**Log #40 left blank.**

**Document 41:**

This is another draft of the same document discussed in #39.1. It differs slightly from that previous draft. The log does not indicate that the draft was communicated from one party to the other. Nor does the draft itself indicate any confidential communications that might have been made among the parties in the common-interest. Therefore it appears that the common-interest invocation is misplaced. And even if the common-interest doctrine would apply to the draft as it is divorced from any communication between the parties, the draft would have to be disclosed to the extent required by *Renu, supra.*

  ***Ruling on Document 41: Not protected as it is not within the common-interest doctrine.***

**Documents 42 and 42.1:**

  ***These are duplicates of Documents 1 and 1.1, and are not protected.***

**Documents 43 and 43.1:**

  #43 is a letter from local counsel for the Wylys to local counsel for the Trustees, dated July 2, 2005. It indicates that the parties appear to be coming closer to an agreement on protocol for document review, and it even states as a fact that the Wylys and the Trustees have a common interest in the matter. But on balance the letter makes clear that there are important areas of disagreement and that the Trustees remain concerned about appropriate protection. The Wylys have not, as to this letter, met their burden of showing that the parties at the time of this communication had agreed on an "identical legal strategy" regarding access to documents.

  #43.1 is another draft of the document discussed in #39.1. As above, an attachment to an email not within the common interest is of course not protected by the common-interest doctrine. And even if the common-interest did apply to the email, the draft would have to be produced subject to redaction of any statements that are not found in the final document.

  ***Rulings on Documents 43 and 43.1: neither document is protected by the common-interest doctrine.***

**Document 44:**

  This is an email from local counsel for Trustees to local counsel for the Wylys, dated July 2, 2005, and cc:d to other involved lawyers for the parties. This email is contentious and adversarial; it notes that not all of the beneficiaries would have the same interests as the Wylys with regard to the protections necessary for document disclosure. It expresses in passing an interest in cooperation but states clearly that the Trustees interests are not yet satisfied. It is clear that there is no agreement on

a strategy for review of the documents held by the Trustees.

> **Ruling on Document 44: Not protected.**

**Document 45:**

This is an email from Leder to McGrath, counsel for the Wylys, about a legal matter common to both parties. It is clear that the parties are working cooperatively on the specific legal issue raised in the email. The email does not concern the issue that had divided the parties, i.e., the protocol for document review.

> **Ruling on Document 45: Protected by the common-interest doctrine.**

**Documents 46 and 46.1:**

#46.1 is the same email logged as #45, *supra.* #46 is the responsive email from McGrath to Leder. The response indicates the subject of the protected email sent by Leder, and provides a legal opinion. So the response is protected as well.

> **Ruling on Documents 46 and 46.1: Both documents are protected by the common-interest doctrine.**

**Documents 47 and 47.1:**

This is the same email chain logged as 46 and 46.1. The addition is a responsive email that says nothing and is not logged.

> **Ruling on Documents 47 and 47.1: Both documents are protected by the common-interest doctrine.**

**Document 48:**

This is an email from local counsel for the Trustees to Luke McGrath, dated November 15, 2005, noting some issues that might arise with document access. The letter indicates that there are still areas of disagreement about implementation, and that the Trustees' legal interests in access are not necessarily yet aligned with those of the Wileys. Thus there is no agreement on the exact same legal strategy.

> **Ruling on Document 48: not protected.**

***Documents 49 and 49.1 and Documents 50 and 50.1:***

>   ***These are duplicates of 5 and 5.1.***

***Document 51.***

These are draft letters of what are intended to result in public documents. Like Document 41, the log does not indicate that the drafts were communicated from one party to the other. Nor do the drafts themselves indicate any confidential communications that might have been made among the parties in the common-interest. Therefore it appears that the common-interest invocation is misplaced. Moreover, while the drafts are undated, it is apparent from other items reviewed that at the time these drafts were prepared, the parties had not agreed on a common legal strategy on the matters covered by these drafts. Finally, even if the common-interest doctrine would apply to the drafts as divorced from any communication between the parties, the drafts would have to be disclosed to the extent required by *Renu, supra.*

>   ***Ruling on Documents logged as 51: not protected.***

***Document 52:***

>   ***These draft letters are duplicates of those logged in 51.***

***Documents 53 and 53.1:***

#53 is an email from McGrath to Mann, attaching letters and indicating that there are matters still outstanding for effectuating the protocol that would allow the Wylys to view documents. The email, dated December 7, 2005, indicates that the parties had finally agreed to effectuate a common strategy regarding document review. As discussed above, the Trustees could reasonably conclude that Wyly access to the documents would benefit the Trustees as well as the Wylys, as the Trustees could legitimately fear being subject to legal actions, and information-pooling would assist both parties in responding to the various investigations. Thus, the email is protected by the common-interest privilege.

