UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                :

SECURITIES AND EXCHANGE        :
COMMISSION, INC.,                    :
                                :

                  Plaintiff,        :        10 Civ. 5760 (SAS)
                                :

                  -against-           :

SAMUEL WYLY, CHARLES J. WYLY, JR.,     :
MICHAEL C. FRENCH, AND          :
LOUIS J. SCHAUFELE III,           :

                  Defendants.       :
                                :
------------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/11

**MEMORANDUM OPINION AND ORDER ON DOCUMENTS ASSERTED BY THE WYLYS TO BE PRIVILEGED— QUESTIONS OF AGENCY AND ADVICE OF COUNSEL WAIVER**

DANIEL J. CAPRA, SPECIAL MASTER:

     On February 11, 2011, the Securities and Exchange Commission ("SEC") moved to compel production of certain materials that Defendants Sam and Charles Wyly (the "Wylys") have withheld on the basis of attorney-client privilege. The undersigned was appointed by Judge Scheindlin as Special Master to review the Wylys claims that certain of the documents in the privilege logs submitted to the SEC were protected by the attorney-client privilege extending to communications with agents of the Wyly family business. The parties thereafter requested the Special Master to review whether any of the documents in the "agency" privilege log were subject to waiver based on Judge Scheindlin's ruling that the Wylys' advice of counsel waiver in this case extended to "tax-related legal advice regarding the creation and operation of the offshore trusts." Order dated April 1, 2011 at 2. Familiarity with the allegations in the SEC's complaint against the Wylys and the other Defendants is presumed.

     This Memorandum and Order concerns the documents in the privilege log submitted to the Special Master for *in camera* review on April 28, 2011, titled "Privilege Log of Defendants Samuel

1

E. Wyly and Charles J. Wyly, Jr."  In this privilege log the Wylys assert the privilege (and in some cases the work product immunity) for communications to several persons, including  Keeley Hennington, Sharyl Robertson, Keith Hennington, Stacy Wittrup, Rena Alexander, and Margot McInnis.

## I. Arguments of the Parties

The SEC contends that virtually all of the logged documents concern "tax-related legal advice regarding the creation and operation of the offshore trusts" — and therefore are within the advice of counsel waiver as interpreted by Judge Scheindlin.  To take some hypotheticals, communications about structuring transfers of property involving foreign trusts, charitable contributions funded by or through foreign trusts, and questions of foreign trust management would, in the SEC's view,  be subject to the advice of counsel waiver.

The Wylys predictably have a more limited view of the advice of counsel waiver found by Judge Scheindlin. They argue that the phrase "tax-related legal advice regarding the creation and operation of the offshore trusts" cannot be interpreted literally. They contend that in order for the tax-related advice to be within the advice of counsel waiver the tax advice must be somehow tied to securities-related scienter. See Transcript of Oral Argument at 74-75.

As to the agency question,  the SEC does not contest that the privilege can apply to communications with agents of an individual where the agent is necessary to the lawyer's representation — on an analogy to *Upjohn Co. v. United States*, 449 U.S. 383 (1981). But the SEC asserts that some of the logged documents involved communications made either before or after the particular individual worked as an agent for the Wylys; and also that some of the logged items may not involve communications in which the agent's involvement was necessary to the legal representation.

The Wylys support their agency-privilege argument by, among other things, submitting affidavits of Michell Boucher and Keeley Hennington. Boucher in her affidavit states that she while she was employed at the Irish Trust Company (ITC), she conferred on confidential matters with counsel for the Trustees and for the Wylys, and also communicated regularly with employees of Highland Stargate —  especially Keeley Hennington, the CFO, who oversaw the "family office" division of Highland Stargate. Keeley Hennington's affidavit describes the roles of  various agents found on documents in the privilege log, including Sharyl Robertson and Boucher. She states that she and those agents often exchanged information with counsel, as was necessary for counsel to properly represent the Wylys.

## II. Basic Case Law

2

## A. Advice of Counsel Waiver:

A client who claims that he acted on advice of counsel cannot use the privilege to prevent inquiry into the communications that the client and lawyer had about that advice. *See generally United States v. Bilzerian,* 926 F.2d 1285 (2d Cir. 1991). There is a compelling notion that the adversary "cannot be stonewalled by the simultaneous assertion of the [advice of counsel] defense and the privilege."[1] Put another way, the attorney-client privilege can be used to shield information, but it cannot be used as a sword against the adversary.[2] If the rule were otherwise, "a claim of reliance on counsel would be immune from a showing that, in fact, the defendant had received overwhelming advice to the contrary," *SEC v. Forma,* 117 F.R.D. 516, 423, n.5 (S.D.N.Y. 1986), or that the lawyers' advice was in fact based on misinformation coming from the client. The common-law rule, providing for a subject matter waiver when the client interposes an advice of counsel defense, has been codified by Federal Rule of Evidence 502(a) (providing for subject matter waiver when a disclosure of privileged information is intentional and the disclosed and undisclosed information "ought in fairness to be considered together").

## B. Communications by and to Agents:

In addition to clients and lawyers, the definition of privileged persons includes agents of the client who are necessary to assist in the legal representation. The presence of these agents does not destroy the privilege if their presence was needed to facilitate effective communication of legal advice between the attorney and the client. *See, e.g., In re Grand Jury Investigation,* 918 F.2d 374, 386, n. 20 (3d Cir. 1990) (presence of agent does not necessarily abrogate privilege); *Green v. Beer,* 2010 WL 3422723, at *4-5 (S.D.N.Y.) (communications between the plaintiff's counsel and financial advisors was not privileged because the financial advisors did not serve "some specialized purpose in facilitating the attorney-client communication"; but communications to the plaintiff's son retained the privilege because the plaintiff did not know how to use email and the son received the lawyer's emails on the plaintiff's behalf). The party invoking the privilege has the burden of showing that the agent was "necessary to facilitate client communications" between the principal and the lawyer. *In re Application Pursuant to 28 U.S.C. § 1782,* 249 F.R.D. 96, 100-01 (S.D.N.Y. 2008).[3]

## III. Extent of Advice of Counsel Waiver for Tax-Related Advice

---

[1] *Moskowitz v. Lopp,* 128 F.R.D. 624, 638 (E.D. Pa. 1989).

[2] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 79 cmt. c (2000).

[3]

*See also United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (confidential communications to non-lawyers can be protected by the privilege if the non-lawyer's services are necessary to the legal representation); *Ross v. UKI Ltd.,* 2003 WL 22319573, at *1-2 (S.D.N.Y.) ("the involvement of the third party [must] be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications").

This section provides a description of the proper test to be used to determine whether the logged items must be disclosed under the terms of Judge Scheindlin's ruling because of the Wylys' advice of counsel waiver. Judge Scheindlin held that "[b]y asserting a reliance-on-advice-of-counsel defense during the investigatory stage of this case, the Wylys waived privilege as to *both* securities- and tax-related legal advice regarding the creation and operation of the offshore trusts, and cannot limit that waiver to *securities*-related advice when responding to SEC Document Request No.1." April 1, 2011 Order at 2 (emphases in original).   At oral argument, the Wyly's counsel argued that a document must on its face be related to securities transactions or advice in order to be within the advice of counsel waiver.  But the Special Master rejected this nexus requirement because Judge Scheindlin has already found the necessary connection between tax-related advice and securities-related advice.

Of course, that does not mean that every communication with counsel regarding any tax issue is waived in this matter — any more than every communication about securities, no matter the subject,  is waived. *See, e.g., In re Seagate Technology, LLC,* 497 F.3d 1360 (Fed. Cir. 2007) (asserting advice of counsel defense in response to a charge of wilful patent infringement does not constitute waiver of communications to trial counsel).  In order to be relevant to an advice of counsel defense, the  subject matter of an attorney-client communication must be tied at least in some way to the issues in the case and to the defendant's defense. While the SEC understandably argues for a broad interpretation of the phrase "creation and operation of the trust" it does not take the position that every conceivable communication with a lawyer for the Wylys about any aspect of taxation, or any matter concerning a foreign trust, is within the advice of counsel waiver.[4]

In order to determine the proper scope of the advice of counsel waiver, then, we must look to the SEC's allegations and the Wylys' projected defense of reliance on advice of counsel. The SEC's basic allegations are that:

- the Wylys' offshore system of  trusts was a "sham" that enabled the Wylys to hide control of the Issuer Securities, by creating an illusion that the securities were controlled by the offshore trustees, when in fact all decisions were made by the Wylys. Complaint ¶ 3.

- through use of the Offshore System, the Wylys sold Issuer Securities without disclosing their beneficial ownership. Complaint ¶ 4.

- the Wylys made false statements concerning their true relationship to the offshore trusts to the Issuers, investors, the SEC and others. Complaint ¶ 7.

- the Wylys established an offshore Wyly family office as a conduit and repository for records so that they would not be seen in the United States. Complaint ¶ 7.

- the Wylys allocated their Issuer Securities to foreign trusts solely to avoid SEC

---

[4] See Transcript of Oral Argument at 11-12.

4

reporting requirements. Id.

- the Wylys used the proceeds from the offshore sales of the Issuer Securities for their personal benefit in the United States. Complaint ¶¶ 42-46.

The projected advice-of-counsel defense is that the Wylys were told by lawyers that they had structured their relationship and transactions with the offshore trusts in such a way that there was a sufficient separation between the Wylys and the trusts. More specifically, the argument is that they received advice of counsel that the foreign trustees were, under the applicable Securities laws, sufficiently in control of the Issuer Securities and other transactions, and thus believed there was no legal requirement to report their holdings — and accordingly none of their statements were intentionally misleading.

In light of these contentions and defenses, as a general matter the term "legal advice regarding the creation and operation of the offshore trusts" fairly covers any communication between the lawyers, the Wilys, and necessary agents about at least the following matters:

1. Wyly control over or management of the foreign trusts;

2. Reporting requirements for any transaction involving the foreign trusts, including structuring a transaction to avoid a reporting requirement;

3. Actions regarding the structuring of a foreign trust;

4. Transactions in which proceeds from or to a foreign trust were material; and

5. Responses to any government inquiry about management of or transactions involving any foreign trust. This includes responses to audits involving the offshore trusts. As Judge Scheindlin noted in a hearing dated June 7, 2011: "how the person decides to respond to the audit could show in fact their state of mind with respect to the whole scheme."

With these guideposts in mind, the Special Master proceeds to a review of the logged items.

*IV. Rulings on Logged Items*

The Special Master has reviewed the logged items *in camera* and the written submissions by the parties. The parties on June 29, 2011 orally argued the motion as to all the logged documents submitted to the Special Master.  Because there is a need for expedition and a mutual interest in saving resources, the parties have agreed that these rulings will be short and to the point. Also, efforts are made to avoid extensive disclosure of the contents of the logged documents, for the obvious reason that disclosure would defeat the purpose of any valid claim of privilege.

It should be noted that after the Special Master began review of the logged items, the Wylys filed an amended privilege log which dropped certain items either because they were duplicates or because the Wylys agreed to produce those items. The Special Master found it more efficient to work from the log initially submitted rather than shifting over to the amended log in the middle of the process. ***Thus the following rulings should be applied by reference to the initial privilege log.***

### *Documents 1, 1.1, 1.2, 1.3, 1.4, and 1.5:*

Document 1 is a letter dated April 21, 1993, from James Ryan, a lawyer, to Michael French and Sharyl Robertson. Documents 1.1-1.5 are draft documents for a transaction involving a foreign trust. At this time both French and Robertson were Protectors, but their performance in that role would not make them necessary agents of the Wylys; by definition Protectors are supposed to have an independent role in overseeing a trust. However, at the time of the letter Robertson was apparently the functional CFO for the Wylys and so could fit well within the definition of an agent necessary to facilitate communications between the attorney and the Wylys. As to French, he wore many hats, but at this time and with respect to the matter presented in the documents logged under #1, it appears that he was operating as a necessary agent.

But even if it is found that French and Boucher are necessary agents, none of the logged documents under #1 are protected. The documents concern a transaction of a significant property interest that is run through an Isle of Man Trust. The documents are evidence of how the Wylys interacted with one of the offshore trusts, based upon advice of counsel. Accordingly they are within the advice of counsel waiver.

Even if the documents were not within the advice of counsel waiver, the draft attachments would not be immune from disclosure. The attachments are draft documents for a public transaction. The Special Master has had occasion to discuss the proper treatment of drafts, when the client intends that the final will be a public document. See  the extensive discussion in *In re New York Renu with Moistureloc Product Liability Litigation*,  2008 WL 2338552 (D.S.C.). As stated in *Renu,* drafts of documents that are intended to be disclosed to the public are not privileged to the extent the draft contains statements that are in the final. Accordingly, even if there was no advice of counsel waiver, the Wylys would have to produce the attachments, redacted only insofar as they contains statements that are, upon advice of counsel, not found in the final document.

### ***Ruling on Documents 1 through 1.5: None are protected; protections waived by the advice***

*of counsel defense.*

**Documents 2 and 2.1:**

This is an email exchange between Keeley Hennington and Rodney Owens, a lawyer for the Wylys. It is about a confidential legal matter. Ms. Hennington is acting in a role that is necessary to the legal representation of the Wylys. And the document is not within the advice of counsel waiver because it deals solely with domestic trusts.

> *Ruling on Documents 2 and 2.1: Protected by the privilege and not subject to advice of counsel waiver.*

**Document 3:**

This is a fax from Sharyl Robertson to the Wylys. It is about structuring transactions through the foreign trusts as a means of asset protection.

> *The Wylys have agreed to produce this document.*

**Documents 4 and 4.1:**

This is a fax cover sheet (Document 4) and a memorandum from Sam Wyly (Document 4.1), dated July 12, 1989. The Wylys submit that the memo is not within the advice of counsel waiver as it has no bearing on any aspect of the operation and creation of the foreign trusts. Upon reviewing the memorandum, the Special Master is in agreement with the Wylys' position. Moreover, the memorandum is clearly within the attorney-client privilege as it involves a confidential legal matter and the recipients are either lawyers or necessary agents. The fax cover sheet is not privileged as it contains no privileged communication and gives no indication of the subject matter of any communication. But as it is non-responsive and says nothing there is no reason at all to order its disclosure.

> *Ruling on Documents 4 and 4.1: Document 4.1 is protected and not within advice of counsel waiver; Document 4 provides no information and is non-responsive, so production is not required.*

**Document 5:**

This is the first of the many draft IDR responses that are logged. This one was prepared by

David Kniffen, counsel for the Wylys, and this particular copy was apparently not distributed to anyone. The IDR's are Information Document Requests submitted in response to an IRS audit. The Wylys have already produced to the SEC the final IDR responses that were submitted to the IRS. So the contention here is only over the drafts. As Judge Scheindlin noted, preparation of IDR responses could show the Wylys' state of mind with respect to the treatment and structure of the offshore system. The particular draft response logged at #5 does deal with matters of operation and structure of the foreign trusts and so falls comfortably within the advice of counsel waiver as determined by Judge Scheindlin. While the particular logged copy does not appear to be distributed to anyone, this is far from a "memo to self" that might not have a bearing on an advice of counsel exchange. The submissions in the draft are clearly intended for discussion with the Wylys and their necessary agents.

Moreover, as stated above, drafts of documents intended for public disclosure are not immune from discovery in any event. So the drafts would have to be disclosed in any case, though if not for the advice of counsel waiver, any information not included in the final, upon advice of counsel, could be redacted.[5]

**_Ruling on Document 5: Not protected; protections waived by the advice of counsel defense._**

**_Document 6:_**

This is another draft IDR response, prepared by David Kniffen and apparently not distributed. The Special Master has reviewed the IDR responses and determines that the particular draft response logged at #6 deals with matters of operation and structure of the foreign trusts and so falls comfortably within the advice of counsel waiver as determined by Judge Scheindlin. While the particular logged copy does not appear to be distributed to anyone, the submissions in the draft are clearly intended for discussion with the Wylys and their necessary agents.

