UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

SECURITIES AND EXCHANGE                       :
COMMISSION, INC.,                             :
                                             :
                                             :
                                             :
                Plaintiff,                    :          10 Civ. 5760 (SAS)
                                             :
        -against-                            :
                                             :
SAMUEL WYLY, CHARLES J. WYLY, JR.,           :
MICHAEL C. FRENCH, AND                       :
LOUIS J. SCHAUFELE III,                      :
                                             :
                Defendants.                   :
------------------------------------------------------------------- x

*USDC SDNY*
*DOCUMENT*
*ELECTRONICALLY FILED*
*DOC #: _____*
*DATE FILED: 1/30/12*


**MEMORANDUM OPINION AND ORDER ON DOCUMENTS ASSERTED BY THE
WYLYS TO BE PRIVILEGED ON THE BASIS OF PRIOR OPINIONS OF THE
SPECIAL MASTER**


DANIEL J. CAPRA, SPECIAL MASTER:

        The undersigned was appointed by Judge Scheindlin as Special Master to review the Wylys'
claims that certain of the documents in the privilege logs  submitted to the SEC were protected by
the attorney-client privilege. The Special Master has issued a number of opinions on other privilege
logs, familiarity with which is presumed.[1] The analysis in all of those prior opinions is specifically
incorporated and applied herein.  Familiarity with the allegations in the SEC's complaint against the
Wylys and the other Defendants is also presumed.[2]

        This Opinion addresses certain privilege claims identified in the Wylys' Second Privilege

---

[1] Abbreviations used in prior reports are used here.

[2] Charles Wyly's untimely death in August, 2011 does not affect the resolution of any of the privilege questions
reviewed herein by the Special Master. *See Swidler & Berlin v. United States,* 524 U.S. 399 (1998) (death of client
does not affect invocation of the attorney-client privilege).

Log, in which the Wylys attempted to apply the Special Master's previous privilege rulings in this matter. The parties have agreed that the Special Master's privilege review should be conducted as follows:

- With respect to logged documents 1 through 38, the Special Master will review five to seven randomly selected documents to determine if the redactions in those documents is in accordance with the Special Master's prior rulings. If all of those randomly selected documents are appropriately redacted, no further review of documents 1-38 will be conducted. If, however, any of the randomly selected redactions are improper, then the Special Master will review and rule upon each of the documents numbered 1-38.

- With respect to logged documents 64 through 86, the Special Master will review three to five randomly selected documents to determine whether those documents were withheld in accordance with the Special Master's prior rulings. If all of those randomly selected documents were appropriately withheld, no further review of documents 64-86 will be conducted. If, however, any of the randomly selected documents were improperly withheld, then the Special Master will review and rule upon each of the documents numbered 64-86.

- The Special Master will review each of the documents logged at numbers 39 through 63 and 87 through 101, to determine whether they are appropriately withheld as privileged.

- Notwithstanding the above, Documents 8, 83 and 100 need not be reviewed because they are duplicative of other logged items.

### *I. Documents 1-38:*

The Special Master randomly selected the following six logged items for review: 1, 7, 15, 22, 28, and 37. What follows is the analysis and ruling on each of those documents.

### *Document 1:*

Document 1 is a draft IDR response prepared by Charles Pulman. The Special Master previously ruled that any privilege attaching to a draft IDR response is limited to the material that is *not* included in the final response sent to the IRS. Wyly counsel have indicated that they have complied with that ruling in redacting the IDR responses in this privilege log. The question then is whether the information contained in the redaction concerns the creation or operation of a foreign trust — in which case, under Judge Scheindlin's ruling, it would not be privileged in any event, due to advice of counsel waiver.

The draft IDR responds to a request for information about the income split between Sam Wyly and his wife Cheryl. The draft explanation that is redacted has nothing to do with the creation

2

and operation of an offshore trust. And it reflects legal advice. Accordingly the redacted information is protected by the privilege.

***Ruling on Document 1: Redacted material is protected by the attorney-client privilege.***


**Document 7:**

This is another draft IDR response from Charles Pulman, attorney for the Wylys. Like Document 1, it does not concern the creation or operation of a foreign trust and so is not within the advice of counsel waiver. Like Document 1, the Special Master relies on Wyly counsel's representation that the redacted information was not included in the final response sent to the IRS.

