

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

            - against -

SAMUEL WYLY, DONALD R.
MILLER, JR., in his Capacity as the
Independent Executor of the Will and
Estate of Charles J. Wyly, Jr., MICHAEL
C. FRENCH, and LOUIS J.
SCHAUFELE III,

                    Defendants.

-------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 5760 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.      INTRODUCTION

            In July 2010, the Securities and Exchange Commission ("SEC")

brought a securities enforcement action against Charles J. Wyly, Jr. and three other

defendants.  The action sought civil penalties, injunctive relief, and disgorgement

against Charles Wyly.  On August 7, 2011, Charles Wyly was killed in an

automobile accident near Aspen, Colorado.  On August 26, 2011, Donald R.

Miller, Jr. petitioned the Dallas County Probate Court to serve as executor of

1

Charles Wyly's estate.  On September 15, 2011, the probate court appointed Miller as Independent Executor.[1]  The SEC has abandoned its requests for injunctive relief and monetary penalties against Charles Wyly because it recognizes that such causes of action abate upon the death of a defendant.[2]  The SEC has moved to substitute the Executor as a party defendant on the disgorgement claim.  For the reasons that follow, the SEC's substitution motion is granted.

## II.    APPLICABLE LAW ON SUBSTITUTION

Rule 25(a)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party."  The survival of a federally created claim is a matter of federal substantive law and is governed by the provisions of the United States Code.[3]  In the absence of a specific statutory directive, however, courts look to federal common law to determine whether a claim is extinguished.[4]

---

[1]    *See* Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of Motion to Substitute Donald R. Miller, Jr., Independent Executor of the Will and Estate of Charles J. Wyly, Jr., as a Party Defendant ("SEC Mem.") at 1-2; Opposition of the Estate of Charles Wyly to the Motion to Substitute the Estate as a Defendant ("Opp. Mem.") at 2.

[2]    *See* SEC Mem. at 2.

[3]    *See Epstein v. Epstein*, 966 F. Supp. 260, 260 (S.D.N.Y. 1997).

[4]    *See U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009) ("Unless a statute directly addresses the issue, courts are generally guided by principles of federal common law.").

Courts have often looked to the federal common law to determine whether a securities law claim survives.[5]  In general, under the federal common law, "a claim survives a party's death if it is 'remedial' rather than 'punitive.'"[6]  Unfortunately, the law with respect to which claims fall on which side of the remedial/punitive line is not a model of clarity.  Indeed, the terms are used in a wide variety of areas of law with somewhat different meanings.

## III.   PARTIES' ARGUMENTS

### A.   The Executor

The Executor argues that the rule for survival is quite simple.  The Executor contends that for an action to be "remedial" for purposes of survivability it must be an action that is compensatory.[7]  Specifically, a civil action brought by

---

[5]     *See Derdiarian v. Futterman Corp.*, 223 F. Supp. 265, 267 (S.D.N.Y. 1963) ("[W]hether an action based on [the Securities Act of 1933 or the Securities Exchange Act of 1934] abates upon death is to be determined on federal common law principles.").

[6]     *Epstein*, 966 F. Supp. 2d at 260-61.  *See also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1954 (2011) ("It is still the rule that penal actions do not survive but courts generally have held that treble-damage provisions are remedial and that actions of that kind survive.") (footnote omitted).

[7]     *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("[R]esolution of the survivability issue depends on whether the recovery is deemed 'remedial' or 'penal.'  A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public.").

the government survives if brought "to recover compensation for injury."[8]

However, an action abates upon the defendant's death if it "seeks to obtain money

for the state, an entity which has not suffered direct injury by reason of any

prohibited action."[9]  The Executor references section 2404 of Title 28 of the United

States Code as providing guidance on this issue.  Section 2404 states that "a civil

action for damages commenced by or on behalf of the United States" shall not

abate.  The Executor argues that section 2404, even though not invoked by the SEC

as grounds for survival, demonstrates that "Congress clearly wanted to make sure

that governmental action to compensate the government survived" and warrants a

"negative inference here."[10]  Here, the SEC admittedly does not seek to

compensate any victims of the alleged fraud.  Under the Executor's framework, the

SEC's claim for disgorgement is not compensatory and does not survive Charles

Wyly's death.

