# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>        **Plaintiff,**<br><br>      **v.**<br><br>**SAMUEL E. WYLY,**<br>**DONALD R. MILLER, JR., in his capacity**<br>**as the Independent Executor of the Will**<br>**and Estate of Charles J. Wyly, Jr.,**<br>**MICHAEL C. FRENCH and**<br>**LOUIS J. SCHAUFELE III,**<br><br>          **Defendants.** | **No. 1:10-cv-05760-SAS**<br>**ECF Case**<br><br>**Notice of Omnibus**<br>***In Limine* Motion** |

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law in Support of its Omnibus (Non-Expert) Motion In Limine, and the exhibits in support thereof, Plaintiff Securities and Exchange Commission ("Commission") respectfully moves this Court, before the Honorable Shira A. Scheindlin, United States District Judge, Daniel Patrick Moynihan United States Courthouse for the Southern District of New York,  500 Pearl Street, Courtroom 15C,  New York, New York 10007-1312, for an order for *in limine*: (1) precluding defendants from arguing and presenting evidence that they relied on the advice of counsel; and (2) admitting the statements of Michelle Boucher, Keeley Hennington, Sharyl Robertson, Evan Wyly, Donald R. Miller, Jr., Louis J. Schaufele III, Michelle Crittenden, and Michael French as employees and/ or agents of defendants under Federal Rule of Evidence 801(d)(2)(D).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's briefing schedule any opposing affidavits and answering memoranda shall be served on or before October 28, 2013.

**PLEASE TAKE FURTHER NOTICE** that movant requests oral argument on its

omnibus motion *in limine*.

Dated:  October 15, 2013                    Respectfully submitted,


    /s/ Gregory N. Miller        
Gregory N. Miller (GM-5922)
Alan M. Lieberman (AL-6517)
John D. Worland, Jr. (JDW-1962)
Martin Zerwitz (MZ-9765)
Counsel for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5977
Tel.:    (202) 551-4469 (Miller)
Fax:    (202) 772-9292

## CERTIFICATE OF SERVICE

I certify that on October 6, 2011, I have caused a copy of the foregoing the SEC's Notice of Omnibus (Non-Expert) Motion *In Limine* to be served by electronic mail, based upon agreement regarding manner of service, on the following:

William A. Brewer
Michael Smith
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, TX 75201

Martin Pollner
LOEB & LOEB
345 Park Avenue
New York, NY 10154
**Counsel for Defendants Samuel E. Wyly and Charles J. Wyly Jr.**

Danny S. Ashby
Robert E. Davis
Barrett R. Howell
Casey P. Kaplan
K&L GATES, LLP
1717 Main Street
Suite 2800
Dallas, TX 75201
**Counsel for Defendant Michael C. French**

Stephen D. Susman
SUSMAN GODFREY
560 Lexington Avenue, 15th Floor
New York, New York 10022
**Attorney for the Estate of Defendant Charles J. Wyly Jr.**

Martin J. Auerbach
1540 Broadway, Suite 1604
New York, NY 10036

Laura Neish
ZUCKERMAN SPADER
1540 Broadway, Suite 1604
New York, NY 10036-4039
**Counsel for Defendant Louis J. Schaufele III**

s/ Gregory N. Miller
Gregory N. Miller
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL E. WYLY,<br>DONALD R. MILLER, JR., in his capacity<br>as the Independent Executor of the Will<br>and Estate of Charles J. Wyly, Jr.,<br>MICHAEL C. FRENCH and<br>LOUIS J. SCHAUFELE III,<br><br>Defendants. | No. 1:10-cv-05760-SAS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND
EXCHANGE COMMISSION'S OMNIBUS (NON-EXPERT) MOTION *IN LIMINE***

# Table of Contents

Table of Authorities ............................................................................................... iv

I.      Introduction ................................................................................................1

II.     Because the Defendants Cannot Establish the Required Factual
        Predicate Defendants Should Be Precluded From Presenting Evidence
        That They Relied on the Advice of Counsel ...............................................3

        A.      Background ........................................................................................3

        B.      There Is No Support In the Record for Assertion of an Advice-of-Counsel
                Defense ..............................................................................................5

                1.      Defendants Did Not Make Complete Disclosure to Counsel ....................5

                2.      Neither the Wylys Nor Their Surrogates Sought Advice
                        on the Issue of Their Beneficial Ownership and Control ...........................7

                3.      Neither the Wylys Nor Their Surrogates Received Advice that
                        They Were Not Beneficial Owners............................................................8

                        A.      Jackson Walker Attorneys ...........................................................8

                        B.      Jones Day Attorneys ....................................................................9

                        C.      Wyly Employees .......................................................................10

                4.      Defendants Did Not Rely in Good Faith on Advice of Counsel...............10

        C.      On This Record, Evidence of the Presence and Involvement
                of Lawyers Does Not Support a Viable Defense and Would
                Be Misleading, Confusing and Unduly Prejudicial ...............................11

III.    Wyly Family Office Employees and Others Acted As Agents of the Wylys ..................13

        A.      The Witnesses ...................................................................................13

                1.      Michelle Boucher ...................................................................13

                2.      Keeley Hennington ...................................................................13

                3.      Sharyl Robertson.....................................................................14

                4.      Evan Wyly ............................................................................14

5.      Donald R. Miller, Jr. ...................................................................15

6.      Louis J. Schaufele Iii...................................................................15

7.      Michelle Crittenden ....................................................................16

8.      Michael French ...........................................................................16

B.    The October 7 Pre-Motions Hearing ....................................................16

C.    Fed.R.Evid. 801(D)(2)(D) Standards.....................................................17

D.     Michelle Boucher Was an Employee and/ or An Agent of the Wylys ...............18

IV.   Conclusion ........................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley*, No. 1:08-cv-07508-SAS, 2013 WL 837536 (S.D.N.Y. March 6, 2013) ...................................................................17

*Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756 (7th Cir. 2003).................................18

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2nd Cir. 1994) .........................................................18

*Fifty–Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, No. 08 Civ. 6143(DLC), 2011 WL 3874861 (S.D.N.Y. Aug. 31, 2011) .........................................17

*Markowski v. SEC*, 34 F.3d 99 (2d Cir. 1994)..............................................................4, 11

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120 (2d Cir. 2005).........................................17

*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534 (2nd Cir. 1992); .........................17, 18

*SEC v. CMKM Diamonds, Inc.*, --- F.3d ----, 2013 WL 4793215 (9th Cir. Sept. 10, 2013) ........................................................................................................................4

*SEC v. Das*, 723 F.3d 943 (2nd Cir. 2013) ........................................................................4

*SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561 (S.D.N.Y. 2001) ......................12

*SEC v. Guild Films Co.*, 279 F.2d 485 (2d Cir.1960).........................................................4

*SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) ................................................................4

*SEC v. McNulty*, 137 F.3d 732 (2nd Cir. 1998).................................................................4

*SEC v. Verdiramo*, 890 F.Supp.2d 257 (S.D.N.Y. 2011) ...................................................4

*SEC v. Wyly*, --- F.Supp.2d ----, 2013 WL 2450545 (S.D.N.Y. June 6, 2013)....................5

*Spirt v. Bechtel* (Frank, J. dissenting), 232 F.2d 241 (2d Cir. 1956) ................................11

*Subaru Distribs. Corp. v. Subaru of Amer., Inc.*, 47 F.Supp.2d 451 (S.D.N.Y. 1999) .....................................................................................................................12

*United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir.1989)........................7

*United States v. Evangelista*, 122 F.3d 112 (2d Cir. 1997) ................................................4

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011) ..........................................................11

*United States. v. Langston*, 590 F.3d 1226 (11th Cir. 2009) .............................................11

*United State v. Lindo*, 18 F.3d 353 (6th Cir. 1994) .......................................................6, 12

*United States  v. Peterson,* 101 F.3d 375 (5th Cir. 1996) ..................................................12

*United States v. Powell*, 680 F.3d 350 (4th Cir. 2012) ......................................................12

*United States. v. Rice*, 449 F.3d 887 (8th Cir. 2006) ..................................................12, 13

*United States v. Rioux*, 97 F.3d 648 (2nd Cir. 1996) ........................................................18

*Williamson v. United States*, 207 U.S. 425(1908) .............................................................7

*Zaken v. Boerer*, 964 F.2d 1319 (2d Cir.1992)..................................................................17

## FEDERAL RULES

Fed.R.Evid.104(a)...............................................................................................................17

Fed.R.Evid.403 ............................................................................................................12, 13

Fed.R.Evid.611(c)(2) ............................................................................................................2

Fed.R.Evid.801(d)(2)(D) ............................................................................1, 13, 17, 24

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its omnibus (non-expert) motion *in limine*.

## I.      Introduction

On October 7, 2013, the parties' proposed motions *in limine* were examined by the Court, which found that most need not be filed.  The Court decided that two of the SEC's proposed issues warranted briefing:  preclusion of the reliance on advice of counsel defense[1], SEC Omnibus Motion *In Limine* ("MIL") Ex. 1 (Oct. 7, 2013, Pre-Motions Hearing Tr.) at 20:8-23:10, and admission of statements made by defendants' employees and agents under Rule 801(d)(2)(D) of the Federal Rules of Evidence[2] ("Fed.R.Evid.").  *Id.* at 12:15-20:7.

Defendant Sam Wyly identified seven possible motions *in limine*, one of which the Court agreed may be briefed - exclusion of "Non-Security Asset Acquisitions," *i.e.*, evidence that trust money was used to buy art, jewelry, and real estate.  *Id.* at 12-16.  The Court in summarizing the issue noted that if the trusts were used as private piggy banks, then "this may be relevant to beneficial ownership."  *Id.* at 42:10-23.

 Defendant Donald R. Miller, Jr. ("Miller") presented "eighteen standard subjects" for consideration as *in limine* motions.[3]  After reviewing many of the eighteen, the Court instructed the SEC provide the Court with any objections, *id*. at 37:14-16; however, before doing so, the parties were to attempt to resolve objections.  *Id*. at 38:10-22.[4]

With respect to the SEC's request to exclude evidence or argument that the defendants complied with any applicable tax or trust laws, or that they are paying or have paid taxes related

---

[1] The first item in the SEC's pre-motions letter to the Court.  ECF No. 201.
[2] Item three in the SEC's letter.  *Id.*
[3] ECF No. 200.
[4] Counsel for Miller and the SEC conferred, and an agreement was reached on 17 of the 18.  Item 18 is expected to be the subject of a defense motion.  The list was transmitted to the Court via email.

to income from, or transactions involving, the Offshore System,[5] the Court found that if the SEC does not attempt to introduce evidence or argue that defendants violated tax or trust laws, or did not pay taxes, then defendants would not be permitted to say they complied with tax or trust laws, or paid taxes.  *Id.* at 23:11-30:3.  However, the Court noted that the SEC could still assert that the Wylys established their offshore trusts for "tax benefits,"[6] *id.* at 26:16-24; 27:19-25, and that the SEC could still use the terms "offshore" or "Offshore System" when describing or discussing the overseas trusts.  *Id.* at 27:8-16.

The Court held that the SEC's request to use leading questions during examination of certain witnesses, pursuant to Fed.R.Evid. 611(c)(2),[7] does not require filing.  *Id*. at 12:13-14.  Defendants objected to Rule 611 treatment of Michelle Boucher and Sharyl Robertson.[8]  The Court concluded that since Boucher's testimony will be presented as a videotaped deposition there was not much that can be done now.  *Id.* at 10:8-12:14.  Questions as to whether Sharyl Robertson was or was not cooperative with the SEC resulted in a decision to allow Robertson's trial testimony to proceed initially through direct examination, and if the SEC believes she is hostile, then counsel may seek permission to use leading questions.  *Id.* at 9:12-10:7.

---

[5] Item two in the SEC's letter.  ECF No. 201.

[6] During a recent status conference, the Court also agreed the SEC may argue that one motive for defendants' establishment of their offshore trusts was to "minimize their taxes."  SEC MIL Ex. 1 (July 15, 2013 Status Conference Tr. at 4:16-22).

[7] Item four in the SEC's letter.  ECF No. 201.

[8] Defendants agreed that other witnesses are subject to Rule 611(c)(2): defendant Schaufele's former assistant Michelle Crittenden, defendant Michael French, Wyly family office CFO Keeley Hennington, defendant Lou Schaufele, Sam Wyly's son Evan Wyly, and defendant Sam Wyly.

The Court also held that the SEC's proposed authentication motion[9] is unnecessary, since it is likely that most documents will not be challenged as to authenticity, and challenges that do arise may be taken up after issuance of the Pretrial Order.  *Id.* at 4:17-23.

Sam Wyly's first issue – prior convictions[10] – was resolved by agreement that non-parties' prior convictions would not be relevant unless those individuals testified at trial.  *Id.* at 40:6-20.  It was also agreed that Wyly's second issue – preclusion of references to U.S. tax laws - was resolved by the Court during the discussion about compliance and violation of tax and trust laws, discussed above.  *See id.* at 40:21-22.  On defendant's third issue – exclusion of references to his net worth or personal finances - the Court instructed the SEC to avoid references to defendants' wealth unrelated to an issue in the case.  *Id.* at 41:5-8, 15-19.  The fifth issue – various phrases that defendant wanted to exclude  such as "tax haven" -- was resolved during the Court's discussion on the SEC's proposed exclusion of evidence or argument that defendants complied with tax and trust laws.  *See* discussion above, and *id*. at 43:17-20.  The Court agreed with Wylys' sixth issue - references to the Patriot Act or 9/11 – by declaring that the SEC could not "start talking about 9/11 and the Patriot Act."  *Id.* at 43:21-23; 44:3-9.  Finally, the Court noted that exclusion of alternate theories of disgorgement was not an issue since defendants were already on notice of the SEC's theory.  *Id.* at 44:11-15.

