# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                                **Plaintiff,**

v.

SAMUEL E. WYLY,
DONALD R. MILLER, JR., in his capacity
as the Independent Executor of the Will
and Estate of Charles J. Wyly, Jr.,
MICHAEL C. FRENCH and
LOUIS J. SCHAUFELE III,

                                **Defendants.**

No. 1:10-cv-05760-SAS

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S *DAUBERT/ IN LIMINE* MOTION AS TO JONATHAN MACEY

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION ........................................................................................1

II.     MACEY'S OPINIONS .................................................................................2

III.    APPLICABLE LAW ...................................................................................3

        A. The Test Under Rule 702 ......................................................................3

        B. Experts Cannot Usurp the Roles of the Judge or Jury..........................5

IV.     MACEY'S FIRST OPINION IS IRRELEVANT, HIGHLY PREJUDICIAL, AND
        IMPERMISSIBLY ENCOURAGES JURY NULLIFICATION .................................6

        A. The Legislative history of the Williams Act is Irrelevant......................7

        B. The Scope of the Williams Act Is for the Court to Decide, Not Macey .................7

        C. Macey's First Opinion Is Prejudicial and Would Confuse the Jury.........................8

V.      MACEY'S SECOND AND THIRD OPINIONS ARE IMPERMISSIBLE LEGAL
        CONCLUSIONS THAT USURP THE ROLE OF THE JUDGE AND JURY AND
        DISREGARD RELEVANT FACTS ..................................................................10

        A. Macey's Opinions on Beneficial Ownership Are impermissible Legal
           Conclusions...................................................................................10

        B. The Wylys' Liability Does Not Turn On a Finding That the Trusts and/or Trust
           Companies Were Legally Invalid ......................................................10

        C. Macey's Opinion as to the Legality of The Trusts Is Prejudicial and Confusing ...12

        D. Macey's Opinions on Beneficial Ownership and Control Usurp the Jury's Role ..12

        E. Macey's Opinions Are Argumentative and Supplant the Role of Counsel............13

        F. The Jury Decides Credibility Issues, and an Expert May Not Substitute for
           Percipient Witnesses ......................................................................14

        G. Macey's Opinions Are Based on Less Than the Full Record and Are Unreliable .15

VI.     MACEY'S FOURTH OPINION IS IRRELEVANT AND UNRELIABLE...............15

     A. Macey Completely Misconstrues the SEC's Insider Trading Claim ......................15

     B. Macey Fourth "Opinion" Lacks Empirical Foundation ..........................................16

     C. Macey Cannot Opine on Motivations of Percipient Witnesses..............................17

VII.    MACEY SHOULD NOT BE PERMITTED TO NARRATE THE HISTORY OF
     COMPUTER ASSOCIATES' MERGER WITH STERLING SOFTWARE ............18

VIII.   MACEY'S SIXTH OPINION IS AN IMPERMISSIBLE LEGAL CONCLUSION
     THAT INVADES THE PROVINCE OF THE COURT .............................................19

IX.    MACEY'S SEVENTH OPINION IS IRRELEVANT AND IMPERMISSIBLY
     USURPS THE ROLE OF THE COURT...................................................................21

     A. Macey Cannot Encourage Jury Nullification of Established Law..........................21

     B. Any Probative Value of Macey's Criticism of the SEC's Policies Is Outweighed by
       Its Prejudice ..........................................................................................................22

X.     CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*405 Condo Associates LLC v. Greenwich Ins. Co.*, No. 1:11-cv-09662-SAS, 2012 WL 6700225 (S.D.N.Y. Dec. 26, 2012) ....................................................................4

*Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) ...................4

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)............................4

*Arista Records v. Lime Group*, No. 1:06-cv-05936-KMW, 2011 WL 1674796 (S.D.N.Y. May 2, 2011)........................................................................................3

*Bd. of Trustees of AFTRA Ret. Fund v. JP Morgan Chase Bank,* No. 1:09-cv-00686-SAS, 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011)..............................5, 14, 17

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................................7

*Burkhart v. WMATA,* 112 F.3d 1207 (D.C. Cir. 1997).......................................................8

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)......................................3, 4, 5

*Dirks v. SEC*, 463 U.S. 646 (1983)....................................................................................22

*Ebbert v. Nassau County*, No. 1:05-cv-05445-AKT, 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008)..............................................................................................18

*Feinberg v. Katz*, No. 1:01-cv-02739-RJS-JCF, 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)...........................................................................................13

*General Elec. Co. v. Joiner,* 522 U.S. 136 (1997)..............................................................4

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., et al.*, 286 F.3d 613 (2d Cir. 2002)..............................................................................................................6

*High v. Jacobs*, 961 F.2d 359 (2d Cir. 1992)....................................................................13

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005).........13

*Holmes Grp., Inc. v. RPS Prods. Inc.,* No. 4:03-cv-40146-FDS, 2010 WL 7867756 (D. Mass. June 25, 2010) ...........................................................................14

*In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d 61 (S.D.N.Y. 2001) ......................5

*In re IPO Sec. Litig.*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) ...............................................19

*In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531 (S.D.N.Y. 2004) ...............2, 5, 6, 13

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................................................3

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp.2d 558 (S.D.N.Y. 2007)...............3, 4, 8

*Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) ...................... *passim*

*Music Sales Corp. v. Morris,* 73 F.Supp.2d 364 (S.D.N.Y.1999) .....................................19

*New York v. FERC*, 535 U.S. 1 (2002) ...............................................................................7

*Nimely v. City of New York,* 414 F.3d 381 (2d Cir. 2005)........................................ *passim*

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)............................................................3, 4, 5, 17

*Piper v. Chris-Craft Indus. Inc*., 430 U.S. 1 (1977) ..........................................................6

*Rosenberg v. XM Ventures*, 274 F.3d 137 (3d Cir. 2001)..................................................11

*Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992)............................................................13

*SEC v. Daifotis*, No. 3:11-cv-00137-WHA, 2012 WL 2051193 (N.D. Cal. June 7,
    2012) ............................................................................................................................18

*SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993) .....................11

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005)........................................................................11

*SEC v. Sierra Brokerage Services Inc.*, 608 F. Supp.2d 923 (S.D. Ohio 2009) ...............11

*SEC v. Tourre*, No. 1:10-cv-03229-KBF, 2013 WL 3089031 (S.D.N.Y. June 18,
    2013) .......................................................................................................................13, 19

