SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
15TH FLOOR
560 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6828
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 5100 | SUITE 950 | SUITE 3800 |
|---|---|---|---|
| 1000 LOUISIANA STREET | 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

STEPHEN D. SUSMAN
DIRECT DIAL (713) 653-7801

E-MAIL SSUSMAN@SUSMANGODFREY.COM

April 6, 2014

VIA ECF AND E-MAIL

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re:   SEC v. Wyly, No. 10-CV-5760 (SAS)

Dear Judge Scheindlin:

      I write to respond to the SEC's letter dated April 4, 2014. The SEC argues that my opening statement opened the door to transform this securities fraud trial into a tax liability trial—conveniently for the SEC, since that is how it has been planning to try this case all along. The SEC is wrong, and its requests to introduce evidence that the Court has already ruled inadmissible should be denied.

      If either side crossed the line during opening statements, it was the SEC, which referred to tax twelve times. The SEC argued at the outset that the purpose of the Wylys' offshore system was to "keep tax benefits that the[] [Wylys] were enjoying through their offshore system secret." April 3, 2014 Hr'g Tr. at 40:19-22. It went on to state that the Wylys "were afraid that they would lose certain tax benefits if they told the world about their secret offshore system." *Id.* at 41:21-22.

      The implication of these statements could not have been clearer. The SEC implied that the Wylys obtained <u>*illegal*</u> tax benefits through the offshore systems, and then engaged in a knowing securities fraud in an attempt to evade detection by the tax authorities. This tax violation argument is precisely what the Court already ordered excluded from trial. *See* March 24, 2014 Hr'g Tr. at 46-47.

April 6, 2014
Page 2

The SEC went farther by making the highly prejudicial—and baseless—suggestion that asset protection is somehow impermissible. The SEC asserted:

> This is a concept called asset protection, ladies and gentlemen. Let's unpack what that means. That's a code word, a nice way of saying hiding your money from people so that even if you do something wrong, they will not be able to get it.

April 3, 2014 Hr'g Tr. at 49:1-4. The Court should correct this prejudicial comment immediately by instructing the jury that asset protection is not unlawful.

Having made an implicit, but crystal clear, tax violation argument in its opening, the SEC can hardly complain that my opening statement focused the jury on the preliminary instructions. I in no way misrepresented the Court's instruction that the lawfulness or unlawfulness of any tax benefits is not at issue in this case. The SEC conveniently ignores my statement that: "You are not to decide whether the Wylys are liable for any taxes that they didn't pay." *Id.* at 106:6-7.[1]

The SEC's letter admonishes me for saying that the jury will not hear evidence that any attorney told the Wylys that their conduct violated the law, and that they should change it. The SEC says that my statement is "directly rebutted" by Michael French's recent Admissions. That is not so—what I actually stated during the opening was that there will be no evidence at trial "that the Wylys were ever told by their lawyers, *file this*, *disclose this*, and the Wylys refused to follow it." *Id.* at 103:9-10 (emphasis added). This was clearly a reference to securities law advice—not tax law advice. *See id.* at 90:12-18 (discussing SEC filing advice); *id.* at 106:11-21 (same); *id.* at 117:11-13 (same); *id.* at 117:18-21 (same); *id.* at 120:4-17 (same); *id.* at 121:7-10 (same); *id.* at 131:10-13 (same); *id.* at 132:7-17 (same, and predicting that the jury will conclude that "these man are law-abiding citizens that were trying to follow *what the SEC requires*" (emphasis added)). Nothing in Mr. French's Admissions rebuts this.

In any event, the SEC's mere belief that Mr. French's testimony will "rebut" an attorney assertion during an opening statement is not a matter that requires the Court to take any action at this time. Mr. French's written Admissions are inadmissible hearsay. Mr. French may well testify at trial, but

---

[1] The jurors will be given copies of the preliminary instructions on Monday morning. They can read these instructions themselves. The Court could also reread the relevant instructions on Monday before the first witness testifies. If the Court concludes that my opening statement went too far, simply rereading these instructions—not allowing the SEC to put on its full, long-planned tax liability case—is the proper remedy.

April 6, 2014
Page 3

there are still many statements that the SEC cannot elicit from him without violating the Court's prior rulings on the admissibility of tax-related evidence. That issue can be dealt with when Mr. French takes the stand, not now.

The SEC has convinced the Court to let it mention the tax issue by telling the jury that the Wylys' tax position depended in part on a lack of control over securities transferred offshore. Having gotten the camel's nose in the tent, the SEC wants to put in evidence that the Wylys were told this tax position was "aggressive," and that subsequent tax advisors raised concerns about the position.

The SEC is wrongly conflating two issues: concerns about control over securities, and the questions that tax advisors raised about the Wylys' tax position—which had nothing to do with control over securities. As a result, if the SEC is allowed to suggest that the Wylys were warned their tax position was problematic having already asserted that control over the securities was key to the tax position, the Defendants would have to be able to put forth evidence that (1) the tax position was sound and (2) any concerns raised were unrelated to whether the Wylys exercised too much control over the securities. In short, the trial would devolve into full-blown tax trial—and Defendants would be hamstrung by having relied on the Court's prior indication that discussion of taxes would be outside the scope of the trial.

The SEC's assertion regarding evidence of David Tedder's criminal conviction is particularly baseless. Mr. Tedder was convicted in 2003 of gambling-related money laundering. Evidence that the Wylys learned about this totally unrelated conviction in 2003 has no tendency whatsoever to show that the Wylys knew Mr. Tedder's 1992 tax advice was bad.

In sum, the Court should give the jury a curative instruction regarding asset protection, and should also adhere to its prior rulings excluding irrelevant, prejudicial, and confusing tax evidence. Defendants have prepared their case in reliance on those rulings; any change in them would require additional preparation to defend against uncharged and still-unspecified tax allegations. More importantly, no matter how convincing the SEC believes its tax case is, SEC lawyers have no authority to transform themselves into tax prosecutors.

Sincerely,

/s/ Stephen D. Susman

Stephen D. Susman

cc:   All Counsel of Record via ECF and E-mail

3120883v1/012798