**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
:
SECURITIES AND EXCHANGE                   :
COMMISSION,                               :
                                          :
                 Plaintiff,               :
                                          :
          v.                              :        No. 1:10-cv-5760-SAS
                                          :
SAMUEL WYLY, DONALD R. MILLER,            :        ECF Case
JR., in his Capacity as the Independent   :
Executor of the Will and Estate of        :
Charles J. Wyly,   Jr., MICHAEL C.        :
FRENCH, AND LOUIS J. SCHAUFELE III        :
                                          :
                 Defendants.              :
———————————————————————

## WYLY DEFENDANTS' REVISED SUBSTANTIVE REQUESTS FOR CHARGE

Pursuant to the Court's request, Defendants Samuel Wyly and Donald R. Miller, in his capacity as the independent executor of the will and estate of Charles J. Wyly, Jr., submit these revised substantive requests for charge.

**Table of Contents**

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 1**
OVERVIEW OF CLAIMS .................................................................................1

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 2**
SECTION 10(b) AND RULE 10B-5 – GENERAL INSTRUCTIONS ............................5

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 3**
RULE 10b-5(a) – DEVICE, SCHEME, OR ARTIFICE TO DEFRAUD..........................6

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 4**
RULE 10b-5(b) – MATERIAL MISSTATEMENT OR OMISSION..............................11

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 5**
RULE 10b-5(c)—FRAUDULENT ACT, PRACTICE, OR COURSE OF
DEALING ...................................................................................................15

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 6**
SECTION 17(a)—GENERAL INSTRUCTIONS ...........................................................17

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 7**
SECTION 17(a)(1)—DEVICE, SCHEME, OR ARTIFICE TO DEFRAUD.................18

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 8**
SECTION 17(a)(2)—BY MEANS OF MATERIAL MISSTATEMENTS OR
OMISSIONS ..............................................................................................21

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 9**
SECTION 17(a)(3)—FRAUDULENT TRANSACTION,  PRACTICE, OR
COURSE OF BUSINESS..............................................................................24

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 10**
SECTION 5(a) AND 5(c)—SALE OF UNREGISTERED SECURITIES
SECTION 4(1) EXEMPTION .........................................................................27

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 11**
SECTION 5—SECOND DEFENSE—RULE 144........................................................29

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 12**
SECTION 13(d)—GENERAL INSTRUCTIONS .......................................................30

**WYLY DEFENDANTS' PROPOSE INSTRUCTION NO. 13**
RULE 13d-1—MATERIAL UNDERSTATEMENTS OF BENEFICIAL
OWNERSHIP ..............................................................................................31

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 14**
RULE 13d-2—MATERIAL CHANGE IN BENEFICIAL OWNERSHIP......................34

ii

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 15**
SECTION 16(a) AND RULES 16a-2 & 16a-3 DISCLOSURE OF
INVESTMENT CONTROL ................................................................................35

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 16**
SECTION 14(a) AND RULES 14a-3 & 14a-9 BENEFICIAL OWNERSHIP
IN PROXY STATEMENTS ...............................................................................37

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 17**
SECTION 20(a)—AIDING AND ABETTING CLAIMS—GENERAL
INSTRUCTIONS ..............................................................................................39

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 18**
AIDING AND ABETTING ALLEGED TRUSTEE VIOLATIONS OF
SECTION 13(a) ................................................................................................41

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 19**
AIDING AND ABETTING ALLEGED ISSUER VIOLATIONS OF
SECTION 14(a) ................................................................................................43

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 20**
AIDING AND ABETTING ALLEGED ISSUER VIOLATIONS OF
SECTION 13(a) ................................................................................................45

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 21**
STATUTE OF LIMITATIONS ...........................................................................47

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 1**
<u>OVERVIEW OF CLAIMS</u>[1]

The plaintiff in this case is the Securities and Exchange Commission, which I will refer to as the SEC. The SEC is a government agency that enforces the federal securities laws.

The SEC filed this lawsuit against Samuel E. Wyly and his brother, Charles J. Wyly Jr. After this lawsuit was filed, Charles Wyly passed away, so Donald R. Miller, Jr. has been substituted as a defendant as the legal representative of Charles Wyly's estate. Although Mr. Miller has been substituted as a defendant, the SEC does not allege that he personally engaged in any misconduct. So when I refer to allegations against "defendants" here, I am referring to the SEC's allegations against Sam and Charles Wyly, not against Mr. Miller.

The SEC's claims against the defendants arise under two federal statutes and several rules that the SEC has adopted under those statutes. The two statutes are the Securities Act of 1933 (often referred to as the "Securities Act") and the Securities and Exchange Act of 1934 (often referred to as the "Exchange Act"). These statutes and the rules promulgated by the SEC thereunder require, among other things, certain public disclosures about the securities of public companies.

Under these laws, officers, directors, and major shareholders of public companies are required to make certain disclosures about their purchases, sales, and holdings of those companies' securities to the SEC in filings that are available to the public to use, if they wish, in making investment decisions.

The SEC's claims can be categorized into four types: securities fraud claims, registration claims, reporting and disclosure claims, and aiding and abetting claims.

---

[1] This format of summarizing claims in straightforward non-legalistic terms is derived from the court's instructions in *SEC v. Tourre*. *See* Jury Charges 14, *SEC v. Tourre*, No. 1:10-cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 433-3.

<u>The Fraud Claims</u>: The SEC brings its fraud claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 17(a) of the Securities Act. With the Section 10(b) claims, the SEC alleges that the defendants, through the use of trusts and companies established in the Isle of Man (the "Isle of Man entities"), employed a device, scheme, or artifice to defraud investors; made material misstatements or omissions; and engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit; all in connection with the purchase or sale of securities issued by Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish Re Group Limited.

Similarly, the SEC alleges that the defendants violated Section 17(a) of the Securities Act by employing a device, scheme, or artifice to defraud investors; by obtaining money or property by means of material misstatements or omissions; and by engaging in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser; all in the offer or sale of shares of Sterling Software, Sterling Commerce, Michaels Stores, and Scottish Re.

The defendants contend that they did not make any false statements or omissions of material facts, and that they acted reasonably and in good faith in attempting to comply with the various reporting requirements.

<u>The Registration Claims</u>: The SEC brings a non-fraud claim under Section 5, subsections (a) and (c), of the Securities Act, alleging that the defendants sold or offered for sale unregistered sales of Michaels Stores stock, when no exemption from registration applied.

The defendants contend that the Isle of Man entities sold stock pursuant to one or more valid exemptions, and thus registration was not required.

2

<u>The Reporting and Disclosure Claims</u>: The SEC brings several claims that allege non-fraud violations of various reporting requirements, all of which are based on the defendant's alleged control of or power over the securities held by the Isle of Man entities.

First, the SEC alleges that the defendants were "beneficial owners" of the securities held by the Isle of Man entities and, therefore, violated Section 13(d) of the Exchange Act by submitting certain filings that understated the number of shares that the defendants beneficially owned, any by failing to make other filings. The defendants assert that the trustees of the Isle of Man trusts had the sole power over disposition and voting of trust securities and that they, the defendants, were not beneficial owners of those shares.

Second, the SEC alleges that the defendants violated Section 16(a) of the Exchange Act, again by failing to make certain filings regarding beneficial ownership. The defendants contend that they made all Form 4 filings required under the law, and that they certainly did not advertently fail to make any filings.

Third, the SEC alleges that Sam and Charles Wyly violated Section 14(a) of the Exchange Act by negligently soliciting or allowing their names to be used to solicit a proxy via a proxy statement that materially misstated their beneficial ownership. The defendants contend that the proxy materials were accurate as to all material facts and that to the extent they were involved in reviewing or approving those statements, they acted reasonably at all times.

<u>Aiding and Abetting Claims</u>: The last type of claims brought by the SEC are aiding and abetting claims, under which the SEC alleges that the defendants knowingly provided substantial assistance to another person's primary violation of a securities law. The defendants contend not only that the companies and trusts complied with their respective reporting requirements, but also that the defendants never knowingly provided any assistance to a securities law violation.