#53.1 is a number of executed letters. These letters are public documents. They were not intended to remain confidential because the very reason for generating them was for the Trustees to use them to satisfy what they saw as their legal obligation to protect all the beneficiaries. If the Trustees were ever subject to inquiry about whether they met those legal obligations, they would present the letters as a defense. That means the documents were prepared with the contemplation of public disclosure, and therefore the letters do not satisfy the underlying requirement that the communication be reasonably anticipated to remain confidential. See generally *Renu, supra.*

***Rulings on 53 and 53.1: #53 is protected by the common interest doctrine. The documents logged at #53.1 are not protected.***

**Documents 54 and 54.1:**

#54.1 is the same email from McGrath to Leder that is logged at #53. #54 is the response to that email, inquiring about outstanding matters in the process of obtaining the necessary — and at that point agreed-upon — documentation to allow for document review. As such, the responsive email was written to pursue a common-interest of the Trustees and the Wylys.

***Ruling on Documents 54 and 54.1: Both are protected by the common-interest doctrine.***

**Documents 55, 55.1 and 55.2:**

Numbers 55.1 and 55.2 are the same emails logged at 54.1 and 54. The additional email here, #55, is the response from McGrath to Leder's inquiries about outstanding matters. It was written to pursue the common interest of effectuating the agreed-upon protocol that would permit access to documents and an information exchange that was designed to benefit both parties.

***Ruling on Documents 55, 55.1 and 55.2: All are protected by the common-interest doctrine.***

**Documents 56, 56.1, 56.2 and 56.3:**

This is a continuation of the email chain started in log number 53 and going through to #56, which is a simple response and request to McGrath's update on the process to which the parties had agreed. Like the other transmissions in this email chain, #56 was sent to effectuate the agreed-upon protocol that would permit access to documents and an information exchange that was designed to benefit both parties.

***Ruling on Documents 56, 56.1, 56.2 and 56.3: All are protected by the common-interest doctrine.***

**Document 57:**

This is an email from McGrath to Mann (cc:ing other involved lawyers) updating him on the steps being taken to comply with the agreed upon protocol for permitting access to documents. As

16

with the emails in the chain logged at 53-56, this email was written in furtherance of the agreed-upon common interest.

   ***Ruling on Document 57: Protected by the common-interest doctrine.***


### Documents 58 and 58.1:

   These documents are subject to the same analysis  as ##53 and 53.1.

   Document 58  is an email from McGrath to Mann, attaching letters and indicating some matters for the parties to complete for effectuating the protocol that would allow the Wylys to view documents. As stated above, the parties had by this time finally agreed to effectuate a common strategy regarding document review. As discussed above, the Trustees could reasonably conclude that the Wylys' access to the documents would benefit the Trustees as well as the Wylys, as the Trustees could legitimately fear being subject to legal actions,  and  information-pooling would assist both parties in responding to the various investigations. Thus, the email is protected by the common-interest privilege.

   #58.1 is a number of executed letters, with attachments to those letters that provide background for the person who signed the letters. These letters and their attachments  are public documents. The letters were not intended to remain confidential because the very reason for generating them was for the Trustees to use them to satisfy what they saw as their legal obligation to protect all the beneficiaries. If the Trustees were ever subject to inquiry about whether they met those legal obligations, they would present the letters as a defense. That means the letters were prepared with the contemplation of public disclosure, and therefore the letters do not satisfy the underlying requirement that the communication be reasonably anticipated to remain confidential. See generally *Renu, supra.*

   As to the attachments to the letters, they are public documents in the first place, and certainly attaching them to letters contemplated for possible public disclosure does not make them privileged. *See  In re Grand Jury Proceedings,* 33 F.3d 342 (4th Cir. 1994) ( matters communicated to attorneys for their use in connection with public disclosures made "the communications and data underlying them non-privileged under the relevant case law").

   ***Ruling on Documents 58 and 58.1: #58 is protected by the common-interest doctrine. The documents logged at #58.1 are not protected.***


### Document 59:

   This is an email from McGrath to Leder, informing him of progress in complying with the agreed-upon protocol. Like the emails between the lawyers logged at 53-58, this one was sent in

pursuit of an agreed-upon common interest.

   ***Ruling on Document 59: Protected by the common-interest doctrine.***


**Documents 60 and 60.1:**

   #60.1 is the same email logged at 59. #60 is a response from Leder regarding the agreed-upon protocol, and in furtherance of the agreed-upon common interest.