**_Ruling on Document 6: Not protected; protections waived by the advice of counsel defense._**

**_Documents 7 through 7.9:_**

Document 7 is an email from David Kniffen to Michelle Boucher and Keeley Hennington (and some lawyers) dated November 30, 2004. The email provides attachments, which are draft IDR responses. The Special Master has reviewed each of the IDR responses logged at 7.1 through 7.9 and determines that each has a bearing on the treatment and structure of the offshore system, and

---

[5] The point about drafts in text is equally applicable to each of the Draft IDR responses discussed through the remainder of this opinion. It will not be repeated each time.

so falls comfortably within the advice of counsel waiver as determined by Judge Scheindlin. As to Document 7, the email transmitting the attachment, it shows that communications were made between Wyly agents and counsel on matters involving the structuring of the offshore system, and so the email as well is within the scope of the advice of counsel waiver.

> ***Ruling on Documents 7 through 7.9: None are protected; protections waived by the advice of counsel defense.[6]***

### Document 8:

Document 8 is an IDR response schedule and task list, prepared by David Kniffen apparently for his own reference. It is essentially a "to-do" and "already done" list. This Document is unquestionably work product, prepared by the lawyer in anticipation of possible litigation. It does not involve any communication to the Wylys or their agents that would bear on the Wylys state of mind about or treatment of the foreign trusts. Therefore it is not within the advice of counsel waiver.

> ***Ruling on Document 8: Protected as work product.***

### Document 9:

This is an email from Kniffen to Boucher, Keeley Hennington and lawyers, providing short comments on attached IDR responses. Though the log states it is an "email w/attached draft IDR responses," the attachments are not individually logged as they are logged elsewhere. As such the Special Master will only consider the email itself. For reasons stated under #7 above, the email is within the advice of counsel waiver.

> ***Ruling on Document 9: Not protected; protection waived by the advice of counsel defense.***

### Document 10:

This is another draft IDR response, prepare by Kniffen. After reviewing the document, the Special Master concludes that it is not protected for the reasons stated in the discussion of Document #5.

---

[6] To be clear: if not for the advice of counsel waiver and the drafts rule, the Draft IDR responses as well as the transmitting email  would be protected by the privilege as these documents are unquestionably on a legal matter, and Boucher and Hennington are operating as necessary agents. That is so with all the Draft IDR responses discussed in this opinion, and so the Special Master's determination that the legal advice and necessary agent requirements are met will not be repeated for each communication regarding IDR responses.

***Ruling on Document 10: Not protected; protections waived by the advice of counsel defense.***

**Document 11:**

This is a schedule and task list prepared by David Kniffen regarding IDR responses. After reviewing the Document, the Special Master concludes that it is protected by the work product doctrine, and not within the advice of counsel waiver, for the reasons stated in the discussion of Document 8.

***Ruling on Document 11: Protected as work product.***

**Document 12:**

This is another schedule and task list prepared by David Kniffen regarding IDR responses. After reviewing the Document, the Special Master concludes that it is protected by the work product doctrine, and not within the advice of counsel waiver, for the reasons stated in the discussion of Document 8.

***Ruling on Document 12: Protected as work product.***

**Documents 13, 13.1, 13.2 and 13.3:**

Document 13.1 is an email from Kniffen to Keeley Hennington, Boucher, et. al, attaching draft IDRs and providing a short description. Document 13 is Hennington's email response providing a suggestion about preparing the IDRs. Documents 13.2 and 13.3 are the draft IDR responses. After reviewing all these Documents, the Special Master concludes that for the reasons stated in the discussion of Documents 7 through 7.9, none of the Documents logged under #13 are protected. All of them are within the scope of the waiver for the advice of counsel defense.

***Ruling on Documents 13 through 13.3: None are protected; protections are waived by the advice of counsel defense.***

**Documents 14 and 14.1:**

This is an email string involving Shari Robertson to Mike French and Rodney Owens, regarding trust re-statements.

***The Wylys have agreed to produce this Document.***

**Documents 15, 15.1 and 15.2:**

This is an email string between Keeley Hennington and Rodney Owens. It is about Wrangler, which is a domestic trust, and does not involve any connection to or transaction with any foreign trust. Accordingly, by agreement of the parties reached at oral argument, these emails are not within the advice of counsel waiver because they do not involve the creation or operation of the foreign trusts. Moreover, the emails are clearly within the privilege, as they involve confidential communication on legal matters between a lawyer for the Wylys and an agent necessary to the representation.

> **Ruling on Documents 15, 15.1 and 15.2: All are protected by the privilege and not subject to advice of counsel waiver.**

**Documents 16, 16.1, 16.2, and 16.3:**

Document 16 is an email from Keeley Hennington to Larry Campagna, a tax lawyer retained by the Wylys. The email refers files involving private annuity transactions — those files are logged at 16.1 through 16.3. The email and the attached files describe private annuity transactions involving the foreign trusts. The email and attachments are privileged because they are communications between a necessary agent and a lawyer on a confidential legal matter. But it is apparent that these documents pertain directly to the operation of the foreign trusts — they show how the Wylys used those trusts for major transactions. As such, the email and attached files are well within the advice of counsel waiver as established by Judge Scheindlin's April 1, 2011 Order.

> **Ruling on Documents 16 through 16.3: None are protected; all protections are waived by the advice of counsel defense.**

**Documents 17, 17.1 and 17.2:**

This is an email exchange between a lawyer for the Wylys to Keeley Hennington and Sharyl Robertson. Attached to the lawyer's email is a draft ruling request which, when finalized, was intended to be submitted to the IRS. The transactions that are the subject of the email exchange — as indicated in the ruling request — involve transfers to the offshore trusts. The question addressed was whether these transactions need to be reported. The emails and the draft are unquestionably within the advice of counsel waiver as interpreted by Judge Scheindlin. Even if that were not so, the draft is not immune from discovery — as a document intended for public disclosure, the draft would have to be produced, redacted only insofar as it contains statements that are, upon advice of counsel, not found in the final document.

***Ruling on Documents 17 through 17.2: None are protected; all protections are waived by the advice of counsel defense.***

**Document 18:**

This is an email from Boucher to Chuck Lubar, lawyer for the Wylys, cc: to Keeley Hennington, setting out a short agenda for a discussion. To the extent this email contains any privileged information at all, it is within the advice of counsel waiver as it indicates that agents of the Wylys were discussing issues about tax treatment and disclosures concerning the offshore system.

***Ruling on Document 18: Not protected: protection if any waived by the advice of counsel defense.***

**Documents 19 and 19.1:**

This is a two-email exchange between Keeley Hennington and a tax lawyer for the Wylys. The exchange involves the need to report — and possible ways to avoid reporting — transactions involving the foreign entities. The topics discussed are  within the scope of the advice of counsel waiver as stated by Judge Scheindlin.

***Ruling on Documents 19 and 19.1: Not protected; protections waived by the advice of counsel defense.***

**Documents 20 and 20.1:**

This is a two email exchange on the same basic topic as discussed in Documents 19 and 19.1. While unquestionably privileged at the time, the emails concern the need to report — and possible ways to avoid reporting — transactions involving the foreign entities. As such the protections are waived by the advice of counsel defense as determined by Judge Scheindlin.

***Ruling on Documents 20 and 20.1: Not protected; protections waived by the advice of counsel defense.***

**Documents 21 and 21.1:**

Document 21 is an email from Keeley Hennington to Boucher, attaching a memo. This email does refer to the topic of the discussion set forth in the attachment (#21.1), so it would appear to be privileged in the first instance. The communication of the attachment is "agent to agent" so it might

12

be thought to be outside the privilege, but in fact Boucher and Hennington are working together to prepare a memo for the Wylys that incorporates communications from counsel. Thus this working draft was at the time it was made within the privilege as extended to agents necessary for promoting communications between client and counsel.  However, the attached report and the email itself concern an inquiry from the IRS about transactions with foreign trusts and reporting requirements. What's more,  the memo indicates that the IRS was interested in reporting of transactions to the SEC reporting of transactions. The relationship between tax advice and securities advice is clear. Therefore, the report is subject to the advice of counsel waiver — as is the email referring the report, because the email indicates that information on issues of structuring and reporting transactions related to the offshore trusts was in fact exchanged among lawyers, necessary agents, and the Wylys.

> ***Ruling on Documents 21 and 21.1: Not protected; protections waived by the advice of counsel defense.***

### Documents 22 and 22.1:

This is an email exchange between Kenneth Kail, a lawyer for the Wylys, and Keeley Hennington. It is about the IRS investigation and indicates the IRS is interested in SEC filings regarding the offshore trusts. As with Documents 21 and 21.1, the relationship between tax advice and securities advice is clear. Consequently, both Documents are subject to the advice of counsel waiver.

> ***Ruling on Documents 22 and 22.1: Neither are protected; protection waived by the advice of counsel defense.***

### Documents 23, 23.1 and 23.2:

This is an email chain of messages between Kenneth Kail, Keeley Hennington and others, discussing an attached memorandum (#23.2) that is being prepared to be sent to the IRS. That memorandum — and the discussion in the emails — is all about structuring and reporting transactions going through the foreign trusts. One  specific question concerns the characterization of the foreign trusts. Based on the criteria for determining the scope of the advice of counsel waiver discussed at the outset of this opinion, it is clear that none of the Documents logged here retain any protection in light of the advice of counsel defense. Even if that were not the case, the draft memorandum would be subject to the rule on drafts, previously discussed, as the goal was to prepare a memo to deliver to the IRS.

> ***Ruling on Documents 23 through 23.2: None are protected; protections waived by the advice of counsel defense.***

### Documents 24, 24.1, 24.2, and 24.3:

This is an email chain involving Boucher, Keeley Herrington, and tax lawyers for the Wylys. The chain involves an exchange of comments and suggestions regarding the draft memo to the IRS that is logged at #23.2. These emails show that the questions about the structure of the foreign trusts and major transactions involving those trusts were discussed by counsel and necessary agents of the Wylys. They are accordingly within the scope of the advice of counsel waiver.

> ***Ruling on Documents 24 through 24.3: None are protected; protections waived by the advice of counsel defense.***

**Documents 25 and 25.1:**

This is a two-email chain between Kenneth Kail and Keeley Hennington. Kail's email attaches a draft of the memorandum to the IRS discussed under Document 23. The attachment is logged as Document 23.2. For reasons discussed under Documents 23 and 24, the protections for the letter to the IRS, as well as the protections for the discussions about the draft between lawyers and necessary agents, have been waived by the advice of counsel defense.

> ***Ruling on Documents 25 and 25.1: Neither are protected; protections waived by the advice of counsel defense.***

**Documents 26, 26.1 and 26.2:**

This is a three-email exchange between Keeley Hennington and Rodney Owens concerning an inquiry from the IRS about a sale by the Wylys to two offshore entities. It concerns responses to a government inquiry about transactions involving a foreign trust and is accordingly within the advice of counsel waiver discussed above.

> ***Ruling on Documents 26 through 26.2: None are protected; protection waived by the advice of counsel defense.***

**Documents 27 through 27.3:**

This is an email string that on its face does not implicate a foreign trust issue and therefore is not within the scope of the advice of counsel waiver. Moreover, it is a confidential exchange between lawyers and a necessary agent ---- Keeley Hennington — on a legal matter, so the entirety of the exchange is protected by the privilege.

> ***Ruling on Documents 27 through 27.3: All are protected by the privilege; none are within the advice of counsel waiver.***

14

*Documents 28 and 28.1:*

Document 28 is an email from Keeley Hennington to Kniffen concerning outstanding matters for IDR responses regarding some foreign trusts. Document 28.1 is a report prepared by Keeley Hennington that summarizes some transactions in preparation for IDR responses.  For the reasons discussed under Documents 5-7, the material prepared for an IDR response regarding a foreign trust, and email communications pertinent to the process, are within the scope of the advice of counsel waiver.

> *Ruling on Documents 28 and 28.1: Neither are protected; protections are waived by the advice of counsel defense.*

*Documents 29 through 29.4:*

This is a four email string, including Keeley Hennington and lawyers from the Meadows Owens firm. Keeley Hennington is definitely operating as a necessary agent and the emails are confidential communications about a proposed transaction with legal ramifications. Accordingly, all of the email s are privileged. Finally, the emails are not within the advice of counsel waiver because they concern a domestic trust, with no reference to any transaction or interaction with an offshore entity.

> *Ruling on Documents 29 through 29.4: All are protected by the privilege; none are within the advice of counsel waiver. .*

*Document 30:*

Document 30 is an email from Keeley Hennington to Boucher.

*The Wylys have agreed to produce this document.*

*Log #31 is left blank.*

*Document #32:*

Document 32 is an email from Keeley Hennington to Charles Pulman, lawyer for the Wylys.

*The Wylys have agreed to produce this document.*

***Documents 33 and 33.1:***

> ***These are duplicates of Documents 2 and 2.1. As such they are protected by the privilege and not subject to the advice of counsel waiver.***

***Document 34:***

This is an email from Keeley Hennington to Charles Pulman, cc: to Boucher. It indicates that a meeting is scheduled but says nothing at all about the subject matter of the meeting. As discussed in previous opinions by the Special Master, an email that does nothing more than scheduling, without any indication of the subject matter, is not privileged because it imparts no confidential information on a legal matter.

> ***Ruling on Document 34: Not protected by the privilege.***

***Documents 35 through 35.3:***

This is an email string involving Keeley Hennington, Boucher, and Rodney Owens. It concerns a sale of property through use of a trust.

> ***The Wylys have agreed to produce these documents.***

***Documents 36, 36.1 and 36.2:***

This is an email string overlapping with the one logged at 35.

> ***The Wylys have agreed to produce these documents.***

***Documents 37, 37.1 and 37.2:***

This is an email string and attachment involving management of a trust.

> ***The Wylys have agreed to produce these documents.***

***Documents 38, 38.1 and 38.2:***

This is an email string involving Keeley Hennington, Boucher, and Rodney Owens. It concerns a sale of property through use of a trust.

16

*The Wylys have agreed to produce these documents.*

**Documents 39, 39.1 and 39.2:**

Document 39 is an email from Kniffen to Boucher and Keeley Hennington transmitting more draft IDR responses and providing a short comment on changes made in the drafting process. Documents 39.1 and 39.2 are the draft IDR responses. These drafts were prepared in response to an IRS audit that was specifically investigating the offshore entities and transactions running through them. Accordingly the draft responses as well as the referring email are well within the scope of the advice of counsel waiver.

> ***Ruling on Documents 39 through 39.2: None are protected; protections are waived by the advice of counsel defense.***

**Documents 40 and 40.1:**

This is another email from Kniffen to Keeley Hennington and Boucher attaching another set of draft IDR responses. For the reasons stated previously in the discussion in ##7 and 39, the email and draft responses are within the scope of the advice of counsel waiver.

> ***Ruling on Documents 40 and 40.1: Neither are protected; protections are waived by the advice of counsel defense.***

**Documents 41 and 41.1:**

This is another email from Kniffen to Keeley Hennington and Boucher attaching another set of draft IDR responses. For the reasons stated previously in the discussion in ##7 and 39, the email and draft responses are within the scope of the advice of counsel waiver.

It should be noted that some of the IDR draft responses (like #41.1) contain bracketed comments by Kniffen that are explanatory and not intended to be part of the ultimate response to be submitted to the IRS. Those comments were clearly privileged when written and also went sent to Boucher and Keeley Hennington as necessary agents. And they are not subject to the rule on drafts because the comments are not part of the draft itself. But those comments --- like the rest of the information in the draft responses --- are within the advice of counsel waiver, because the information imparted by counsel to the necessary agents concerns the structure of the foreign trusts and the use of those trusts for transactions by the Wylys.

> ***Ruling on Documents 41 and 41.1: Neither are protected; protections are waived by the advice of counsel defense.***

***Documents 42 and 42.1:***

This is another email from Kniffen to Keeley Hennington and Boucher attaching another set of draft IDR responses regarding transactions with foreign trusts. For the reasons stated previously in the discussion in ##7 and 39, the email and draft responses are within the scope of the advice of counsel waiver.

***Ruling on Documents 42 and 42.1: Neither are protected; protections are waived by the advice of counsel defense.***

***Documents 43 and 43.1:***

Document 43  is an email from Kniffen to Keeley Hennington and Boucher attaching Document 43.1, which is  a single IDR draft response. However, unlike the other draft IDR responses previously considered, this particular IDR response has nothing to do with any offshore entity. Accordingly this particular IDR, as well as the email which transmits it, is outside the scope of the advice of counsel waiver.