***Ruling on Document 7: Redacted material is protected by the attorney-client privilege.***


**Document 15:**

This is another draft IDR response from Charles Pulman. It follows the same analysis as Document 1 — again it is important to emphasize that if the redacted material is included in the final document sent to the IRS, it is not protected. But the Special Master relies on Wyly counsel's representation that the redacted material was not so included.

***Ruling on Document 15: Redacted material is protected by the attorney-client privilege.***


**Document 22:**

This is a draft IDR response prepared by Pulman concerning a question about executive compensation. It does not involve the creation or operation of a foreign trust. Again assuming the redacted material was not included in the final response, it is protected by the privilege.

***Ruling on Document 22: Redacted material is protected by the attorney-client privilege.***


**Document 28:**

This is a draft IDR response prepared by Pulman regarding an inquiry about a trust created by Evan Wyly. While the matter involves the operation of a foreign trust, Evan Wyly is not a party to this litigation. Consequently, the advice of counsel waiver found by Judge Scheindlin cannot apply to Evan Wyly — for the simple reason that he is not a defendant and is not relying on *any* defense, much less an advice of counsel defense. The advice of counsel waiver applies where there is "some showing by the party arguing for a waiver that the opposing *party* relies on the privileged communication as a claim or defense or as an element of a claim or defense." *In re County of Erie,*

546 F.3d 222, 228 (2d Cir. 2008) (emphasis added). *See also Kelsey-Hayes Co. v. Motor Wheel Corp.,* 155 F.R.D. 170, 171 (W.D. Mich. 1991) (advice of counsel waiver applies where "a *party* asserts reliance on advice of counsel as an element of his defense . . .") (emphasis added). The SEC has not cited any case that would support the rather remarkable proposition that a client could waive the privilege under the advice of counsel defense without even being a party to the litigation. The SEC argues that disclosure of Evan Wyly's communication might provide an indication of the defendant-Wylys' state of mind regarding operation of the foreign trusts. That may be so, but the privilege is Evan Wyly's, and so it is his and only his to waive.

> ***Ruling on Document 28: Protected by the attorney-client privilege.***

**Document 37:**

This is a draft IDR response prepared by Pulman on behalf of Evan Wyly. For the reasons discussed under Document 28, the advice of counsel waiver does not apply to communications between counsel and Evan Wyly.

> ***Ruling on Document 37: Protected by the attorney-client privilege.***

> ***Summary of Ruling on Documents 1-38:***

As all of the redactions in the documents randomly selected in this group are protected by the privilege, the Special Master, pursuant to stipulation of the parties, will not review any of the other documents numbered 1 through 38.

**II. Documents 64-86:**

The Special Master randomly selected the following four logged items for review: 65, 72, 77, and 85. What follows is the analysis and ruling on each of those documents.

**Document 65:**

This is an agenda prepared by Charles Pulman for a meeting with representatives of the Wylys that was apparently going to take place on October 4, 2004. The agenda covers IDR responses and some related matters. It appears to contain some privileged information about the topics of future conversations on legal matters. But it is within the advice of counsel waiver because it specifically and on its face pertains to the transfers of stock options to and through the foreign

trusts. It is not a task list like other documents previously reviewed — those were internal "to do" lists for lawyers and did not reflect anything about the state of mind of the Wylys. The agenda logged here is more akin to Document 334 in the privilege log reviewed by the Special Master in the Opinion and Order dated July 26, 2011 at 84. It is not an internal task list but rather a statement of topics to be discussed with the client, and thus it reflects some of the advice given by the lawyers to the Wylys. Accordingly it falls within the advice of counsel waiver.