       The Executor attempts to distinguish cases referring to disgorgement

---

[8]      *United States v. Price*, 290 F.2d 525, 527 (6th Cir. 1961) (denying
government's substitution motion, under 18 U.S.C. § 2404, in suit brought against
deceased defendant for price-ceiling violations under the Defense Production Act
because it was an action for a penalty rather than damages).

[9]      *Porter v. Montgomery*, 163 F.2d 211, 215 (3d Cir. 1947).

[10]      1/23/12 Transcript ("Tr.") at 21:13-24.

as "remedial."[11]  These cases generally occur in two contexts – (1) analyzing a

defendant's rights under the Double Jeopardy clause; and (2) describing the scope

of district courts' authority to grant equitable relief.  The Executor argues that the

double jeopardy analysis is not applicable because the court is seeking to determine

whether a cause of action is barred as a *criminal* penalty.[12]  Accordingly, the scope

of "remedial" claims for purposes of double jeopardy analysis is different than in

the survivability analysis.  Likewise, cases concerning district courts' authority to

grant equitable relief classify disgorgement as "remedial," while awards that

exceed the defendant's gains are punitive and beyond the court's equitable

powers.[13]  The Executor argues that this analysis is inconsistent with the

survivability analysis, where treble damages may survive death on the theory that

---

[11]     *See Derdiarian*, 223 F. Supp. at 271 ("The use of labels such as 'penal' or 'remedial' is . . . unsatisfactory unless it is recognized as a shorthand way of expressing relevant considerations.").

[12]     *See SEC v. Palmisano*, 135 F.3d 860, 864 (2d Cir. 1998) ("[T]he Double Jeopardy Clause does not prohibit the imposition of all additional sanctions 'that could in common parlance, be described as punishment'; rather it 'protects only against the imposition of multiple *criminal* punishments . . . .'") (quoting *Hudson v. United States*, 522 U.S. 93, 98-99 (1997)).  Indeed, *Palmisano* recognizes that disgorgement could be described as "punishment" yet not be "criminal" for purposes of the Double Jeopardy Clause.  *Id.*

[13]     *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972) ("Clearly the provision requiring the disgorging of proceeds received in connection with the Manor offering was a proper exercise of the district court's equity powers.").

5

the plaintiff, or victim, is entitled to treble damages as compensation, even though they exceed the gain to the defendant.[14]  Finally, the Executor contends that the SEC's proposed rule (as the Executor construes it – that survivability depends on whether an action effects specific deterrence) would be impermissibly broad and allow almost any claim to survive death.

### B.    The SEC

The SEC argues that "the Executor engages in a sleight-of-hand by replacing the term 'remedial' with 'compensatory,'" and "[s]imply because courts hold that compensatory claims in cases brought by injured plaintiffs are remedial, does not mean that in SEC enforcement actions all remedial claims must be compensatory for purposes of survivability."[15]  The SEC contends that courts have not defined "remedial" as synonymous with "compensatory" in the context of survivability.  The SEC also argues that section 2404, under which the "compensatory" test applies, is irrelevant because SEC enforcement actions for

---

[14]    *See, e.g.*, *Bowles v. Farmers Nat'l Bank of Lebanon*, 147 F.2d 425 (6th Cir. 1945).

[15]    Plaintiff Securities and Exchange Commission's Reply Memorandum of Law in Support of Motion to Substitute Donald R. Miller, Jr., Independent Executor of the Will and Estate of Charles J. Wyly, Jr., as a Party Defendant ("Reply Mem.") at 2.

disgorgement are not considered actions for damages.[16]  Indeed, the Executor must

concede that this is not an action for damages, or section 2404 would mandate that

it survives.[17]  Because there is no dispute that section 2404 does not provide a basis

for survival of the SEC's disgorgement claim, the issue is whether the SEC's

disgorgement claim can survive under the federal common law of survivability

because it is remedial – albeit not compensatory.