## II.    Because the Defendants Cannot Establish the Required Factual Predicate, Defendants Should Be Precluded from Presenting Evidence that They Relied on the Advice of Counsel

### A.    Background

The Commission alleged in its complaint that the defendants fraudulently concealed the nature and extent of their beneficial ownership in assets held by a labyrinth of offshore trusts,

---

[9] Item five in the SEC's letter.  *Id.*

[10] Defendant Sam Wyly's first issue. ECF No. 199.

transferred stock options worth hundreds of millions of dollars to those entities, and thereafter used their ownership and control over these assets to evade federal securities laws governing trading by corporate insiders and significant shareholders.

The Wylys asserted in their Answers that the Commission's claims are barred because they relied in good faith upon the advice of counsel. They thereafter moved for summary judgment on the basis that they lacked requisite "intent to deceive, manipulate, or defraud." ECF No. 138 at 43 (Defendants' Consolidated Motion for Summary Judgment).

A good faith reliance on advice of counsel is not a complete defense to a fraud charge, but one factor for the jury's consideration. *Markowski v. SEC*, 34 F.3d 99, 104–05 (2d Cir. 1994). A defendant may assert a defense of good faith reliance upon the advice of counsel only if an individual (1) made complete disclosure to counsel, (2) sought advice as to the legality of his conduct, (3) received advice that his conduct was legal, and (4) relied on that advice in good faith. *Id.* The jury may be instructed to consider evidence that the defendants relied on counsel only if there is sufficient evidence presented at trial to meet all of the elements of the defense. *See United States v. Evangelista*, 122 F.3d 112, 116-18 (2d Cir. 1997).[11]

---

[11] The "reliance on advice of counsel" defense does not apply to claims that do not require scienter. Thus the defense is unavailable for Section 5 Securities Act claims. *SEC v. CMKM Diamonds, Inc.*, --- F.3d ----, 2013 WL 4793215, at *10 n.6 (9th Cir. Sept. 10, 2013); *SEC v. Holschuh*, 694 F.2d 130, 137 n.10 (7th Cir. 1982) ("[G]ood faith is not relevant to whether there has been a primary violation of the registration requirements.") (citing *SEC v. Guild Films Co.*, 279 F.2d 485, 490 (2d Cir.1960). The same should follow for claims under Sections 13, 14 and 16 of the Exchange Act, since they, too, do not require a showing of scienter. *See SEC v. McNulty*, 137 F.3d 732, 740-41 (2nd Cir. 1998) (affirming that defendant's lack of scienter was not a defense to claims under § 13 since scienter is not an element); *SEC v. Das*, 723 F.3d 943, 953-54 (2nd Cir. 2013)("[s]cienter is not a required element of a claim brought under section 14(a) or Rule 14a–9 against a corporation's officer"); *SEC v. Verdiramo*, 890 F.Supp.2d 257, 274 n.14 (S.D.N.Y. 2011) ("neither Section 13(d) nor Section 16(a) 'require[s] a showing of scienter to establish liability'").

In denying the Wylys' summary judgment motion, this Court found that defendants had failed to provide any evidence to establish any of the elements of their defense.  ECF No. 190 at 39 (*SEC v. Wyly*, --- F.Supp.2d ----, 2013 WL 2450545, at *11 (S.D.N.Y. June 6, 2013) ("There is no evidence that the Wylys were explicitly advised that they were not beneficial owners of securities held by the Offshore Trusts.")).  Since that ruling, the record is unchanged.  There is no evidence of record that the Wylys or their surrogates ever sought the advice of counsel on the central issue of this case: whether the facts and circumstances of the Wylys' operation of their offshore trusts made them beneficial owners of the trusts' assets, requiring SEC disclosure.

Having failed to provide any evidence to support such a defense at trial, they would not be entitled to any instruction allowing the jury to consider this defense.  As this Court stated at the pre-motion conference on October 7, allowing defendants to introduce assertions of their reliance on counsel without providing the factual predicate for the defense would "pollute the trial record for six weeks and only to say at the end of it you can't present that to the jury because you haven't made it out as a matter of law."  SEC MIL Ex. 1 (Oct. 7, 2013, Pre-Motions Hearing Tr.) at 21.  Because the defendants have failed to establish the factual predicate for the defense, evidence regarding the retention, and presence or involvement of lawyers,  is not relevant and would confuse and mislead the jury.  Accordingly, the defendants should be precluded from presenting such documents and testimony.

**B.     There Is No Support in the Record for
Assertion of an Advice-of-Counsel Defense**

**1.     Defendants Did Not Make Complete Disclosure to Counsel**

Defendants did not make complete disclosure to counsel.  In fact, none of the lawyers cited by the Wylys in their summary judgment papers knew the facts surrounding the operation of the trusts, and have so testified under oath.  These "facts and circumstances" are essential to

any opinion or advice on beneficial ownership.  *See, e.g.,* SEC MIL Ex. 2 at p. 4 (April 25, 2012

John McCafferty Dep. Tr. at 458:1-25 -  knowing those facts would have caused him to consider

further whether trusts were independent).  *See, e.g., United States v. Lindo*, 18 F.3d 353, 356-57

(6th Cir. 1994) (finding insufficient evidence to support an instruction of reliance on advice from

counsel without evidence that defendant provided all of the pertinent facts regarding the stock

sales at issue).

There is no evidence of record that the Wylys or their surrogates disclosed to counsel the

extent of the Wylys' involvement in the disposition and use of trust assets. To the contrary, the

testimony of the securities lawyers retained by defendants is consistent: they were not aware of

the use of trust assets to purchase real estate, art, jewelry among other valuable acquisitions for

the exclusive use and enjoyment of defendants and their family members.  See, *e.g.*, SEC MIL

Ex. 2 at pp. 1-2 (April 26, 2012 Robert Estep Dep. Tr. at 305:18-306:2 - Estep had no knowledge

of jewelry purchases); *id.* at 4  (April 25, 2012 John McCafferty Dep. Tr. at 458:21-459:5 -

McCafferty did not know about use of trust assets to purchase jewelry, *etc*.).  So too, counsel

were unaware that the Wylys' "recommendations" to the trusts through protectors were followed

without fail and that the trustees took no action that was not "recommended" by the Wylys

through their surrogates.  *See, e.g.*, *id*. at 2 (April 27, 2012 Robert Estep Tr. at 620:5-10 - Estep

did not know the Wylys had any influence over the investment decisions of the trusts; April 26,

2012 Robert Estep Tr.at 308:3-309:18 - Estep did not know that trustees followed

recommendations 100% of the time); *id*. at 4 (April 25, 2012 John McCafferty Dep. Tr. at

454:14-21, 455:10-15, 455:24-456:14 - McCafferty had no "visibility" on day-to-day operation

of trusts, did not understand how the investment process was handled, and did not know Wylys

made every investment recommendation and trustees followed those recommendations); s*ee also*

*id.* at 5 (April 5, 2012 James Ryan Tr. at 422:4-14 - Ryan believed that the Wylys did not share any voting or dispositive power over the securities).