*Snyder v. Wells Fargo Bank, N.A.*, No. 1:11-cv-04496-SAS, 2012 WL 4876938
    (S.D.N.Y. Oct. 15, 2012) ...................................................................................... *passim*

*Specht v. Jensen,* 853 F.2d 805 (10th Cir. 1988) ................................................................8

*Treadway Cos., Inc. v. Care Corp., et al.*, 638 F.2d 357 (2d Cir. 1980) ...........................6

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)............................................6, 20

*United States v. Hashimi*, No. 1:06-cr-00442-LAP, 2009 WL 4857608 (S.D.N.Y. Dec. 11, 2009).........................................................................................9

*United States ex rel. Anti–Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County*, No. 1:06-cv-02860-DLC, 2009 WL 1110577 (S.D.N.Y. Apr. 22, 2009).............................................................................................................17

*United States v. Lombardozzi*, 491 F.3d 61 (2d Cir. 2007) ............................17

*United States v. Lumpkin,* 192 F.3d 280 (2d Cir. 1999) ............................5, 8

*United States v. Mavashev*, No. 1:08-cr-00902-DLI-1, 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) ........................................................................13

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988)........................................18

*United States v. Tomasetta*, No. 1:10-cr-01205-JSR, 2012 WL 1080293 (S.D.N.Y. March 30, 2012)........................................................................13

*United States v. Williams,* 506 F.3d 151 (2d Cir. 2007) ...................................3

*Whiting v. Dow Chemical Co.*, 523 F.2d 680 (2d Cir. 1975)...........................11

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69 (2d Cir. 2005) ............................14

## FEDERAL STATUTES

FED. R. EVID. 401......................................................................1, 7, 15, 22

FED. R. EVID. 403..........................................................................1, 9, 22

FED. R. EVID. 702................................................................................. *passim*

**Securities Act of 1933**
Section 10(b)…….[15 U.S.C. § 77j(b)].....................................................19

**Exchange Act of 1934**
Section 13(d)…….[15 U.S.C. § 78m(d)].....................................................6

Section 13(g)…….[15 U.S.C. § 78m(g)].....................................................6

## MISCELANEOUS

113 Cong.Rec. 854 (1967)...........................................................................6

Jonathan R. Macey & Jeffry M. Netter, *Regulation 13D and the Regulatory Process*, 65 Wash. U. L.Q. 131 (1987) ......................................................................9

McCormick on Evidence § 12 ...............................................................................6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:10-cv-05760-SAS** |
| **SAMUEL E. WYLY,** **DONALD R. MILLER, JR., in his capacity** **as the Independent Executor of the Will** **and Estate of Charles J. Wyly, Jr.,** **MICHAEL C. FRENCH and** **LOUIS J. SCHAUFELE III,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION'S**
***DAUBERT/ IN LIMINE* MOTION AS TO JONATHAN MACEY**

Plaintiff U.S. Securities and Exchange Commission ("SEC") submits this memorandum of law in support of its *Daubert* motion to exclude the opinion testimony of Jonathan Macey.

## I.     INTRODUCTION

Defendants have retained Professor Jonathan R. Macey ("Macey") as an expert in this case to offer seven opinions that run the gamut of the SEC's allegations and, in essence, declare the Wylys innocent and the SEC foolish. Macey fails to offer any bases for many of his opinions, while others are based only on a summary of case law, narrating evidence, or weighing evidence and making inferences regarding various people's states of mind. These are issues that the Court and jury, respectively, are more than capable of resolving without Macey. In general, his opinions are unreliable, of limited relevance, and highly prejudicial to the SEC. They fail to satisfy the standards for admissible evidence articulated in Federal Rules of Evidence 401 and 403, much less the more stringent standard for expert testimony promulgated by Federal Rule of Evidence 702. Macey should not be permitted to provide a summation of the defense arguments

under the guise of expert testimony. *See In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) ("experts should not be permitted to supplant the role of counsel in making argument at trial") (citations and quotation omitted). Accordingly, all seven of his opinions should be excluded.

## II.    MACEY'S OPINIONS

Macey is a professor of corporate law, corporate finance and securities law at Yale University. Fitzpatrick Decl. Ex. 1 (Macey' Report) at ¶ 6. He was retained by Defendants Samuel E. Wyly and Donald R. Miller, Jr. ("the Wylys") to provide opinion testimony in this case. *Id.* at ¶ 1. In connection with this assignment, Macey reached the following seven opinions:

1.  The conduct alleged by the SEC does not implicate the central public policy goal of the Williams Act's disclosure requirements: alerting shareholders and the market of a rapid aggregation or accumulation of shares that would indicate a possible shift in corporate control.

2.  The assumption that the Wylys were, under the securities laws, beneficial owners of the securities held and owned by the Trust Entities is unreliable, not reasonable, and would not justify attributing any profits of a Trust Entity to either of the Wylys.

3.  The SEC's allegation that the Wylys controlled the Trust Entities rests on unreasonable inferences that contradict fundamental principles of organizational law and ordinary and customary practice in U.S. corporations.

4.  As a matter of ordinary and customary business practice, individual officers, directors and controlling shareholders of corporations often are of the view that their corporations are underpriced.

5.  Directors of public companies cannot unilaterally affect a change in control.

6.  The swaps did not involve transactions in a security because swaps are not securities.

7.  Trading on the basis of asymmetric information is not wrong and has, in fact been encouraged by the Supreme Court and, in this case, there was no divergence in the interests of the Wylys and the interests of Sterling Software or its Shareholders.

*Id.* at ¶ 14.  On December 10, 2013, Macey testified about the bases and scope of these opinions in a deposition, excerpts of which are found in Fitzpatrick Decl. Ex. 2 and 3 (Macey Dep. Tr.).

## III.    APPLICABLE LAW

"District courts are tasked with the 'special obligation' of serving as the 'gatekeepers' of expert evidence, and must therefore decide which experts may testify and present evidence before the jury." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp.2d 558, 561-62 (S.D.N.Y. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)).  The standard for the admissibility of expert testimony is established by Fed. R. Evid. 702.  The "proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.  *See United States v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert,* 509 U.S. at 593 n. 10).