You have heard evidence in this case about various trusts established by or for the benefit of the defendants. A trust is a legal institution under which a person or entity (called the trustee) who has the legal ownership of property is obliged to deal with that property for the benefit of one or more other persons (called beneficiaries). The person who creates a trust is called the settlor or the grantor.

Trusts are often established and used with an eye towards reducing, eliminating, or delaying tax liability. You will hear evidence in this case related to such tax motives on the part of the defendants. There are both lawful and unlawful ways to employ domestic and foreign trusts to eliminate, reduce, or delay tax liability. You will not be asked in this case to decide whether the tax treatment of the Isle of Man trusts was right or wrong. That issue is irrelevant to your decision in this case.

You have also heard evidence about the value of the assets held by the trusts or the defendants. Remember, a party's wealth or income must not enter into your judgment nor influence your decision in this case in any respect. Likewise, the fact that the defendants are from a different state or region than you should in no way influence your judgment. All persons must be treated as equals in a court of justice.

You also have heard evidence about what various lawyers believed the law to be at various times. This evidence was not offered to prove what the law is for purposes of your decision in this case. I, and I alone, will instruct you on the law you are to apply in deciding the issues before you.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 2**
<u>SECTION 10(b) AND RULE 10B-5 – GENERAL INSTRUCTIONS</u>

The SEC's first set of claims against Defendants are that they violated Section 10(b) and Rule 10b-5 subparts (a)–(c). Each of the subparts of Rule 10b-5—(a), (b), and (c)—can constitute separate violations of Section 10(b) and, therefore, of the securities laws. Each subpart must be considered on its own. It is possible for a defendant to violate one subpart of Rule 10b-5 and not others, or for him to have violated none at all. It is important that you consider each subpart as a separate claim and ask whether the SEC has met its burden of proof separately as to each subpart.[2] Accordingly, I am providing separate instructions as to each subpart.[3]

---

[2] *SEC v. Tourre*, 1:10-cv-3229-KBF, ECF 465 (court's jury instructions) at [CITE] (S.D.N.Y. Aug. 15, 2013).
[3] *See* Eleventh Circuit, *Civil Pattern Jury Instructions* 6.1–6.2, at 402–424 (2013).

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 3**
RULE 10b-5(a) – DEVICE, SCHEME, OR ARTIFICE TO DEFRAUD

To prove its claim under Rule 10b-5(a) against any of the defendants, the SEC must prove the following facts by a preponderance of the credible[4] evidence as to that defendant:

First, you must find that the defendant in question used a device, scheme, or artifice to defraud someone in connection with the purchase or sale of a security.

Second, you must find that such conduct was material;

Third, you must find that the defendant in question acted with intent to defraud or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.[5]

**First Element**
*"Device, Scheme, or Artifice to Defraud"*

Regarding the first element, the SEC must prove by a preponderance of the credible evidence, separately as to each defendant, that the defendant in question personally employed "a device, scheme, or artifice to defraud" in connection with the purchase or sale of a security. A device, scheme, or artifice to defraud is a plan or course of conduct for the accomplishment of a fraudulent objective. The term refers to any plan or course of action that involves: (1) false or

---

[4] As many courts in this District and elsewhere have held, the SEC's burden is to prove its claims by a preponderance of the *credible* evidence. *See, e.g.*, *SEC v. Enters. Solutions, Inc.*, 142 F. Supp. 2d 561, 566 (S.D.N.Y. 2001) (applying "by a preponderance of the *credible* evidence" standard at bench trial (emphasis added)); *SEC v. Amster & Co.*, 762 F. Supp. 604, 611 (S.D.N.Y. 1991) ("[T]he SEC's burden at trial would be to prove by a preponderance of the *credible* evidence that at the time of defendants' filing of their Schedule 13D or at least one of its amendments, defendants had a 'purpose or plans with respect to [Graphic] or their investment in [Graphic] other than as described in their Schedule 13D' or the amendments." (emphasis added)); *SEC v. Rorech*, 720 F. Supp. 2d 367, 411 (S.D.N.Y. 2010) (finding after a bench trial that "the SEC has failed to prove by a preponderance of the *credible* evidence that the information was material" (emphasis added)); *id.* at 415 ("The SEC has failed to prove by a preponderance of the *credible* evidence."
[5] *See* Eleventh Circuit, *Civil Pattern Jury Instructions* 6.1 (2013);

fraudulent pretenses, (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises, and patterns of conduct calculated to deceive.[6]

Although a material misstatement or omission can be part of a device, scheme, or artifice to defraud, a single material misstatement or omission, standing alone, is insufficient to establish a device, scheme, or artifice to defraud.[7] I will discuss the concept of materiality in greater detail in a moment, and you should apply those instructions here as well. If a material misstatement or omission is combined with other deceptive conduct you deem part of a scheme to defraud, then together the material misstatement or omission and the other conduct are sufficient,[8] provided that the other conduct is an inherently deceptive or manipulative act that is independent from any alleged misstatement.[9] In other words, a device, scheme or artifice to defraud that merely facilitated the preparation of a misstatement cannot be a basis to find the defendants liable under Rule 10b-5(a).

A defendant cannot be found liable under Rule 10b-5(a) solely based on anyone else's conduct.[10] That is, a defendant cannot be found liable unless you find that the defendant in question himself engaged in acts that are themselves manipulative or deceptive.[11]

---

[6] *See id.*; Jury Charges 19, *SEC v. Tourre*, No. 1:10-cv-03229-KBF (S.D.N.Y. July 31, 2013), ECF No. 433-3.

[7] Jury Charges 19, *Tourre*, ECF No. 433-3.

[8] *Id.*

[9] *See In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 503, 505 (S.D.N.Y 2005); *SEC v. PIMCO Advisors Fund Mgmt.*, 341 F. Supp. 2d 454, 468 (S.D.N.Y. 2004); *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 359-60 (D.N.J. 2009) ("[A]llegations of a scheme based on the same misstatements that would form the basis of a misrepresentation claim under Rule 10b-5(b) and nothing more do not go beyond misrepresentations.").

[10] *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (June 13, 2011); *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 840-44 (2d Cir. 1998) ("[W]here the requirements for primary liability are not independently met, they may not be satisfied based solely on one's participation in a conspiracy in which other parties have committed a primary violation."); *Lentell v. Merrill Lynch & Co.*, 396 F. 3d 161, 177 (2d Cir. 2005); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006).

For purposes of this claim, the SEC alleges that each of the defendants employed a scheme to defraud in connection with the purchase or sale of stock issued by Sterling Software, Sterling Commerce, Michaels Stores, and Scottish Re by [*SEC should specify the alleged deceptive conduct*].

*"In Connection With the Purchase or Sale of a Security"*

If you find that any of the defendants employed a device, scheme, or artifice to defraud, you must determine if that defendant did so in connection with the purchase or sale of a security. A device, scheme, or artifice to defraud is not "in connection with the purchase or sale of a security" unless it is material to a decision by one or more individuals (other than the defendants) to buy or sell a security. To satisfy this requirement, then, the SEC must prove by a preponderance of the evidence that the alleged device, scheme, or artifice to defraud, was material to an individual's purchase or sale of a security issued by Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re.[12]

As to each defendant, if you do not find that the defendant employed a device, scheme, or artifice to defraud in connection with the purchase or sale of Sterling Software, Sterling Commerce, Michaels Store, or Scottish Re stock, you must return a verdict of "not liable" for that defendant.

---

[11] *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 177–78 (1994) ("[T]he statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act . . . . We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute.").

[12] *See Chadbourne & Parke LLP v. Troice*, No. 12-79, 2014 WL 714697 (U.S. Feb. 26, 2014) ("A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'").