   ***Ruling on Documents 60 and 60.1: Protected by the common-interest doctrine.***


**Document 61:**

   This is an email from Leder to McGrath regarding implementation of the agreed-upon protocol, and in furtherance of the agreed-upon common interest.

   ***Ruling on Document 61: Protected by the common-interest doctrine.***


**Documents 62, 62.1 and 62.2:**

   These are to be treated the same as the items logged in numbers 53 and 58. The email, which is #62, is protected as a necessary and confidential step in effectuating the protocol agreed upon by the parties. But the two attachments are letters that are written in contemplation of a public disclosure and therefore do not trigger the underlying requirement that the communication be made with a reasonable anticipation of confidentiality.

   ***Ruling on Documents 62, 62.1 and 62.2: #62 is protected by the common-interest doctrine. Numbers 62.1 and 62.2 are not protected.***


**Document 63:**

   This is an email from Jennifer Rogers, executive assistant to Luke McGrath, to Michael Mann. It informs him of efforts to obtain factual information that the Trustees and the Wylys would find useful to a common defense.

   ***Ruling on Document 63: Protected by the common-interest doctrine.***

18

*Documents 64 and 64.1:*

#64.1 is the email logged at 63. #64 is an email response from Mann, concerning matters on which the parties have agreed to cooperate.

*Ruling on Documents 64 and 64.1: Both are protected by the common-interest doctrine.*

*Document 65:*

Document 65 is an email from William Barry, counsel to the Trustees, to Luke McGrath, seeking assistance on a legal question that on its face concerns an agreed-upon common legal interest.

*Ruling on Document 65: Protected by the common-interest doctrine.*

*Log number 66 is left blank.*

*Document 67: This is a duplicate of Document #21, which is protected by the common-interest doctrine.*

*Log numbers 68 and 69 are left blank.*

*Documents 70 and 70.1:*

*These are duplicates of the documents logged under #26, and are not protected.*

*Documents 71 and 71.1:*

*These are duplicates of the documents logged under #26 and are not protected.*

*Documents 72 and 72.1:*

*These are duplicates of the documents logged under #26 and are not protected.* [5]

---

[5] As to all of the attachments logged at 70.1, 71.1, and 72.1, the Special Master did not think it cost-efficient to determine whether each of those attachments was exactly the same as the other or exactly the same as those logged under 26. To the extent there is any difference, then for the reasons expressed in the discussion of the documents

**Document 73:**

This is an email from Luke McGrath to Paul Leder about effectuating the agreed upon exchange of information in the common interest.

**Ruling on Document 73: protected by the common-interest doctrine.**

**Documents 74 and 74.1:**

#74.1 is the same email, from McGrath to Leder, logged at 73. #74 is the response from Leder, about effectuating the exchange of information in the common interest.

**Ruling on Documents 74 and 74.1: both are protected under the common-interest doctrine.**

**Documents 75 and 75.1:**

These are the same emails logged at 74 and 74.1. The addition to the email string is a message about scheduling that, correctly, is not logged.

**Ruling on Documents 75 and 75.1: Both are protected by the common-interest doctrine.**

**Documents 76, 76.1 and 76.2:**

Documents 76.1 and 76.2 are the same emails logged at 74 and 74.1. The addition to the email string here — Document 76 — continues the exchange about effectuating the exchange of information. It does more than simply schedule a meeting or call. It also discusses a detail about the information exchange.

**Ruling on Documents 76, 76.1 and 76.2: All are protected by the common-interest doctrine.**

# Order

**1. The Wylys must promptly produce the following logged documents to the SEC:**

---

logged as attachments to Document # 26, the attachments are not privileged and must be produced.

- All documents logged from 1-9 (including multiple documents logged within those numbers).

- Document 26.

- Documents 39 and 39.1.

- Document 41.

- Documents 43 and 43.1.

- Document 44.

- Document 48.

- Document 51.

- Document 53.1.

- Document 58.1.

- Documents 62.1 and 62.2.


*2. The following documents are apparently duplicates of documents that have been ordered to be produced:*

42 and 42.1; 49 and 49.1; 50 and 50.1; 52; 70 and 70.1; 71 and 71.1; and 72 and 72.1.

To the extent these documents differ from the stated duplicate in any respect, they are subject to the same analysis as the apparent duplicate and so are unprotected and must be produced.

*3. All other documents are protected and may remain on the privilege log, with the exception of Documents 26.1, 26.2, and 27, which the Wylys have agreed to produce.*


SO ORDERED:

_____

Daniel J. Capra
Special Master

Dated: New York, New York
      July 5, 2011

The clerk of the court is
directed to docket this
memorandum opinion
and order of the Special
Master.

So ordered.

_____

Shira A. Scheindlin
USDJ
7/5/11

22