The IDR draft response is, however, a draft and subject to the rule on drafts, previously discussed.  Thus, Document 43.1 must be produced, subject to redaction for anything taken out of the final document on advice of counsel.

As to the email itself:  an email that does nothing more than transmit a document — without any indication of the content of that document — is not a confidential communication protected by the privilege. *See, e.g., U.S. Postal Service v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 163 (E.D.N.Y. 1994) ("Examples of documents from an employee to house counsel which are not privileged include Document 4, which is merely a transmittal letter . . ."). Document 43 is a simple transmittal email without any indication of the content of the document transmitted.

***Ruling on Documents 43 and 43.1: Document 43 is not protected by the privilege. Document 43.1 must be produced, though the Wylys may redact any information that was deleted from the final on advice of counsel.***

***Documents 44 and 44.1:***

Document 44 is a transmittal email from Kniffen, sending a draft IDR response to Hennington and Boucher. Document 44.1 is a draft response regarding a transaction with a foreign trust. Based on prior analysis in the discussion in ## 7 and 39, both the email and the draft response are within the scope of the advice of counsel waiver.

***Ruling on Documents 44 and 44.1: Neither are protected; protections are waived by the***

18

*advice of counsel defense.*

**Documents 45 and 45.1:**

This is another transmittal of a draft IDR response from Kniffen. It involves a transaction with a foreign trust. For the reasons stated previously in the discussion in ##7 and 39, both the email and draft responses are within the scope of the advice of counsel waiver.

> ***Ruling on Documents 45 and 45.1: Neither are protected; protections are waived by the advice of counsel defense.***

**Documents 46 and 46.1**:

This is another transmittal of a draft IDR response from Kniffen. It involves a transaction with a foreign trust. For the reasons stated previously in the discussion in ##7 and 39, the email and draft responses are within the scope of the advice of counsel waiver.

> ***Ruling on Documents 46 and 46.1: Neither are protected; protections are waived by the advice of counsel defense.***

**Documents 47 and 47.1**:

This is another transmittal of  draft IDR responses from Kniffen. It involves  transactions with  foreign trusts. For the reasons stated previously in the discussion in ##7 and 39, the email and draft responses are within the scope of the advice of counsel waiver.

> ***Ruling on Documents 47 and 47.1: Neither are protected; protections are waived by the advice of counsel defense.***

**Document 48:**

These are draft IDR responses by Kniffen. The copy logged under Document 48 was apparently not distributed by email. Regardless, the draft responses involve substantial transactions through a number of foreign trusts, and indicate the  information about the operation of the trust that was being exchanged between counsel and the Wylys.  Accordingly, the Document is within the scope of the advice of counsel waiver.

> ***Ruling on Document 48: Not protected; protections are waived by the advice of counsel defense.***

***Documents 49 through 49.6:***

Document 49 is an email from Kniffen to Hennington attaching the latest drafts of IDR responses. Documents 49.1 through 49.6 are the attached draft responses. For the reasons discussed above, the responses relating to foreign trusts are within the advice of counsel waiver. The email itself is not protected because it is a simple transmittal — but even if it were protected those protections would be waived because the email indicates the information that was exchanged between counsel and the Wylys regarding foreign trust.

One of the IDR responses, however, deserves particularized treatment. The response to Request Number 57 does not involve a foreign trust. It is the same response treated in #43.1, supra. Accordingly any information deleted on advice of counsel from the final of that response may be redacted.

> ***Ruling on Documents 49 through 49.6: With one exception, none of the Documents are protected because the protections were waived by the advice of counsel waiver. The exception is the response to Request Number 57, which must be produced, but the Wylys may redact any information that was deleted from the final on advice of counsel.***

***Document 50:***

This is an email from Keeley Hennington to Rodney Owens about an issue of foreign trust management.

> ***The Wylys have agreed to produce this document.***

***Document 51:***

This is an email from Keeley Hennington to Kenneth Kail, cc: to Boucher, which is an add-on to the email string (and attachment) covered previously as Documents 17 through 17.2. Like those documents, the email from Hennington concerns a transaction using a foreign trust and so is within the scope of the advice of counsel waiver as determined by Judge Scheindlin.

> ***Ruling on Document 51: Not protected; protections waived by the advice of counsel defense.***

***Document 52:***

This is an email from Keeley Hennington to Wyly lawyers and Boucher, discussing an investigation. While Judge Scheindlin has indicated that responses to audits are within the advice

of counsel waiver, this particular email does not deal with any response to an audit. It is confidential information from a necessary agent to lawyers for the Wylys (and another necessary agent, Boucher), that will assist the lawyers in their representation of the Wylys' interests. As such it was and remains protected by the privilege.

     ***Ruling on Document 52: Protected by the privilege and not within the scope of the advice of counsel waiver.***

### Document 53:

     This is an email from Keeley Hennington to Boucher about structuring a transaction.

     ***The Wylys have agreed to produce this document.***

### Document 54:

     Document 54 is an email from Keeley Hennington to Kenneth Kail. It is about taxation of private annuity transactions. At the time it was sent it was privileged, because Hennington was clearly operating as a necessary agent for the Wylys in facilitating communications on a legal matter, and the communication was confidential. However, the transactions discussed involve transfers of property to foreign trusts and so the email is within the scope of the advice of counsel waiver.

     ***Ruling on Document 54: Not protected; protections waived by the advice of counsel defense.***

### Document 55:

     Document 55 is an email from Keeley Hennington to Boucher, concerning an outline that will be presented for a discussion with the Wylys about tax issues. The logged item indicates that the outline is an attached memorandum but it is not logged. The email itself reflects a discussion with counsel about transactions that are also the topic of Document 54. Like Document 54, the Wyly transactions discussed are tied to the use of a foreign trust and so the email is within the advice of counsel waiver.

     ***Ruling on Document 55: Not protected; protections waiver by the advice of counsel defense.***

### Document 56:

This is an email from Keeley Hennington to Chuck Lubar, cc: Boucher. It is of the same character as Document #52. .It is confidential information from a necessary agent to lawyers for the Wylys (and another necessary agent, Boucher), that will assist the lawyers in their representation of the Wylys' interests. And the topic of the email is not about foreign trusts.

> **Ruling on Document 56: Protected by the privilege and not within the scope of the advice of counsel waiver.**

**Document 57:**

This is an email from Keeley Hennington to Charles Pulman, a lawyer for the Wylys, about an issue of trust administation.

> **The Wylys have agreed to produce this document.**

**Document 58, 58.1 and 58.2:**

Document 58 is an email from Hennington to Boucher, attaching a memorandum and a report, which are logged at 58.1 and 58.2. The email is a communication from one agent to another, as opposed to a communication between an agent and a lawyer. Confidential communications between non-lawyer employees acting as necessary agents which facilitate the lawyers work for the client are cloaked by attorney-client privilege. *United States. v. Chevron Texaco Corp.,* 241 F. Supp. 2d 1065 (N.D. Cal.2002). *See also Santrade, LTD. v. General Electric Co.*, 150 F.R.D. 539, 543 (E.D.N.C. 1993) ("A document need not be authored by or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.").   That said, while the email and the attachments are privileged, they are well within the advice of counsel waiver as they deal with the use of foreign trusts to effectuate transactions.

> **Ruling on Documents 58, 58.1 and 58.2: None are protected; protections are waived by the advice of counsel defense.**

**Document 59:**

This is a long email string among Keeley Hennington, Boucher and lawyers. The only email logged is the last one from Hennington to Kenneth Kail. The attached memorandum and prior emails are logged elsewhere. The discussion is about tax treatment of foreign trusts with United States beneficiaries. The issues discussed pertain to whether a trust will be considered to have control of assets or will be treated as a pass-through and so the logged email is within the advice of counsel waiver — as are the rest of the emails in the chain as well as the attachment.

> **Ruling on Document 59: Not protected; protections waived by the advice of counsel defense.**

***Documents 60 through 60.8:***

This is where the email chain and attachment discussed under Document 59 is logged. For the reasons expressed in the discussion of Document 59, each of the emails in the string as well as the attachment are within the advice of counsel waiver.

> ***Ruling on Documents 60 through 60.8: None are protected: protections waived by the advice of counsel defense.***

***Document 61:***

This is an email from Keeley Hennington to Charles Lubar, cc: to Boucher, in preparation of a meeting. The email is confidential, on a legal subject, and both Hennington and Boucher are necessary agents because they are facilitating a future meeting between attorney and client. The communications in the email do not on their face raise an issue or question about the creation or operation of a foreign trust, and therefore the email is not within the scope of the advice of counsel waiver.

> ***Ruling on Document 61: Protected by the privilege, and protections are not waived by the advice of counsel defense.***

***Document 62:***

This is an email from Chuck Lubar responding to Keeley Hennington's email logged at #61. Like that email, it does not raise an issue about the creation or operation of a foreign tust.

> ***Ruling on Document 62: Protected by the privilege, and not within the scope of the advice of counsel waiver.***

***Documents 63 through 63.5:***

This is an email string concerning proper reporting of transactions going through a trust.

> ***The Wylys have agreed to produce these documents.***

***Documents 64 and 64.1:***

This is an email and an attached draft promissory note about the same transaction discussed in the email string at # 63.

*The Wylys have agreed to produce these documents.*

**Document 65:**

This is another email in the string logged in #63 and #64.

*The Wylys have agreed to produce this document.*

**Document 66:**

Document 66 is an email from Keeley Hennington to lawyers about treatment of a loan from a foreign entity.

*The Wylys have agreed to produce this document.*

**Documents 67 and 67.1:**

This is an email from Keeley Hennington to Rodney Owens, attaching an agreement regarding Computer Associates.

*The Wylys have agreed to produce these documents.*

**Document 68:**

This is an email from Keeley Hennington to Evan Wyly in which she is facilitating the exchange of legal advice regarding a transaction. The communication is confidential and is protected by the privilege. It is not subject to advice of counsel waiver, as the communication on its face does not concern creation or operation of a foreign trust.

*Ruling on Document 68: Protected by the privilege; not within scope of advice of counsel waiver.*

**Documents 69 and 69.1:**

This is an email chain with communications between Keeley Hennington, Boucher and a lawyer, concerning a promissory note.

*The Wylys have agreed to produce these documents.*

***Document 70:***

This is a report prepared by Sharyl Robertson regarding gift and loan transactions involving foreign trusts.

**The Wylys have agreed to produce this document.**

***Document 71:***

Document 71 is an email from a lawyer for the Wylys to Sharyl Robertson and Keeley Hennington, both of whom are acting as necessary agents. The email concerns the operation and structure of a domestic trust. It involves no foreign trust issues. Accordingly, it is not within the scope of the advice of counsel waiver.

***Ruling on Document 71: Protected by the privilege; not within the advice of counsel waiver.***

***Document 72:***

Document 72 is a memo to Sam Wyly regarding a transaction involving a sale of an interest in one trust to another trust. Keith Hennington and Sharyl Robertson are included on the memo. At the time of the memo, both Robertson and Keith Hennington had left their positions in the Wyly family office. But they were at that time working for Maverick, and the subject of the email is pertinent to their positions there. It is reasonable to assume that putting them in the loop would facilitate the transaction and thus promote the client's interest being pursued by the lawyers and the other necessary agents.

The Wylys contend that this memo is non-responsive because it solely concerns domestic issues. But the memo does refer to a source of funds from an offshore trust. Accordingly, the memo raises questions about foreign trust operation that bring it within the advice of counsel waiver.

***Ruling on Document 72: Not protected; protections are waived by the advice of counsel defense.***

***Documents 73, 73.1 and 73.2:***

This is an email string starting with an email from Keeley Hennington — acting as a necessary agent — to a lawyer for the Wylys, and two responses between the correspondents. The communications concern structuring of a trust, a clearly legal matter, and are intended to be confidential. The communications are not covered by the advice of counsel waiver, because the trust

is domestic and there is no direct or indirect reference to the creation or operation of a foreign trust.

> ***Ruling on Documents 73 through 73.2: Protected by the privilege and not within the scope of the advice of counsel waiver.***

**Document 74:**

This is an email from Rodney Owens to Sharyl Robertson. As with Document #72, Robertson is — even though working at Maverick at the time — an agent necessary to facilitate the lawyer-client relationship by implementing advice of counsel. There is no requirement that, to be a necessary agent, Robertson had to be employed in the Wyly family office. The necessary agent rule is not so limited. *See, e.g., Jones v. Nissan N. Am., Inc.*, 2008 WL 4366055, at *7 (M.D. Tenn. Sept. 17, 2008) (communication to non-employee was within the privilege where the non-employee had a "significant relationship" to the matter).

The email is not within the advice of counsel waiver as it does not provide any information about the creation or operation of a foreign trust.

> ***Ruling on Document 74: Protected by the privilege, and not within the scope of the advice of counsel of waiver.***

**Documents 75 and 75.1:**

This is an email string involving lawyers and Sharyl Robertson regarding purchases of property.

> ***The Wylys have agreed to produce these documents.***

**Log number 76 is left blank.**

**Document 77:**

This is an email from Keeley Hennington to Boucher about an issue of trust management.

> ***The Wylys have agreed to produce this document.***

**Documents 78 and 78.1:**

Two emails are logged, between Keeley Hennington and Rodney Owens, regarding an

insurance issue. Keeley Hennington is operating as a necessary agent, and the emails contain confidential communications on a legal matter. The communications on their face do not concern the creation or operation of a foreign trust and so the emails are not within the advice of counsel waiver.

>**Ruling on Documents 78 and 78.1: Protected by the privilege, and not within the scope of the advice of counsel waiver.**

**Documents 79 through 79.4:**

This is an email with attachments that are draft promissory notes.

>**The Wylys have agreed to produce these documents.**

**Document 80:**

This is a memo regarding a draft commitment letter.

>**The Wylys have agreed to produce this document.**

**Documents 81 though 81.4:**

This is a handwritten memo and other documents concerning a litigation release.

>**The Wylys have agreed to produce these documents.**

**Document 82:**

This is an email from Kenneth Kail to Keeley Hennington and Chuck Lubar about IRS treatment of certain stock options. The communication is confidential, on a legal matter, and Keeley Hennington is acting as a necessary agent facilitating the lawyer's representation of the client. However, the email covers the same topic that was raised in Documents 54 and 55, and for the reasons expressed there, the communications implicate transactions with the foreign trusts.

>**Ruling on Document 82: Not protected; protections waived by the advice of counsel defense.**

**Document 83:**

Document 83 is a discussion memorandum prepared by Keeley Hennington and Boucher for the Wylys and a lawyer. It implements advice of counsel and so was privileged at the time it was sent. But it is within the advice of counsel waiver because it deals directly with the impact of transactions on the foreign trusts, and with questions about the validity of the transactions because of that impact.

> ***Ruling on Document 83: Not protected; protections are waived by the advice of counsel defense.***

**Document 84:**

> ***This is a duplicate of Document 21.1 — within the scope of the advice of counsel waiver.***

**Document 85:**

This is a fax cover sheet, sent by Boucher to Charles Lubar, cc: to Keeley Hennington. It lists a number of attachments that are being sent. To the extent it is privileged at all, it has lost its protection due to the advice of counsel waiver. The transactions at issue involved a number of foreign trusts.

> ***Ruling on Document 85: Not protected; any protections have been waived by the advice of counsel defense.***

**Document 86:**

> ***This is a duplicate of Document 20.1 — within the scope of the advice of counsel waiver.***

**Documents 87 and 87.1:**

Document 87 is a fax cover sheet that provides no information and though logged, is not privileged. Document 87.1 is attorney notes of a meeting with the IRS, as well as handwritten notes by Keeley Hennington. The meeting involves transactions going through foreign trusts and how they should be characterized and reported. Moreover, the discussion includes reporting requirements under securities laws. The notes are well within the advice of counsel waiver as determined by Judge Scheindlin.