*Ruling on Document 65: Not protected; within the advice of counsel waiver.*

*Because the Special Master has found one of the randomly selected documents to be unprotected, then under the terms of the parties' stipulation, the Special Master is now required to review and rule upon all Documents 64-86.*

**Document 64:**

This is a short memo from one Meadows Owens lawyer to two others concerning the progress of IDR responses. The advice of counsel waiver does not apply to this memo because it is dated February 2005. Judge Scheindlin's order provides specifically that the Wylys have not waived privilege "as to any legal advice received after the commencement of the SEC's investigation in 2004." Order at 3. The content of the memo is protected as work product and as legal-based communications between lawyers for the client.

*Ruling on Document 64: Protected by the attorney-client privilege and as work product, and not within the advice of counsel waiver.*

**Document 66:**

This is an IDR response task list, undated, prepared by Charles Pulman. It appears to be for his internal use and reference, i.e., a checklist for Pulman's reference. This is in the nature of the "to-do" lists found protected as work product in the Order dated July 26, 2011. See Order at 9. It does not involve any communication to the Wylys or their agents that would bear on the Wylys' state of mind about or treatment of the foreign trusts. Therefore it is not within the advice of counsel waiver.

*Ruling on Document 66: Protected as work product.*

**Document 67:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**Ruling on Document 67: Protected as work product.**

**Document 68:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**Ruling on Document 68: Protected as work product.**

**Document 69:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**Ruling on Document 69: Protected as work product.**

**Document 70:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**Ruling on Document 70: Protected as work product.**

**Document 71:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**Ruling on Document 71: Protected as work product.**

**Document 72:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same

nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 72: Protected as work product.*


*Document 73:*

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 73: Protected as work product.*


*Document 74:*

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 74: Protected as work product.*


*Document 75:*

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 75: Protected as work product.*


*Document 76:*

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 76: Protected as work product.*


*Document 77:*

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**_Ruling on Document 77: Protected as work product._**

**_Document 78:_**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**_Ruling on Document 78: Protected as work product._**

**_Document 79:_**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**_Ruling on Document 79: Protected as work product._**

**_Document 80:_**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**_Ruling on Document 80: Protected as work product._**

**_Document 81_**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

**_Ruling on Document 81: Protected as work product._**

**_Document 82:_**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 82: Protected as work product.*

**Document 83:**

**Duplicate of Number 82.**

**Document 84:**

This is an IDR response task list, undated, prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 84: Protected as work product.*

**Document 85:**

This is an IDR response task list, dated 8/4/2004 (update of a previously logged list), prepared by Charles Pulman. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

*Ruling on Document 85: Protected as work product.*

**Document 86:**

This is a memorandum, apparently from Pulman to another lawyer, that is attached to a letter from the IRS setting out a schedule for prioritizing the IDR responses. (The letter has been produced, the attached memorandum is redacted.) The memorandum is essentially a communication to another lawyer about the prioritization and status of the IDR responses. In character, however, it is the same as the "to do" lists previously found protected. .  It does not involve any communication to the Wylys or their agents that would bear on the Wylys' state of mind about or treatment of the foreign trusts. Therefore it is not within the advice of counsel waiver.

*Ruling on Document 86: Protected as work product.*

### III.  Documents 39 through 63 and 87 through 101

#### Document 39:

This is a legal memorandum sent from Rodney Owens to Evan Wyly, about tax consequences involving transactions regarding the foreign trusts. It unquestionably constitutes confidential legal advice. If Evan Wyly were a party and propounding the same defense as the defendants herein, it would surely be within the advice of counsel waiver. But he is not. The document on its face involves only Evan Wyly and his children and descendants — he is not acting somehow for the benefit of Charles or Sam Wyly. Accordingly, for the reasons discussed under Document 28, the advice of counsel waiver does not apply to communications between counsel and Evan Wyly.

> ### Ruling on Document 39: Protected by the attorney-client privilege.

#### Documents 40 through 40.3:

This is an email string from March, 2001 involving Boucher, Hennington, and Owens. The emails concern the preparation of the memo to Evan Wyly that is logged at #39. Boucher and Hennington are operating as necessary agents. The emails set forth confidential communications on a legal matter. And for the reasons discussed under Document 28, the advice of counsel waiver does not apply to communications between counsel and agents on behalf of Evan Wyly.

> ### Ruling on Documents 40 through 40.3: Protected by the attorney-client privilege.