In drawing a distinction between "remedial" and "compensatory," the

SEC relies on cases in the civil forfeiture context holding that claims serving a

deterrent purpose are also "remedial" and survive a defendant's death[18] and a case

holding that an action by the government for disgorgement under the Racketeer

Influenced and Corrupt Organizations Act[19] ("RICO") survives.[20]  The SEC notes

---

[16]     *See SEC v. Coven*, 581 F.2d 1020, 1027-28 (2d Cir. 1978) ("The essential nature of an SEC enforcement action is equitable and prophylactic; its primary purpose is to protect the public against harm, not to punish the offender.").

[17]     *See* 28 U.S.C. § 2404 ("A *civil action for damages* commenced by or on behalf of the United States or in which it is interested *shall not abate* on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants.") (emphasis added).

[18]     *See United States v. Land, Winston Cnty.*, 221 F.3d 1194, 1197-98 (11th Cir. 2000); *United States v. $120,751.00*, 102 F.3d 342, 344 (8th Cir. 1996); *In re One 1985 Nissan 300ZX*, 889 F.2d 1317, 1319 (4th Cir. 1989).

[19]     18 U.S.C. § 1961 *et seq.*

[20]     *See United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk*, 159 F.R.D. 389, 391 (E.D.N.Y. 1994).

that the ruling the Executor seeks would have a drastic result – namely, the

abatement of all SEC enforcement actions not expressly seeking a recovery for

injured parties.

Finally, the SEC contends that the Executor's effort to distinguish the

SEC's cases classifying "disgorgement" as remedial is untenable.  While

"remedial" might have slightly different meanings in different contexts, the

underlying rationale for classifying disgorgement as "remedial" focuses on its goal

of "preventing wrongdoers from unjustly enriching themselves through violations,

which has the effect of deterring subsequent fraud."[21]  Accordingly, the SEC's

disgorgement claim should survive here because it is an equitable remedy seeking

to "prevent the defendant, or his heirs, from unjustly enriching themselves through

Wyly's securities law violations, and thus, serves as a deterrent to others who may

commit future securities violations."[22]

## IV.   DISCUSSION

The Executor asks this Court to craft a rule, for the first time,

permitting the estate of an individual who has violated the securities laws to avoid

an SEC enforcement action and retain the profits of illicit activity.  However, most

---

[21]   *SEC v. Cavanaugh*, 445 F.3d 105, 117 (2d Cir. 2006) (holding that disgorgement is remedial and within court's equitable powers).

[22]   Reply Mem. at 7.

courts have considered a claim for disgorgement to be "remedial" as opposed to punitive, albeit in different yet analogous contexts.  Moreover, I find that an SEC disgorgement action serves a predominantly "remedial" rather than "punitive" function under the case law of survivability, as it serves to prevent a wrongdoer or an innocent party from keeping ill-gotten gains.  Accordingly, I hold that the SEC's disgorgement claim survives the death of Charles Wyly.

There is no case directly on point where an estate opposed substitution in an SEC enforcement action seeking disgorgement.[23]  Rather, each side relies on arguably analogous cases in urging the Court to create a rule of federal common law in its favor.  The Executor advocates a rule that only actions seeking to compensate the government for an injury survive.  In support of this rule the Executor relies on (1) cases holding that government actions against defendants who violate emergency price regulations abate upon the death of the defendant;[24]

---

[23]     *See* Opp. Mem. at 1 n.1 ("Counsel for the Estate has found no federal court, in the Second Circuit or elsewhere, that has squarely answered" the question of whether "a civil action brought by the SEC seeking only disgorgement survive[s] the death of the defendant").  That said, a number of courts have substituted an estate as a defendant in the absence of any opposition.  *See, e.g.*, *SEC v. Schiffer*, No. 97 Civ. 5853, 2001 WL 504860 (S.D.N.Y. May 11, 2001); *SEC v. Grossman*, No. 87 Civ. 1031, 1997 WL 231167 (S.D.N.Y. May 6, 1997).

[24]     *See* Tr. at 11:6-9 ("MR. SUSMAN: . . . We think that those [emergency price regulation] cases turn on the identity of the plaintiff, the government . . .").