Jones Day lawyer John McCafferty explained that the Wylys were extremely private as to personal matters; that the Offshore System fell within the personal category of Wyly family business; and Jones Day did not have free access to that side of the Wylys' business. *Id.* at 3 (July 3, 2008 John McCafferty Inv. Tr. at 81:7-82:7).

### 2.    Neither the Wylys nor Their Surrogates Sought Advice on the Issue of Their Beneficial Ownership and Control

Neither the Wylys nor their surrogates sought advice on whether the facts and circumstances of their operation of the trusts constituted control rendering the beneficial owners of the trust assets requiring SEC disclosure.[12]  The testimony of the securities lawyers retained by defendants is consistent: none were asked to give advice or provide an opinion on whether the Wylys in fact controlled the trust assets and were thereby beneficial owners.  The advice-of-counsel defense presupposes the defendant's solicitation of advice in good faith.  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir.1989) (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908)).

For example, Michele Boucher testified she had an "understanding" that legal advice was obtained related to a question about surpassing a five percent holdings requirement," but she

---

[12] Their failure to seek advice from counsel on whether they were beneficial owners for purposes of annual disclosures required under the securities laws is striking.  The Wylys answered directors' and officers' questionnaires as part of annual SEC filings by Michaels Stores, Inc. ("MIK"), and Sterling Software, Inc. ("SSW").  Those questionnaires explained that "…you are deemed to be the beneficial owner of a security if, among other things, you have or share (i) voting power or (ii) investment power (*i.e.*, the power to dispose or direct the disposition of such security), or both."  Furthermore, power to vote or dispose of securities may result from "contracts, relationships or understandings with third parties."  SEC Ex. 150;.*see also* SEC Ex. 152 at 3 (Beasley Memo) (Beneficial ownership can be predicated on an Insider's ability to profit "directly or indirectly from purchases or sales of securities" and "shared voting or investment power over securities.")

could not recall any particular advice nor did she recall her specific involvement in obtaining legal advice for the Wylys.  SEC MIL Ex. 2 at 5 (October 9, 2012 Boucher Dep. Tr. at 294:8-21).  Keeley Hennington was asked to confirm that the Wylys had sufficient wealth to "afford good lawyers to give them legal advice," but she did not identify any specific legal advice given as to the Wylys' beneficial ownership of securities held in their Offshore System.  *Id.* (July 27, 2012 Hennington Dep. Tr. at 597:7-19).  Sharyl Robertson assumed that defendant French "took care of whatever needed to be taken care of," regarding whether the Wylys beneficially owned securities held by their Offshore System.  *Id.* (Sept. 20, 2012 Robertson Dep. Tr. at 283:12-21).  Michelle Boucher, a former Wyly Offshore System "Protector," has no memory of Jones Day looking into the question of "whether the Wylys needed to include the securities held by the offshore trusts in their own SEC Schedule 13D filings."  *Id.* (Oct. 9, 2012 Boucher Dep. Tr. at 429:13-17).

### 3.  Neither the Wylys Nor Their Surrogates Received Advice that They Were Not Beneficial Owners

Neither the Wylys nor their surrogates received advice that they were not beneficial owners of the trust assets.  The lawyers on whose advice defendants claim they relied have all denied providing advice to the defendants.

#### a.  Jackson Walker Attorneys

Former Jackson Walker securities counsel Charles Gilbert testified that he "never advised Sam or Charles Wyly that they did not beneficially own the securities held" by their Offshore System.  *Id.* at 2 (April 5, 2012 Charles Gilbert Dep. Tr. at 170:25-171:4).  Similarly James Ryan, also a Jackson Walker securities lawyer, testified that his firm never issued the Wylys any oral or written opinion that they were not beneficial owners of securities held by their Offshore System.  *Id.* at 5 (June 5, 2008 James Ryan Inv. Tr. at 71:24-72:12).

- 8 -

### b.    Jones Day Attorneys

Former Jones Day partner Robert Estep testified that he never "advised any member of the Wyly family or the Wyly family office that Sam or Charles Wyly were not beneficial owners of the securities held by their Isle of Man trusts." *Id*. at 1 (April 26, 2012 Robert Estep Dep. Tr. at 293:6-10, 13-19).  Estep also testified that he did not have sufficient facts to issue an opinion on whether "Sam or Charles Wyly were required to disclose the securities held by their Isle of Man trusts on their SEC Section 16 and Section 13" filings.  *Id.* (April 26, 2012 Robert Estep Dep. Tr. at 293:21-295:22).   No one at his firm conducted any investigation to determine this question *Id.* at 2 (April 27, 2012 Robert Estep Dep. Tr. at 623:8-14), and Estep was not aware of any lawyers at his firm opining on this issue.  *Id*. at 1 (April 26, 2012 Robert Estep Dep. Tr. at 295:4-22).  Finally, Estep said that "[i]f Sam or Charles Wyly claimed that they relied on Jones Day in not reporting the securities held by their Isle of Man entities on their Section  16 and Section 13 filings because Jones Day prepared their … Forms 4 and Schedule 13Ds" they would not be justified in making such a claim.  *Id.* (April 26, 2012 Robert Estep Dep. Tr.at 295:16-22).

Jones Day lawyer John McCafferty[13] testified that he did not have any conversations with Sam Wyly, Charles Wyly, Michele Boucher, or Sharyl Robertson as to whether or not the Wylys were beneficial owners of securities.  *Id.* at 2 (July 3, 2008 John McCafferty Inv. Tr. at 74:21-75:11).  McCafferty also testified that contrary to the Wylys' claims, the scope of Jones Day's representation did not include proactively spotting and probing issues, and, moreover, Jones Day did not have full knowledge of all the relevant facts  *Id.* at 3 (July 3, 2008 John McCafferty Inv. Tr. at 79:18-80:8).  McCafferty assumed Trustees exercised independent business judgment and he was not involved.  *Id.* at 4 (April 25, 2012 John McCafferty Dep. Tr. at 450:22-451:4)

---

[13] Defendants described McCafferty as a securities lawyer. He was not.  SEC MIL Ex. 2  at 3 (April 11, 2012 McCafferty Dep. Tr. at 13:16-24).