### A.    The Test Under Rule 702

For expert testimony to be admissible under Rule 702, the district court must ensure that it meets three requirements.  "*First,* the witness must be 'qualified as an expert by knowledge, skill experience, training, or education.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 457 (S.D.N.Y. 2010) (quoting Rule 702).  That analysis proceeds in two steps.   The Court "must first ascertain whether the proffered expert has the educational background or training in a relevant field."  *Arista Records v. Lime Group*, No. 1:06-cv-05936-KMW, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (citations and quotation omitted).  The Court must then "compare the area in which the witness has superior knowledge, education, experience or skill with the subject matter of the proffered testimony."  *Id.*  (citations

and quotation omitted).  "Testimony on subject matters unrelated to the witness's area of
expertise is prohibited by Rule 702." *Malletier,* 525 F.Supp.2d at 642.

"*Second*, the expert's knowledge must be of the type that will 'assist the trier of fact to
understand the evidence or to determine a fact in issue.'"  *See Pension Comm.*, 691 F. Supp. 2d
at 457 (quoting Rule 702).  Thus, expert testimony is inadmissible when it addresses "lay matters
which [the jury] is capable of understanding and deciding without the expert's help." *Andrews v.
Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).  "*Third*, the proposed expert
testimony must be based 'on a reliable foundation.'"  *Pension Comm., 691 F. Supp. 2d at 457
(quoting *Daubert,* 509 U.S. at 597).  "In this inquiry, the district court should consider the indicia
of reliability identified in Rule 702, namely, (1) that the testimony is grounded on 'sufficient
facts or data'; (2) that the testimony 'is the product of reliable principles and methods'; and (3)
that 'the witness has applied the principles and methods reliably to the facts of the case.'"  *Id.* at
458 (quoting Rule 702 and *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d
Cir.2002)).  Rule 702 requires a "sufficiently rigorous analytical connection between that
methodology and the expert's conclusions." *Nimely v. City of New York,* 414 F.3d 381, 396 (2d
Cir. 2005). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district
court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the
expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).  Indeed, "expert testimony
should be excluded if it is speculative or conjectural."  *405 Condo Associates LLC v. Greenwich
Ins. Co.*, No. 1:11-cv-09662-SAS, 2012 WL 6700225, at *3 (S.D.N.Y. Dec. 26, 2012) (quotation
omitted).

Finally, in assessing proffered expert testimony, a judge should be mindful that pursuant
to Rule 403 relevant evidence "may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."
*Pension Comm.*, 691 F. Supp. 2d at 458 (quoting Fed. R. Evid. 403).  As the Supreme Court has
noted, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in
evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative
force under Rule 403 … exercises more control over experts than over lay witnesses." *Daubert*,
509 U.S. at 595.

### B.     Experts Cannot Usurp the Roles of the Judge or Jury

"It is also well-established that expert witnesses are not permitted to testify about issues
of law—which are properly the domain of the trial judge and jury." *Pension Comm.,* 691 F.
Supp. 2d at 458; *see also In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d at 541 ("[I]n deciding
whether the proposed testimony will be helpful to the fact-finder, courts in this Circuit analyze
the testimony to determine whether it 'usurp[s] either the role of the trial judge in instructing the
jury as to the applicable law or the role of the jury in applying that law to the facts before it.'")
(quoting *United States v. Lumpkin,* 192 F.3d 280, 290 (2d Cir. 1999)); *In re Initial Pub. Offering
Secs. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) ("In fact, every circuit has explicitly held that
experts may not invade the court's province by testifying on issues of law." (collecting cases)).
Thus, the use of expert testimony must be "carefully circumscribed to assure that the expert does
not usurp either the role of the trial judge in instructing the jury as to the applicable law or the
role of the jury in applying that law to the facts before it." *Snyder v. Wells Fargo Bank, N.A.*,
No. 1:11-cv-04496-SAS, 2012 WL 4876938, at *2 (S.D.N.Y. Oct. 15, 2012) (quotation omitted);
*see also Nimely*, 414 F.3d at 397.  "Although an expert 'may opine on an issue of fact,' an expert
'may not give testimony stating ultimate legal conclusions based on those facts.'" *Bd. of
Trustees of AFTRA Ret. Fund v. JP Morgan Chase Bank,* No. 1:09-cv-00686-SAS, 2011 WL

6288415, at *4 n. 38 (S.D.N.Y. Dec. 15, 2011) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).  Such testimony would "give the appearance that the court was shifting to witnesses the responsibility to decide the case."  *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) (citing McCormick on Evidence § 12, at 27). Additionally, "experts should not be permitted to supplant the role of counsel in making argument at trial" and cannot "merely synthesize the record evidence to argue the client's case." *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 541, 551 (excluding expert because background evidence "is properly presented through percipient witnesses and documentary evidence").

## IV.   MACEY'S FIRST OPINION IS IRRELEVANT, HIGHLY PREJUDICIAL, AND IMPERMISSIBLY ENCOURAGES JURY NULLIFICATION

Recognizing that many of the reporting requirements the Wylys are charged with violating were imposed by the Williams Act,[1] SEC Ex. 1 at ¶ 23, Macey opines that "the purpose of the relevant provisions of the Williams Act – Sections 13(d) and 13(g) of the Exchange Act – is 'to ensure that investors will be informed about purchases of large block shares,' and 'to alert the marketplace to every large, rapid aggregation or accumulation of securities … which might represent a potential shift in corporate control.'"  *Id.* at ¶ 26 (citing *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., et al.*, 286 F.3d 613, 620 (2d Cir. 2002) and *Treadway Cos., Inc. v. Care Corp., et al.*, 638 F.2d 357, 380 (2d Cir. 1980)).  Based on his view of the animating purpose of the Williams Act, Macey concludes that "the activities identified by the SEC in this action … do not implicate the Williams Act's policies or goals" because "[t]here was no rapid

---

[1] In 1968 Congress enacted the Williams Act, which amended sections of the Securities Exchange Act of 1934 to add additional disclosure requirements.  113 Cong.Rec. 854 (1967) (quoted in *Piper v. Chris-Craft Indus. Inc.*, 430 U.S. 1, 26 (1977)).

aggregation or accumulation of shares that would indicate a possible shift in corporate control." Fitzpatrick Decl. Ex. 1 at ¶ 28.

Macey's first opinion impermissibly instructs the jury as to the applicable law and encourages the jury to ignore any violations of the law that do not dovetail with his interpretation of the law's purposes. Accordingly, this opinion should be excluded because it is not relevant, it usurps the role of this Court, any probative value is outweighed by the prejudice it creates in inviting jury nullification and, ultimately, it would be confusing to the jury.