## Second Element—Materiality

If you find that one or more of the defendants employed a device, scheme, or artifice to defraud in connection with the purchase or sale of a security, the SEC must prove by a preponderance of the credible evidence that the defendant's deceptive conduct was material.[13] A fact is material if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether or not to buy or sell the securities in question. This standard requires a showing of a substantial likelihood that, under all the circumstances, the untrue fact would have assumed actual significance in the deliberations of the reasonable investor.[14]

## Third Element—Intent to Defraud

Regarding the third element, the SEC must prove by a preponderance of the evidence that the defendant in question knowingly participated in a scheme to defraud with the intent to deceive, manipulate, or defraud. To satisfy this element, the SEC must prove that the defendant in question acted knowingly or with severe recklessness. To act "knowingly" means to act knowing and intending that a result of the defendant's conduct could be to deceive, manipulate, or defraud.[15]

To act with "severe recklessness" means to act in a highly unreasonable manner, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers of securities that is either known to the defendant or is so obvious that the defendant must have been aware of

---

[13] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

[14] *TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1466 (2d Cir. 1996).

[15] *See* Eleventh Circuit, *Civil Pattern Jury Instructions* 6.1 (2013); *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 639 (D.C. Cir. 2008) ("Extreme recklessness . . . is, in fact, a lesser form of intent."); *see also* Jury Charges 21, *Tourre*, ECF No. 433-3.

it. Reckless conduct is more than mere negligence, which is a concept I will explain a bit later. Recklessness means grossly unreasonable, rash, or intemperate behavior. It is not enough for the SEC to show that a defendant acted accidentally or that the defendant made a mistake.[16]

The SEC must prove this element for each defendant separately. Even if you find that one defendant acted with such intent or with severely reckless disregard for the truth, you may not automatically treat another defendant as having acted in such a manner.[17]

Since an essential element of the SEC's case is intent to defraud or severe recklessness, it follows that a defendant who acts in good faith cannot be liable for securities fraud. The defendants, however, have no burden to establish a defense of good faith. The burden is on the SEC to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.[18]

When you determine whether any defendant acted knowingly or recklessly, you must do so based on the standards that existed at the time of the relevant conduct and based on what was known at that time, not based on hindsight. For instance, in considering whether a defendant's conduct in 1995 was performed with intent to defraud, you must look to the standards that existed and what was known in 1995, not any time thereafter.[19]

As to each defendant, if you do not find that the defendant acted with intent to defraud or with severe recklessness, then you must return a verdict on the Rule 10b-5(a) claim in his favor.

---

[16] Jury Charges 39, *Tourre*, ECF No. 433-3..

[17] *See In re NovaGold Res, Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 303-04 (S.D.N.Y. 2009) (refusing to allow plaintiffs to impute scienter to each defendant even when fraud was alleged to concern "core" business operations); Fifth Circuit, *Pattern Jury Instruction (Civil)* 7.1 (2006).

[18] Jury Charges 22, *Tourre*, ECF No. 433-3; *see* 4 Sand et al., *Modern Federal Jury Instructions (Civil)*, Instruction 82-8 (2009); *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith.").

[19] Jury Charges 22, *Tourre*, ECF No. 433-3.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 4**
<u>RULE 10b-5(b) – MATERIAL MISSTATEMENT OR OMISSION</u>

To prove a violation of Rule 10b-5(b), the SEC must prove each of the following facts by a preponderance of the evidence as to each defendant:

<u>First</u>, you must find that the defendant in question made an untrue statement of material fact or omitted to state a material fact that made what was said, under the circumstances, misleading, in connection with the purchase or sale of a security.

<u>Second</u>, you must find that the defendant in question made the statement or omission with intent to defraud.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove:

**First Element—Misstatement or Omission of Material Fact**

To prove its Rule 10b-5(b) claim, the SEC must prove by a preponderance of the credible evidence that one or more of the defendants, made an untrue statement of material fact or omitted to state a material fact that made what was said, under the circumstance, not misleading. You must determine whether the statement was true or false when it was made, and, in the case of an alleged omission, whether the omission was misleading in light of what was said.[20]

In this case, the SEC alleges the following misstatements and omissions:

- That the Wylys were "beneficial owners" (a concept I will explain in more detail a little later) of a number of shares of Sterling Software, Sterling Commerce, Michaels Stores, and Scottish Re owned by the Wylys domestically, but not including in that number shares owned by the Isle of Man entities;

---

[20] *See* Jury Charges 25, *Tourre*, ECF No. 433-3.

- That various Isle of Man entities were "Selling Shareholders" of Sterling Software, Sterling Commerce, Michaels Stores, and/or Scottish Re stock, while omitting a statement that the Isle of Man entities were "affiliates" (a term that I will explain in more detail a little later) of those companies;

- That Michaels Stores was not an "affiliate" of the Isle of Man entities that sold unregistered Michaels stock in 1997 and 1998;

In order to find any one of the defendants liable for any of these alleged misstatements or omissions, you must be unanimous as to which particular misstatement or omission you find was false. You must also find that the defendant in question personally made the alleged misstatement, or was the person with ultimate authority over the statement, including its content and how to communicate it. It is not sufficient for the SEC to prove that the defendant in question may have been involved—even significantly involved—in the preparation of a document that may have contained a materially false statement.[21]

If you find that the SEC has proven that one or more defendants made a misstatement or omission, you must determine whether the misstatement or omission was made "in connection with the purchase or sale of a security." I previously instructed you on this requirement when I spoke about Rule 10b-5(a), and you should apply those instructions here.

If you find that the SEC has proven that, in connection with the purchase or sale of Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re stock, one or more of the defendants made a false statement of fact or omitted a fact that, in light of the facts stated, was misleading, you must then decide if the SEC has proven that the fact misstated or omitted was "material." As I previously instructed you, a fact is material if there is a substantial likelihood

---

[21] *Id*. at 38.

that a reasonable investor would have considered it important in deciding whether or not to buy

or sell the securities in question. This standard requires a showing of a substantial likelihood that,

under all the circumstances, the untrue fact would have assumed actual significance in the

deliberations of the reasonable investor.[22]

As a matter of law, there is no requirement to disclose a relevant fact simply because the

investor would very much like to know that fact. All the law requires is that when a disclosure is

made, it must be complete and accurate in all material respects. Disclosure is required only when

necessary to make statements made, in light of the circumstances in which they were made, not

misleading.[23] In determining materiality, you must do so in relation to the circumstances as they

existed at the time of the transaction at issue.[24]

If you do not find that a defendant made a material misstatement or omission, you must

return a verdict of "not liable" on the Section 10b-5(b) claim as to that defendant.

### Second Element—Intent to Defraud

To prove its Rule 10b-5(b) claim, the SEC must prove by a preponderance of the credible

evidence that the defendant in question acted with intent to deceive, manipulate, or defraud, or

with reckless disregard for the truth. I have defined these concepts for you, and you should apply

those definitions here. In the context of a claim based on a material misstatement or omission, a

person makes a misstatement or omission with intent to defraud if the person knows the

statement is false or misleading, or if the statement or omission creates a danger of misleading

buyers or sellers of securities that is either known to the defendant or is so obvious that the

---

[22] *TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976); *SEC v. First Jersey Sec., Inc.*, 101 F.3d
1450, 1466 (2d Cir. 1996).
[23] Jury Charges 27, *Tourre*, ECF No. 433-3; *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267
(2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable
investor would very much like to know that fact.").
[24] Jury Charges 27, *Tourre*, ECF No. 433-3.

defendant must have been aware of it. It is not enough for the SEC to show that the defendant in question acted accidentally or merely made a mistake, or even that he was negligent.

As I previously instructed you, good faith on the part of a defendant is a complete defense to a charge of securities fraud. The defendant has no burden to establish a defense of good faith. The burden is on the SEC to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.

If you find that a defendant did not act with intent to defraud or with severe reckless disregard for the truth, then you must return a verdict on the Rule 10b-5(b) claim in that defendant's favor.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 5**
RULE 10b-5(c)—FRAUDULENT ACT, PRACTICE, OR COURSE OF DEALING

To prove a violation of Rule 10b-5(c), the SEC must prove each of the following facts by a preponderance of the evidence as to each defendant:

First, you must find that the defendant in question engaged in an act, practice, or course of dealing—in connection with the purchase or sale of a security—that operated or would operate as a fraud or deceit on any person.

Second, you must find that the defendant's conduct was material.