> ***Ruling on Documents 87 and 87.1: Neither are protected; protections if any are waived by the advice of counsel defense.***

**Document 88:**

Document 88 is a memo to the file by Cicely Gibson, a tax lawyer for the Wylys. It is an extensive legal analysis of tax treatment of an annuity transaction involving a foreign trust. When written, it was undeniably privileged. But it is well within the advice of counsel waiver as it addresses the problem of whether the use of a foreign trust in a particular way renders a transaction subject to recharacterization.

**Ruling on Document 88: Not protected; protections waived by the advice of counsel defense.**

**Document 89:**

Document 89 is a memo to the file prepared by Chuck Lubar and Cicely Gibson. It reviews the same transaction that is reviewed in Document 88 and like that document, it addresses the problem of whether the use of a foreign trust in a particular way renders a transaction subject to recharacterization. As such it is within the advice of counsel waiver as determined by Judge Scheindlin.

**Ruling on Document 89: Not protected; protections waived by the advice of counsel defense.**

**Document 90:**

This is another memo to the file, prepared by Chuck Lubar and another lawyer, concerning tax status of a foreign trust. The memo extensively covers issues of necessary control by trustees over disposition of trust property. These issues of course overlap with the questions to be determined in this case. The memo provides legal analysis about the creation and operation of a foreign trust, and so the privilege is waived by the advice of counsel defense.

**Ruling on Document 90: Not protected; protections waived by the advice of counsel defense.**

**Document 91:**

This is a memorandum to Chuck Lubar from another lawyer in his firm. It concerns possible tax treatments for sales of stock options. It is unquestionably privileged. But it is covered by the advice of counsel waiver because the option transactions involved the use of the offshore system, and the lawyer's analysis bears on that use.

**Ruling on Document 91: Not protected; protections waived by the advice of counsel defense.**

29

**Document 92:**

This is an email among Morgan Lewis lawyers, concerning the tax treatment of stock options. Like Document 91, it was clearly privileged when made but it is covered by the advice of counsel waiver because the option transactions involved the use of the offshore system, and the lawyer's analysis bears on that use.

> ***Ruling on Document 92: Not protected; protections waived by the advice of counsel defense.***

**Document 93:**

This is an email among Morgan Lewis lawyers, concerning the tax treatment of stock options. Like Documents 91 and 92, it was clearly privileged when made but it is covered by the advice of counsel waiver because the option transactions involved the use of the offshore system, and the lawyer's analysis bears on that use.

> ***Ruling on Document 93: Not protected; protections waived by the advice of counsel defense.***

**Document 94:**

This is another memorandum to the Morgan Lewis files. This memo is replete with legal information about the structuring and use of, and reporting requirements for, foreign trusts, and the proper characterization of transactions with those trusts. Thus while it was undeniably privileged, that privileged was waived by the advice of counsel defense.

> ***Ruling on Document 94: Not protected; protections waived by the advice of counsel defense.***

**Documents 95 and 95.1:**

Document 95 is an email from a lawyer at Morgan Lewis to Boucher, referring meeting notes. The email says nothing and is not privileged. The notes, logged at #95.1, cover the issues that are also addressed in the legal memorandum logged at #94. Like that memo, the notes cover issues about the structuring and use of, and reporting requirements for, foreign trusts, and the proper characterization of transactions with those trusts. Thus while the notes were undeniably privileged, that privileged was waived by the advice of counsel defense. The same is true with the referring email — even if it were privileged, the privilege is waived by the advice of counsel defense as the email shows an exchange of information between attorney and necessary agent for the client on

matters of foreign trust operation.

> ***Ruling on Documents 95 and 95.1: Neither are protected; any protection is waived by the advice of counsel defense.***

**Document 96:**

This is an email from Keeley Hennington to Chuck Lubar, cc: to Boucher, asking for legal advice regarding a change in tax law. The tax law involves foreign trusts but the particular question asked is about a historical question that is not related to any of the allegations in this case, nor to the advice of counsel defense. Hennington is acting as a necessary agent, and routing this information to Boucher is also within the necessary agent rule for facilitating the exchange of attorney-client communications.

> ***Ruling on Document 96: Protected by the privilege; protections not waived by the advice of counsel defense.***

**Document 97:**

This is a memo to the audit file prepared by Keith Hennington. It was prepared by Hennington in 1997 when he was still working in the family office. It reveals communications of counsel. And it does concern the foreign (as well as domestic) trusts. But this document is not about responses to an audit, such as the IDR responses addressed above. It is about the status of a matter. There is nothing in the memo that provides any indication of how the Wylys created, operated, or engaged in transactions with any foreign trust. Accordingly, the protection of the privilege is not waived.

> ***Ruling on Document 97: Protected by the privilege; not within the advice of counsel waiver.***

**Documents 98 and 98.1:**

This is a letter (#98) from Morgan Lewis to Keeley Hennington, with an attached memorandum (#98.1) providing advice on the applicability of a tax provision to certain of the offshore trusts. The memo is unquestionably privileged — as is the letter, because it refers to the substance of the memo — but the privilege is waived by the advice of counsel defense. The memo indicates that issues of control are critical to the resolution — those control questions overlap with the SEC's allegations and the advice of counsel defense in this case.

> ***Document 98: Neither are protected: protections waived by the advice of counsel defense.***

31

**Document 99:**

Document 99 is handwritten notes from Keeley Hennington over a copy of a tax provision. She is acting as a necessary agent and her notes facilitate communications between attorney and client. None of the notes involve any substantive issue of creation or operation of a foreign trust.

*Ruling on Document 99: Protected; not within advice of counsel waiver.*

**Document 100:**

The document is an opinion letter prepared by Chuck Lubar, sent to Keeley Hennington and Boucher, concerning the proper characterization of certain of the offshore trusts. The letter is undoubtedly privileged, and it is not within the advice of counsel defense as it does not involve a substantive issue regarding the creation or operation of a foreign trust.

*Ruling on Document 100: Protected; not within advice of counsel waiver.*

**Documents 101 and 101.1:**

These are two emails about possible treatment of tax matters, one from Chuck Lubar to Keeley Hennington and Boucher and the other the reply. Nothing in this emails has relevance to any substantive issues raised by the advice of counsel defense. As to privilege, the emails are on a legal subject and Hennington and Boucher are acting as necessary agents.

*Ruling on Documents 101 and 101.1: Protected; not within advice of counsel waiver.*

**Document 102:**

This is an email from Keeley Hennington to Chuck Lubar. It indicates that Lubar was retained on a particular legal matter and so is privileged. Nothing in this short email bears upon any of the issues raised by the SEC's complaint or the advice of counsel defense.

*Ruling on Document 102: Protected; not within the advice of counsel waiver.*

**Document 103:**

This is a short email from Keeley Hennington to Charles Pulman of the Meadows Owens firm. It forwards the information from Document 102 and so is privileged. And nothing about the

email on its face is addressed to substantive questions about the creation or operation of a foreign trust.

> ***Ruling on Document 103: Protected; protections not waived by the advice of counsel defense.***

**Documents 104 and 104.1:**

These are two emails that indicate that lawyers have been retained on certain specific tax matters. As such they reflect more than the mere retention of a lawyer — they reflect the subject matter of the representation and so are privileged. Nothing in these emails indicates anything about foreign trusts that would bear upon the issues raised by the SEC's complaint or the advice of counsel defense.

> ***Ruling on Documents 104 and 104.1: Protected; protections not waived by the advice of counsel defense.***

**Documents 105 and 105.1:**

This is a two-email chain involving Keeley Hennington and Chuck Lubar. These emails are not privileged because they do not deal with a legal issue involving the client. Hennington asks a question about a non-client's legal situation  simply out of curiosity.

> ***Ruling on Documents 105 and 105.1: Neither are protected by the privilege.***

**Documents 106 and 106.1:**

This is a two email exchange involving Keeley Hennington, the lawyer Miriam Fisher, and Boucher. While these are certainly confidential communications on a legal matter, the exchange concerns the consequences of not properly reporting transactions with foreign trusts. As such, it is well within the scope of the issues presented by the SEC's complaint and the advice of counsel defense.

> ***Ruling on Documents 106 and 106.1: Neither are protected; protections waived by the advice of counsel defense.***

**Document 107:**

Document 107 is an email from Keeley Hennington to Chuck Lubar, cc: Boucher, in which Keeley asks for legal advice on behalf of the Wylys. The advice is about a negotiating position; the email does not provide any information about the creation or operation of a foreign trust. Accordingly the email is privileged and the protection is not waived.

**Ruling on Document 107: Protected; protections not waived by advice of counsel defense.**

**Documents 108 and 108.1:**

Document 108 is an email from Boucher to Keeley Hennington, providing information for a consultation with the Wylys' lawyer. They are facilitating the attorney client relationship and the information is confidential. Attached to the email is an analysis of transactions (#108.1) involving a number of foreign trusts, again to assist the legal representation. The attachment provides information about how the trusts were used and so is within the advice of counsel waiver found by Judge Scheindlin. The email provides information on how these transactions were structured and so is within the advice of counsel waiver as well.

**Ruling on Documents 108 and 108.1: Neither are protected; protections waived by the advice of counsel defense.**

**Document 109:**

This is a memo from Boucher regarding the offshore companies and maintaining brokerage accounts.

**The Wylys have agreed to produce this document.**

**Documents 110, 110.1 and 110.2:**

The first two logged items are transmitting memos of an attachment of draft questions prepared by Charles Pulman. These questions concern how foreign trusts were created, used, and operated. The questions provide information about the state of the Wylys knowledge of the structure and operation of the trusts, and the transmission indicates that information about the operation of the trusts has been exchanged by lawyer and client. Thus, while all the logged items were privileged when sent, those protections have been waived by the advice of counsel defense.

**Ruling on Documents 110 through 110.2: Not protected; protections waived by the advice of counsel defense.**

34

***Document 111:***

This is an email from Keeley Hennington to Chuck Lubar. It has exactly the same text as Document 104, but it is sent a day later and to a different lawyer. Nonetheless, the analysis of Document 104 above is completely applicable here.

> ***Ruling on Document 111: Protected; protections not waived by the advice of counsel defense.***

***Document 112:***

This is an email from Boucher to Keeley Hennington and lawyers providing a minor factual correction to a draft IDR response. These are purely factual corrections that do not involve legal advice. So even if these draft IDR responses were not within the advice of counsel waiver — which they are —  this particular communication would not be protected in the first place.

> ***Ruling on Document 112: Not protected by the privilege; advice of counsel defense would operate as a waiver anyway.***

***Document 113:***

This is an email from Boucher that schedules a meeting. As discussed in previous opinions of the Special Master, an email that does nothing but schedule a meeting imparts no confidential information and is not privileged.

> ***Ruling on Document 113: Not protected by the privilege.***

***Documents 114 and 114.1:***

This is two emails logged separately, but the response is integrated with the requesting email in a single document. The emails concern information necessary to respond to an IDR. All the information pertains to foreign trusts. For reasons discussed in the analysis of responses to IDRs above, these emails are within the scope of the advice of counsel waiver. (It should be noted, though, that if not for the waiver, these emails would be protected as they involve confidential communications between a lawyer and a necessary agent; and the emails are not subject to the rule on drafts because these documents are not the draft responses, but rather an internal check for information).

> ***Ruling on Documents 114 and 114.1: Neither are protected; protections waived by the advice of counsel defense.***

### Documents 115 and 115.1

Document 115 is a transmitting email from Kniffen to Keeley Hennington, Boucher and lawyers. The transmission (#115.1) is an IDR response calendar, which shows what has been done in the process and what still needs to be done. The response calendar is subject to the same analysis as Document 8, *supra*: it is work product, and nothing in it provides any information that would bear on the Wylys state of mind about or treatment of the foreign trusts. Therefore it is not within the advice of counsel waiver. Moreover, unlike the IDR draft responses, it is not subject to the draft rule as it is not intended for public disclosure. As to the email, it is protected as it discusses, at least briefly, the subject matter of the transmission.

> **Ruling on Documents 115 and 115.1: Protected; protections not waived by advice of counsel defense.**

### Document 116:

Document 116 is a memo prepared by Stacy Wittrup, who served as Highland Stargate's tax manager. She is acting as a necessary agent — facilitating attorney-client communications on tax matters. The memo sets forth factual information to assist the lawyers in preparing IDR responses. The communication is unquestionably privileged. This memo is *related* to the IDR responses but because it is basically about the process of responding rather than the response itself, it says nothing about the creation or operation of any foreign trust.

> **Ruling on Document 116: Protected; protections not waived by the advice of counsel defense.**

### Document 117:

This is an email from Boucher to Kniffen, cc: to Pulman and Keeley Hennington. Like Document 116, this email is *related* to the IDR responses but because it is basically about the process of responding rather than the response itself, it says nothing about the creation or operation of any foreign trust. And it is privileged because the necessary agents are acting to assist the lawyer and the communications are intended to be confidential — it is not the draft response itself.

> **Ruling on Document 117: Protected by the privilege; not within the scope of the advice of counsel waiver.**

### Document 118:

This is an analysis by Keeley Hennington that summarizes IDR transactions.  Like Documents 116 and 117, it is a compendium of factual information designed to assist the lawyers

in preparing the IDR responses. And like Documents 116 and 117, it is about the process of responding rather than the response itself.

>  ***Ruling on Document 118: Protected by the privilege; not within the scope of the advice of counsel waiver.***

***Document 119:***

This is an email from Keeley Hennington to lawyers, providing confidential information about outstanding matters for completing the IDR responses. It is a confidential communication by a necesssary agent, assisting the lawyers in preparing the responses. And for the reasons stated in the discussions of Documents 116-118, the email is not within the advice of counsel waiver. Moreover, none of the information in the email even concerns a foreign trust matter.

>  ***Ruling on Document 119: Protected by the privilege; not within the scope of the advice of counsel waiver.***

***Documents 120. 120.1 and 120.2:***

This is an email string with attached IDR draft responses. The draft responses involve transactions with foreign trusts. Accordingly, while the emails and IDR responses do constitute privileged information (though the draft responses are subject to the rule on drafts), all these documents are within the advice of counsel waiver.

>  ***Ruling on Documents 120 through 120.2: None are protected; protections waived by the advice of counsel defense.***

***Documents 121 and 121.1:***

These are two emails between Kniffen and Keeley Hennington. These communications are not privileged. They discuss issues in the nature of typographical errors. None of the communications involve legal advice or implementing legal advice.

>  ***Ruling on Documents 121 and 121.1: Not protected by the privilege.***

***Documents 122 and 122.1:***

This is an email from Kniffen (#122) attaching draft IDR responses involving transactions with foreign trusts (#122.1). For reasons discussed above, the IDR responses are within the advice of counsel waiver. The email itself is not privileged as it contains no confidential information; but

even if it were privileged the protection would be waived because the email would indicate an exchange of information between client and lawyer on the operation of the foreign trusts, and so is within the advice of counsel waiver. .

> *Ruling on Documents 122 and 122.1: Not protected; any protection is waived by the advice of counsel defense.*

**Log number 123 is blank.**

**Document 124:**

This is an email from Keeley Hennington to lawyers on foreign trust transactions.

> *The Wylys have agreed to produce this document.*

**Document 125:**

This is an email from Keeley Hennington to Rena Alexander, Highland Stargate's tax director. It is about a legal matter, it reflects advice of counsel in a discussion between two necessary agents, and it is solely about domestic matters.  Accordingly it is privileged and not within the advice of counsel waiver.

> *Ruling on Document 125: Protected, and protections not waived by the advice of counsel defense.*

**Document 126:**

This is an email from Keeley Hennington to a lawyer for the Wylys. It seeks legal assistance on behalf of the Wylys. And it involves a domestic matter with no foreign trust implications.

> *Ruling on Document 126: Protected, and protections not waived by the advice of counsel defense.*

**Documents 127 and 127.1:**

This is an email from Boucher to Keeley Hennington, with an extensive attachment (#127.1). This information is prepared to assist counsel in evaluating tax positions of Sam Wyly; Hennington and Boucher are acting as necessary representatives in assisting counsel. While both the email and the attachments are thus privileged, the financial information compiled does concern the creation

and operation of foreign trusts. Accordingly the email and attachment are both within the advice of counsel waiver.