#### Document 41:

This is an email from Rodney Owens to Evan Wyly informing him of the upcoming memo that is logged at #39. The email contains privileged information about the subject matter of the forthcoming memo. And for the reasons discussed under Document 28, the advice of counsel waiver does not apply to communications between counsel and Evan Wyly.

> ### Ruling on Document 41: Protected by the attorney-client privilege.

#### Document 42:

This is a chart, undated and unattributed, which provides a flowchart of transactions that involved foreign trusts. It would unquestionably be within the advice of counsel waiver if it described the transactions of the defendants herein. But defense counsel represents in a letter to the Special Master that this chart involves only transactions pertinent to Evan Wyly. The chart on its face provides no clue of whose transactions are described. But the Special Master assumes that defense counsel is correctly stating that the described transactions involve Evan Wyly and not the defendants herein. And for the reasons dicussed under Document 28, the advice of counsel waiver does not apply to communications between counsel and Evan Wyly.

> *Ruling on Document 42: Protected by the attorney-client privilege.*

### Document 43:

This is a trust agreement involving a foreign trust and Evan Wyly as settlor. It is not within the advice of counsel waiver, for reasons previously expressed. However, as a trust agreement, it is a public document. Therefore it is not protected by any privilege. *In re New York Renu with Moistureloc Product Liability Litigation*, 2008 WL 2338552 (D.S.C.). Defense counsel is not arguing that the document is free from production simply because it is that of a non-party. Rather the argument is that the advice of counsel waiver does not apply because Evan is a non-party. That is true, but if the document is not privileged in the first place, there is no remaining stated objection to its compelled production.

> *Ruling on Document 43: Not protected by the attorney-client privilege.*

### Documents 44 and 44.1:

This is an email exhange involving Kniffen, Pulman, Hennington and Boucher. It is about IDR responses on behalf of Evan Wyly. It contains confidential communications about legal matters, between lawyers and necessary agents. It is not within the advice of counsel defense because it involves advice to and legal work on behalf of Evan Wyly, who is not a party to this action.

> *Ruling on Documents 44 and 44.1: Both are protected by the attorney-client privilege.*

### Document 45:

This is a duplicate of Document 44.1, i.e., the first email in the chain discussed above.

> *Ruling on Document 45: Protected by the attorney-client privilege.*

11

***Documents 46 and 46.1:***

This is an email exchange involving Boucher and Pulman. It involves preparing IDR responses on behalf of Evan Wyly. For reasons expressed, there is no advice of counsel waiver for communications to or on behalf of Evan Wyly. But there is also no privilege in the first place, as the terse emails indicate no exchange of confidential information about a legal matter. They are simple statements — likely to be of no use to the SEC — about facts, and a request that does not involve legal advice. Accordingly, these emails are not protected by the privilege.

**Ruling on Documents 46 and 46.1: Not protected by the attorney-client privilege.**

***Document 47:***

Document 47 is an email from Kniffen to Pulman checking on the status of IDR responses regarding Evan Wyly.   For reasons expressed, there is no advice of counsel waiver. But as with Documents 46 and 46.1,  there is no privilege in the first place, as the email does not implicitly or explicitly contain any confidential communication in the course of giving or getting legal advice. It is just a statement about the existence of a non-confidential fact which does not itself reflect any legal work or advice. Accordingly, this email is not protected by the privilege.

**Ruling on Document 47: Not protected by the attorney-client privilege.**

***Document 48:***

This is an email from Pulman to Kniffen, discussing a confidential legal matter, including legal strategy. It is clearly within the privilege. And it is not covered by the advice of counsel waiver, because it is solely about Evan Wyly's transactions, not about advice of counsel sought by any party in this case.

**Ruling on Document 48: Protected by the attorney-client privilege.**

***Document 49:***

This is a draft of a legal memorandum being prepared by Chris Newsom, a lawyer at Meadows Owens, to answer a legal question posed to him by Charles Pulman. The draft is not of a document that was intended to go public — it is an internal memo on a legal question. Thus the drafts rule does not apply. The document is unquestionably privileged, and it is not within the advice

12

of counsel waiver as the legal issues concern transactions by Evan Wyly, who is not a party to this action.