(2) cases holding that government actions survive where they seek compensation for an injury to the government;[25] (3) cases holding that restitution orders abate upon the death of the defendant;[26] and (4) the equitable principle that the "innocent" estate should not be punished for another party's wrongdoing.[27]  In contrast, the SEC advocates a rule that would allow government actions for disgorgement to survive because their primary purpose is to prevent a party, either a wrongdoer or an innocent party, from unjustly enriching itself as a result of violations of the securities laws.  The SEC primarily relies on (1) cases defining disgorgement as remedial in other contexts because its primary purpose is to prevent unjust enrichment;[28] (2) cases allowing civil forfeiture proceedings to

---

[25]     *See id.* at 16:18-23 ("MR. SUSMAN: If you look at the cases . . . where a penalty is recovered by the government, whether it survives or not depends upon whether . . . the court makes a finding it was intended to compensate the government for some kind of expense.").

[26]     *See id.* at 17:4-8 ("MR. SUSMAN: There are a number of cases that say whether there is criminal restitution or not depends upon whether the restitution was designed to compensate a victim or was simply designed to make the defendant cough up his ill gotten gains.").

[27]     *See id.* at 15:9-10 ("MR. SUSMAN: . . . [W]hat purpose is served by taking the money from innocent heirs?").

[28]     *See id.* at 3:13-16 ("MR. MILLER: . . . [E]very court that looks [at] disgorgement in terms of . . . the nature of the claim . . . they find it is remedial."); *id.* at 4:15-18 ("[T]he divest[it]ure and disgorgement claims that the government is seeking against these defendants [in a RICO action], they survive because the nature of disgorgement is remedial.").

survive, even though they do not seek to compensate the government for an injury;[29] (3) cases allowing the SEC to disgorge ill-gotten gains from innocent "relief" defendants;[30] and (4) the equitable principle that an estate should not profit from violations of the securities laws.[31]

### A.    Claims May Survive Although They Do Not Seek Compensation

#### 1.    Pricing Regulation Cases Are Not Controlling

The Executor relies on cases concerning government claims for pricing regulation violations to prove his point that *only* compensatory claims survive.[32]  However, these cases did not involve disgorgement claims.  Indeed, one court in this district has explicitly rejected the Executor's argument – that a disgorgement action by the government that does not seek to compensate the government for an injury is punitive – albeit in the context of a district court's

---

[29]    *See* Reply Mem. at 4-5.

[30]    *See* Tr. at 25:12-20 ("MR. MILLER: . . . [I]f someone comes into the possession of ill gotten gains that were acquired through securities fraud . . . the SEC can name that person as a relief defendant to go after the proceeds, even though that particular individual or entity is not a wrongdoer . . . .").

[31]    *See id.* at 30:14-17 ("MR. MILLER: As to the equities, again, I have to go back to the relief defendant example where . . . you're standing in the shoes . . . of the alleged wrongdoer.").

[32]    *See Price* 290 F.2d at 527; *Porter*, 163 F.2d at 215; *Bowles*, 147 F.2d at 428.

exercise of its equitable powers.[33]  Moreover, the pricing regulation cases applied

section 2404, or a predecessor, rather than the common law.  Admittedly, the SEC

does not seek compensation and does not invoke section 2404 as authority for

survival.  Rather, the SEC relies on the federal common law of survivability.

Although these pricing regulation cases could be read to create a "compensatory"

requirement for survivability, I decline to infer that section 2404's rule permitting

"compensatory" claims to survive creates a negative inference that restricts the

entire federal common law of survivability to only "compensatory" claims in light

of other case law allowing such claims to survive.[34]

## 2.      Restitution Cases Are Not Controlling

The Executor also relies on cases concerning restitution.  These cases

are inapposite because restitution is a collateral remedy to a criminal conviction.

Without a final criminal conviction, which abates upon the death of a criminal

defendant, it would be inappropriate to require restitution.[35]  Such a concern is

--------

[33]      *See SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 92-93 (S.D.N.Y. 1970) (rejecting defendant's argument that "'[i]f a sum of money is to be recovered by a third person for violation of a statute instead of the person injured . . . it constitutes a penalty'") (quoting *Bowles*, 147 F.2d at 428).