McCafferty also said that the Wylys would not be justified in claiming they relied on him not to disclose to the SEC that they beneficially owned Isle of Man-held securities. *Id*. at 3 (April 11, 2012 John McCafferty Dep. Tr. at 199:1-13).  Consistent with the testimony of other Wyly securities counsel, McCafferty never advised any Wyly family member or family office employee that the Wylys were not beneficial owners of securities held by the Isle of Man trusts, noting that he never conducted a factual investigation that would support such advice.  *Id*. (April 11, 2012 John McCafferty Dep. Tr. at 197:13-198:8); *id*. at 5 (April 25, 2012 John McCafferty Dep. Tr. at 471:22-472:19).

### c.    Wyly Employees

That the defendants did not receive any advice of counsel is also confirmed by their employees.  Keeley Hennington testified that she never received a formal legal opinion in the course of her duties as head of the Wyly family office.  *Id.* (July 25, 2012 Hennington Dep. Tr. at 111:10-18).  Sharyl Robertson, former Wyly family office CFO, testified she never saw any written legal opinions that addressed whether the Wylys were the beneficial owners of securities held in their Offshore System.  *Id.* (Sept. 20, 2012 Robertson Dep. Tr. at 283:21-24).

### 4.    Defendants Did Not Rely in Good Faith on Advice of Counsel

As demonstrated above, the Wylys did not make complete disclosure to counsel, did not seek advice as to the legality of their conduct, and did not receive advice that their conduct was legal.  Rather, they operated their trusts through a legalistic construct based on the fiction that their directions to the trustees made through "protectors" were mere "recommendations" that the trustees were not required to follow.  On this record, they cannot show that they relied in good

faith on advice of counsel and, therefore, the advice-of-counsel defense is unavailable to them. *See Markowski*, 34 F.3d at 104-05.[14]

### C. On this Record, Evidence of the Presence and Involvement of Lawyers Does Not Support a Viable Defense and Would Be Misleading, Confusing and Unduly Prejudicial

The Defendants have failed to provide evidence of the Wylys seeking, receiving and following legal advice that they did not have beneficial ownership or control of the off-shore assets.  It is axiomatic that the defendants cannot rely on advice that was never provided, and on this record, defendants would not be entitled to a jury instruction on their purported defense.  *See United States v. Hill*, 643 F.3d 807, 850-51 (11th Cir. 2011) (finding district court did not abuse its discretion in denying an instruction when there was no testimony that defendants relied on any advice of counsel).  General evidence of the engagement, presence and involvement of lawyers in connection with the preparation of various forms and reports filed with the SEC has only marginal, if any, probative value and should be precluded under Federal Rule of Evidence 403 as misleading, confusing and unduly prejudicial.

Based on the approach taken by the defense during depositions, the SEC anticipates that at trial, beginning with their openings, defense counsel will place great emphasis on the purported cadre of lawyers the Wylys retained, stressing that these lawyers were involved in preparing and filing SEC forms, proxies, and periodic reports.  We anticipate that most of the Wyly family surrogates will testify, if permitted by the Court, to their assumptions about various lawyers and those lawyers' interactions with the Wylys.  None will testify that the Wylys sought

---

[14] *See also United States. v. Langston*, 590 F.3d 1226, 1235-36 (11th Cir. 2009) (failure to give instruction on defense proper when there was no evidence suggesting that defendant actually relied on any legal opinion); *Spirt v. Bechtel* (Frank, J. dissenting), 232 F.2d 241, 255-56 (2d Cir. 1956) ("It would be extending the 'advice of counsel' exception to an unprecedented degree to apply it to a situation like this, where these defendants neither consulted counsel, nor received any advice whatever, relating to the statute they are accused of violating.").

directly, or through them, advice on the central issue of this case: control and beneficial

ownership.   The presence and general involvement of attorneys in filing SEC disclosures is

simply not relevant to that issue. "Compliance with federal securities laws cannot be avoided by

simply retaining outside counsel to prepare required documents."  *SEC v. Enterprises Solutions,*

*Inc.,* 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001); *see United States  v. Peterson,* 101 F.3d 375,

381-82 (5th Cir. 1996) (requiring defense to show reliance on attorneys in connection with the

omission or misrepresentation alleged by the Government was not abuse of discretion).[15]

Defendants should not be permitted to mislead and confuse the jury and unfairly

prejudice the SEC's case by presenting evidence or argument that does not relate to a viable

defense.  *United State v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (finding that it is "well

established that an instruction should not be given if it lacks evidentiary support or is based upon

mere suspicion or speculation").[16]  Such evidence and argument will invite the jury to draw the

impermissible inference that, from the mere presence of attorneys in various transactions, the

Wylys were reasonable in believing that they were not beneficial owners and controllers.  There

is a high risk that a jury will misunderstand the purpose of this kind of testimony and, hence, that

testimony ought to be excluded under Rule 403.  Having failed to provide any basis for the

reliance on counsel defense, the defendants should not be permitted to slip in through the back

door what they cannot fit through the front.  *Subaru Distribs. Corp. v. Subaru of Amer., Inc*., 47

F.Supp.2d 451, 469 (S.D.N.Y. 1999).

---

[15] *See also United States v. Powell*, 680 F.3d 350, 357 (4th Cir. 2012) (defendant failed to
provide evidence from which a reasonable jury might find that attorney "served as more than a
mere drafter in preparing the letter" or that he acted in good faith on the attorney's legal advice);
*United States. v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006) (no instruction necessary for mere
consultation with an attorney in connection with a particular transaction without evidence of full
disclosure of facts).

[16] *See also United States v. Rice*, 449 F.3d at 897 ("A district court need not give any defense
instruction where the facts do not support the defense").

### III.    Wyly Family Office Employees and Others Acted as Agents of the Wylys

####         A.    The Witnesses

The SEC seeks an order holding that statements made by Defendants' employees and agents be admissible, pursuant to Fed.R.Evid. 801(d)(2)(D).  Specifically, the SEC requests a preliminary finding that the following individuals were employees and/ or agents of the defendants[17] during the dates indicated below for the purpose of admitting relevant statements under Rule 801(d)(2)(D):

####         1.    Michelle Boucher

Michelle. Boucher was an employee and/ or agent of the Wylys from September 1995 through 2010.  As discussed below, Ms. Boucher was the senior employee of Irish Trust Company Limited, a Cayman Island company established by the Wylys to serve, in part, as their offshore family office.  Ms. Boucher also has served as the Protector of all of the Wyly Offshore Trusts from January 2001 through the present day.[18]

####         2.    Keeley Hennington

Keeley Hennington has been an employee and agent of the Wylys from January 1999 through the present. She was hired by the Wylys in January 1999, was promoted to Chief Financial Officer ("CFO") of the Wyly family office in June 2000, and remains in that position today.  During Ms. Hennington's deposition in this case, counsel for the Estate of Charles Wyly

---

[17] These individuals were identified during the hearing.  Oct. 7, 2013 Pre-Motions Hearing Tr. at 13:14-24.  Also, the Court agreed with SEC counsel that "defendants' current counsel, to the extent there were admissions made in correspondence with the SEC," should also be treated as defendants' agents.  *Id.* at 19:24-20:6.