### A.    The Legislative History of the Williams Act Is Irrelevant

Macey's first opinion is irrelevant, because it has no tendency to make a fact of consequence to this action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Notably, Macey's opinion does not address whether the Williams Act, as written, applies, but rather is almost exclusively based on the Act's legislative history. Fitzpatrick Decl. Ex. 2 at 44:18-45:4, 50:4-51:4. But, as Macey concedes, the text of the Williams Act is clear as to who must report, what must be reported, and when reports are to be made. *Id.* at 54:3-7. Since resort to legislative history is appropriate only when the text of a statute is unclear, *Blum v. Stenson*, 465 U.S. 886, 896 (1984), Macey's interpretation of the legislative history has no bearing on what the Wylys were required to report during their scheme and, therefore, Macey's first opinion should be excluded. *See New York v. FERC*, 535 U.S. 1, 21 (2002) (where Congress uses broad language, evidence of a specific "catalyz[ing]" force for the enactment "does not define the outer limits of the statute's coverage").

### B.    The Scope of the Williams Act Is for the Court to Decide, Not Macey

Even if the text of the Williams Act was unclear, which it is not, Macey's first opinion is only arguably relevant to interpreting the meaning of the Act's provisions. However, it is for the

Court, and not Macey, to explain the applicable law to the jury.  "[T]he use of expert testimony must be carefully circumscribed to assure that the expert does not usurp … the role of the trial judge in instructing the jury as to the applicable law."  *Snyder*, 2012 WL 487693, at *2; *see also Lumpkin*, 192 F.3d at 289 (same); *Malletier*, 525 F. Supp.2d at 566 (same); *Specht v. Jensen,* 853 F.2d 805, 810 (10th Cir. 1988) ("when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed").  Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."  *Burkhart v. WMATA,* 112 F.3d 1207, 1213 (D.C. Cir. 1997).

Macey himself recognized that this role belongs to the Court by explaining that the only relevance of his proposed opinion was that "occasionally judges are interested in the purpose and policies of the statutes that they are applying." Fitzpatrick Decl. Ex. 2 at 46:18-20.  Macey was unable to explain how his first opinion would assist the jury "to understand the evidence or to determine a fact in issue," as required by Fed. R. Evid. 702.  *Id*. at 47:22-48:2.  The legislative intent behind the Williams Act is simply not relevant to the question of whether the Wylys violated the law as written.

### C.  Macey's First Opinion Is Prejudicial and Would Confuse the Jury

Macey invites a highly prejudicial conclusion that even if the Wylys violated the law as written it did not matter because their conduct did not implicate his interpretation of the relevant legislative history.  If Macey's testimony is not intended to instruct the jury as to the law, then it is designed to provide them with a justification for ignoring the law as written.  In essence, Macey makes an improper argument for jury nullification by creating a category of conduct that violates the law as written but does not match his interpretation of the motivation for that law.

*See United States v. Hashimi*, No. 1:06-cr-00442-LAP, 2009 WL 4857608, at *2 (S.D.N.Y. Dec. 11, 2009) (prohibiting expert evidence that seemed "designed to invite nullification – an impermissible purpose"). This potential use of Macey's testimony poses great prejudice to the SEC's case that far outweighs any limited probative value under Rule 403. Macey's opinion is equally problematic because it ignores the purpose of the other statutes and rules which comprise the fabric of the SEC's disclosure requirements. It therefore has the potential to leave the jury with the inaccurate impression that his version of the purported statutory purpose of the Williams Act is the only motivation for all the applicable disclosure requirements. For these reasons, Macey's first opinion should be excluded because it would confuse a jury.[2]

---

[2]       Although Macey's views on the legislative history of the Williams Act are not relevant, it bears mentioning that his current account is misleading because it omits evidence that the Act was intended to have broader coverage than he now suggests. As Macey acknowledged in an earlier criticism of the disclosure scheme, the Williams Act, "as originally introduced," would have contained certain exceptions from the disclosure requirements for investors who "acquire large percentages of shares with no intention of using these blocks to effect a change of control of the corporation." Jonathan R. Macey & Jeffry M. Netter, *Regulation 13D and the Regulatory Process*, 65 Wash. U. L.Q. 131, 134 (1987). Under that earlier version, among other things, the SEC would have had "authority to grant exceptions if the purchaser could satisfy the SEC that the acquisition was made purely for investment reasons and would not in any way change or influence the ultimate control of the corporation." *Id.* But "Congress did not adopt this original statutory scheme." *Id.* Thus, under the SEC's regulations, disclosures sometimes are required when an entity makes an "acquisition for investment purposes only." *Id.* at 137. Moreover, Macey's claim that he seeks to educate this Court about the purposes of disclosure is belied by his omission of important counterarguments that he previously acknowledged. Specifically, his current, one-sided account fails to mention arguments that disclosure---under the Williams Act and other provisions of the securities laws---has the beneficial effects of (1) leading to "more efficient investor decisions regarding capital allocation"; (2) decreasing the "likelihood of fraud in securities transactions"; and (3) incentivizing "investment analysts who study security investments [to] develop … beneficial information." *Id.* at 138-39.

V.   **MACEY'S SECOND AND THIRD OPINIONS ARE IMPERMISSIBLE LEGAL CONCLUSIONS THAT USURP THE ROLE OF THE JUDGE AND JURY AND DISREGARD RELEVANT FACTS**

A.   **Macey's Opinions on Beneficial Ownership Are Impermissible Legal Conclusions**

Macey's second and third opinions are irrelevant, usurp the jury's role, are prejudicial and would confuse the jury.  He declares that "absent a finding that the trusts and/or trust companies are legally invalid," the SEC's "assumption that the Wylys were, under the securities laws, beneficial owners of the securities held and owned by the Trust Entities … is unreliable, not reasonable, and would not justify attributing any profits of a Trust Entity to either of the Wylys."  Fitzpatrick Decl.  Ex. 1 at ¶¶ 30 and 14.  Macey further opines that, as the beneficiaries of the trusts, the Wylys are not responsible or accountable for the investment decisions of the trusts, because the trusts legally own the securities, not the Wylys.  *Id.* at ¶ 35.