Third, you must find that the defendant in question acted with intent to defraud or severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

**First Element—Fraudulent Practice or Course of Dealing**

To prove its Rule 10b-5(c) claim, the SEC must prove by a preponderance of the credible evidence that, in connection with the purchase or sale of a security, the defendant in question engaged in an act, practice, or course of dealing that operated or would have operated as a fraud or deceit. A "fraud or deceit" means a lie or a trick.[25]

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller of the securities in question; that is, a purchaser or seller of Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re.[26]

I have already instructed you on the meaning of "in connection with the purchase or sale of a security," and you should apply those instructions here.

---

[25] Eleventh Circuit, *Civil Pattern Jury Instructions*, Instruction 6.4 (2013).
[26] *Id.*

### Second Element—Materiality

Regarding the second element, the SEC must prove by a preponderance of the credible evidence that the defendant's conduct related to a material fact.[27] I have previously instructed you on the concept of materiality, and you should apply those instructions here as well.

### Third Element—Intent to Defraud

To prove its Rule 10b-5(c) claim, the SEC must prove by a preponderance of the credible evidence that the defendant in question acted with intent to deceive, manipulate, or defraud, or with severely reckless disregard for the truth. I have defined these concepts for you, and you should apply those definitions here. It is not enough for the SEC to show that the defendant in question acted accidentally or merely made a mistake, or even that he was negligent.

As I previously instructed you, good faith on the part of a defendant is a complete defense to a charge of securities fraud. The defendant has no burden to establish a defense of good faith. The burden is on the SEC to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.

If you find that a defendant did not act with intent to defraud or with severe reckless disregard for the truth, then you must return a verdict on the Rule 10b-5(c) claim in that defendant's favor. If you do find that he acted with intent to defraud or with reckless disregard for the truth, proceed to the next element.

---

[27] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

16

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 6**
<u>SECTION 17(a)—GENERAL INSTRUCTIONS</u>

The SEC's second set of claims against Defendants are that they violated Section 17(a) subparts (1)–(3). As with Rule 10b-5, each of the subparts of Section 17(a)—(1), (2), and (3)—can constitute separate violations of the securities laws. Each subpart must be considered on its own. It is possible for a defendant to violate one subpart of Section 17(a) and not others, or for him to have violated none at all. It is important that you consider each subpart as a separate claim and ask whether the SEC has met its burden of proof separately as to each subpart. Accordingly, I am providing separate instructions as to each subpart.

17

## WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 7
### SECTION 17(a)(1)—DEVICE, SCHEME, OR ARTIFICE TO DEFRAUD

In order to meet its burden of proof under Section 17(a)(1), the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, that, in the offer or sale of a security, the defendant, directly or indirectly, employed a device, scheme or artifice to defraud;

Second, that the conduct was material;

Third, that the defendant acted with intent to defraud or with severe recklessness.

**First Element—Device, Scheme, or Artifice to Defraud in Offer or Sale**

To satisfy the first element of the Section 17(a)(1), the SEC must prove by a preponderance of the credible evidence that the defendant in question employed a device, scheme, or artifice to defraud in the offer or sale of shares of Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re stock.

I have previously defined for you the term "device, scheme, or artifice to defraud" and you should apply that definition here.

If you find that any defendant employed a device, scheme, or artifice to defraud, you must next determine if the SEC has proved that the defendant in question did so in the "offer or sale" of stock issued by Sterling Software, Sterling Commerce, Michaels Store, or Scottish Re. The term "sell" means to transfer a security for value, and includes the contract for sale for value or any other disposition for value of a security.[28] A defendant indirectly sells a security if he is a necessary participant or substantial factor in that sale. In either case, however, the SEC must prove that the sale would not have taken place but for the defendant's participation. The term

---

[28] Eleventh Circuit, *Civil Pattern Jury Instructions*, Instruction 6.8 (2013).

"offer" means attempting to dispose of a security for value by inviting a buyer, and includes negotiations to sell, or attempts to produce the sale by urging or persuading another to act.[29]

This "in the offer or sale" standard is narrower than the "in connection with" standard I described previously in connection with the SEC's claims under Rule 10b-5.[30] If you do not find that a defendant employed a device, scheme, or artifice to defraud, or even if he did, that such conduct was not in the offer or sale of the securities in question, then you must find that defendant "not liable" on the Section 17(a)(1) claim.

### Second Element—Materiality

Regarding the second element, the SEC must prove by a preponderance of the credible evidence that the defendant's conduct related to a material fact.[31] I have previously instructed you on the concept of materiality, and you should apply those instructions here as well.

### Third Element—Intent to Defraud

To prove its Section 17(a)(1) claim, the SEC must next establish by a preponderance of the credible evidence that each defendant knowingly employed in a device, scheme, or artifice to defraud with the intent to deceive, manipulate, or defraud, or with severe recklessness. I have previously defined the terms "intent to defraud" and "severe recklessness," and you should apply those definitions here. It is not enough to show that the defendant in question acted accidentally or merely made a mistake, or even that he was negligent.

As I previously instructed you, good faith on the part of a defendant is a complete defense to a charge of securities fraud. The defendant has no burden to establish a defense of

---

[29] *Id.*; Jury Charges 17–18, *Tourre*, ECF No. 433-3.

[30] *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1353 (S.D.N.Y. 1982) ("Section 17(a)(3) is narrower than section 10(b)' s 'in connection with' standard . . .").

[31] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

good faith. The burden is on the SEC to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.

If you find that a defendant did not act with intent to defraud or with severely reckless disregard for the truth, then you must return a verdict on the Section 17(a)(1) claim in that defendant's favor.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 8**
SECTION 17(a)(2)—BY MEANS OF MATERIAL MISSTATEMENTS OR OMISSIONS

In order to meet its burden of proof on this claim, the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, that in the offer or sale of a security, the defendant, directly or indirectly, obtained money or property by means of an untrue statement of material fact or failure to state material facts which made what was said, under the circumstances, misleading; and

Second, that the defendant acted negligently, or with intent to defraud, or with reckless disregard for the truth.

**First Element—Obtain Money or Property by Means of Material Misstatements**

In order to prove its Section 17(a)(2) claim, the SEC must prove that the defendant in question—in the offer or sale of a security—obtained money or property by means of a material misstatement or omission. I have already described to you what "in the offer or sale" means, and you should apply the same definition here.

Likewise, I previously instructed you on materiality when I spoke about Rule 10b-5, and you should apply those same instructions here. For purposes of this claim, the SEC alleges the same misstatements and omissions that I previously described for Rule 10b-5(b).

If you find that a defendant made a material misstatement or omission in the sale or offer of Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re stock, you must next determine if the SEC has proved by a preponderance of the credible evidence that the defendant in question "directly or indirectly, obtained money or property by means of" the misstatement or omissions. To meet this standard, the SEC must prove that the defendant, directly or indirectly,

personally gained money or property by means of the alleged misstatements or omissions.[32] It is not enough for the SEC to prove that a defendant induced another to part with money or property by means of false statements or omissions, unless the defendant obtained that money or property himself.[33]

If you do not find that the defendant obtained money or property by means of a material misstatement or omission, you must return a verdict of "not liable" on the Section 17(a)(2) claim as to that defendant.

**Second Element—Intent to Defraud/Negligence**

In order to prove the second element of Section 17(a)(2), the SEC must prove by a preponderance of the credible evidence that the defendants acted negligently, or with intent to defraud, or with reckless disregard for the truth.

I have previously defined both "intent to defraud" and "reckless disregard for the truth" for you, and you should apply those definitions here.

As I mentioned, this section also provides for liability if the defendant acted negligently, and each of the other elements are met. "Negligence" is a failure to use reasonable care, which is the degree of care that a reasonably prudent person would use under the circumstances. A reasonably prudent person is one who guards against risks or dangers of which he or she knew, or by the exercise of due care should have known. Negligence may consist either of doing

---

[32] *SEC v. Syron*, 934 F. Supp. 2d 609, 640 (S.D.N.Y. 2013) (holding that Section 17(a)(2) requires that "the defendant personally gain[] money or property from the fraud"); *see SEC v. Daifotis*, No. C11–00137 (WHA), 2011 WL 2183314, at *10 (N.D. Cal. June 6, 2011); *see also SEC v. Burns*, No. 84–0454, 1986 WL 36318, at *3–*4 (S.D. Cal. Feb. 19, 1986) (finding a defendant not liable under Section 17(a)(2) because "[t]here is no evidence ... that [the defendant] personally acquired money or property").