> ***Ruling on Documents 127 and 127.1: Neither are protected; protections waived by the advice of counsel defense.***

### Document 128:

This is an email from Keeley Hennington to Michelle Boucher, processing information from counsel for the client. It is within the privilege, but the subject matter of the conversation is about the transactions that occurred in setting up a foreign trust. As such, the email is well within the advice of counsel waiver.

> ***Ruling on Document 128: Not protected; protections waived by the advice of counsel defense.***

### Document 129:

This is an email from Keeley Hennington to Rodney Owens, asking about the legality of a proposed transaction involving a foreign trust. The communication is privileged, but the subject matter is about the Wylys use of the foreign trusts — involving the issues raised by the SEC's complaint and the advice of counsel defense. While the proposal also involves a domestic trust, the foreign trust issues place this email within the scope of the advice of counsel waiver.

> ***Ruling on Document 129: Not protected: protections waived by the advice of counsel defense.***

### Document 130:

Document 130 is an email from Keeley Hennington to Evan Wyly, discussing possible transactions. Keeley is referring advice received from counsel and so is clearly a necessary agent. The communication is privileged. And it is not within the advice of counsel waiver because the email on its face does not provide any information or raise any question about the creation or operation of a foreign trust.

> ***Ruling on Document 130: Protected by the privilege; privilege not waived by advice of counsel defense.***

### Documents 131 and 131.1:

Document 131 is an email from Boucher to Charles Pulman, attaching a report (#131.1) on private annuity payments. The report was prepared to assist lawyers in providing advice on tax treatment of private annuities. The report is privileged, coming from a necessary agent on a confidential legal matter. The email is privileged as well, because it provides at least some description of the information being referred. The advice of counsel waiver does not apply to this email because it is dated January 2005. Judge Scheindlin's order provides specifically that the Wylys have not waived privilege "as to any legal advice received after the commencement of the SEC's investigation in 2004." Order at 3.

> **Ruling on Documents 131 and 131.1: Both are protected; not covered by advice of counsel waiver.**

### Documents 132 and 132.1:

These are two emails in a chain involving Keeley Hennington, Boucher and Charles Pulman. They refer to legal consultations between the lawyer and necessary agents. The emails are cryptic but they do involve transactions running through the foreign trusts, and reporting requirements, so they fall within the advice of counsel waiver.

> **Ruling on Documents 132 and 132.1: Not protected; protections waived by the advice of counsel defense.**

### Document 133:

This is an email from Pulman to Keeley Hennington, asking for factual information for the IDR responses.

> **The Wylys have agreed to produce this Document.**

### Document 134:

This is an email from Charles Pulman asking for comments on the IDR response drafts.

> **The Wylys have agreed to produce this Document.**

### Document 135:

This is another one of Kniffen's "already done" and "still to do" lists regarding the IDR responses. For the reasons set forth in the discussion of Document 8, this Document is protected work product and not within the advice of counsel waiver.

*Ruling on Document 135: Protected as work product.*

**Documents 136 and 136.1:**

These are emails between Keeley Hennington, acting as a necessary agent, and Charles Pullman regarding domestic trust transactions. There is nothing here that relates to the creation or operation of any foreign trust. As such the communications are privileged and the privilege is not waived by the advice of counsel defense.

*Ruling on Documents 136 and 136.1: Both are protected; protections not waived by the advice of counsel defense.*

**Documents 137 through 137.3:**

These are draft IDR responses and communications between Keeley Hennington and Kniffen about preparing them. These are unquestionably tied to the creation and operation of foreign trusts within the meaning of Judge Scheindlin's order. The emails, while clearly privileged, show the kind of thought process that could indicate state of mind about the use of foreign trusts.

*Ruling on Documents 137 through 137.3: None are protected; protections are waived by the advice of counsel defense.*

**Document 138:**

This is an email from Michelle Boucher, commenting upon the draft IDR responses logged under #137. Like the comments in Keeley Hennington's email in 137, these comments show the kind of thought process that could indicate state of mind regarding the use of foreign trusts. Accordingly the email is within the advice of counsel waiver.

*Ruling on Document 138: Not protected; protections waived by the advice of counsel defense.*

**Document 139:**

This is an email from Keeeley Hennington to Kniffen and Pulman, attaching a chart that is pertinent to the IDR responses. The chart is logged at 140. The email itself contains no confidential communication for purposes of legal advice, and so is not privileged.

*Ruling on Document 139: Not protected by the privilege.*

41

**Documents 140 and 140.1:**

This is another email regarding IDR responses from Keeley Hennington to Kniffen. It is a list of documents provided or to be provided to the IRS in the IDR process. This information is not privileged because the IRS of course was provided the documents. Moreover, the documents produced in the audit process can, as Judge Scheindlin noted, provide an indication of state of mind pertinent to this case. So even if the list were protected work product, it would be within the advice of counsel waiver. The email itself contains no confidential communications for purposes of legal advice and so is not privileged.

> **Ruling on Documents 140 and 140.1: Not protected; protections if any waived by the advice of counsel defense.**

**Document 141:**

This is an email from Hennington to Boucher about IDR responses. It is privileged because it reflects legal advice and is between two necessary agents who are facilitating the advice of counsel. However, it falls within the advice of counsel waiver because it provides information about the thought process used to respond to IRS inquiries about the operation of the foreign trusts.

> **Ruling on Document 141: Not protected; protections waived by the advice of counsel defense.**

**Documents 142, 142.1 and 142.2:**

These are emails referring IDR responses and #142.2 is the responses. These responses all concern transactions in which foreign trusts were materially involved. The emails themselves, to the extent they contain privileged communications at all, are within the advice of counsel waiver as they indicate a thought process about information pertinent to the foreign trusts.

> **Ruling on Document 142 through 142.2: None are protected; any protections are waived by the advice of counsel defense.**

**Document 143:**

This is an email from Kniffen to Keeley Hennington about the IDRs. Like Kniffen's scheduling lists discussed above, this email is not about the substance of the IDR responses, nor is it about the creation or operation of any foreign trust. Rather it is a confidential communication to a necessary agent about process. As such it is privileged and not within the advice of counsel waiver.

*Ruling on Document 143: Protected; not within the advice of counsel waiver.*

**Documents 144 and 144.1:**

These are emails between Kniffen and Hennington regarding the IDR responses. Unlike Document 143, these emails are not about the process of responding. Rather they are about what the responses should be. And the issues addressed concern the operation of the foreign trusts. Therefore, while privileged, these emails fall within the advice of counsel waiver.

*Ruling on Documents 144 and 144.1: Not protected; protections waived by the advice of counsel defense.*

**Document 145:**

This is an email from Keeley Hennington to Kniffen about tax issues pertinent to the IDR responses. But this is not within the advice of counsel waiver as the information is wholly about domestic transactions. And it is not within the drafts rule because it is not part of the draft itself. Rather it is a confidential communication from a necessary agent assisting the lawyer in providing legal advice and services to the client.

*Ruling on Document 145: Protected, and not within the advice of counsel waiver.*

**Documents 146, 146.1 and 146.2:**

#146 is an email from Keeley Hennington to Charles Pulman to schedule a discussion about IDR responses. ## 146.1 and 146.2 are the draft IDR responses, with commentary provided by Hennington and Kniffen. All the IDRs provide information about transactions in which foreign trusts were materially involved. Accordingly, the draft responses, as well as the commentary from Hennington and Kniffen, are within the advice of counsel waiver. And the email scheduling a discussion about the responses is similarly within the advice of counsel waiver, as it shows that information about the operation of foreign trusts was being exchanged between lawyers and client.

*Ruling on Documents 146 through 146.2: None are protected; any protections waived by the advice of counsel waiver.*

**Documents 147 and 147.1:**

This is an email with an attachment sent from Keeley Hennington to Charles Pulman, cc: Boucher. The email and the attachment contain confidential information from a necessary agent, providing the lawyer with background information for preparing IDR responses. However, both the

email and the attachment provide information about the creation and operation of a foreign trust, specifically how transactions were routed through the trust. Accordingly these documents are within the advice of counsel waiver.

> ***Ruling on Documents 147 and 147.1: Neither are protected; protections waived by the advice of counsel defense.***

***Document 148:***

This is an email from Keeley Hennington to a lawyer about reporting information regarding foreign companies. It is privileged because Hennington is acting as a necessary agent, reporting communications from the client. But it is within the advice of counsel waiver as it concerns an information exchange between client and counsel concerning the offshore system.

> ***Ruling on Document 148: Not protected; protections waived by the advice of counsel defense.***

***Documents 149 and 149.1:***

This is an email with an attachment from Keeley Hennington to a lawyer at Bickel and Brewer, dated 4/6/2004, in which she sends information regarding the Computer Associates litigation. Judge Scheindlin in her order stated that the advice of counsel waiver included "the Wylys' assertion of privilege over communications with attorneys regarding a potential assertion of ownership of shares held in offshore trusts during proxy contests in 2001, 2002 and 2003 involving Computer Associates." But this email and attachment were not prepared attendant to those proxy contexts. Rather they were prepared and sent to the lawyer in response to litigation in 2004. And they were sent by a necessary agent, facilitating the communications between client and counsel. As such, these documents are privileged and not subject to advice of counsel waiver.

> ***Ruling on Documents 149 and 149.1: Protected; not within the scope of the advice of counsel waiver.***

***Documents 150, 150.1 and 150.2:***

This is an email string involving Keeley Hennington, lawyers, Boucher and Lesley Attenburger. At oral argument, SEC counsel conceded that if Keeley Hennington was a necessary agent then Attenburger, as her assistant, was as well. As often held above, Hennington was a necessary agent as the family CFO. The documents clearly indicate that she was essential for facilitating communications between counsel and the Wylys. The emails logged at #150 are on a confidential legal matter and as all involved are either lawyers or necessary agents, they are privileged. However, the emails are within the advice of counsel waiver, as they concern the

documentation of a transaction with a foreign entity. Documentation of a transaction with a foreign trust is the type of question that is pertinent to the issues raised by the SEC complaint and the advice of counsel defense.

> ***Documents 150, 150.1 and 150.2: None are protected; protections waived by the advice of counsel defense.***

### Documents 151 and 151.1:

This is an email with an attachment that is a published article, sent by Keeley Hennington to the Wylys and Boucher. The email relates the advice of counsel on a tax matter, with the article being background. The Wylys do not of course argue that the published article is privileged, but rather that sending the article to the Wylys (by a necessary agent implementing the advice of counsel) is itself a confidential communication. The Special Master agrees that the email sending the attachment is privileged. *See Barton v. Zimmer Inc.*, 2008 U.S. Dist. LEXIS 1296 (N.D. Ind. Jan. 7, 2008) ("the very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected."). And the advice of counsel waiver is inapplicable as the matter addressed involves the status of a matter, not the creation or operation of a foreign trust.

> ***Ruling on Documents 151 and 151.1: Both are protected.***

### Document 152:

This is an email from Keeley Hennington to Boucher and Pulman, relaying a request from the client to look into an issue about how U.S. law would apply to a foreigner. It is privileged because it is a communication from a necessary agent asking the lawyer to look into a legal matter on a confidential subject. But the email clearly raises issues of structuring an offshore solution to avoid U.S. regulations that bring it within the advice of counsel waiver.

> ***Ruling on Document 152: Not protected; protections waived by the advice of counsel defense.***

### Document 153:

Document 153 is a memorandum to the file from a lawyer — clearly a confidential communication on a legal subject. While it is directed toward tax liability, it fundamentally deals with disclosure requirements for and treatment of transactions proceeding through foreign trusts. As such, it is well within the advice of counsel waiver, as determined by Judge Scheindlin.

> ***Ruling on Document 153: Not protected; protections waived by the advice of counsel***

*defense.*

**Document 154:**

This is a memo, dated 1/29/1996, from Mike French to the Wylys.

**The Wylys have agreed to produce this document.**

**Documents 155 and 155.1:**

These are emails between Boucher and Keeley Hennington. They relate communications from counsel and so are privileged. But they deal with issues of foreign trust administration and so are within the advice of counsel waiver.

**Ruling on Documents 155 and 155.1: Not protected; protections waived by the advice of counsel defense.**

**Document 156:**

This is an email from Keeley Hennington to Boucher, dated 2/17/ 2004,  relating advice of counsel from one necessary agent to another regarding the Computer Associates litigation. As such the email was privileged when sent. And for the reasons stated in the discussion of Document 149, this document is not within the scope of the advice of counsel waiver.

**Ruling on Document 156: Protected by the privilege, and not within the scope of the advice of counsel waiver.**

**Documents 157 and 157.1:**

This is an email and attachment from Keeley to Boucher. The email (#157) is not protected because it contains no confidential information. The attachment (#157.1) is an outline for a scheduled meeting with the Wylys. The outline discusses an analysis of trust structures, clearly pertinent to the creation and operation of foreign trusts; while the projected discussion is about tax liability, the outline is well within the advice of counsel waiver as determined by Judge Scheindlin.

**Ruling on Documents 157 and 157.1: Not protected; any protections waived by the advice of counsel defense.**

**Document 158:**

This is a short email from Sharyl Robertson to Boucher on a trust issue.

**The Wylys have agreed to produce this document.**

**Document 159:**

This is an email from Brad Korell at Meadows Owens to Sharyl Robertson about a Wrangler Trust issue. As discussed above, Robertson could be — and was in this case — acting as a necessary agent even though she was no longer employed in the family office. The email concerns confidential communications and is privileged. And the privilege is not waived because the issues solely involve a domestic trust.

*Ruling on Document 159: Protected by the privilege, and not within the advice of counsel waiver.*

**Document 160:**

This is an email from Boucher to Keeley Hennington. It involves a project by the two necessary agents in preparing information for the tax lawyer. There is no explicit indication in the email that it involves an issue of creation or operation of a foreign trust. However, the chart to which it refers, and which is logged at 161.1, is all about transactions using foreign trusts. Therefore while the email is privileged it is within the advice of counsel waiver.

*Ruling on Document 160: Not protected; protections waived by the advice of counsel defense.*

**Documents 161 and 161.1:**

This is an email from Keeley Hennington to Boucher responding to the email logged at 160. For the reasons stated under 160, supra, the email and the attached chart, while both privileged, are within the advice of counsel waiver. They deal centrally with transactions running through the offshore system.

*Ruling on Documents 161 and 161.1: Neither are protected; protections waived by the advice of counsel defense.*

**Document 162:**

This is an email from Keeley Hennington to Boucher about the chart that is logged at 161.1.

It is not privileged because it does not reflect or implement advice of counsel and no lawyer is included on the transmission. And in any case, for the reasons stated in 161 above, the email is within the advice of counsel defense.

**_Ruling on Document 162: Not protected by the privilege; alternatively, any protection is waived by the advice of counsel defense_.**

### Documents 163 and 163.1:

These are two emails between Hennington and Boucher about preparing the chart logged at 161.1. For the reasons stated in 160 and 161, these emails, while privileged, are within the advice of counsel waiver.

**_Ruling on Documents 163 and 163.1: Not protected; protections waived by the advice of counsel defense._**

### Documents 164, 164.1 and 164.2:

This is an email string and an attached draft promissory note.

**_The Wylys have agreed to produce these documents._**

### Documents 165 through 165.5:

This is a long email string about structuring a loan transaction.

**_The Wylys have agreed to produce these documents._**

### Document 166:

This is an email from Keeley Hennington to Rodney Owens and Boucher about an IRS inquiry. It is clearly privileged because necessary agents are seeking advice of counsel on behalf of the client. But the tax matter that is the subject of the inquiry involves transactions with foreign trusts. Accordingly this email is covered by the advice of counsel waiver.

**_Ruling on Document 166: Not protected; protections waived by the advice of counsel defense._**

48

***Document 167:***

This is an fyi email from Hennington to Boucher, relating to the sale of property

***The Wylys have agreed to produce this document.***

***Document 168:***

This is an email from Keeley Hennington to a lawyer at Jones Day, concerning management agreements.

***The Wylys have agreed to produce this document.***

***Document 169:***

This is an email from Keeley Hennington to a lawyer at Baker Botts, in anticipation of a presentation on estate and tax planning issues. The email does not mention any issue regarding a foreign trust; rather it is about the basics of estate and tax planning. Hennington is clearly facilitating communications between counsel and the Wylys. Accordingly, the email is privileged and not within the advice of counsel waiver.