*Ruling on Document 49: Protected by the attorney-client privilege.*


*Document 50:*

This is a lengthy legal memorandum from Kniffen to Pulman opining on tax consequences from certain of Evan Wyly's transactions. It is clearly privileged, and the advice of counsel waiver does not apply as the legal issues concern transactions by Evan Wyly, who is not a party to this action.

*Ruling on Document 50: Protected by the attorney-client privilege.*


*Documents 51 and 51.1*

This is an email from Hennington to Owens, seeking legal assistance on a proposed transaction for Evan Wyly, and a response from Owens setting forth requirements and providing advice. The email exchange is a confidential communication about a legal matter. It is not within the advice of counsel waiver, as the legal issues concern a proposed transaction by Evan Wyly, who is not a party to this action.

*Ruling on Documents 51 and 51.1: Both are protected by the attorney-client privilege.*


*Document 52:*

Document 52 is a short email from Boucher to Pulman, in which Boucher provides confidential information about a legal issue in a transaction involving Evan Wyly. The communication is protected by the privilege and it is not within the advice of counsel waiver because Evan Wyly is not a party to this action.

*Ruling on Document 52: Protected by the attorney-client privilege.*


*Documents 53 and 53.1:*

This is an email exchange between Hennington and Pulman. Hennington's short email to Pulman — Document 53.1 — is not privileged because it does not have anything to do with legal

13

advice. It simply discusses travel plans. The lengthy response by Pulman is in at least some part protected by the privilege because it involves communications about amendment of trust agreements and annuity payments. However, it is within the advice of counsel waiver. First, it discusses transactions of Sam Wyly, a party to this action. Second, it involves treatment of annuity payments. As previously discussed in the Opinion and Order dated August 19, 2011, at 2, foreign trusts were involved in the annuity transactions. Finally, much of Pulman's email does not involve confidential communications, e.g., the last three paragraphs of the email.

> ***Ruling on Documents 53 and 53.1: Document 53.1 is not protected by the privilege; to the extent that certain communications in Document 53 would be otherwise protected by the privilege, they are nonetheless subject to disclosure as they are within the advice of counsel waiver.***

### Document 54:

This is a progress memo from Kniffen to Pulman, apparently reporting on document review. While it is clear from the memo that Kniffen is going over trust matters, there is no way to determine from the document itself whether the review is of domestic or foreign trusts. But in any case, there is nothing in the memo that relates, directly or indirectly, any confidential communication about *any* trust, domestic or foreign. Kniffen is essentially saying "I am reviewing a bunch of documents and putting folders together." Accordingly, the advice of counsel issue need not be determined because there is no confidential communication at stake in the first place.

> ***Ruling on Document 54: Not protected by the privilege.***

### Document 55:

This is an email from Trey Cousins to Pulman and another lawyer at Meadows Owens. It includes a discussion and a legal opinion about a matter of representation that does not itself involve the creation or operation of any foreign trust. Nothing in this email would provide any information about the state of mind of the defendants or the strength of the advice of counsel defense.

> ***Ruling on Document 55: Protected by the attorney-client privilege.***

### Document 56:

This is an email from Trey Cousins to a number of lawyers. It involves confidential legal communications about trust transactions, so it is protected by the privilege. But the trust transactions involve annuities and foreign income; and the transactions reviewed are those of a party to this

action. Accordingly, these communications are within the advice of counsel waiver, despite the assertion in the privilege log that they are not related to the creation or operation of a foreign trust.

*Ruling on Document 56: Not protected as it is within the advice of counsel waiver.*

### Document 57:

This is a legal memo prepared by Sarah Qureshi, a Meadows Owens lawyer, for the benefit of Charles Meadows. The legal question addressed is whether the attorney-client privilege will apply to certain communications. This memo accordingly has nothing to do with the creation or operation of a foreign trust. Rather it has to do with whether certain communications being analyzed were or were not for obtaining legal advice. The communications in the memo are intended to be confidential and they unquestionably pertain to a legal matter.