[34]      *See infra* Part IV.A.3.

[35]      *See United States v. Wright*, 160 F.3d 905, 908 (2d Cir. 1998) ("'[T]he interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of an appeal.'") (quoting *United States*

inapplicable in a disgorgement action.  Although *United States v. Wright* does discuss a punitive/compensatory distinction in dicta, the court ultimately decided that "we need not determine whether an order of restitution should be abated as a general matter, for here, retention of the restitutionary order would be a futile act." *Wright* concluded that the restitutionary order abated because the district court did not require defendant to fulfill his restitution obligations "prior to the commencement of the period of supervision" and "having died prior to the completion of his prison term . . . his restitutionary payments will never come due."[36]  Accordingly, *Wright* and the doctrine concerning the survivability of restitution orders are not persuasive on the question of whether an SEC disgorgement action survives.

### 3.  Cases Concerning Civil Forfeiture and RICO Indicate that Non-Compensatory Government Claims Can Survive

Contrary to the Executor's argument that a claim must be "compensatory" to survive, other bodies of law indicate that a government action may survive even if it does not seek compensation to the government or to private victims.  For example, civil forfeiture proceedings do not abate after the death of the property owner.  Such proceedings do not seek to compensate the government

---

*v. Pogue*, 19 F.3d 663, 665 (D.C. Cir. 1994) (per curiam)).

[36]     *Id.*

for any loss it has incurred.  Rather, they require forfeiture of property used in illicit activities.[37]  Similarly, in an SEC enforcement action for disgorgement, the government seeks to deprive a defendant of property – to wit, the profits of illicit activity.[38]

The Executor attempts to distinguish the civil forfeiture cases by arguing that they (1) are *in rem* proceedings, and (2) apply the wrong standard by looking to the law on double jeopardy.  *First*, although these actions are directed against property, the courts conducted the survivability analysis as though the actions were against the owners of the property.  If *in rem* proceedings could continue solely because they seek the forfeiture of property, the courts could have ended their analysis without the need to determine whether certain forfeiture actions survived the death of the concerned individual.  Instead, the courts considered whether forfeiture was punitive.[39]  Even if the holdings were solely based on the nature of an *in rem* proceeding, the courts' discussions of whether

---

[37]     *See* 21 U.S.C. § 881 ("The following shall be subject to forfeiture to the United States and no property right shall exist in them . . . .").

[38]     *See* Black's Law Dictionary at 501 (8th ed. 2004) (defining "disgorgement" as "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion").

[39]     *See $120,751.00*, 102 F.3d at 344 ("We hold that the action does not abate because it is not punitive.").

14

civil forfeiture is remedial or punitive are instructive on the question at issue here.

*Second*, the courts look to case law concerning double jeopardy because they find it instructive on the question of survivability.  In doing so, the civil forfeiture cases are simply applying standard common law analysis by looking to an analogous situation to develop a new rule for an unresolved question – whether civil forfeiture proceedings survive the death of the interested individual.  Indeed, in *United States v. $120,751.00*, a civil forfeiture case in which the owner of the property died before the entry of a forfeiture order, the Eighth Circuit did not consider itself bound by a Supreme Court holding on the nature of civil forfeiture proceedings for purposes of the Double Jeopardy clause – i.e., civil forfeiture is *not* a penalty – but rather considered it instructive.[40]  By analogy, the court found that the civil forfeiture action survives because it is remedial rather than punitive.

Although the opinions may not be meticulous in distinguishing between the different contexts in which the term "remedial" is used, multiple circuits have concluded that civil forfeiture proceedings survive even though they do not seek compensation.  This conclusion, in a context quite similar to disgorgement, is highly persuasive.

---

[40]     *See id.* at 344 ("We find this conclusion [that civil forfeiture proceedings do not abate] persuasive, particularly in light of the Supreme Court's recent holding on the nature of forfeiture actions in the context of double jeopardy.").