[18] It is the SEC's understanding that the Court wanted evidence of employee/ agency status only as to Michelle Boucher; therefore, any exhibits or testimony cited as to the other individuals is for the benefit of opposing counsel, and have not been attached hereto as exhibits.

acknowledge her status as his client's agent.  (July 26, 2012 Keeley Hennington Dep. Tr. at 306:10-16).

### 3.    Sharyl Robertson

Sharyl. Robertson was an employee of the Wylys from the late 1970s through the end of 1998 and was an agent of the Wylys from March 1992 through November 2004.  Ms. Robertson served as the CFO of the Wyly family office from before 1992 through the end of 1998, at which time she committed herself exclusively to the role of CFO of Maverick Capital, a hedge fund originally established by Sam Wyly and operated out of the same building as the Wyly family office.  Ms. Robertson also served as the Protector of all the Wyly Offshore Trusts from their creation in March 1992 through November 2004, when she resigned as Protector of all the Wyly Offshore Trusts.  Ms. Robertson's status as an agent of the Wylys beyond her period of employment with them was recognized by Special Master Capra.  In finding that a March 31, 2000 document from a Wyly tax lawyer to Robertson was protected by the Wylys' attorney-client privilege, Professor Capra stated that "Robertson is – even though working at Maverick at the time – an agent necessary to facilitate the lawyer-client relationship by implementing advice of counsel.  There is no requirement that, to be a necessary agent, Robertson had to be employed in the Wyly family office."  ECF No. 67 at 26 (July 27, 2011 Special Master Order).

### 4.    Evan Wyly

Defendant Sam Wyly's eldest son, Evan Wyly, has been an agent of Sam Wyly throughout the entire period relevant in this case.  Sharyl Robertson testified that she communicated with Evan Wyly regarding Offshore Trusts matters because he worked closely together with his father.  SEC MIL Ex.  (Sept. 21, 2013 Sharyl Robertson Tr. at 559:1-560:4).  She further testified that, at Sam's request, she used Evan Wyly as a means to communicate with

Sam Wyly because about Offshore Trust matters because Sam "was wanting to get Evan more experience." *Id.* (Sept. 21, 2013 Sharyl Robertson Tr. at 583:17-586:2). In addition, there are numerous documents where it is apparent that Evan Wyly is either communicating on behalf of, or representing, Sam Wyly. *See*, *e.g.,* SEC Ex. 215 (Oct. 20, 1999 Boucher email to Robertson re additional 500K shares for equity swap); SEC Ex. 402 (Ken Jones file note re Nov. 7, 2000 Geneva meeting with Robertson, Boucher, Evan Wyly, Hennington, and Donnie Miller).

### 5.    Donald R. Miller, Jr.

Charles Wyly's son-in-law, defendant Donald Miller, was an agent of Charles Wyly throughout the entire period relevant to this case. Like Evan's role with respect to Sam Wyly, Donnie Miller occasionally represented or spoke on behalf of his father-in-law Charles in communications and meetings regarding the Offshore Trusts. *See*, *e.g.*, SEC Ex. 407 (Oct. 16, 2000 Boucher memo to Robertson & Mike French, cc to Hennington and Donnie Miller re Oct. 11, 2000 meeting). As Charles Wyly's representative, Donnie was copied on numerous documents regarding the Offshore Trusts. *See*, *e.g*., SEC Ex. 219 (April 29, 2004 Boucher memo to Charles Wyly, Donnie Miller, Evan Wyly & Hennington re Bank of America brokerage accounts); SEC Ex. 231 (May 10, 2002 Hennington fax to Mary Cox for distribution to Donnie Miller & Charles Wyly re Isle of Man trust funding of First Dallas International).

### 6.    Louis J. Schaufele III

In addition to being a defendant, Louis Schaufele was an agent of the Wylys from at least March 1992 through November 2004, through his position as their stockbroker. ECF No. 58 at ¶ 18 (Sam Wyly's Answer).

### 7.     Michelle Crittenden

Michelle Crittenden was an employee/agent of defendant Louis Schaufele from 1998 through November 2004 because she worked for him as his primary sales assistant.  (Crittenden Dep., p. 8:5-10, p. 9:13-10:6, p. 18:13-19:14)  Ms. Crittenden also served as an agent of the Wylys from 1998 through November 2004 as a result of Mr. Schaufele's agency status.

### 8.     Michael French

In addition to being a defendant, Michael French was an employee/agent of the Wylys from 1992 through the end of 2000.  French served as a Protector of all the Wyly Offshore Trusts from their creation in March 1992 through the end of 2000.  *See* ECF No. 52 at ¶ 17 (Michael French's Answer); ECF No. 58 at ¶ 17 (Sam Wyly's Answer).  In addition to his role as Trust Protector, Michael French was an employee of the Wylys from 1992 through the end of 2000, during which time Sam Wyly guaranteed French a minimum annual income of $1.5 million.  *See* SEC MIL Ex. (Feb. 28, 2007 Michael French Inv. Tr. at 28:4-29:21; Sept. 9, 2008 Michel French Inv. Tr. at 192:6-194:4; 202:15-203:5); SEC Ex. 141 (Dec. 21, 2000 Settlement agreement between Michael French, Charles Wyly & Sam Wyly); SEC MIL Ex.  (Sept. 20, 2012 Sharyl Robertson Dep. Tr. at 36:25-38:25).

### B.     The October 7 Pre-Motions Hearing

At the October 7, 2013 Pre-Motions Hearing, defense counsel acknowledged that each of the above witness, except Michelle Boucher, was either an employee or an agent of at least one of the defendants.  SEC Ex. MIL Ex. 1 (Oct. 7, 2013 Pre-Motions Hearing Tr.) at 14:5-19:21.  Accordingly, the Court instructed the SEC to provide evidence, showing Boucher's agency or employment, and to provide the relevant dates during which the SEC alleges each of the other persons purportedly acted as an agent or employee.  *Id*. at 15:5-15; 16:18-17:9; 17:10-16; 18:8-

18. The Court limited its *in limine* review to agency and employment determinations, declining to rule on specific statements until trial. *Id.* at 19:7-21.