Macey also claims that the Wylys could not have enforced any recommendation conveyed to the trustees, lacked legal power to execute trades on behalf of the trusts, and, therefore, the SEC's allegation that the Wylys controlled the Trust Entities rests on unreasonable inferences that contradict fundamental principles of organizational law and ordinary and customary practice in U.S. corporations.  *Id.* at ¶ 40.  Macey rejects the SEC's position that evidence of the trustees following every Wyly directive is evidence of Wyly control under the securities laws, positing instead possible alternative readings of the evidence.  *Id.* at ¶ 49. Because these opinions are irrelevant, usurp the jury's role and are prejudicial and would confuse the jury, they, too, should be excluded.

B.   **The Wylys' Liability Does Not Turn On a Finding That the Trusts and/or Trust Companies Were Legally Invalid**

The SEC does not seek to "pierce" the trusts, nor is it "declining to treat the trusts and the Wylys as separate legal entities."  The terms of the trusts can fully comply with Isle of Man law

and yet still be controlled by the Wylys in ways that render the Wylys beneficial owners under the federal securities laws.  Indeed, Macey demonstrated the marginal relevance of his opinion when he was unable to state how, if at all, the test for whether the corporate veil is pierced relates to beneficial ownership. Fitzpatrick Decl.  Ex. 2 at 65:4-16.

Whether or not the Wylys retained legal control of the securities, the violations alleged here focus on the Wylys' beneficial ownership and control as a factual matter.  Macey agreed that beneficial ownership under the securities laws turns on facts and circumstances.  *Id.* at 83:8-15.  Indeed, the Second Circuit has explicitly held that for purposes of disclosure under Section 16(a), "beneficial owner" is "read more expansively than it would be in the law of trusts." *Whiting v. Dow Chemical Co.*, 523 F.2d 680, 688 (2d Cir. 1975).  Likewise, the law is clear that for purposes of Section 5 "legal control" is not the relevant inquiry for affiliate status under Rule 144(k).  *SEC v. Kern*, 425 F.3d 143, 150 (2d Cir. 2005).  Similarly, whether "beneficial ownership" triggers disclosure obligations under Section 13(d) does not require the SEC to show that the Wylys had "legal title to the stock" or the persons "in whose name the stock is issued." *SEC v. Sierra Brokerage Services Inc.*, 608 F. Supp.2d 923, 956 (S.D. Ohio 2009) (citing *Rosenberg v. XM Ventures*, 274 F.3d 137, 143-44 (3d Cir. 2001)).  Instead, "the inquiry focuses on any relationship that, as a factual matter, confers on a person a significant ability to affect how voting power or investment power will be exercised."  *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993).  The analysis does not turn on "organizational law and established principles of corporate governance," the legal powers and authorities under the trust instruments, or disregard of "the juridical form."  Fitzpatrick Decl. Ex. 1 at ¶¶ 35 and 39. Macey concedes that whether the trusts were the legal owners of the securities does not answer the question whether the Wylys were beneficial owners of the securities.  Fitzpatrick Decl. Ex. 2

- 11 -

at 74:2-13.  Thus, his discussion about legal ownership is irrelevant to this case and should be excluded.

### C.    Macey's Opinion as to the Legality of The Trusts Is Prejudicial and Confusing

Given that the legality of the Wylys' Isle of Man trusts is not relevant to any of the claims asserted here, the jury will wonder why an expert is testifying on this issue.  Macey's testimony seems designed only to invite the jury to infer that the validity and legal powers of the trusts also answers the question whether the Wylys were beneficial owners under the federal securities laws.  Macey concedes that whether the Wylys were beneficial owners for purposes of Section 13(d) disclosures is a different question than whether they were beneficiaries under the trusts.  *Id*. at 65:17-69:18.  He also concedes that there is "a distinction between legal ownership and beneficial ownership."  Fitzpatrick Decl. Ex. 2 at ¶ 74:3-4.  Allowing an expert to discuss "permutations" on the word "beneficial" risks conflating the relevant issues and will confuse the jury.  Fitzpatrick Decl. Ex. 2 at 65:21-69:23.  There is no analysis or information behind Macey's opinion that would be helpful to the jury or is independently admissible.

### D.    Macey's Opinions on Beneficial Ownership and Control Usurp the Jury's Role

The issues of beneficial ownership and control are the central issues in this case.  As Macey's opinions purport to answer the question of whether the Wylys exercised control over the stock held by their offshore trusts, it should be excluded.  "While an expert 'may opine on an issue of fact within the jury's province,' an expert 'may not give testimony stating ultimate legal conclusions based on those facts.'"  *Snyder,* 2012 WL 4876938, at *5.  "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."

*High v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).[3]   An expert does not assist the jury when he "undertakes to tell the jury what result to reach."   *Nimely*, 414 F.3d at 398; *see also Feinberg v. Katz*, No. 1:01-cv-02739-RJS-JCF, 2007 WL 4562930, at *7 (S.D.N.Y. Dec. 21, 2007) ("An expert witness's opinion may not merely tell the jury what result to reach." (citation and quotation omitted)).   Such testimony would "give the appearance that the court was shifting to witnesses the responsibility to decide the case."   *Marx & Co.,* 550 F.2d at 510; *see also SEC v. Tourre*, No. 1:10-cv-03229-KBF, 2013 WL 3089031, at *10 (S.D.N.Y. June 18, 2013) (explaining that an expert "may not invade the province of the jury by 'finding facts' that are in contention").

### E.   Macey's Opinions Are Argumentative and Supplant the Role of Counsel

Macey's opinions purport to summarize what is "undisputed" by the SEC.  Fitzpatrick Ex. 1 at ¶¶ 31 and 40-41 ("The SEC acknowledges…", "a term the SEC recognizes implies", and "The SEC claims …").  Counsel for the Wylys is equally capable of highlighting facts that are undisputed. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("the trial judge ought to insist that the proffered expert bring to the jury more than the lawyers can offer in argument"); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 541 ("[E]xperts should not be permitted to supplant the role of counsel in making argument at trial.").  Thus permitting an expert to tell the

---

[3] *See also, e.g.*, *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) (holding expert testimony on legal conclusions including materiality inadmissible) (citing *Marx & Co.*, 550 F.2d at 510)); *United States v. Tomasetta*, No. 1:10-cr-01205-JSR, 2012 WL 1080293, at *4 (S.D.N.Y. March 30, 2012) ("[T]he Government must not elicit testimony regarding whether the analysts thought that the disclosures would have been material to an investor, because such testimony invades the province of the jury."). *United States v. Mavashev*, No. 1:08-cr-00902-DLI-1, 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010) ("[N]o witness, expert or otherwise, may testify as to legal conclusions, including whether a particular statement is material or not.").

jury that the SEC is "unreasonable" in its interpretations, makes "unwarranted assumptions," and draws "invalid statistical inferences" would be inappropriate and prejudicial.[4]

### F.      The Jury Decides Credibility Issues, and an Expert May Not Substitute for Percipient Witnesses

Macey posits that one explanation for the trustees following all Wyly directives is "because they have respect for the opinions of the party making the suggestion."  Fitzpatrick Decl. Ex. 1 at ¶ 44.  He further opines that "the actions by the trustees here simply reflect the rational belief that the recommendations of those with greater involvement in the company, greater knowledge and greater understanding of the competitive environment in which the company operates are entitled to respect."  *Id*. at ¶ 46.