[33] *Id.*

something that a reasonably prudent person would not do under like circumstances, or in failing to do something that a reasonably prudent person would do under like circumstances.[34]

In deciding whether a defendant acted negligently in making any material misstatement or omission, you may consider evidence of industry practice, custom, or standards as they relate to a reasonably prudent person in that defendant's position at the time the alleged misstatement was made. But while such industry standards and the like are relevant, they are not controlling. The controlling standard is, I repeat, what a reasonably prudent person in each defendant's position would do under like circumstances.[35]

If you do not find that the defendant in question acted negligently, or with intent to defraud, or with reckless disregard for the truth, you must return a verdict of "not liable" on the Section 17(a)(2) claim as to that defendant.

---

[34] *See* Jury Charges 28, *Tourre*, ECF No. 433-3.
[35] *Id.*

## WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 9
### SECTION 17(a)(3)—FRAUDULENT TRANSACTION, PRACTICE, OR COURSE OF BUSINESS

In order to meet its burden of proof on Section 17(a)(3), the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, that in the offer or sale of a security, the defendant, directly or indirectly, engaged in a transaction, practice, or course of business that operated, or would operate, as a fraud or deceit upon the purchaser of securities;

Second, that the defendant's conduct was material;

Third, that the defendant acted negligently, or with intent to defraud, or with reckless disregard for the truth.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

#### First Element—Fraudulent Transaction, Practice, or Course of Business

To prove its claim under Section 17(a)(3), the SEC must prove that the defendant in question—in the offer or sale of a security—engaged in a transaction, practice, or course of business that operated, or would operate, as a fraud or deceit on the purchaser. I have already described what "in the offer or sale" means, and you should apply the same definition here.

Likewise, a "fraudulent transaction, practice, or course of business" under Section 17(a)(3) means to the same thing as "an act, practice or course of dealing," which I previously defined for you in connection with the Rule 10b-5(c) claim, and you should apply that definition here.

A defendant cannot be found liable under Section 17(a)(3) based on anyone else's conduct or for any transaction, practice or course of business that was not targeted at a purchaser of a Sterling Software, Sterling Commerce, Michaels Stores, or Scottish Re security. Moreover,

the SEC must prove by a preponderance of the evidence, for each defendant separately, that the defendant committed an inherently deceptive or manipulative act that is independent from and in addition to the alleged misrepresentations and omissions underlying its Rule 10b-5(b) and Section 17(a)(2) claims. In other words, a transaction, practice or course of business that merely facilitated the preparation of any such misstatement cannot be a basis to find the defendants liable under Section 17(a)(3).[36]

If you do not find that the defendant in question engaged in a fraudulent transaction, practice, or course of business, then you must return a verdict on the Section 17(a)(3) claim of "not liable" as to that defendant.

### Second Element--Materiality

Regarding the second element, the SEC must prove by a preponderance of the credible evidence that the defendant's conduct related to a material fact.[37] I have previously instructed you on the concept of materiality, and you should apply those instructions here as well. If you find that a allegedly false statement or omission is not material, you may not find any defendant liable on the basis of that statement or omission.

### Third Element—Intent to Defraud/Negligence

The SEC must also prove by a preponderance of the credible evidence that the defendant in question acted negligently, or with intent to defraud, or with reckless disregard for the truth. I have previously instructed you as to the meanings of these terms, and you should apply those definitions here as well.

---

[36] *See supra* Instruction No. 3.

[37] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

If you do not find that the defendant in question acted negligently, or with intent to defraud, or with reckless disregard for the truth, you must return a verdict of "not liable" on the Section 17(a)(3) claim as to that defendant.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 10**
<u>SECTION 5(a) AND 5(c)—SALE OF UNREGISTERED SECURITIES</u>
<u>SECTION 4(1) EXEMPTION</u>

The SEC's third set of claims is that Sam and Charles Wyly sold or offered for sale unregistered shares of Michael's Stores to investors. Section 5 of the Exchange Act requires securities to be registered with the SEC before they are sold, unless the securities qualify for an exemption from this requirement. The parties have stipulated that the Isle of Man entities sold unregistered shares of Michael's Stores stock. The defendants assert that such sales were pursuant to an exemption.

you must consider whether the sales of unregistered securities qualified for what is called the Section 4(1) exemption. This exemption applies if you find, by a preponderance of the evidence, that either of two elements are met.  You should render a verdict as to both elements.

<u>First</u>, the exemption applies if, at the time of the sales, purchasers of these shares had access to all of the material information about Michael's Stores that a registration statement would have provided.[38]  For purposes of this element, you may consider that purchasers have access to all the information contained in other public filings by Michael's Stores.[39]

*****

Note: The SEC's view of "distribution" as meaning any sale to a large number of purchasers was considered, and rejected, by the Supreme Court in *SEC v. Ralston Purina*, 346 U.S. 119 (1953).  In that case, the SEC sought a blanket ruling that any "offering to a substantial number of the public' is not exempt under § 4(1)."  *Id.* at 125. The Supreme Court rejected the SEC's request, and instead held that "the statute would seem to apply to a 'public offering' whether to few or many. . . . [T]here is no warrant for superimposing a quantity limit on private offerings as a matter of statutory interpretation."

The SEC's proposed definition of "distribution" is also inconsistent with the Second Circuit's holding in *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 466 (2d Cir.

---

[38] *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 466 (2d Cir. 1959).

[39] *See* 17 C.F.R. § 230.144(c)(1) (1996).  "Adequate public information" exists about an issuer if the issuer "has securities registered pursuant to section 12 of the Securities Exchange Act" and "has filed all the reports required to be filed thereunder during the 12 months preceding" the sale. *Id.*

27

1959).  In *Gilligan*, the Second Circuit explained that the test for "distribution" looks to the availability of information about the *issuer*—in this case, Michael's Stores.  *See also Ackerberg v. Johnson*, 892 F.2d 1328, 1337 (8th Cir. 1989) (defining "distribution" by reference to "[t]he offeree's access to financial information about the investment, *similar* to what would be found in a registration statement" (emphasis added) (quoting *Sorrell v. SEC*, 679 F.2d 1323, 1326 (9th Cir.1982)).

Contrary to *Gilligan*, the SEC instead proposes a test that would require, not just that purchasers have information about the *issuer*, but also that the purchasers have access to all the other information contained in a registration statement, including the identities of the selling shareholders and the relationship of those selling shareholders to the issuer.  If the SEC were right, and the exemption were available only when purchasers have access to *all* the information contained in a registration statement (no matter how remote or immaterial to the financial merits of the investment) then the exemption would cease to exist because it would only be available when a registration statement is, in fact, filed.

\*\*\*\*\*

<u>Second</u>, the exemption also applies if the Isle of Man entities were not "affiliates" of Michaels Stores. An "affiliate" is a person who controls, or is controlled by, or is under common control with, an issuer (in this case, the issuer is Michael's Stores).[40]

For purposes of this exemption, "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract, or otherwise.[41]

The burden of proof is on the defendants as to both elements.

---

[40] 17 C.F.R. § 230.144(a)(1) (1996); *see* 15 U.S.C. § 77b(a)(11).
[41] *SEC v. Kern*, 425 F.3d 143, 149 (2d Cir. 2005)

## WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 11
### SECTION 5—SECOND DEFENSE—RULE 144

In 1997, various Isle of Man companies sold shares of Michael's Stores to the public.  No registration statement had been filed with the SEC for those shares.  The defendants claim that these shares were exempt from registration under SEC Rule 144.  That Rule contains a number of elements, but only one of those elements is in dispute.

The 1997 sales of unregistered shares are itemized in the highlighted portions of Attachment B that are attached to these instructions.  Each sale was disclosed in a Form 144 filed with the SEC.  The element you must determine is whether the answers provided on these Forms 144 contained all of the information requested by the Form and its instructions.[42]

The burden of proof on this element is on defendants.