***Document 169: Protected by the privilege, not waived by advice of counsel defense.***

***Document 170:***

This is an email from Boucher to Charles Pulman and Keeley Hennington. It relates past information about transactions that proceeded through the offshore system. While privileged, it is covered by the advice of counsel waiver.

***Ruling on Document 170: Not protected; protections waived by the advice of counsel defense.***

***Document 171:***

This is an email from Keeley Hennington to Chuck Lubar of Morgan Lewis. It reveals a conversation between Keeley, acting as a necessary agent, and another lawyer. It does not involve

any direct reference to, or shed any light on, anything concerning an offshore entity.

**Ruling on Document 171: *Protected by the privilege and not waived by advice of counsel.***

**Document 172:**

This is an email from Keeley Hennington to Boucher, about a meeting requested by counsel on a specific subject matter. It is a conversation among necessary agents in an attempt to implement advice of counsel. It does not on its face provide any information about creation or operation of a foreign trust.

**Ruling on Document 172: *Protected by the privilege and not waived by advice of counsel defense.***

**Document 173:**

This is an email from Kniffen to Boucher, about information for preparing an IDR response. This particular email does not involve legal advice. It is more in the nature of information necessary to fill out a form, something that any non-lawyer could do. Accordingly the email is not privileged.

**Ruling on Document 173: *Not protected by the privilege.***

**Document 174:**

This is an email from Keeley Hennington to Brad Korell, a lawyer at Meadows Owens, as part of preparing information for a transaction. Hennington is operating as a necessary agent. And the transaction does not involve the use of foreign trusts.

**Ruling on Document 174: *Protected by the privilege and not waived by the advice of counsel defense.***

**Documents 175 and 175.1:**

This is an email with an attached report from Keeley Hennington to a lawyer at Jones Day, related to the Computer Associates proxy fight.

**The Wylys have agreed to produce these documents.**

**Document 176:**

This is an fyi email from Keeley Hennington to Boucher regarding the Computer Associates proxy fight.

**The Wylys have agreed to produce this document.**


**Documents 177, 177.1 and 177.2:**

This is an email string about an IRS inquiry into the operation of the foreign entities. As such, while each of the emails are privileged, all have lost that protection due to the advice of counsel waiver.

**Ruling on Documents 177 through 177.2: None are protected; protections waived by the advice of counsel defense.**


**Document 178:**

This is an email from Keeley Hennington to Rodney Owens. It deals with the same matter as the emails logged under #177. But this email does not provide any information about the creation and operation of any foreign trust. Rather it deals with an approach to the IRS inquiry that is not at all dependent on any of the foreign trust issues. The email is privileged because Keeley Hennington is furthering the interest of the client in seeking legal advice.

**Ruling on Document 178: Protected by the privilege; not waived by the advice of counsel defense.**


**Log number 179 is blank.**


**Document 180:**

This is an email from a lawyer at Kolodny & Anteau, who is apparently dealing with a divorce issue, asking for discovery of information from Keeley Hennington. The information requested concerns foreign trusts. Therefore, even assuming that somehow this is a communication between an attorney and a necessary agent for a client — as the log is barebones and does not say who is getting divorced — the tie between ownership interests and use of the offshore entities is sufficient to bring this email within the advice of counsel waiver.

**Ruling on Document 180: Not protected; protection if any is waived by the advice of counsel defense.**

**Document 181:**

This is an email from Chuck Lubar to Keeley Hennington, Boucher and Kail.  It is clearly privileged — Hennington and Boucher are agents necessary to facilitate the lawyer's communication with the Wylys, and it is a confidential legal communication. It is not within the advice of counsel waiver as it is about a process question and not about any substantive issue; there is nothing in it pertaining to the creation or operation of a foreign trust.

> ***Ruling on Document 181: Protected, and not within the advice of counsel waiver.***

**Documents 182 and 182.1:**

This is an email exchange between Keeley Hennington and a tax lawyer. It is really a courtesy email and a reply. There is no exchange of any confidential communication on a legal matter. Nobody reading the emails would have any idea about the nature of the subject matter or problem  that gave rise to these emails. Hennington is not seeking, or implementing, legal advice on behalf of the Wylys. Accordingly, the emails are not protected by the privilege.

> ***Ruling on Documents 182 and 182.1: Neither are protected by the privilege.***

**Documents 183, 183.1 and 183.2:**

This is a string of emails regarding the Computer Associates litigation, between Keeley Hennington and Michael French. The emails are dated February 2004 and for reasons stated previously, communications about the Computer Associates litigation are distinguishable from communications regarding the proxy fight that Judge Scheindlin held were within the advice of counsel waiver. However, these particular communications are in fact about substantial transactions run through the offshore system; discussions of this kind are relevant to the client's state of mind that is raised by the advice of counsel defense. In addition, there does not appear to be an attorney-client communication, or implementation of advice of counsel, that is necessary to trigger the privilege in the first place. The Wylys do not claim that as of 2004, French was operating as their lawyer. At that time he was the chairman and CEO of Scottish Re. Even if he could be considered a necessary agent of the Wylys — of which there is no showing --- there is no indication that this agent-to-agent communication was necessarily to facilitate attorney-client communications or advice of counsel. Accordingly, the emails are not privileged and even if they were, any privilege is waived by the advice of counsel defense.

> ***Ruling on Documents 183 through 183.2: None are protected by the privilege, and any protections are waived by the advice of counsel defense at any rate.***

***Document 184:***

This is an email from Keeley Hennington to Boucher, forwarding the email chain reviewed under 183. A statement in the email provides further proof that French was not operating as an attorney or necessary agent. Because the email chain itself did not reflect attorney communications or advice of counsel, this short agent-to-agent email is also deficient in establishing an underlying privilege.

***Ruling on Document 184: Not protected by the privilege.***

***Document 185:***

***This is a duplicate of document 156 — Protected by the privilege, and not within the scope of the advice of counsel waiver.***

***Document 186:***

This is a one-line email from Keeley Hennington to Boucher and Pulman regarding IDR responses. The communication tells nothing of a confidential nature.

***Ruling on Document 186: Not protected by the privilege.***

***Document 187:***

Another IDR schedule list prepared by Kniffen. For reasons stated previously, this is protected work product and is not within the advice of counsel waiver.

***Ruling on Document 187: Protected as work product; not waived by the advice of counsel defense.***

***Documents 188 and 188.1:***

This is an email string between a Jones Day lawyer and Evan Wyly regarding a settlement and release.

***The Wylys have agreed to produce these documents.***

***Document 189:***

This is a draft IDR response. As it concerns transactions with a foreign trust, it is within the advice of counsel waiver as determined by Judge Scheindlin.

**Ruling on Document 189: Not protected; protections waived by the advice of counsel defense.**

**Documents 190 through 190.3:**

This is a series of emails between Keeley Hennington and lawyers, regarding estate planning and domestic transactions. There is nothing in these emails that discusses or refers to the creation or operation of a foreign trust. The communications are confidential, on a legal matter, and Hennington is facilitating attorney-client communications as a necessary agent.

**Ruling on Documents 190 through 190.3: All are protected by the privilege; all are outside the scope of the advice of counsel waiver.**

**Document 191:**

This is a July 2000 email from Keeley Hennington to John McCafferty, a lawyer at Jones Day. Sharyl Robertson and Keith Hennington are cc:d — presumably because the transaction discussed touched upon a Maverick interest. Their inclusion probably does not destroy the privilege as they could be thought necessary agents to implement any legal advice. But the transaction discussed, while largely domestic, does raise issues of use of a foreign trust. Therefore the communication is within the advice of counsel waiver as determined by Judge Scheindlin.

**Ruling on Document 191: Not protected; protections waived by advice of counsel defense.**

**Document 192:**

This is another email from Keeley Hennington to John McCafferty. It is about the proposed transaction discussed in the email logged at 191. But this email focuses on seeking legal advice on a part of the transaction that is purely domestic — having nothing to do with the use of a foreign trust. The email is unquestionably privileged as it provides confidential information to assist the lawyer in representing the Wylys.

**Ruling on Document 192: Protected by the privilege; protections not waived by the advice of counsel defense.**

**Document 193:**

This is an email from Keeley Hennington to Ken Kail, asking for information about an unspecified meeting that lawyers attended. Nothing in the email indicates the subject matter of the meeting or relays any confidential communication. Accordingly the privilege is not applicable.

**Ruling on Document 193: Not protected by the privilege.**

*Document 194:*

This is a memo from Keith Hennington dated 1997, while he was still an employee of Highland Stargate. Sharyl Robertson was cc:d and she was an employee at that time as well. The memo facilitates communications of confidential tax advice about a particular type of transaction — it provides no information about foreign trust transactions.

**Ruling on Document 194: Protected by the privilege; protections not waived by the advice of counsel defense.**

*Document 195:*

This is a memo from Keith Hennington dated 1997, providing information to Richard Lipton, a tax lawyer, for purposes of obtaining legal advice on the matter raised in the memorandum logged at 194. Hennington is operating as an employee acting as a necessary agent for obtaining legal advice for the Wylys. The communications are confidential, and the memo does not provide information about the use of any foreign trust.

**Ruling on Document 195: Protected by the privilege; protections not waived by the advice of counsel defense.**

*Document 196:*

This is a legal memorandum sent to Lipton from a lower-level lawyer in Lipton's firm, on the proposed transaction that is the subject of the memos logged at 195 and 196. It is unquestionably a confidential communication for purposes of effectuating legal advice. And as discussed above, it is not subject to the advice of counsel waiver as no foreign trust is involved.

**Ruling on Document 196: Protected by the privilege; protections not waived by the advice of counsel defense.**

*Document 197:*

These are handwritten notes, apparently written by Keith Hennington, providing comments

on the transaction that is the topic of Documents 194-196. They are clearly intended to be confidential and they reflect legal advice. And, as discussed above, the transaction does not raise any question about the use of a foreign trust.

**Ruling on Document 197: Protected by the privilege; protections not waived by the advice of counsel defense.**

**Document 198:**

This is a letter from Charles Wyly to Mike French, dated 1990, a time at which Mike French was still at his law firm and was legal counsel for the Wylys. Charles seeks legal advice on a confidential matter and it has nothing to do with any foreign trust.

**Ruling on Document 198: Protected by the privilege; not subject to the advice of counsel waiver.**

**Document 199:**

This is a letter from Mike French to the Wylys concerning transactions involving the foreign trusts.

**The Wylys have agreed to produce this document.**

**Document 200:**

This is a draft of a securities filing prepared by Jackson Walker in 1989. The filing is a public document and under the drafts rule, the draft must be produced, subject to redacting any information that was deleted from the final under advice of counsel. The Wylys seek to take down this document as non-responsive, but the Special Master determines that the particular transaction, involving Sterling Software, is sufficiently related to the use of foreign trusts to bring the document within the scope of the advice of counsel waiver.

**Ruling on Document 200: Not protected; protections waived by the advice of counsel defense.**

**Document 201:**

This is a memo from Sharyl Robertson to the Wylys et al, on transactions involving Michaels.

*The Wylys have agreed to produce this document.*

**Document 202:**

These are meeting notes, unattributed to any author. The meeting participants are all attorneys, clients, or necessary agents. The notes reflect advice of counsel on various matters. The matters discussed, however, involve transactions with and/or funding by foreign trusts and therefore the notes are within the advice of counsel waiver.

> *Ruling on Document 202: Not protected; protections waived by the advice of counsel defense.*

**Document 203:**

This is another of Kniffen's scheduling/task lists for the IDR response process. For reasons discussed above, this is protected work product and not covered by the advice of counsel waiver.

> *Ruling on Document 203: Protected as work product; not within the scope of the advice of counsel waiver.*

**Document 204:**

This is another of Kniffen's scheduling/task lists, protected as work product for reasons discussed above.

> *Ruling on Document 204: Protected as work product; not within the scope of the advice of counsel waiver.*

**Document 205:**

Yet another Kniffen scheduling/task list, protected as work product for reasons discussed above.

> *Ruling on Document 205: Protected as work product; not within the scope of the advice of counsel waiver.*

**Documents 206 and 206.1:**

Document 206 is a fax cover sheet, dated 1/12/2004,  which provides no indication of what

is being faxed and so is not privileged. Document 206.1 is the faxed document. It is a list of fact questions, sent by Mike French to Keeley Hennington and Charles Pulman, apparently to assist them in the IDR response process. Even assuming that French can as of 2004 be considered a necessary agent for purposes of the privilege — and the Wylys have made no such showing —  these fact questions cover the creation and use of the foreign trusts and bear directly upon the issues in this case; accordingly the document is within the scope of the advice of counsel waiver.

> **Ruling on Documents 206 and 206.1: Neither are protected; any protections are waived by the advice of counsel defense.**

**Document 207:**

These are notes by Keeley Hennington, reflecting advice of counsel. They are the same type of document as the scheduling/task lists prepared by Kniffen. As such they are protected by the work product doctrine. The work product doctrine is not limited to work done by lawyers. *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) (memorandum prepared by auditor in preparation for an audit could be protected as work product). And because the notes are essentially a schedule and a task list they provide no information about the creation or operation of a foreign trust.

> **Ruling on Document 207: Protected as work product; not subject to the advice of counsel waiver.**

**Document 208:**

Another Kniffen schedule/task list with the same result.

> **Ruling on Document 208: Protected as work product; not subject to the advice of counsel waiver.**

**Document 209:**

This is a memo from Kniffen to Keeley Hennington, Boucher, and lawyers, posing various questions about transactions that are the subject of IDR requests. Included on the memo are Hennington's handwritten notes. The memo seeks extensive information pertinent to transactions with foreign trusts, and the handwritten notes involve foreign trusts as well. The communications are confidential, for purposes of legal advice, and Hennington is a necessary agent, and memo is not subject to the draft rule because these are not draft responses but rather questions about underlying information. But because the memo is an inquiry into transactions involving foreign trusts, both the memo and the handwritten notes are within the advice of counsel waiver.

58

> ***Ruling on Document 209: Not protected; protections waived by the advice of counsel defense.***

**Document 210:**

These are handwritten notes by Keeley Hennington, of the same nature as the notes logged at 207, so subject to the same ruling.

> ***Ruling on Document 210: Protected as work product; not subject to the advice of counsel waiver.***

**Document 211:**

This is another set of handwritten notes by Keeley Hennington, apparently made during the process of responding to IDR's. Unlike the two previous sets of notes considered, these notes contain substantial factual information about foreign trust transactions, as well as positions taken in the reporting process that may have bearing on the issues presented by the advice of counsel defense. Accordingly, while these notes were protected when prepared, that protection was waived by the advice of counsel defense.

> ***Ruling on Document 211: Not protected; protections waived by advice of counsel defense.***

**Document 212:**

> ***This is a duplicate of Document 135: Protected as work product.***

**Document 213:**

Document 213 is a letter from a lawyer to Charles Pulman, providing information from a non-lawyer who is acting as an agent necessary to the representation. The lawyer is consulted on behalf of the Wylys to provide confidential legal advice. The legal advice is not pertinent to the creation or operation of a foreign trust.

> ***Ruling on Document 213: Protected by the privilege.***

**Document 214:**

This is a short memo from Charles Pulman to other lawyers at the Meadows Owens firm, about what should be accomplished at a forthcoming meeting with Keeley Hennington and Boucher. While the communication is confidential, the topics discussed include questions about the creation and operation of foreign trusts, so the privilege is waived by the advice of counsel defense.

**_Ruling on Document 214: Not protected; protections waived by the advice of counsel defense._**

**Document 215:**

This is a 1995 memo from Mike Smith to Sam Wyly outlining possible transactions.

**_The Wylys have agreed to produce this document._**

**Document 216:**

This is a 2004 email from Keeley Hennington to Mike French. It contains a spreadsheet attachment which is logged at 217. At this time French is no longer working in the Wyly family business. As stated above in the discussion of Document 183, the Wylys have made no showing that at the time of this email, French was operating as an agent necessary to facilitate the communications between the Wylys and their counsel, or was necessary to assist the lawyer or client in implementing legal advice. Accordingly, this email is not privileged.