*Ruling on Document 57: Protected by the attorney-client privilege.*

### Document 58:

This is an email from Pulman to Cousins and Kniffen, setting forth an agenda for a forthcoming meeting with Keeley Hennington and Boucher. It is substantially equivalent to Document 214 in the privilege log reviewed by the Special Master in the Opinion and Order dated July 26, 2011. For the reasons stated in that Order, this email is within the advice of counsel waiver.

*Ruling on Document 58: Not protected; protections waived by the advice of counsel defense.*

### Document 59:

This is an email from Kniffen to Cousins and Pulman, attaching an IDR response task list. The task list is redacted. It is of the same nature as Document 66 and is subject to the same analysis and ruling. The wrinkle is that it is an attachment sent in an email. But that email was sent from one lawyer to two others working on the same matter. So it is a confidential communication transmitting work product.

*Ruling on Document 59: Protected by the attorney-client privilege.*

***Document 60:***

This is an IDR task list concerning response times, prepared by Pulman. It is of the same nature as Document 66 and is subject to the same analysis and rulings.

***Ruling on Document 60: Protected as work product.***


***Document 61:***

Document 61 is a draft IDR work chart prepared by Pulman. It is of the same nature at Document 66 and is subject to the same analysis and ruling.

***Ruling on Document 61: Protected as work product.***


***Document 62:***

Document 62 is another IDR work chart prepared by Pulman. Like the other charts in the log, the information is not pertinent to the Wylys' state of mind, and provides no information about the creation and operation of the foreign trusts. Rather, it is simply a task list prepared by a lawyer working on a legal inquiry. So, it is subject to the same analysis and ruling as Document 66. In addition, this work chart is dated January 27, 2005 and so pursuant to Judge Scheindlin's order it is outside the waiver period for the advice of counsel waiver.

***Ruling on Document 62: Protected as work product.***


***Document 63:***

Document 63 is a single page of scheduling notes prepared by Pulman, regarding an IDR response schedule. It is of the same nature as Document 66 and is subject to the same analysis and ruling.

***Ruling on Document 63: Protected as work product.***

**Document 87:**

This is an email from Boucher to two lawyers at Meadows Owens, providing confidential information about a prior transaction involving foreign trusts. It is dated May 9, 2005, so it is outside the waiver period for advice of counsel waiver. Protection of the email, however, is dependent on whether Boucher was at the time pursuing a common interest with the Wylys. In the Order dated July 28, 2011, at 2, the Special Master found that Boucher had agreed to provide information to the Wylys pursuant to a common interest agreement, "at least as of March, 2005." The Special Master distinguished between an agreement to provide information from an agreement to share documents — there was no agreement to share documents until November, 2005. The email logged at #87 is a share of information and not of documents. Accordingly it is protected under the common interest doctrine.

**Ruling on Document 87: Protected by the attorney-client privilege.**

**Document 88:**

This is an email from Boucher to Pulman and to a lawyer at Kirkpatrick & Lockhart. It provides confidential information, for purposes of promoting legal advice, about a foreign trust transaction. It is dated 3/21/2005, outside the waiver period, and so is not subject to advice of counsel waiver. It is also within the previously-determined date at which a common interest agreement was reached to share information.

**Ruling on Document 88: Protected by the attorney-client privilege.**

**Documents 89 through 89.4:**

This is an email string between Boucher and Pulman regarding transactions with the foreign trusts. Boucher provides confidential information to assist Pulman in providing legal advice in response to the investigations of the Wylys. The emails are dated March 21, 2005, and so, as discussed above, they are 1) outside the advice of counsel waiver period, and 2) within the period of a common interest arrangement to share information. However, the first email in the string — Document 89.4 — contains no communication regarding legal advice and is not privileged; Boucher just asks Pulman to call her.

**Ruling on Documents 89 through 89.4: Documents 89 through 89.3 are protected by the privilege. Document 89.4 is not protected.**

**Documents 90 and 90.1:**

17

Document 90 is an email from Boucher to lawyers at Meadows Owens, setting up a later call. The text of the email is redacted. As stated in previous Opinions, a communication that merely sets up a meeting is not privileged. It is notable that the file names of the attachments sent in the email indicate that the call will be about confidential legal matters. (While those matters concern transactions with foreign trusts, the advice of counsel waiver is inapplicable as the email is dated 5/6/2005, well outside the waiver period set by Judge Scheindlin.) But the Wylys have not redacted the subject line. Thus, what was redacted is not privileged, because the redacted communication just sets up a meeting.