In addition, the Executor's proposed rule is contradicted by a case holding that claims for disgorgement, which are non-compensatory, survive in the RICO context.[41]  The Executor attempts to distinguish the RICO case on the ground that RICO contains a statutory directive that RICO should be liberally construed to effect its remedial purpose.[42]  However, the court did not place any particular emphasis on RICO's interpretive directive in holding that the disgorgement claim survived.  Rather, the court considered the defendant's argument that courts had reached divergent results on an entirely different question – whether the *treble damages* provision of RICO survives.[43]  The court was not persuaded by this argument because the court had no need to address the survivability of treble damages as "[t]he only relief sought . . . [was] divestiture and disgorgement."[44]  Regardless of the effect of the RICO statute, *Private Sanitation*'s holding that the government's disgorgement claim survives

---

[41]    *See Private Sanitation Indus. Ass'n of Nassau/Suffolk*, 159 F.R.D. at 391 ("This court has . . . held that disgorgement (without compensation) of the ill-gotten proceeds of racketeering activity is an appropriate equitable remedy under the civil RICO provisions.  In view of the remedial nature of the relief sought . . . this action is not extinguished by the death of those defendants.") (quotation and citation omitted).

[42]    *See id.* at 390.

[43]    *See id.*

[44]    *Id.*

contradicts the Executor's claim that only government actions seeking

compensation survive.

**B.  The SEC's Disgorgement Claim Is "Remedial" and Survives Because It Seeks to Prevent a Party from Being Unjustly Enriched**

Like cases concerning civil forfeiture, courts considering the nature of

a disgorgement claim have consistently held, in a variety of contexts including

double jeopardy and the scope of a court's equitable powers, that disgorgement is

not punitive.[45]  Although I recognize that the term "remedial" has different

meanings in different contexts, I find these decisions instructive in the survivability

analysis.  As the SEC recognizes, the underlying rationale for classifying cases as

"remedial" in these other contexts is that disgorgement seeks to "prevent[]

wrongdoers from unjustly enriching themselves through violations."[46]  This

rationale is equally compelling in the survivability context and counsels in favor of

---

[45]      *See, e.g.*, *Cavanaugh*, 445 F.3d at 117; *Palmisano*, 135 F.3d at 866 (reasoning that disgorgement "ensure[s] that the defendant not profit from his illegal acts, a goal that is non-punitive" and did not violate defendant's right to be free from double jeopardy); *SEC v. Robinson*, No. 00 Civ. 7452, 2002 WL 1552049, at *7 (S.D.N.Y. 2002) (holding that "disgorgement is remedial rather than punitive" where "a fundamental policy underlying disgorgement is to prevent the unjust enrichment of the wrongdoer rather than to punish him"); *SEC v. Lorin*, 869 F. Supp. 1117, 1123-25 (S.D.N.Y. 1994) (declining to apply statute of limitations because disgorgement "merely returns the wrongdoer to the status quo before any wrongdoing occurred").

[46]      *Cavanaugh*, 445 F.3d at 117 (holding that disgorgement is remedial and within court's equitable powers).

17

classifying disgorgement as "remedial."  Such a result is in accord with Black's

Law Dictionary, which includes the following definition for "remedial":

> 1. Affording or providing a remedy; providing the means of obtaining redress <a remedial action>.  2. *Intended to correct, remove, or lessen, a wrong, fault, or defect* <a remedial statute>. 3. Of or relating to a means of enforcing an existing substantive right <a remedial right>.[47]

Although the dictionary definition may prove too much – every action has a

"remedial" aspect – the critical distinction is to focus on whether a claim is barred

because it is punitive in nature.  In requiring a defendant to disgorge illicit profits,

courts have concluded the government is not imposing any penalty but rather

seeking to restore the defendant, or his estate, to the position he or it would have

been in absent any wrongdoing.  Indeed, the SEC originally sought civil penalties

against Charles Wyly, and the SEC subsequently withdrew those claims

recognizing that punitive actions abate upon the defendant's death.  Unlike the

actions for civil penalties, SEC enforcement actions for disgorgement are

"remedial" as opposed to punitive – and survive the defendant's death – because

they merely seek to prevent a wrongdoer, or his estate, from profiting from illegal

activity, but they do not seek to impose any penalties on the defendant for his

conduct beyond restoring the status quo ante.