### C.   Fed.R.Evid. 801(d)(2)(D) Standards

A statement is not hearsay if it is offered against an opposing party and "it was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed.R.Evid. 801(d)(2)(D). Admissibility under Rule 801(d)(2)(D) should be granted freely. "Liberal admissibility of this sort of proof is grounded on certain premises. One is that an employee is usually the person best informed about certain acts committed in the course of his employment, and another is that while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

To lay a foundation under Rule 801(d)(2)(D), a proponent must establish[19]:

1.      the existence of an agency relationship,

2.      that the statement was made during the course of the relationship, and

3       that it relates to a matter within the scope of the agency.

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 128-129 (2d Cir. 2005), *cited with approval in*, *Abu Dhabi Commercial Bank v. Morgan Stanley*, 2013 WL 1155420, at *5 n.46 ; *Fifty–Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, No. 08 Civ. 6143(DLC), 2011 WL 3874861, *5 (S.D.N.Y. Aug. 31, 2011).

Within the Second Circuit, "the existence of an agency relationship" may be established by a showing that the declarant was directly responsible to the opposing party, who directed the company's operations and made all the final decisions. *Zaken v. Boerer*, 964 F.2d 1319, 1323

---

[19] In deciding whether the elements of Rule 801(d)(2)(D) have been met, "the [C]ourt is not bound by evidence rules, except those on privilege." Fed.R.Evid.104(a).

(2d Cir.1992); *see also United States v. Rioux*, 97 F.3d 648, (2nd Cir.1996) (declarants were hand-picked by defendant, served at defendant's pleasure, and received their instructions through defendant).

Additionally, "'[a] person's statement that he was an agent of another may not establish that relationship as an incontrovertible fact, but it can help establish that that individual himself believed that he was acting on another's behalf and under another's control.'" *Cabrera v. Jakabovitz*, 24 F.3d 372, 387 (2nd Cir. 1994).

"The authority granted in the agency relationship need not include authority to make damaging statement, but simply the authority to take action about which the statements relate." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 538 (2nd Cir.1992); *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003)(holding that "[t]o qualify an admission, an employee need only be performing the duties of his employment when he comes in contact with the particular facts at issue").

### D.        Michelle Boucher Was an Employee and/ or an Agent of the Wylys

That Boucher was an employee or agent of the Wylys is evident from many facts in the record.  First, it is shown by the Wyly's own responses to discovery requests.  In response to an SEC request for documents, the Wylys claimed certain documents were protected from discovery under the attorney-client and work-product privileges, and the SEC moved to compel production.  ECF Nos. 38 and 39.  As part of their opposition to the SEC's motion to compel, defendants filed a declaration by Keeley Hennington, Wyly Family Office, in which she stated that "While at Irish Trust. Ms. Boucher periodically worked with me in representing the Wyly family office in connection with certain matters, particularly with respect to the Wylys' non-US interests."  ECF No. 46-2 at ¶ 7.  Ms. Hennington further declared that:

> Private, internal communications among employees of the family office
> concerning the Wylys' personal, financial and legal interests, as well as
> communications with and advice received from counsel for the Wylys are
> expected and required to be kept confidential. *Additionally, Ms. Boucher was
> never treated as, or considered to be an outside third-party by me or other family
> office employees when she was providing services to the Wylys*, and our
> conversations regarding legal advice from, or communications with, the Wylys'
> lawyers were to be kept, and were kept, confidential and subject to the attorney-
> client privilege (emphasis added).

*Id*. at ¶ 9.

Boucher's role as an agent was further confirmed by the Special Master's findings. An off-shoot of the SEC's motion was the Court's appointment of Professor Daniel Capra, Esq., as Special Master tasked with evaluating remaining disputes involving defendants' assertion of privilege under the common interest doctrine and an agency theory. ECF No. 51 at ¶ 4.

Indeed, Boucher's own statements confirmed her role. Included in defendants' submissions to the Special Master was a declaration by Michelle Boucher, which was specifically intended to establish an agency privilege. ECF No. 66 at 2 (Memorandum Opinion and Order on Documents Asserted by the Wylys to be Protected by the Common Interest Privilege- Michelle Boucher and Irish Trust Company). In a July 27, 2011, memorandum opinion, Special Master Capra referenced Boucher's declaration, noting that:

> The Wylys support their agency-privilege argument by, among other things,
> submitting affidavits of Michell [sic] Boucher and Keeley Hennington.[20]
> Boucher in her affidavit states that she while she was employed at the Irish Trust
> Company (ITC), she conferred on confidential matters with counsel for the
> Trustees and for the Wylys, and also communicated regularly with employees of
> Highland Stargate — especially Keeley Hennington, the CFO, who oversaw the
> "family office" division of Highland Stargate.

ECF No. 67 at 2. In footnote 6 of his opinion, the Special Master found that

> if not for the advice of counsel waiver and the drafts rule, the Draft IDR responses

---

[20] Both submitted declarations, not affidavits.

as well as the transmitting email would be protected by the privilege as these documents are unquestionably on a legal matter, and *Boucher and Hennington are operating as necessary agents*. That is so with all the Draft IDR responses discussed in this opinion, and so the Special Master's determination that the legal advice and necessary agent requirements are met will not be repeated for each communication regarding IDR responses (emphasis added).

*Id.* at 9.

In her declaration referenced by the Special Master, Michelle Boucher explained that she was employed at the Irish Trust Company (Cayman) Ltd. ("ITC")[21] as Manager of Finance and Administration from 1995 to 1999, and as its CFO from 1999 until 2010.  June 28, 2011 Declaration of Michelle Boucher at ¶ 2.  According to Ms. Boucher, ITC:

> provided administrative services to foreign trusts established by or for the benefit of Samuel E. Wyly and Charles J. Wyly, Jr. (collectively the 'Wylys') or their families (the 'Foreign Trusts').  For example, ITC assisted with compiling financial information regarding trust transactions and helped to improve the efficiency of communication amongst the trustees of the Foreign Trusts who resided in the Isle of Man (the 'Trustees') and the Wylys.

*Id.* at ¶ 3.  Ms. Boucher noted that "from time to time, [she] was also requested to attend meetings and conduct discussions with legal counsel on behalf of the Trustees and the Wylys.  This would only be done with the authorization of the relevant Trustees and the Wylys, respectively." *Id.* at ¶ 4.