Why certain witnesses undertook actions is not a proper subject of expert testimony.  *See Bd. of Trustees of AFTRA Ret. Fund*, 2011 WL 6288415, at *8 ("there is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion"); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 86 (2d Cir. 2005) ("credibility assessment is not proper expert testimony")*; Holmes Grp., Inc. v. RPS Prods. Inc.,* No. 4:03-cv-40146-FDS, 2010 WL 7867756, *5 (D. Mass. June 25, 2010) ("No level of experience or expertise will make an expert witness a mind-reader").  It is for the trustees to explain why they followed Wyly directives, not an "expert."

---

[4] Macey concludes that the SEC makes "an invalid statistical inference" in concluding that the one hundred percent success rate of the Wylys' investment suggestions was indicative of control. Fitzpatrick Decl. Ex. 1 at ¶ 43.  Macey posits an alternative explanation for events – namely, that "[o]ne party may follow the suggestion of another party for a variety of reasons," including respect for the party making the suggestion.  *Id*. at ¶ 44.  This assertion is far afield of Macey's area of expertise and he did not perform any statistical analysis to support his assertion. Fitzpatrick Decl. Ex. 3 at 110.   He is not "qualified as an expert on human perception or cognitive function," and does not provide any expertise that the common juror does not possess. *Nimely,* 414 F.3d at 399 n.13.

## G.   Macey's Opinions Are Based on Less
### Than the Full Record and Are Unreliable

Even if it were appropriate for an expert witness to weigh evidence and decide a case, which it is not, Macey's opinions would still be inadmissible because they are only based on defense-selected portions of the total evidence and therefore are unreliable.  Macey did not consider the offshore trustees purchases of tens of millions of dollars' worth of art, jewelry and real estate at the Wylys' behest, or personal loans worth tens of millions of dollars to the Wylys as evidence of beneficial ownership.  Fitzpatrick Decl. Ex. 2 at 78:5-22.   When these facts were brought to his attention, Macey immediately rejected them.  Fitzpatrick Decl. Ex. 2 at 89:24-91:14, 93:8-94:11, Ex. 3 at 97:8-102:16.  By drawing "numerous legal conclusions with regard to the specific facts of the case at hand," Macey's opinions exceed "the scope of permissible testimony."  *See e.g. Snyder,* 2012 WL 4876938, at *5; *see also Marx & Co.,* 550 F.2d at 510 ("examination of documents and correspondence . . . which were equally before the judge and jury" is improper subject of expert testimony).

In sum, opinions number two and three "epitomize[] the type that Rule 702 prohibits[] because [they] usurp[] the role of the judge, the jury, and the adversary system generally." *Snyder,* 2012 WL 4876938, at *5.

## VI.   MACEY'S FOURTH OPINION IS IRRELEVANT AND UNRELIABLE

### A.  Macey Completely Misconstrues the SEC's Insider Trading Claim

Macey's fourth opinion purports to opine on the SEC's insider trading claim against the Wylys, however his misunderstanding of the SEC's claim make this opinion irrelevant under Rule 401.  Macey asserts in his report that the SEC's insider trading claim is based on the assumption that the Wylys' "personal view that Sterling Software should be sold was material nonpublic information", which in turn is based on the assumption that their company was

undervalued and could be sold at a premium.  SEC Ex. 1 at ¶ 57.  Having set up this strawman

assertion, Macey then purports to knock it down by claiming that the Wylys' "interest" or

"optimism" is neither material nor nonpublic and that their trading on this type of interest is

commonplace.  However, the SEC's insider trading claim is not based on the Wylys' inchoate

interest in selling Sterling Software or their optimistic view that the company's stock price was

undervalued, but rather on Sam and Charles Wylys' actual <u>decision</u> to sell the company.  *See* Dkt

No. 1, ¶ 89-90.

This crucial distinction renders Macey's statements about "ordinary and customary

business practices" and what insiders "often" do completely irrelevant to the claims at hand.  For

example, Macey opines that as a matter of ordinary and customary business practice, company

insiders often are of the view that their companies are underpriced, and take steps to correct the

market's erroneous valuation.  Fitzpatrick Decl. Ex. 1 at ¶ 62.  He then hypothesizes that insiders

that have this view (i) "often" believe that "should their companies be acquired" the acquisition

price would be "at a substantial premium over the current price"; (ii) "often favor and attempt to

facilitate such [acquisitions]"; and (iii) "often take long positions in their securities in the hope

and/or expectation that they will profit in the event an [acquisition] should occur."  *Id.*, at ¶¶ 63-

64.  Notably, Macey does not claim that it is "ordinary and customary business practice" for

insiders to engage in long transactions *after* they have already decided to sell their companies.

Accordingly, his opinion is irrelevant to the SEC's insider trading claim.

### B.    Macey's Fourth "Opinion" Lacks Empirical Foundation

Even if Macey's fourth opinion was relevant, which it is not, it should still be excluded

because it lacks empirical foundation and is therefore, unreliable and prejudicial.  Macey's

conclusion that insiders often take long positions based on an expectation that they will earn

profits in the event of a change in control is unsubstantiated and counter-intuitive.  In essence, he opines that the Wylys' interest in selling Sterling Software was not material non-public information because the market assumes that insiders, such as the Wylys, are constantly considering and pursuing plans to sell their companies. *Id.*, at ¶¶ 59-61.  However, Macey cites no studies or other empirical evidence in support of this position.  Moreover, his opinion directly conflicts with this Court's summary judgment ruling, in which the Court held that the Wylys' decision to sell Sterling Software was not immaterial to investors as a matter of law.  *SEC v. Wyly*, 2013 WL 2450545, *7-8 (S.D.N.Y. 2011) [ECF No. 190 at 27].