*****

Note: The parties have stipulated or otherwise agreed that all of the other requirements of Rule 144 were complied with by the Isle of Man entities, except for this notice requirement.

*****

---

[42] 17 CFR 230.144(h) (1996) (notice on Form 144 shall be filed with the Commission); 17 CFR 239.144(c)(1) ("Failure to disclose the information requested by Form 144 would make an exception under § 230.144 of this chapter unavailable . . . .").

29

## WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 12
### SECTION 13(d)—GENERAL INSTRUCTIONS

I will now provide instructions regarding the SEC's claims that the defendants violated Sections 13(d) of the Exchange Act and the accompanying Rules 13d-1 and 13d-2. These are reporting requirements and do not involve any allegation of fraud. The goal of Section 13(d) is to alert the marketplace to every large, rapid aggregation of or accumulation of securities which might represent a potential shift in corporate control.[43] Section 13(d) and the rules promulgated thereunder require any person who is the "beneficial owner" of more than 5% of an issuer's stock to file certain reports disclosing, among other information, the number of shares beneficially owned and amending those filings anytime there is a material change in the percentage of outstanding shares the person beneficially owns.[44]

The SEC alleges that the Wylys were beneficial owners of Sterling Software, Sterling Commerce, and Michaels Stores stock owned by the Isle of Man entities and, therefore, that the Schedule 13Ds submitted by the Wylys understated the number of shares they beneficially owned by not including the shares owned by the Isle of Man Entities. The SEC also alleges that, because the defendants were beneficial owners of those shares, they should have disclosed various transactions by the Isle of Man companies on amended Schedule 13Ds, but failed to do so.

I will now instruct you on each of these claims.

---

[43] *MTD Serv. Corp. v. Weldotron Corp.*, No. 93 Civ. 4980 (MP), 1994 WL 455154, at *7 (S.D.N.Y. Aug. 19, 1994); *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993)
[44] 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-l; 17 C.F.R. § 240.13d-2.

**WYLY DEFENDANTS' PROPOSE INSTRUCTION NO. 13**
RULE 13d-1—MATERIAL UNDERSTATEMENTS OF BENEFICIAL OWNERSHIP

To prevail on its claim under Rule 13d-1, the SEC must prove by a preponderance of the credible evidence the following elements as to each date on which Charles or Sam Wyly filed a Schedule 13D (as provided in the Verdict Form):

First, that on that date, the defendant in question was the beneficial owner of the relevant issuer's shares held by one or more Isle of Man entities.

Second, that as a result, the Schedule 13D filed on that date understated the number of shares that the defendant in question beneficially owned.

**Beneficial Ownership—Section 13**

A person is a "beneficial owner" of a security if that person, directly or indirectly, has or shares either voting power or investment power over that security. "Voting power" means the power to vote, or to direct the voting of, such security. "Investment power" means the power to dispose, or to direct the disposition of, such a security.[45]

As you can see, the determination of whether one is a beneficial owner focuses on the person's power over voting or disposing of the security. Although the word "beneficial" might in ordinary usage denote some connection to whether a person will obtain benefits associated with the security, you should not infer such a connection here. A person can have or share investment or voting power over securities, and thus be a beneficial owner of those securities, even if that person has no right to enjoy the sales proceeds and other benefits associated with those securities. Conversely, one may have the sole right to the benefits associated with securities, yet lack the investment or voting power necessary to make that person a beneficial owner of the securities.

---

[45] 17 C.F.R. § 240.13d-3(a).

31

Moreover, absent some measure of active control, the mere ability to influence or even cause the disposition or voting of a security does not amount to voting or investment power.[46] For example, an author of a weekly column providing stock tips that reliably cause investors to buy and sell the stock mentioned is not the beneficial owner of the shares his readers bought and sold, even though the column influenced or even caused the purchases and sales.[47] Put another way, a person is not a beneficial owner of a security if another person remains free to act in their self-interest or the interest of another with regard to voting or disposing of the security.[48] Moreover, one who must obtain the consent of another of another before voting or disposing of stock lacks the power to direct the voting or disposition of that stock, because having the "power" subject to another's consent is equivalent to not having the power at all.[49]

Additionally, a person will be deemed a beneficial owner of a security if that person directly or indirectly, creates or uses a contract, arrangement, or any other device, including a trust, with the purpose or effect of divesting such person of beneficial ownership or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of Section 13(d).[50]

"A plan or scheme to evade" reporting requirements requires more than an intent to avoid disclosure.[51] There are many perfectly legal methods of intentionally avoiding disclosure under

---

[46] *See CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 298 (2d Cir. 2011) (Winter, J., concurring).

[47] *See id.*

[48] *See id.* at 299.

[49] Arnold S. Jacobs, *The Williams Act—Tender Offers & Stock Accumulations* § 2:12 (2014); *see Calvary Holdings, Inc. v. Chandler*, 948 F.2d 59, 63–64 (1st Cir. 1991) (holding that nominees who have no ability to vote absent direction from another lack voting power under Rule 13d-1).

[50] 17 C.F.R. § 240.13d-3(b).

[51] *CSX Corp.*, 654 F.3d at 306 (Winter, J., concurring).

Section 13(d).[52] In order to constitute a plan or scheme to *evade*, the transaction or arrangement at issue must provide a means of exercising control over the securities and create a false appearance while lacking economic substance.[53]

You have seen some evidence in this case in which the term "beneficial ownership" or "beneficial owner" is used in a sense other than the specific defined sense of the securities laws on which I have just instructed you. I draw your attention specifically to exhibit PX-815 in that regard.

---

[52] *Id.*

[53] *Id.* As Defendants will explain in their forthcoming objections to the SEC's proposed instructions, Defendants do not believe the evidence supports an instruction on this provision, based on the legal principles described above. If, however, the Court decides to include such an instruction, it should include the language proposed above.

## WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 14
<u>RULE 13d-2—MATERIAL CHANGE IN BENEFICIAL OWNERSHIP</u>

To prevail on its claim under Rule 13d-2, the SEC must prove by a preponderance of the credible evidence the following elements as to each date on which the SEC alleges Charles or Sam Wyly failed to file an amended Schedule 13D (as provided in the Verdict Form):

<u>First</u>, that on that date the defendant in question was the beneficial owner of the relevant issuer's shares held by one or more Isle of Man entities.

<u>Second</u>, that on that date, one or more Isle of Man entities associated with that defendant purchased or sold an amount of the relevant issuer's shares that would have caused a material increase or decrease in the percentage of shares beneficially owned by the defendant in question.[54]

### Material Change

An acquisition or disposition of beneficial ownership of securities in an amount equal to one percent or more of the class of securities is deemed "material" for purposes of this section; acquisitions or dispositions of less than those amounts may be material, depending upon the facts and circumstances.[55]

The standard of materiality relevant to this claim is distinct from the materiality relevant to the SEC's claims under Rule 10b-5 and Section 17(a). That an increase or decrease in beneficial ownership is deemed "material" under Rule 13d-2 does not mean that the failure to report that increase or decrease constitutes a material misstatement or omission.[56]

---

[54] 17 C.F.R. § 240.13d-2(a).

[55] *Id.*

[56] *See United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991) (declining to hold that the information required to be disclosed in 13D is material per se for purposes of § 10(b)).

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 15**
SECTION 16(a) AND RULES 16a-2 & 16a-3
DISCLOSURE OF INVESTMENT CONTROL

Let me turn now to the SEC's next set of claims. As I said, the SEC claims that the defendants also violated Section 16(a) by failing to file Form 4s reflecting transactions by the Isle of Man entities. A Form 4 must be filed by an officer or director of an issuer, or one who is a beneficial owner of more than 10% of the outstanding shares of the issuer, whenever there is a change in that person's beneficial ownership. When a Form 4 filer is a beneficiary of an irrevocable trust that holds issuer securities, the filer must include the securities held by the trust if he has or shares investment control over those securities with the trustee.[57]

To meet its burden of proof on this claim, the SEC must prove by a preponderance of the credible evidence the following elements:

First, the defendant in question was a beneficiary of one or more of the Isle of Man trusts;

Second, that the defendant in question had, or shared with the trustee of that trust, investment control over issuer securities owned by that trust;

Third, that the defendant in question was an officer or director of the relevant issuer, or beneficially owned more than 10% of the issuer's outstanding shares;

Four, that the defendant did not file a Form 4 indicating a change in beneficial ownership securities over which it had or shared investment control; and

Five, that the defendant's failure to file a Form 4 was not inadvertent.[58]

---

[57] 17 C.F.R. § 240.16a-8(a)(2)(ii).
[58] *SEC v. Blackwell*, 477 F. Supp. 2d 891, 905 (S.D. Ohio 2007).