**_Ruling on Document 216: Not protected by the privilege._**

**Document 217:**

This is one of the spreadsheet attachments that were sent to Mike Smith in the document logged at 216. Because it was sent to Smith, whatever privilege might have existed is waived.

**_Ruling on Document 217: Not protected by the privilege; protections waived by disclosure to third party._**

**Document 218:**

This is an additional email from Keeley Hennington to Mike French that is added to the email string logged at 183. For the reasons given there, the email is unprotected by the privilege and even if that were not the case it would be within the advice of counsel waiver.

**_Ruling on Document 218: Not protected by the privilege, and any protections are waived_**

*by the advice of counsel defense at any rate.*

**Document 219:**

> *This is a duplicate of Document 217: Not protected by the privilege; protections waived by disclosure to third party.*

**Document 220:**

This is another spreadsheet of transactions prepared by Keeley Hennington; the email logged at 216 indicates that it was sent to Mike French. For the reasons stated in 216, any protection this spreadsheet had was waived by sending it to French, as the Wylys have not met their burden of showing that French was operating as a necessary agent at this time.

> *Ruling on Document 220: Not protected by the privilege; protections waived by disclosure to third party.*

**Document 221:**

> *This is a duplicate of Document 80, which the Wylys have agreed to produce.*

**Documents 222, 222.1 and 222.2:**

> *This is a duplicate of the emails logged at 182: Not protected by the privilege.*

**Document 223:**

Document 223 is a 1995 memo from Keith Hennington to Sharyl Robertson and Mike French concerning transactions running through foreign trusts. It is privileged because at the time, Hennington, Robertson and French were all acting as necessary agents and the memo reveals and implements advice of counsel. It is about tax matters, but under Judge Scheindlin's ruling, the advice of counsel waiver extends to this memo because it deals with the use of foreign trusts to shield the Wylys from regulatory and reporting obligations.

> *Ruling on Document 223: Not protected; protections waived by the advice of counsel defense.*

*Document 224:*

This is a memorandum from Kniffen to Charles Pulman, providing research and analysis of tax treatment of stock transactions. It is unquestionably confidential and made for purposes of legal advice. But the privilege is waived by the advice of counsel defense, as the transactions involve use of offshore entities within the meaning of Judge Scheindlin's ruling.

> *Ruling on Document 224: Not protected; protections waived by the advice of counsel defense.*

*Document 225:*

This is an email from Rodney Owens to Sharyl Robertson concerning trust transactions.

> *The Wylys have agreed to produce this document.*

*Documents 226 and 226.1:*

This is an email exchange between Rodney Owens and Sharyl Robertson about creating a sub-trust.

> *The Wylys have agreed to produce these documents.*

*Document 227 through 227.7:*

These are draft opinion letters as attachments to an email from a tax lawyer to Keeley Hennington. The final opinion letters are intended to be public documents, so the draft rule applies to the draft opinion letters — the only information protected is that which was deleted from the final on advice of counsel. In any case, any privilege protecting the email and attachments has been waived by the advice of counsel defense. These opinion letters are direct legal advice to the client about whether certain transactions involving foreign trusts are reportable. As such they are clearly within the advice of counsel waiver as interpreted by Judge Scheindlin.

> *Ruling on Documents 227 through 277.7: None are protected; protections waived by the advice of counsel defense.*

*Documents 228 through 228.3:*

This is an email from Keeley Hennington to a lawyer retained to provide advice about private annuity transactions involving the use of foreign trusts. Attached are reports providing the lawyer

some background facts into the transactions. These reports and the email are privileged, but they concern matters directly involving the use of foreign trusts and consequent reporting requirements. Accordingly, the reports and the email are well within the advice of counsel waiver as determined by Judge Scheindlin.

>   ***Ruling on Documents 228 through 228.3: None are protected; protections waived by the advice of counsel defense.***

**Documents 229 through 229.7:**

This is another email from a tax lawyer to Keeley Hennington, attaching another batch of opinion letters on tax treatment and reportability of (different) transactions involving foreign trusts. As stated in the discussion under 227, all of the documents are within the advice of counsel waiver.

>   ***Ruling on Documents 229 through 229.7: None are protected; protections waived by the advice of counsel defense.***

**Documents 230 and 230.1:**

This is an email exchange involving Rodney Owens, on a trust matter.

>   ***The Wylys have agreed to produce these documents.***

**Document 231:**

This is an fyi email from Keeley Hennington to Boucher reporting on advice received from counsel. It was privileged when sent because it is between two necessary agents for the purpose of implementing the advice of counsel. But the advice involves treatment of foreign trusts and attributions of ownership of property. As such, it is within the advice of counsel defense as applied by Judge Scheindlin.

>   ***Ruling on Document 231: Not protected; protections waived by the advice of counsel defense.***

**Documents 232 and 232.1:**

This is an email exchange between Boucher and Rodney Owens regarding the operation of foreign trusts and reportability of transactions.

>   ***The Wylys have agreed to produce these documents.***

***Documents 233 through 233.4:***

This is an email exchange involving Owens, Hennington and Boucher, and an attached memo, concerning tax planning for foreign trusts.

***The Wylys have agreed to produce these documents.***

***Log number 234 is left blank.***

***Document 235:***

This is an email from Keeley Hennington to Boucher about offshore transactions.

***The Wylys have agreed to produce this document.***

***Document 236:***

This is an email from Keeley Hennington to Charles Pulman regarding inquiries concerning tax treatment of transactions involving foreign trusts. The email is privileged, but the matters discussed raise issues that are well within the advice of counsel waiver — treatment and reportability of transactions with the foreign trusts.

***Ruling on Document 236: Not protected; protections waived by the advice of counsel defense.***

***Documents 237 through 237.6:***

This is an email string among Owens, Keeley Hennington and Boucher, regarding transactions involving a foreign trust.

***The Wylys have agreed to produce these documents.***

***Document 238:***

This is an email from Keeley Hennington to Rodney Owens seeking advice on a private annuity surrender.

***The Wylys have agreed to produce this document.***

***Document 239:***

> ***This is a duplicate of Document 133, which the Wylys have agreed to produce.***

***Document 240:***

This is an email from Keeley Hennington to Lesley Attenburger, attaching IDR responses that are logged elsewhere. (At any rate the IDR responses involve transactions with foreign trusts and so are within the advice of counsel defense.) The communication is about the transmission of information pertinent to foreign trusts and so any protection that the email would have is waived by the advice of counsel defense.

> ***Ruling on Document 240: Not protected; protections waived by the advice of counsel defense.***

***Document 241:***

This is a 1999  fyi memo from Boucher to Sharyl Robertson on foreign trust matters.

> ***The Wylys will produce this document.***

***Document 242:***

What's logged is an email transmitting draft documents to establish a trust. The draft documents are logged elsewhere. (In any case, if anything involves creation or operation of a foreign trust, it is the document creating that trust.). The email, while sparse, does indicate advice of counsel; but it  is not protected  because it provides information to counsel involved in creating a foreign trust. As such it is within the advice of counsel waiver as interpreted by Judge Scheindlin.

> ***Ruling on Document 242: Not protected; protections waived by the advice of counsel defense.***

***Log number 243 is left blank.***

***Document 244:***

This is a memo from Keeley Hennington to Charles Wyly concerning a transaction involving a foreign trust.

*The Wylys have agreed to produce this document.*

**Log number 245 is left blank.**

**Document 246:**

This is an email from Robertson to Boucher involving insurance in foreign trusts.

*The Wylys have agreed to produce this document.*

**Documents 247 through 247.4:**

This is an email string involving insurance held in foreign trusts.

*The Wylys have agreed to produce these documents.*

**Document 248:**

This is an email involving insurance held in foreign trusts.

*The Wylys have agreed to produce this document.*

**Document 249:**

Another email involving insurance held in foreign trusts.

*The Wylys have agreed to produce this document.*

**Documents 250, 250.1 and 250.2:**

This is an email string involving foreign trust issues.

*The Wylys have agreed to produce these documents.*

**Documents 251 and 251.1:**

This is an email string involving assets placed in foreign trusts.

*The Wylys have agreed to produce these documents.*

***Dcoument 252:***

This is an email about the use of offshore money for a transaction.

***The Wylys have agreed to produce this document.***

***Documents 253, 253.1 and 253.2:***

This is an email string and an attached report involving transactions with foreign trusts.

***The Wylys have agreed to produce these documents.***

***Documents 254 and 254.1:***

This is a two email string referring to foreign trust issues.

***The Wylys have agreed to produce these documents.***

***Documents 255 and 255.1:***

This is a two-email string involving foreign trusts.

***The Wylys have agreed to produce these documents.***

***Documents 256, 256.1 and 256.2:***

This is a three email string regarding transactions involving a foreign trust.

***The Wylys have agreed to produce these documents.***

***Document 257:***

This is an email involving a foreign trust transaction.

***The Wylys have agreed to produce this document.***

***Documents 258, 258.1 and 258.2:***

This is an email chain involving real estate transactions.

***The Wylys have agreed to produce these documents.***

***Document 259:***

    This is an email involving real estate transactions.

    ***The Wylys have agreed to produce this document.***

***Documents 260 and 260.1:***

    This is an email regarding purchase of property.

    ***The Wylys have agreed to produce these documents.***

***Documents 261, 261.1 and 261.2:***

    This is an email chain addressing reportability of transactions involving a foreign trust.

    ***The Wylys have agreed to produce these documents.***

***Document 262:***

    This is an email involving a legal position on a foreign trust issue.

    ***The Wylys have agreed to produce this document.***

***Documents 263, 263.1 and 263.2:***

    This is an email and two memoranda regarding treatment of loans from foreign trusts.

    ***The Wylys have agreed to produce these documents.***

***Document 264:***

    These are the minutes of a meeting concerning real estate transactions.

    ***The Wylys have agreed to produce this document.***

***Document 265:***

This is a memo regarding a real estate closing.

***The Wylys have agreed to produce this document.***

***Documents 266 and 266.1:***

This is a fax transmission sheet and a report on Irish trusts and trust protectors.

***The Wylys have agreed to produce these documents.***

***Document 267:***

This is an email regarding foreign trust management issues.

***The Wylys have agreed to produce this document.***

***Document 268:***

This is an email from  Rodney Owens concerning insurance policies in foreign trusts.

***The Wylys have agreed to produce this document.***

***Document 269:***

This is an email from Rodney Owens regarding foreign trust with insurance policies.

***The Wylys have agreed to produce this document.***

***Documents 270 and 270.1:***

This is an email and attached memo from Owens on tax planning matters involving foreign trusts.

***The Wylys have agreed to produce these documents.***

***Document 271:***

This is an email with handwritten notes involving a foreign loan transaction.

**The Wylys have agreed to produce this document.**

**Document 272:**

This is an email from Boucher to Keeley Hennington and Charles Pulman, providing comments on a draft that is apparently being prepared by a lawyer to be presented to the Wylys. There are two notations on the email that are logged as handwritten notes by Keeley Hennington. Both the email and the handwritten notations are within the privilege because they involve necessary agents assisting lawyers in preparing confidential information for the client. But the email refers to issues of foreign trust management and use so as to bring it within the advice of counsel waiver. The handwritten notations are similarly tied to foreign trust issues and so are within the waiver.

*Ruling on Document 272: Not protected; protections waived by the advice of counsel defense.*

**Documents 273 and 273.1:**

This is an email and memorandum regarding the proposed sale of the property of a trust.

**The Wylys have agreed to produce these documents.**

**Document 274:**

This is a memo from Rodney Owens to Keeley Hennington and Boucher involving taxation of foreign trusts. It provides the kind of information that would be relevant to the Wylys' state of mind regarding creation and operation of the foreign trusts and reportability of transactions. Accordingly it falls within the scope of the advice of counsel waiver as determined by Judge Scheindlin.

*Ruling on Document 274: Not protected; protections waived by the advice of counsel defense.*

**Documents 275, 275.1 and 275.2:**

The first two logged items are emails from Charles Pulman to Keeley Hennington, and then from Keeley Hennington to Boucher, referring a draft attachment to a tax form. The draft attachment is logged at 275.2. At a minimum, the draft is subject to the drafts rule as the intent is to attach it to a tax form to be sent to the IRS. So even if the privilege is retained, it only covers that information

deleted from the final on advice of counsel. But more broadly, the tax form is a statement to the government providing an interpretation of the operation of, and transactions through, a foreign trust. Accordingly the advice of counsel waiver covers the draft — and it also covers the emails referring the draft to and between the necessary agents, as this is evidence of the lawyer's communications on the subject of foreign trust operation being reviewed by the client.

> ***Ruling on Documents 275 through 275.2: None are protected; protections are waived by the advice of counsel defense.***

**Documents 276 and 276.1:**

This is an email exchange between Keeley Hennington and Boucher regarding a tax question, and discussing advice of counsel. They are operating as necessary agents and their communications are privileged. The emails on their face do not provide information about the creation and operation of a foreign trust.

> ***Ruling on Documents 276 and 276.1: Protected by the privilege; protections not waive by the advice of counsel defense..***

**Document 277:**

This is an email from Keeley Hennington to Charles Pulman, attaching the opinion letters that are logged at Document 229. As discussed there, the letters fall within the advice of counsel waiver. As to the email transferring the letters from Hennington to counsel, this as well is within the advice of counsel waiver, as it indicates that the client and the lawyers were communicating on matters involving the creation and operation of the foreign trusts.

> ***Ruling on Document 277: Not protected; protections waived by the advice of counsel defense.***

**Documents 278, 278.1 and 278.2:**

This is an email exchange between Pulman and Keeley Hennington involving the same attachment to a tax form that is logged in 275. The draft attached here and logged at 278.2 appears to be only slightly different from that other draft. The principles are the same. The advice of counsel waiver covers the  draft as well as the email communications about the draft.

> ***Ruling on Documents 278 through 278.2: None are protected; protections are waived by the advice of counsel defense.***

71

***Documents 279, 279.1 and 279.2:***

This is an email exchange between Pulman and Keeley Hennington, with an fyi email to Boucher, about filing a tax return. There is no information on the face of these emails that would prove anything about the creation or operation of a foreign trust. And these are confidential communications on legal matters between counsel and necessary agents.

> ***Ruling on Documents 279 through 279.2: Protected by the privilege; protections not waived by the advice of counsel defense.***

***Document 280:***

This is an email from Keeley Hennington to Pulman and Trey Cousins, another lawyer, cc: to Boucher. It suggests that the lawyers bring up two matters for a future discussion— presumably with the Wylys — regarding a tax audit. As discussed above, Judge Scheindlin stated at a hearing that the way the Wylys respond to an audit might shed light on their state of mind with respect to the scheme alleged in this case. However,  the  particular issues raised by Hennington in this email do not touch upon use of the foreign trusts, but rather on different questions to be raised in the audit. Accordingly, the communication is privileged — coming from a necessary agent facilitating communications with counsel — and it is not within the advice of counsel waiver.

> ***Ruling on Document 280: Protected by the privilege; protections not waived by the advice of counsel defense.***

***Document 281:***

This is an email from Keeley Hennington about tax planning related to foreign trusts.

> ***The Wylys have agreed to produce this document.***

***Document 282:***

This is an email from Boucher involving sub-funds of a foreign trust.

> ***The Wylys have agreed to produce this document.***

***Document 283:***

> ***This is a duplicate of Document 282, which the Wylys have agreed to produce.***

*Document 284:*

This is an email from Keeley Hennington involving a management agreement that pertains to a foreign trust.

**The Wylys have agreed to produce this document.**

*Document 285:*

**This is a duplicate of Document 269, which the Wylys have agreed to produce.**

*Documents 286, 286.1 and 286.2:*

These are emails and a memorandum regarding trust and estate planning that involves foreign trusts.

**The Wylys have agreed to produce these documents.**

*Log number 287 is blank.*

*Document 288:*

This is an email from Keeley Hennington about taxation of annuity transactions.

**The Wylys have agreed to produce this document.**

*Document 289:*

This is an email and an attached report from Rodney Owens concerning Irish Trust planning matters. The attached report was logged elsewhere but the Wylys have agreed to produce it.

**The Wylys have agreed to produce the logged document.**

*Documents 290 and 290.1:*

This is an email and attached report from Rodney Owens on Irish Trust planning.