As to the attachment itself, Document 90.1, it is a chart of transactions with foreign trusts, and after the chart there are three faxed cover sheets, and after that a list of terms. The privilege log refers only to the chart, which is redacted, so the Special Master is assuming that the cover sheets and the list of terms have been or are being produced — which is the correct result, as they are within the advice of counsel waiver. As to the chart itself, it unquestionably involves confidential communications between attorney and client; and it is dated 5/3/2005, which is 1) well outside the waiver period set by Judge Scheindlin and 2) within the common interest agreement period for Boucher providing information to the Wylys.

***Ruling on Documents 90 and 90.1: Document 90 must be produced in unredacted form as the redacted material contains no privileged information. The chart logged at Document 90.1 is appropriately redacted.***

### Document 91:

This is an email from Boucher to Pulman and to lawyers at Kirkpatrick & Lockhart, providing information regarding annuities and other transactions involving foreign trusts. The email contains a number of attachments – described in the body of the email — but the attachments are not logged here, probably (and correctly) because they were prepared within the waiver period for the advice of counsel defense. While the attachments are not privileged, the communication relating such attachments is privileged because it is a confidential indication from Boucher that certain information might be relevant to the lawyers' representation. As the email is dated 4/7/2005, it is both within the period of common interest agreement for sharing information and outside the advice of counsel waiver period.

***Ruling on Document 91: Protected by the attorney-client privilege.***

### Document 92:

Document 92 is a long email from Boucher to lawyers at Kirkpatrick & Lockhart and

18

Meadows Owens, providing historical information about transactions involving foreign trusts. The communications are confidential, for the purpose of obtaining legal advice. The date of the email is April 14, 2005, so it is 1) outside the advice of counsel waiver period, and 2) after the date of the parties' agreement to pursue a common interest by sharing information.

*Ruling on Document 92: Protected by the attorney-client privilege.*


**Documents 93 and 93.1:**

Document 93.1 is an email from Pulman to Boucher, with cc to lawyers at Kirkpatrick and Meadows Owens. It incorporates a previous email from Boucher to Pulman and the other lawyers, in which Boucher answers a question about a previous transaction involving a foreign trust. Pulman in Document 93.1 asks a follow-up question about the transaction, and Boucher's answer to Pulman and the other lawyers is logged at #93. This three-email exchange consists of confidential communications allowing Pulman and the other lawyers to understand and evaluate these prior transactions, for the purpose of responding to the investigations. The date of the email exchange is 4/1/2005 — meaning that it is 1) outside the period of advice of counsel waiver, and 2) within the period of common-interest agreement for Boucher providing information to the Wylys.

*Ruling on Documents 93 and 93.1: Both are protected by the attorney-client privilege.*


**Document 94:**

This email is attached to the email logged at Document 93.1, and for reasons discussed above it is protected by the privilege.

*Ruling on Document 94: Protected by the attorney-client privilege.*


**Document 95:**

What is logged is an email from Boucher to lawyers at Kirkpatrick, cc to Pulman, which is much like the other Boucher emails in this log — it is a confidential communication designed to assist the lawyers to understand and evaluate a transaction involving foreign trusts in order to allow the Wylys' lawyers to prepare for and respond to the official investigations. It is dated 4/14/2005, meaning that it is 1) outside the period of advice of counsel waiver, and 2) within the period of common-interest agreement for Boucher providing information to the Wylys.

The wrinkle here is that there are actually two emails — one from a Kirkpatrick lawyer asking a question, and the logged email from Boucher answering it. The email from the Kirkpatrick

lawyer is privileged under the above analysis, and the fact that it is not specifically logged appears to be in the nature of a typographical error. The Special Master finds that the email from the lawyer to Boucher is protected by the privilege as well.