---

[47]     Black's Law Dictionary at 1319 (8th ed. 2004).

The cases concerning disgorgement in a variety of contexts, including the survival of RICO disgorgement claims that are non-compensatory, are closely analogous and suggest that an SEC enforcement action for disgorgement survives the death of the alleged wrongdoer and counsel against permitting an estate to reap a windfall resulting from violations of the securities laws. The Executor's argument that World War II-era pricing regulation cases holding that government actions for penalties for violating pricing regulations must abate upon the death of the wrongdoer is less convincing for the reasons described above.

### C. The Equities Support Permitting Survival of SEC Disgorgement Claims Because "Innocent" Parties May Not Retain the Profits of Securities Fraud

The Executor argues that the disgorgement action should abate because it only serves to punish an innocent party. However, this argument is contradicted by cases concerning "relief" or "nominal" defendants. These cases recognize the SEC's authority to disgorge funds from "innocent" third-parties that have acquired the profits of securities fraud.[48] Although not in the survivability context, I find this line of cases instructive and supportive of the conclusion that disgorgement does not fall on the "punitive/penal" side of the survivability

---

[48]     *See SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.").

analysis.  Rather, this line of cases illustrates the general policy under the securities

law against allowing a wrongdoer, or an innocent third-party, to retain the profits

derived from securities fraud.  Such a policy supports a rule that SEC claims for

disgorgement, which seek to prevent a party from being unjustly enriched by

securities fraud, survive the death of the alleged wrongdoer.  Accordingly, I hold

that the SEC's disgorgement action did not abate upon the death of Charles Wyly

and that the Executor may be substituted as a party defendant.

## V.    CONCLUSION

For the aforementioned reasons, the SEC's Motion to Substitute the

Executor as a Party Defendant is granted.  The Clerk of the Court is directed to

modify the docket by replacing defendant Charles J. Wyly, Jr. with Donald R.

Miller, Jr., in his capacity as the Independent Executor of the Will and Estate of

Charles J. Wyly, Jr., and close this motion [Docket No. 75].  The deadline for the

close of fact discovery is extended to October 26, 2012.  No further extensions will

be granted.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 27, 2012

**- Appearances -**

**For the SEC:**

Alan M. Lieberman, Esq.
Gregory Nelson Miller, Esq.
Cheryl J. Scarboro, Esq.
John David Worland, Jr., Esq.
Martin Louis Zerwitz, Esq.
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4474

**For Samuel E. Wyly:**

William Andrew Brewer, III, Esq.
Michael J. Collins, Esq.
James S. Renard, Esq.
Michael L. Smith, Esq.
Bickel & Brewer
1717 Main Street
Suite 4800
Dallas, Texas 75201
(214) 653-4000

Martin Robert Pollner, Esq.
John Anthony Piskora, Esq.
Loeb & Loeb, LLP
345 Park Avenue
New York, New York 10154
(212) 407-4873

**For Donald R. Miller, Jr., in his Capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr.:**

Stephen D. Susman, Esq.
Susman Godfrey LLP

560 Lexington Avenue, 15th Floor
New York, New York 10012
(212) 336-8330

**For Louis J. Schaufele, III:**

Martin Joel Auerbach, Esq.
1345 Avenue of the Americas
19th Floor
New York, New York 10105
(212) 424-9181

Laura Elizabeth Neish, Esq.
Zuckerman Spaeder, LLP
1540 Broadway
Suite 1604
New York, New York 10036
(212) 704-9600

Luke Madole, Esq.
Todd Murray, Esq.
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street
Suite 5500
Dallas, Texas 75202
(214) 855-3000

Corbet Franklin Bryant, Jr., Esq.
10214 Lake Ridge Drive
Richardson, Texas 75081
(214) 789-4113

**For Michael C. French:**

Danny S. Ashby, Esq.
Robert E. Davis, Esq.
Barrett R. Howell, Esq.
Casey P. Kaplan, Esq.

23

K&L Gates, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201
(214) 939-5545

Laura A Brevetti, Esq.
K&L Gates, LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3900