In her investigative testimony in this matter, Boucher outlined the specific facts that show her role as employee or agent.  Ms. Boucher reported directly to Wyly Family Office CFO Sharyl Robertson, who was responsible for evaluating Ms. Boucher's work performance, and made decisions about Ms. Boucher's compensation, including salary and bonuses.  SEC MIL Ex. 3 at 1-2 (Oct. 23, 2007 Boucher Investigative Tr. at 34:7-35:15; Oct. 9, 2012 Boucher Dep. Tr. at

---

[21] Irish Trust's shareholder at the time Boucher started  there was Irish Holdings, which was owned by the Bessie Trust and the Tyler Trust, two Isle of Man trusts established by Sam and Charles Wyly, respectively.  SEC MIL Ex. 3 (Oct. 8, 2012 Boucher Dep. Tr. at 28:16-21; 31:10-32:3).

262:1-10; 268:9-17).  Robertson acted on the Wylys' authority.  *Id.* (Oct. 23, 2007 Boucher

Investigative Tr. at 36:1-25).  According to Ms. Robertson, Ms. Boucher's pay was decided by

the "Wyly group" – "Sam, Charles, Evan in later years, maybe Donnie [Miller]," and Robertson

made recommendations.  *Id.* at 2 (Sept. 20, 2012 Robertson Dep. Tr. at 126:5-13).  In an August

7, 1998 fax, Robertson provided Sam and Charles Wyly with information about the family office

structure, which included a description of the Wylys' relationship with Ms. Boucher and Irish

Trust.  SEC MIL Ex. 4 (SEC Ex. 546).  Robertson wrote that "Irish Trust Company, the offshore

family office, is run by Michelle Boucher who currently direct reports to the CFO of the

domestic family office."  *Id.* at 4 (SEC ED00073790).  Consistent with this evidence is an email

from Ms. Boucher in which she tells Evan Wyly that since Sharyl Robertson "has most directly

been involved with me for both Wyly family and Maverick Fund activities, you consult with her

regarding my increase and bonus for this year.  SEC MIL Ex. 5 (SEC Ex. 609 - Dec. 3, 1999

email).  In a 2005 email to defendant Donald Miller, Boucher provided her compensation history

from 1995 to 2003.  SEC MIL Ex. 6 at 6 (SEC Ex. 608 - Feb. 7, 2005 email).

Evidently, this same information was communicated to Isle of Man trust management

company representatives, who were hired by the Wylys to manage their offshore trusts.  For

example, David Harris, a director of IFG International Limited, memorialized a meeting on

February 14, 1996, in Dallas with Mike French and Sharyl Robertson.  SEC MIL Ex. 7 (SEC Ex.

177 - Feb. 20, 1996 File Note).  In his file note, Harris identified French and Robertson as

effectively running a "'private office' for the Wyly family," with Michelle Boucher as "the

Cayman end of this."  *Id.*  at 1.  Harris also wrote that "we may discuss any matters in relation to

Wyly business with any of these *three* people, and, at a push, his number one son, Evan Wyly or

indeed Sam himself."  *Id.*  Another Isle of Man trust manager, Francis Webb of MeesPierson,

prepared a file note regarding a September 1995 meeting he had with French, Robertson, and Boucher at his offices.  SEC MIL Ex. 8 (SEC Ex. 303 - Sept. 29, 1995 File Note).  Webb was apparently told during the meeting that Boucher established a Cayman office on behalf of the Wylys' Maverick Funds, and that his instructions were to "have prime contact with Michelle in most situations as she is to act as the focus of communications and maintain records etc. which should not be seen in the USA."  *Id.*  at 1.  Webb also noted that "Michael and Sharyl are anxious that any trail of communications between themselves, Michelle and MeesPierson does not give rise to any potential claim that control is being exercised in the USA."  *Id*. at 2.

Substantial evidence supports a finding that Michelle Boucher was an employee and/ or an agent of the Wylys from 1995 to 2010.  She operated the offshore component of the Wyly family office whose responsibilities included the administration of Wyly offshore trusts.  Her work performance was evaluated by the Wylys, her salary and bonuses were decided by them, and she was not viewed by them as an outside third- party.  In sum, Michelle Boucher was an employee of the Wylys.

## IV.    Conclusion

On the basis of the points and authorities cited above, the Securities and Exchange Commission respectfully requests this Court grant the SEC's *in limine* motion to exclude the reliance on counsel defense at the trial of this case, and to treat Michelle Boucher and others identified herein as employees or agents of the defendants, pursuant to Rule 801(d)(2)(D).

Dated:  October 15, 2013                    Respectfully submitted,


                                            __/s/ Gregory N. Miller_____
                                            Gregory N. Miller (GM-5922)
                                            Alan M. Lieberman (AL-6517)
                                            John D. Worland, Jr. (JDW-1962)
                                            Martin Zerwitz (MZ-9765)
                                            Counsel for Plaintiff
                                            Securities and Exchange Commission
                                            100 F Street, N.E.
                                            Washington, DC 20549-5977
                                            Tel.:    (202) 551-4469 (Miller)
                                            Fax:     (202) 772-9292


## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of October 2013, a copy of the SEC's

Memorandum of Law in Support of its Omnibus (Non-Expert) Motion *In Limine* was served on

the following parties via the ECF system:

| | |
|---|---|
| William A. Brewer III | Martin J. Auerbach |
| James S. Renard | Law Offices of Martin J. Auerbach, Esq. |
| Michael J. Collins | 1185 Avenue of the Americas |
| Paul V. Miletic | 31st Floor |
| BICKEL & BREWER | New York, New York  10036 |
| 1717 Main Street, Suite 4800 | |
| Dallas, Texas  75201 | Laura E. Neish |
| | ZUCKERMAN SPAEDER |
| Michael L. Smith | 1185 Avenue of the Americas |
| BICKEL & BREWER | 31st Floor |
| 767 Fifth Avenue | New York, New York  10036 |
| 50th Floor | |
| New York, New York  10153 | Todd Murray |
| | CARRINGTON COLEMAN |
| Martin R. Pollner | 901 Main Street, Suite 5500 |
| John A. Piskora | Dallas, Texas  75202 |
| LOEB &LOEB LLP | |
| 345 Park Avenue | Corbet F. Bryant, Jr. |
| New York, New York  10154 | 10214 Lake Ridge Drive |
| **Counsel for Defendant Samuel E. Wyly** | Richardson, Texas  75081 |
| | **Counsel for Defendant Louis J. Schaufele III** |

Stephen D. Susman
SUSMAN GODFREY
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096

Terrell W. Oxford
David D. Shank
SUSMAN GODFREY
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Kendyl T. Hanks
SUSMAN GODFREY
560 Lexington Avenue
15th Floor
New York, NY 10022-6828
**Counsel for Defendant Donald R. Miller Jr.**

Joshua Klein
Nelson A. Boxer
Jill C. Barnhart
PETRILLO KLEIN & BOXER
655 Third Avenue
22nd Floor
New York, New York 10017
**Counsel for Defendant Michael C. French**

     /s/ Gregory N. Miller
Gregory Miller (GM-5922)
Counsel for Plaintiff
Securities & Exchange Commission