### C.    Macey Cannot Opine on Motivations of Percipient Witnesses

Macey's fourth opinion is also impermissible because it speculates on the Wylys' state of mind, namely that the Wylys caused their offshore entities to enter into the equity swap not because they had decided to sell Sterling Software, but rather because they viewed Sterling Software as undervalued by the market.  *See Bd. of Trustees of AFTRA Ret. Fund*, 2011 WL 6288415 at *8 ("there is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion").  Macey's fourth opinion serves no purpose other than to improperly bolster testimony that may be provided by the defendants.  *See Pension Comm.*, 691 F. Supp. 2d at 469 (excluding expert testimony that was likely to bolster improperly descriptions of the alleged fraud by fact witnesses and counsel); *United States ex rel. Anti–Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County*, No. 1:06-cv-02860-DLC, 2009 WL 1110577, at *2 (S.D.N.Y. Apr. 22, 2009) ("It is appropriate, therefore, to exclude expert testimony offered to bolster the credibility of fact witnesses." (citing *United States v. Lombardozzi*, 491 F.3d 61, 77–78 (2d Cir. 2007) (citations omitted)); *Nimely*, 414 F.3d at 398 ("expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or

technical expertise, are inadmissible under rule 702"); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("The credibility of witnesses is exclusively for the determination [of] the jury"). Consequently, Macey's fourth opinion should be excluded.

### VII.    MACEY SHOULD NOT BE PERMITTED TO NARRATE THE HISTORY OF COMPUTER ASSOCIATES' MERGER WITH STERLING SOFTWARE

Macey's fifth opinion is that directors of a corporation cannot unilaterally effect a change in control.  In reaching this opinion, Macey summarizes the history of the merger in this case, including the assertion that there was no plan or acquisition strategy in place at Sterling Software when the swap was executed, when concrete steps were taken to put Sterling Software up for sale, what information the Wylys had at the time of the swap transaction, a summary of the content of Form S-4 disclosures, and a description of which directors were independent of the Wylys.  Fitzpatrick Dec. Ex. 1 at ¶¶ 71-78, 90-91.  Macey should not be permitted to simply narrate evidence.  *See, e.g.*, *Marx & Co.,* 550 F.2d at 510 ("examination of documents and correspondence which were equally before the judge and jury" is improper subject of expert testimony); *Ebbert v. Nassau County*, No. 1:05-cv-05445-AKT, 2008 WL 4443238, at *6 (E.D.N.Y. Sept. 26, 2008) (admission of expert testimony at trial was improper where witness "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial that were based . . . on his examination of documents and correspondence . . . which were equally before the judge and jury because such testimony amounts to no more than an expression of [the witness'] general belief as to how the case should be decided" (citation and internal quotation marks omitted)).  Nor should Macey be permitted to testify as to what the Wylys knew when they entered into the swap transaction.  *SEC v. Daifotis*, No. 3:11-cv-00137-WHA, 2012 WL 2051193, *2 (N.D. Cal. June 7, 2012) ("The retained witness, of course, has no personal

knowledge of what really occurred and should never be allowed to pretend to divine for the jury the truth of what actually occurred or what the mental state of an actor was."). The facts at issue should be described by "percipient witnesses," and Macey "cannot be a conduit for a factual narrative." *SEC v. Tourre*, 2013 WL 3089031, at \*10. As such, Macey's fifth opinion should be excluded.

### VIII. MACEY'S SIXTH OPINION IS AN IMPERMISSIBLE LEGAL CONCLUSION THAT INVADES THE PROVINCE OF THE COURT

Macey's sixth opinion addresses the swap transaction between the Wylys' offshore entities and Lehman Brothers, which forms the basis of the insider trading allegations in the Complaint. Macey opines that "[t]he swaps did not involve transactions in a security because swaps are not securities, including at the time these transactions occurred. Furthermore, separate transactions made by Lehman Brothers that did not involve the Wylys were not required components of the swap transactions at issue in this case." Fitzpatrick Decl. Ex. 1 at ¶ 14.

At his deposition, Macey stated that "this opinion is not an opinion about law" and that he was not asked to opine on whether the Lehman swap was in connection with the purchase or sale of a security," an essential element of the SEC's insider trading claims under Section 10(b). Fitzpatrick Decl. Ex. 3 at 168:12-25. However, Macey's assertion that he is not opining as to the law does not survive any scrutiny of his opinion. He contends that during the relevant time period the swaps were not subject to the anti-fraud provisions of the U.S. securities laws. Fitzpatrick Decl. Ex. 1 at ¶ 104. It is difficult to fathom what else this is if not an inadmissible opinion about the law. *See In re IPO Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for any purpose") (quoting *Music Sales Corp. v. Morris,* 73 F.Supp.2d 364, 381 (S.D.N.Y.1999)). Moreover, since it would be for the Court and not the jury to decide whether

swap agreements were subject to U.S. securities laws at the time, there is no aspect of this opinion that would assist the trier of fact as required for admissibility pursuant to Rule 702.

What remains of Macey's sixth opinion is his attempt to resolve the "in connection with" element on behalf of the jury by asserting that the securities Lehman purchased to hedge its position in the swap were completely "separate" from the transaction in which the Wylys engaged. Macey states that it is "illogical and anomalous to say that the securities laws apply in this case because Lehman effectuated the hedge by buying the stock." Fitzpatrick Decl. Ex. 3 at 174:18-175:5. This opinion is an impermissible legal conclusion, and should be excluded. *See Bilzerian*, 926 F.2d at 1294 (expert "may not give testimony stating ultimate legal conclusions based on those facts").

Macey's opinion that the swap transaction did not touch on or coincide with the sale of a security, Fitzpatrick Decl. Ex. 3 at 206:19-25, is also contrary to the law of the case. In dismissing the Wylys' motion to dismiss the insider trading claim on the basis that the equity swap was not "in connection with" the purchase of securities, the Court held that "[a] swap agreement like this one – which explicitly required the purchase of stock by Lehman and called for the Wylys' offshore entities to pay the transaction costs associated with those purchases – clearly 'touches on' and 'coincides' with the purchase or sale of securities so as to satisfy the 'in connection with' requirement, regardless of whether the Wylys themselves purchased or sold the securities." *SEC v. Wyly*, 788 F.Supp.2d at 120 (ECF No. 50 at 57-58).