**Investment Control**

"Investment control" means the power to direct or cause the direction of the management and policies of a person's investments.[59] Mere *influence* over investment decisions is not akin to control.[60]

**Beneficial Ownership**

I have previously defined for you the term "beneficial ownership" in connection with Section 13(d), and you should apply that definition here.[61]

---

[59] *Mercer v. Gupta*, 880 F. Supp. 2d 486, 493 (S.D.N.Y. 2012) (citing *Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.,* 194 F.Supp.2d 232, 243 (S.D.N.Y. 2002)), *aff'd,* 712 F.3d 756 (2d Cir. 2013) *cert. denied,* 134 S. Ct. 319 (2013).

[60] *Mercer v. Gupta*, 712 F.3d 756, 760 (2d Cir. 2013) *cert. denied,* 134 S. Ct. 319 (2013).

[61] 17 C.F.R. § 240.16a-1(a)(1). As the SEC notes, Rule 16a employs a different definition of "beneficial ownership" for determining which securities must be disclosed on a Form 4. 17 C.F.R. § 240.16a-1(a)(2). For that purpose, beneficial owner is defined as one "who, directly or indirectly, . . . has or shares a direct pecuniary interest in the equity securities. *Id.* This definition, however, is subject to exceptions, one of which applies to securities held by a trust. 17 C.F.R. § 240-16a-1(a)(2)(ii)(E). Under that exception, a beneficiary of a trust is a beneficial owner only of those securities for which he has or shares investment control. 17 C.F.R. § 240.16a-8(b)(3). The trust exception also provides that trust settlors can be beneficial owners of securities held by the trusts they settle, but only if the trusts are revocable, which is inapplicable here. *See* 17 C.F.R. § 240.16a-8(a)(2)(ii).

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 16**
SECTION 14(a) AND RULES 14a-3 & 14a-9
BENEFICIAL OWNERSHIP IN PROXY STATEMENTS

The SEC alleges that Sam and Charles Wyly violated Section 14(a) by making false statements to shareholders in connection with the "solicitation" of shareholders' "proxy." A "proxy" is a shareholder's written permission to cast a vote, on the shareholder's behalf, at a corporate meeting.  It is common for Issuers to "solicit" shareholders to give their "proxies" for votes, in advance of a corporate meeting. Issuers do this by sending their shareholders a document called a "proxy information statement." Throughout the time period relevant here, Sterling Software, Sterling Commerce, Michael's Stores, and Scottish Re sent out proxy information statements to their members, relating to a number of different corporate meetings.

Section 14(a) forbids an Issuer from making a false or misleading statement of material fact, or making an omission of material fact, in a proxy information statement. When an issuer solicits the proxy of a shareholder, the issuer must include, as part of the proxy information statement, a "beneficial ownership" table that tells the shareholder the number of shares that are either directly owned, or are "beneficially owned," by the Issuer's directors, officers, and by any shareholders who own more than 5% of the total outstanding shares.

The SEC alleges that the proxy information statements issued by Sterling Software, Sterling Commerce, Michael's Stores, and Scottish Re were false because they did not state that Sam Wyly and Charles Wyly were the "beneficial owners" of the shares owned by the Isle of Man companies.

To meet its burden of proof on this claim, the SEC must prove by a preponderance of the credible evidence the following elements, as to each allegedly false proxy statement:

First, that by means of a proxy statement, the defendant in question solicited or allowed his name to be used to solicit, a proxy with respect to a security.

Second, that the defendant was, at the time the proxy solicitation was issued, a "beneficial owner" of the relevant issuer's shares owned by one or more of the Isle of Man entities.

Third, that the proxy solicitation did not disclose that the defendants were beneficial owners of the shares owned by the Isle of Man trusts.

Fourth, that not disclosing such beneficial ownership of those shares was a "material" misstatement.

Fifth, that the defendant acted negligently in issuing, or causing to be issued, the proxy solicitation.

### Beneficial Owner

I have previously defined for you the term "beneficial owner" in connection with Section 13(d), and you should apply that definition here.

### Materiality

In determining whether the alleged failure to disclose beneficial ownership was a material misstatement, apply the definition and instructions on materiality that I previously provided in connection with the claim under Section 10b-5(b).

### Negligence

I previously instructed you on the concept of negligence in connection with Section 17(a)(2). You should apply those instructions here.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 17**
<u>SECTION 20(a)—AIDING AND ABETTING CLAIMS—GENERAL INSTRUCTIONS</u>

In addition to claiming that the defendants committed primary violations of the securities laws, the SEC also claims that the defendants aided and abetted violations committed by other parties, including each other.

To satisfy its burden of proof on the aiding and abetting claims, the SEC must prove by a preponderance of the credible evidence the following elements:

<u>First</u>, that a securities law violation was committed by a primary violator;

<u>Second</u>, that the defendant in question had knowledge of the securities law violation; and

<u>Third</u>, that the defendant substantially assisted in the achievement of the primary violation.[62]

**Primary Violations**

The SEC alleges that the defendants aided and abetted the following alleged primary violations:

- Alleged violations of Section 13(d) of the Exchange Act and SEC Rules 13d-1, and 13d-2 by trustees of their offshore trusts for falsely representing that the trustees alone possessed "sole dispositive power" over the securities held in those offshore trusts;

- Alleged violations of Section 14(a) of the Exchange Act and SEC Rules 14a-3, and 14a-9 by Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish Annuity & Life Holdings Ltd. through those companies' filing of proxy statements which included tables that materially misrepresented the number of

---

[62] *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012), *cert denied*, 133 S.Ct. 2855, 186 L.Ed.2d 910 (2013).

securities the Wylys beneficially owned and materially misrepresented the Wylys'
compliance with Section 16(a) of the Exchange Act; and

- Alleged violations of Section 13(a) of the Exchange Act, and SEC Rule 13a-1 by
Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish
Annuity & Life Holdings Ltd. through those companies' filing of annual Forms 10-K
which included tables that materially misrepresented the number of securities the
Wylys beneficially owned and materially misrepresented the Wylys' compliance with
Section 16(a) of the Exchange Act.

### Knowledge of Primary Violation

An aider and abettor must know that the securities law violation is being committed and
act in a way that is intended to bring about the success of the securities law violation.[63]

### Substantial Assistance

An aider and abettor "substantially assists" in the primary violation if he in some sort
associated himself with the venture, participated in it as in something that he wished to bring
about, and sought by his action to make it succeed.[64] The defendant must be a substantial and
direct cause of the alleged primary violation; it is not enough that the violation would not have
occurred but for the defendant's actions. Where the alleged primary violation consists of
misrepresentations in, or omissions from, a document, the substantial assistance must relate to
the preparation or dissemination of the document itself.[65]

I will now instruct you separately on each of the SEC's aiding and abetting claims.

---

[63] 1 L. Sand, et al., *Modern Federal Jury Instructions—Criminal* § 11.01, Instruction 11-2 (2013).
[64] *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).
[65] *Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989) (citing *Terrydale Liquidating Trust v. Gramlich*, 549 F. Supp. 529, 531 (S.D.N.Y. 1982)); *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983) (noting "but-for" causation is insufficient to satisfy the third requirement of an aiding and abetting violation).