*The Wylys have agreed to produce these documents.*

### Document 291:

This is an email from Charles Pulman to Keeley Hennington and Boucher making them aware of certain tax regulations. Of course the regulations are not privileged, but as discussed in previous opinions, a confidential communication about non-confidential information can be protected by the privilege if made to further legal advice. This communication is privileged as it is made to necessary agents to keep the client apprised of developments in the law. Nothing in the communication is sufficiently related to the creation and operation of a foreign trust to be within the advice of counsel waiver.

> *Ruling on Document 291: Protected by the privilege.*

### Documents 292, 292.1 and 292.2:

This is an email sent from Chuck Lubar attaching a memo on issues regarding attribution of ownership, and reporting requirements, for two of the offshore trusts. The memo is clearly within the advice of counsel waiver, as is the email from Lubar sending it to Keeley Hennington, as that indicates that legal opinions pertinent to legal issues surrounding use of the trusts were in fact shared with the client through the necessary agent. Finally, the email from Keeley Hennington to Charles Pulman forwarding the report is not privileged, because nobody reading it could figure out what is being transmitted – and in any case it is within the advice of counsel waiver because it shows that the information was shared with another lawyer for the Wylys.

> *Ruling on Documents 292, through 292.2: Not protected; any protections are waived by the advice of counsel defense.*

### Document 293:

This is an email from Keeley Hennington to lawyers preparing opinion letters on taxation questions. The communications in the email are not protected for a number of reasons. First, they are simple factual corrections to the draft, in the nature of typos, and so do not involve any implementation of or request for legal advice. Second, they are clearly intended for final inclusion in a public document and so there is no expectation of confidentiality. Third, the opinion letters themselves, discussed above, concern transactions with foreign trusts and so are within the advice of counsel waiver.

> *Ruling on Document 293: Not protected by the privilege, and if it were, any protection is waived by the advice of counsel defense.*

**Document 294:**

This is a document prepared by Chuck Lubar, outlining and illustrating tax constructs of option transactions involving the foreign trusts. The document contains handwritten notes by Keeley Hennington. Both the Lubar report and Hennington's notes are privileged, but they are also well within the scope of the advice of counsel waiver. The transactions reviewed involve extensive use of foreign trusts and raised questions of control and reporting requirements.

> ***Ruling on Document 294: Not protected; protections waived by the advice of counsel defense.***

**Document 295:**

These are notes prepared by Mike French on foreign trust structure and management.

> ***The Wylys have agreed to produce this document.***

**Document 296:**

These are notes prepared by Mike French on foreign trust structure and management.

> ***The Wylys have agreed to produce this document.***

**Documents 297 and 297.1:**

This is an email exchange between Keeley Hennington and Pulman, about transactions involving a foreign trust and issues of documentation. The emails are privileged, but they are within the advice of counsel waiver as they show awareness of the lawyer and a necessary agent for the client about structuring and reporting transactions involving the foreign trusts.

> ***Ruling on Documents 297 and 297.1: Not protected; protections waived by the advice of counsel defense.***

**Documents 298, 298.1 and 298.2:**

These are emails among tax lawyers, Keeley Hennington, and Margot MacInnis. They are all involved in obtaining factual information for an opinion letter on a tax matter to be written by the law firm. These emails involve a different firm than the one preparing opinion letters that clearly involved foreign trusts. See logged items 229 and 277. The communications are privileged because they are confidential and for the purpose of allowing the lawyer to write an opinion with a sufficient factual basis. Margot MacInnis is acting as Hennington's assistant in the process and so is a

necessary agent. But the privilege protection is waived because the transactions that are the subject of the opinion letter involve, and indeed are dependent on, use of the offshore system.

>*Ruling on Documents 298 through 298.2: Not protected; protections waived by the advice of counsel defense.*

**Document 299:**

This is an email from Keeley Hennington to the tax lawyer that is a continuation of the string logged at 298. As it deals with the same transaction — related to and dependent on offshore funding — the same rules apply. So the email is privileged but the protections are waived by the advice of counsel defense.

>*Ruling on Document 299: Not protected; protections waived by the advice of counsel defense.*

**Documents 300 through 300.3:**

Document 300 is an email from Keeley Hennington to a tax lawyer preparing opinion letters concerning annuity transactions. The email attaches summaries of the transactions, each of which is logged. The email and the attachments are privileged because Hennington as necessary agent is seeking legal advice for the Wylys. But the summaries are well within the advice of counsel waiver because each of the transactions involved Isle of Man entities. And the email is within the advice of counsel waiver as well because it shows that information was being exchanged between lawyer and client about the legalities of use of the offshore system.

>*Ruling on Documents 300 through 300.3: Not protected; protections waived by the advice of counsel defense.*

**Documents 301 and 301.1:**

These are the same materials logged at 300, with the addition that Keeley Hennington sent those items to another lawyer, Charles Pulman. The email to Pulman (#301), while privileged, loses its protection due to the advice of counsel waiver — because it shows an exchange of information between attorney and client about the validity or invalidity of transactions involving offshore entities. And #301.1 has already been held to be within the advice of counsel waiver.

>*Ruling on Documents 301 and 301.1: Not protected; protections waived by the advice of counsel defense.*

**Document 302:**

This is an email from Keeley Hennington to yet another tax lawyer, sending the summaries of the transactions involving foreign entities that are logged at 300. For the reasons stated in the discussion of Documents 300 and 301, this email was privileged when sent but that protection is waived by the advice of counsel defense.

**Ruling on Document 302: *Not protected; protections waived by the advice of counsel defense.***

**Documents 303, 303.1 and 303.2:**

Yet another transmission of summaries of transactions involving offshore entities, sent to another lawyer involved in preparing an opinion letter. For reasons stated above, the privilege attendant to the email and to the summaries has been waived by the advice of counsel defense.

**Ruling on Documents 303 through 303.2: *Not protected; protections waived by the advice of counsel defense.***

**Document 304:**

Yet another transmission of summaries of transactions involving offshore entities, sent to another lawyer involved in preparing an opinion letter. Only the email is logged here as the summaries were logged earlier. For reasons stated above, the privilege attendant to the email (and to the summaries) has been waived by the advice of counsel defense.

**Ruling on Document 304: *Not protected; protections waived by the advice of counsel defense.***

**Document 305:**

This is an email from Rodney Owens, attaching Trust Protector provisions.

**The Wylys have agreed to produce this document.**

**Document 306:**

This is an email from Margot MacInnis to Lesley Attenburger, asking her to obtain information that it pertinent to an IRS investigation. MacInnis and Attenburger are acting as necessary agents because they are obtaining information from the client that will assist the lawyers in their legal representation. But while the email is privileged, that privilege is waived by the advice of counsel defense, as the matters that are the subject of inquiry directly concern the use of foreign

trusts.

> ***Ruling on Document 306: Not protected; protections waived by the advice of counsel defense.***

### Documents 307 through 307.3:

This is an email string involving Rodney Owens, Sharyl Robertson et al.; it concerns tax consequences for private annuity transactions.

> ***The Wylys have agreed to produce these documents.***

### Documents 308 and 308.1:

This is an email string between Sharyl Robertson and Rodney Owens, concerning tax consequences for private annuity transactions.

> ***The Wylys have agreed to produce these documents.***

### Document 309:

This is a chart prepared by Keeley Hennington and Boucher. It is protected by the privilege because they are putting together information that will assist attorney and client in determining tax consequences for certain foreign transactions. But it is unquestionably within the advice of counsel waiver as it concerns income received from the offshore system.

> ***Ruling on Document 309: Not protected; protections waived by the advice of counsel defense.***

### Document 310:

This is an email from Rodney Owens concerning tax consequences for prepaying private annuities.

> ***The Wylys have agreed to produce this document.***

### Document 311:

> ***This is a duplicate of Document 319, which the Wylys have agreed to produce.***

### Document 312:

This is an email from Boucher to Keeley Hennington regarding legal advice received on tax consequences of a private annuity surrender.

*The Wylys have agreed to produce this document.*

*Document 313:*

This is an email from Boucher to the Wylys regarding transactions involving foreign the offshore system.

*The Wylys have agreed to produce this document.*

*Documents 314 and 314.1:*

This is an email from Owens regarding structuring trusts and an email from Keeley Hennington to Boucher asking for advice on the matter.

*The Wylys have agreed to produce these documents.*

*Document 315:*

This is an email from Keeley Hennington to Charles Pulman, attaching the draft opinion letters that are logged at 227. As discussed there, the opinion letters are direct legal advice to the client about whether certain transactions involving foreign trusts are reportable. As such they are clearly within the advice of counsel waiver as interpreted by Judge Scheindlin. Moreover, the email to Pulman is also within the advice of counsel waiver, as it shows that the lawyer and a necessary agent for the client are exchanging information that is pertinent to counsel's advice, on which the Wylys state they relied.

*Ruling on Document 315: Not protected; protections waived by the advice of counsel defense.*

*Document 316:*

This is an fyi email from Keeley Hennington to Boucher, involving financial information.

*The Wylys have agreed to produce this document.*

*Document 317:*

*This is a duplicate of Document 314.1, which the Wylys have agreed to produce.*

79

*Document 318:*

This is an email from Rodney Owens, concerning Sterling Software and knowledge of income tax consequences.

**The Wylys have agreed to produce this document.**

*Document 319:*

This is an email from Boucher to Keeley Hennington about various approaches to treatment of annuity transactions.

**The Wylys have agreed to produce this document.**

*Documents 320, 320.1 and 320.2:*

This is an email string started by Keeley Hennington to Rodney Owens and Trey Cousins (another Meadows Owens lawyer), with response by Rodney Owens and a response back by Hennington. It involves a request for advice of counsel on possible future investigations or litigations. It is clearly confidential, Hennington is acting as a necessary agent, and it is not on its face sufficiently connected to foreign trust creation or operation to be within the advice of counsel waiver.

**Ruling on Documents 320 through 320.2: Protected by the privilege and not within the advice of counsel waiver.**

*Document 321:*

This is an email from Keeley Hennington to Owens and Pulman involving transactions running through the Isle of Man entities.

**The Wylys have agreed to produce this document.**

*Documents 322 and 322.1:*

This is an email from Rodney Owens forwarding Treasury rules to Keeley Hennington for her information, and a response from Hennington. Certainly Owens's statements and transmittal of the regulations are privileged communications — on a legal matter and made between a lawyer and an agent facilitating communication with the client. Moreover, the information provided by Owens to Hennington (and on which Hennington responds) does not directly concern the creation or operation of an offshore trust, and so it is not within the advice of counsel waiver.

***Ruling on Documents 322 and 322.1: Both are protected by the privilege, and not within the advice of counsel waiver.***

**Document 323:**

This is an email from Sharyl Robertson to Evan Wyly about transactions involving Isle of Man entities.

***The Wylys have agreed to produce this document.***

**Documents 324 and 324.1:**

These are two emails among Evan Wyly, Sharyl Robertson (while still at Highland Stargate) and Rodney Owens. The emails are confidential discussions on protecting privileged information. The communications do not reveal information about the creation or operation of a foreign trust.

***Ruling on Documents 324 and 324.1: Protected by the privilege, and not within the advice of counsel waiver.***

**Document 325:**

This is an email from Keeley Hennington to Owens, providing factual information about a transaction.

***The Wylys have agreed to produce this document.***

**Document 326:**

This is a very short fyi email from Keeley Hennington to Boucher, referring to a conversation with counsel on a tax matter. There is no indication on the face of the email that it deals with the creation or operation of a foreign trust. It is privileged, as a communication between necessary agents regarding advice of counsel.

***Ruling on Document 326: Protected by the privilege, and not within the advice of counsel waiver.***

**Document 327:**

This is an email from Owens to Keeley Hennington and Boucher about structuring transactions involving foreign trusts.

***The Wylys have agreed to produce this document.***

***Document 328:***

This is a memo from Charles Pulman providing advice of counsel on how to report a transaction. The memo is obviously privileged. There is no indication on the face of the memo that the reporting issue is dependent on the creation or operation of a foreign trust — accordingly it is not within the scope of the advice of counsel waiver.

**Ruling on Document 328: *Protected by the privilege; protections not waived by the advice of counsel waiver.***

***Document 329:***

These are handwritten notes by Shari Robertson, sent to Jim Ryan, a lawyer at Jackson Walker, concerning a number of transactions. The notes are privileged because sent from a necessary agent seeking advice of counsel. But the transactions at issue involve foreign entities and therefore the notes fall within the advice of counsel waiver.

**Ruling on Document 329: *Not protected; protections waived by the advice of counsel defense.***

***Document 330:***

This is a memorandum from Kniffen to Pullman, about materials sent over from the Jackson Walker firm. It is clearly a privileged communication between lawyers. But the materials cover a number of foreign trusts — transaction, structure, and administration — that clearly bear on the advice of counsel defense in this case. The quality of the lawyer's advice is dependent on the information that the lawyer has, and this memo is evidence of that information base.

**Ruling on Document 330: *Not protected; protections waived by the advice of counsel defense.***

***Document 331:***

These are undated notes prepared by Keeley Hennington. They appear to be notes of a family meeting. They do in some places note advice of counsel. There is no indication in the notes of any information about the creation or operation of a foreign trust.

**Ruling on document 331: *Protected by the privilege, not within the advice of counsel waiver.***

***Documents 332 and 332.1:***

This is a letter and attached memorandum from one lawyer at Meadows Owens to two others.

It contains a legal analysis about whether an Isle of Man entity is subject to a withholding requirement due to its role in a transaction. While the letter and memorandum are clearly privileged, they are also clearly within the advice of counsel waiver. The subject matter concerns the role of Isle of Man entities in certain transactions and the legal requirements that might attach to such participation.

> ***Documents 332 and 332.1: Not protected; protections waived by the advice of counsel defense.***

**Document 333:**

> ***This is a duplicate of Document 327, which the Wylys have agreed to produce.***

**Document 334:**

These are notes, unattributed to any author and undated, setting forth an agenda for meetings with the Wylys and with lawyers. The notes appear privileged because they reflect advice of counsel and the author is likely to have been a necessary agent. But even if that were so, the notes clearly cover topics that are related to the issues raised by the advice of counsel defense in this case. The notes even refer to SEC filings. Accordingly, whatever protection might have existed with respect to the notes, it is waived by the advice of counsel defense.

> ***Ruling on Document 334: Not protected; protections, if any, are waived by the advice of counsel defense.***

**Document 335:**

This is an email from Boucher to Charles Pulman, providing comments on suggestions to what appears to be an opinion letter being drafted by another lawyer. The communications are privileged because they come from a necessary agent, made to counsel, on a legal matter. The email is not subject to the drafts rule because it is not the draft opinion itself. Nonetheless, the transactions to be opined upon are directly connected with the use of foreign trusts. Thus the email concerns matters involving the operation of a foreign trust, and is within the advice of counsel waiver.

> ***Ruling on Document 335: Not protected; protections waived by the advice of counsel defense.***

**Document 336:**

> ***This is a duplicate of Document 330 — protections waived by the advice of counsel defense.***

*Document 337:*

This is a memo from Shari Robertson to the Wylys, recapping her business trip to the Isle of Man.

***The Wylys have agreed to produce this document.***


*Log number 338 is left blank.*

*Document 339:*

This is an email from Keeley Hennington to Owens on a possible response to a tax investigation.

***The Wylys have agreed to produce this document.***


*Document 340:*

This is a short email from Keeley Hennington to a lawyer at Meadows Owens, about a matter involving a foreign trust.

***The Wylys have agreed to produce this document.***


*Document 341:*

This is an email from Keeley Hennington to Boucher, providing a suggestion concerning the operation of a foreign trust.

***The Wylys have agreed to produce this document.***




# Order


The Wylys must promptly produce the logged documents found in each of the rulings above to be unprotected — either because not privileged in the first instance or because any protections are waived. All documents found protected may remain in the privilege log.

84

SO ORDERED:

Daniel J. Capra
Special Master

Dated: New York, New York
       July 26, 2011

The clerk of the court is
directed to docket
this memorandum
opinion and order
of the Special Master.
So ordered.

Shira A. Scheindlin
U.S.D.J.
7/27/11

85