*Ruling on Document 95:*

*Both emails are protected by the attorney-client privilege.*

**Document 96:**

This is an email from Boucher to Sean Krieger at Kirkpatrick, cc to Pulman, providing clarifying information about a prior transaction involving a foreign trust. It is a confidential communication designed to assist the Wylys' lawyers to prepare for and respond to the official investigations. It is dated 5/6/2005, meaning that it is 1) outside the period of advice of counsel waiver, and 2) within the period of common-interest agreement for Boucher providing information to the Wylys.

*Ruling on Document 96: Protected by the attorney-client privilege.*

**Document 97:**

This is an email from Boucher to Sean Krieger at Kirkpatrick, cc to Pulman, providing clarifying information about the review of a prior transaction involving a foreign trust. It is a confidential communication designed to assist the Wylys' lawyers to prepare for and respond to the official investigations. It is dated 5/6/2005, meaning that it is 1) outside the period of advice of counsel waiver, and 2) within the period of common-interest agreement for Boucher providing information to the Wylys.

*Ruling on Document 97: Protected by the attorney-client privilege.*

**Document 98:**

This is an IDR response task list prepared by Kniffen, just like the multiple examples previously reviewed. For the reasons stated in the discussion of Document 66, this document is protected as work product.

*Ruling on Document 98: Protected as work product.*

***Documents 99 and 99.1:***

Document 99 is an email from Hennington to Boucher, dated 6/9/2004, attaching a spreadsheet logged at #99.1. The communication in the email is confidential and, on its face, it reflects a discussion about the advice of counsel between two necessary agents. As to the spreadsheet, it was prepared for the client by Hennington, a necessary agent, in response to Computer Associates-related litigation in 2004. Judge Scheindlin in her order stated that the advice of counsel waiver included "the Wylys' assertion of privilege over communications with attorneys regarding a potential assertion of ownership of shares held in offshore trusts during proxy contests in 2001, 2002 and 2003 involving Computer Associates." But this email and attachment were not prepared attendant to those proxy contexts. Rather the attachment was prepared and sent to the Sam Wyly and his lawyers in response to litigation in 2004, and the email transmitting the attachment to Boucher is for the same purpose. As such, the spreadsheet and email are both privileged and not subject to advice of counsel waiver.

> ***Ruling on Documents 99 and 99.1: Both are protected by the attorney-client privilege.***

***Document 100:***

***Not reviewed.*** (It was previously reviewed and found protected.)

***Document 101:***

This is an email dated January 27, 2005 from Boucher to Joe Brenner, a Wilmer Hale lawyer, concerning some past transactions. The attachment to the email has been produced; the email is redacted to take out the factual information and opinions that Boucher provides to the lawyer regarding the documentation of the transaction. In the Order dated July 28, 2011, at 2, the Special Master found that Boucher had agreed to provide information to the Wylys pursuant to a common interest agreement, "at least as of March, 2005." That ruling does not at all preclude a finding that there was a common interest agreement in place before March, 2005. It is apparent from the email logged here that Wilmer Hale is trying to reconstruct some transactions and Boucher is helping Wilmer Hale do so by providing factual information. The mutual interest is evident. Wilmer Hale needed to figure out what went on in critical transactions in order to properly defend its client. And for reasons discussed in the prior opinion involving the common interest, Boucher and her counsel could reasonably have determined that information-pooling could benefit both her and the Wylys in responding to investigations as to which Boucher could well have been subject to personal liability. Finally, while the attachments are correctly produced as not privileged, Boucher's

21

confidential opinions and factual background *about* the attachment, set forth in the email, remain privileged.

*Ruling on Document 101: The material redacted from the email is protected by the attorney-client privilege.*

## Order

The Wylys must promptly produce those logged documents found in each of the rulings above to be unprotected — either because not privileged in the first instance or because any protections are waived. All documents found protected may remain in the privilege log.

SO ORDERED:

Daniel J. Capra
Special Master

Dated: New York, New York
        January 28, 2012

*The Clerk of the Court is directed to docket this Memorandum Opinion and Order of the Special Master. So ordered.*

Shira A. Scheindlin
U.S.D.J.
1/30/12