Highlighting the danger of such opinions, Macey gratuitously opines that "Lehman was not obliged to purchase stock to hedge its exposure in the swaps it entered into with Isle of Man Corporations" based on his review of the relevant agreements. Fitzpatrick Decl. Ex. 3 at 175:19-76:18. However, Macey had not previously focused on the text of the agreement, which

"required Lehman Brothers to go to the market and purchase Sterling Software securities" in order to calculate the notional value for the swap contract, and required the Wylys' offshore entities to pay a $0.06 per share execution fee for Lehman's hedge. *Id*. at 180:24-181:16, 183:8-22; Fitzpatrick Decl. Ex. 4 (SEC Ex. 213). After looking at the agreement's language, Macey agreed that he would have to "reflect" on the actual agreement and "take it into consideration," *id*. at 204:2-16, conceding that paragraph 112 of his report may rest on assumptions that are not true and that his conclusions would then be "erroneous." *Id*. at 205:6-25. Therefore his opinion is unreliable.

Macey's sixth opinion constitutes an impermissible legal conclusion that is not only unreliable, but also contrary to the law of the case. It should be excluded.

## IX.   MACEY'S SEVENTH OPINION IS IRRELEVANT AND IMPERMISSIBLY USURPS THE ROLE OF THE COURT

Macey's seventh opinion is a plea for jury nullification disguised as a rebuttal to SEC expert Dr. Jones' opinions. Macey opines that "trading on the basis of asymmetric information is not wrong and has, in fact, been encouraged by the Supreme Court" and, "in this case, there was no divergence in the interests of the Wylys' and the interests of Sterling Software or its Shareholders." Fitzpatrick Decl. Ex. 1 at ¶ 14.

### A.   Macey Cannot Encourage Jury Nullification of Established Law

Macey essentially opines that the Wylys did nothing wrong, stating, "My analysis also shows that the shareholders and the underlying companies whose shares were traded may actually have benefitted by the Wylys' activities and that in no case were the corporations or their shareholders harmed. Fitzpatrick Decl. Ex. 1 at ¶ 115. The fact that an insider using material non-public information took a long position is not a defense to insider trading. Yet Macey claims that there is no societal benefit to preventing the Wylys from trading on inside

- 21 -

information.  *Id*.  at ¶ 119 ("barring insiders like the Wylys from trading on information that is

not already incorporated in a company's share price, will not benefit members of the general

trading public (true outsiders) because these members of the general public still will not be able

to trade on the basis of this information because they will not receive such information until it

already has become reflected in the share price of the companies to which it pertains").  Macey's

opinion is clearly a request for jury nullification and, as such, is significantly more prejudicial

than probative and should be excluded under Rule 403.

> **B.     Any Probative Value of Macey's Criticisms of**
> **the SEC's Policies Is Outweighed by Its Prejudice**

In addition to concluding that the Wylys did nothing wrong, Macey supplies irrelevant

criticisms of the SEC and its case.  He purports to summarize the Supreme Court opinion in

*Dirks v. SEC*, 463 U.S. 646 (1983), and then accuses the SEC of not accepting Supreme Court

policy.  Fitzpatrick Decl. Ex. 1 at ¶ 120.  He characterizes the SEC as having "stubbornly []

pursued a parity of information theory," which is reflected in the pursuit of this case.  *Id*.  In the

instant case, the Court is more than capable of instructing the jury as to the law.  Macey's

criticisms of the law and the SEC have no relevance to the facts at issue in this case, and are

highly prejudicial to the SEC.  *See Marx & Co.,* 550 F. 2d at 512 ("The danger is that the jury

may think that the 'expert' in the particular branch of the law knows more than the judge—surely

an impermissible inference in our system of law.")  In sum, Macey's seventh opinion fails to

comport with Rules 702, 401 or 403, and it should be excluded in its entirety.

## X.  <u>CONCLUSION</u>

Macey's Report is "so ridden with improper statements and opinions" that this Court should "decline to identify the limited portions that might qualify as expert testimony."  *Snyder*, 2012 WL 487693, at *5.  Thus, for the reasons set forth above, the SEC respectfully requests that the Court preclude Professor Macey from testifying at trial.

Dated:  December 31, 2013

Respectfully submitted,

/s/ *Bridget Fitzpatrick*
Gregory N. Miller (GM-5922)
Alan M. Lieberman (AL-6517)
John D. Worland, Jr. (JDW-1962)
Martin Zerwitz (MZ-9765)
Bridget Fitzpatrick
Counsel for Plaintiff
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4678 (Fitzpatrick)
(202) 772-9292 (fax)
fitzpatrickbr@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on this 31st day of December 2013, copies of the SEC's *Daubert* / *In Limine* Motion as to Jonathan Macey and memorandum of law in support thereof were served in .pdf format on the following parties via the Court's ECF system:

William A. Brewer III
James S. Renard
Michael J. Collins
Paul V. Miletic
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, Texas  75201

Michael L. Smith
BICKEL & BREWER
767 Fifth Avenue
50th Floor
New York, New York  10153

Martin R. Pollner
John A. Piskora
LOEB & LOEB LLP
345 Park Avenue
New York, New York  10154
**Counsel for Defendant Samuel E. Wyly**

Stephen D. Susman
SUSMAN GODFREY
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096

Terrell W. Oxford
David D. Shank
SUSMAN GODFREY
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Mark Hatch-Miller
SUSMAN GODFREY
560 Lexington Avenue
15th Floor
New York, NY 10022-6828
**Counsel for Defendant Donald R. Miller Jr.**

Martin J. Auerbach
Law Offices of Martin J. Auerbach, Esq.
1185 Avenue of the Americas
31st Floor
New York, New York  10036

Laura E. Neish
ZUCKERMAN SPAEDER
1185 Avenue of the Americas
31st Floor
New York, New York  10036

Todd Murray
CARRINGTON COLEMAN
901 Main Street, Suite 5500
Dallas, Texas  75202

Corbet F. Bryant, Jr.
10214 Lake Ridge Drive
Richardson, Texas  75081
**Counsel for Defendant Louis J. Schaufele III**

Joshua Klein
Nelson A. Boxer
Jill C. Barnhart
PETRILLO KLEIN & BOXER
655 Third Avenue
22nd Floor
New York, New York 10017
**Counsel for Defendant Michael C. French**

   /s/ Bridget M. Fitzpatrick
Bridget M. Fitzpatrick
Counsel for Plaintiff
Securities & Exchange Commission