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 18**
<u>AIDING AND ABETTING ALLEGED TRUSTEE VIOLATIONS OF SECTION 13(a)</u>

The SEC claims that the defendants aided and abetted violations by the Isle of Man trustees of Section 13(d) of the Securities Act and Rule 13d-1, which violation the trustees allegedly committing by filing Schedule 13Ds stating that the trusts possessed "sole dispositive power" over Michaels Stores, Sterling Software, or Scottish Re securities held by the trusts.

To satisfy its burden of proof on this aiding and abetting claim, the SEC must prove the following elements by a preponderance of the credible evidence:

<u>First</u>, that the Isle of Man trustees committed a primary violation of Section 13(d) and Rule 13d-1, which requires the SEC to prove that:

      (a) The Schedule 13D stated that the trustee in question had "sole dispositive power" over the securities in question;

      (b) That statement was false;

<u>Second</u>, for each defendant, that the defendant in question knew the primary violation was being committed, which in this case requires the SEC to prove that the defendant knew:

      (a) that the Isle of Man trustee did not have "sole dispositive power" over the securities in question, and

      (b) that a Schedule 13D stating to the contrary was being filed;

<u>Third</u>, that the defendant in question substantially assisted in the achievement of the trustees' alleged primary violation, which in this case requires the SEC to prove that the defendant:

      (a) was a substantial and direct cause of the primary violation; and

      (b) helped prepare or disseminate the allegedly false Schedule 13D.

41

**"Dispositive Power"**

"Dispositive power" has the same meaning as "investment power." I previously instructed you on the meaning of "investment power" in connection with the SEC's claim for direct violations of Section 13(d). You should apply those instructions here as well.

**Knowledge of Primary Violation**

I have previously instructed you on the "knowledge" element of aiding and abetting, and you should apply those instructions here.

**Substantial Assistance**

I have previously instructed you on the "substantial assistance" element of aiding and abetting, and you should apply those instructions here.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 19**
<u>AIDING AND ABETTING ALLEGED ISSUER VIOLATIONS OF SECTION 14(a)</u>

The SEC claims that the defendants aided and abetted violations by Michaels Stores, Sterling Software, Sterling Commerce, and Scottis Re of Section 14(a) and Rules 14a-3 and 14a-9, which violations those issuers allegedly committed by filing proxy statements that did not include securities held by the Isle of Man trusts in the tables identifying the number of securities that the defendants allegedly owned.

To prove this claim, the SEC must prove the following elements by a preponderance of the credible evidence:

<u>First</u>, for each allegedly false proxy statement, that the issuer in question (Michaels Stores, Sterling Software, Sterling Commerce, or Scottish Re) committed a primary violation of Section 14(a) and Rules 14a-3 and 14a-9, which require the SEC to prove that:

(a) The issuer in question issued a proxy statement that included a table identifying the number of shares beneficially owned by the defendant in question,

(b) The table did not include shares held by the Isle of Man entities, and

(c) At the time the proxy statement was issued, the defendant in question was a beneficial owner of the shares held by the Isle of Man entities;

<u>Second</u>, for each defendant, that the defendant knew of the primary violation, which in this case requires the SEC to prove that at the time the proxy statement was issued the defendant in question knew:

(a) that he was the beneficial owner of shares held by the Isle of Man entities, and

(b) that a proxy statement was being issued that did not include those shares in the beneficial ownership table;

<u>Third</u>, that the defendant in question substantially assisted in the achievement of the primary violation, which in this case requires the SEC to prove that the defendant:

      (a)  was a substantial and direct cause of the primary violation; and

      (b)  helped prepare or disseminate the allegedly false proxy statement.

## "Beneficial Ownership"

I have previously instructed you on the term "beneficial ownership" for you in connection with the SEC's direct claim under Section 13(d), and you should apply those instructions here.

## Knowledge of Primary Violation

I have previously instructed you on the "knowledge" element of aiding and abetting, and you should apply those instructions here.

## Substantial Assistance

I have previously instructed you on the "substantial assistance" element of aiding and abetting, and you should apply those instructions here.

44

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 20**
<u>AIDING AND ABETTING ALLEGED ISSUER VIOLATIONS OF SECTION 13(a)</u>

The SEC claims that the defendants aided and abetted violations by Michaels Stores, Sterling Software, Sterling Commerce, and Scottish Re of Section 13(a) and Rule 13a-1. Section 13(a) of the Exchange Act requires companies to file accurate annual reports with the SEC on Forms 10-K. Those annual reports are required to contain complete and accurate disclosures about officers and directors' beneficial ownership of the company's securities. The SEC claims that 10-Ks filed by Sterling Software, Sterling Commerce, Michael's Stores, and Scottish Re, materially misrepresented the number of securities the Wylys beneficially owned.

To prove this claim, the SEC must prove the following elements by a preponderance of the credible evidence:

<u>First</u>, for allegedly false Form 10K, that the issuer in question committed a primary violation of Section 13(d) and Rule 13d-1, which requires the SEC to prove:

> (a) the Form 10K did not include issuer shares held by Isle of Man entities in the number of shares beneficially owned by the defendant in question,

> (b) that the defendant in question was a beneficial owner of the issuer shares held by the Isle of Man entities, and

> (c) the omission of those shares was material;

<u>Second</u>, for each defendant, that the defendant in question knew of the primary violation, which in this case requires the SEC to prove that at the time the 10K was filed the defendant in question knew:

> (a) that he was the beneficial owner of the issuer shares held by the Isle of Man entities,

45

(b) that the 10K did not disclose the defendant's beneficial ownership of those shares, and

(c) that the omission of those shares was material;

Third, that the defendant in question substantially assisted in the achievement of the primary violation, which in this case requires the SEC to prove that the defendant:

(a) was a substantial and direct cause of the primary violation; and

(b) helped prepare or disseminate the allegedly false proxy statement.

## "Beneficial Ownership"

I have previously instructed you on the term "beneficial owner" for you in connection with the SEC's direct claim under Section 13(d), and you should apply those instructions here.

## Materiality

As I have previously instructed you, a fact is material if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether or not to buy or sell the securities in question. This standard requires a showing of a substantial likelihood that, under all the circumstances, the untrue fact would have assumed actual significance in the deliberations of the reasonable investor.

## Knowledge of Primary Violation

I have previously instructed you on the "knowledge" element of aiding and abetting, and you should apply those instructions here.

## Substantial Assistance

I have previously instructed you on the "substantial assistance" element of aiding and abetting, and you should apply those instructions here.

**WYLY DEFENDANTS' PROPOSED INSTRUCTION NO. 21**
STATUTE OF LIMITATIONS

In determining whether Sam and Charles Wyly are liable for the claimed violations of Rule 10b-5 and Section 17(a), you are to base your determination on conduct by them that you find to have occurred on or after February 1, 2001.[66]  For example, if you find that a defendant made a false statement or a misleading omission prior to February 1, 2001, that statement may not be the basis for finding the defendants liable for a Rule 10b-5 or Section 17(a) claim, because these claims are directed only at defendants' conduct occurring on or after February 1, 2001.

In determining whether Sam and Charles Wyly are liable for all the *other* SEC claims (for violations of Sections 5, 13, 14, and 16) the verdict form will direct you to specific alleged violations, which are alleged to have occurred on particular dates, all of which are after February 1, 2001.

You may consider acts and circumstances prior to February 1, 2001 for purposes of general context and for purposes of interpreting the events and the states of mind of the persons involved.  For instance, the SEC contends that the defendants acted with scienter, while defendants contend that they relied in good faith on the advice of counsel and other trusted advisors.  In weighing these claims as to defendants' state of mind *after* February 1, 2001, you may consider evidence of conduct occurring *prior* to February 1, 2001.  However, your ultimate determination of liability may only be based on the conduct and the states of mind that you find to have occurred on or after February 1, 2001.

---

[66] As separately set forth in defendants' "issues of law," defendants contend that all equitable relief sought by the SEC in this case is time-barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462.  Specifically, the SEC's request for disgorgement seeks a "forfeiture" within the meaning of § 2462, and all other requested equitable relief is a "penalty" within the meaning of that section. Defendants recognize that the Court previously ruled that it would not give this instruction but would instead structure the verdict sheet to ask liability questions for different time periods. Defendants maintain this instruction here only to preserve the point for the record.