## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | No. 1:10-cv-05760-SAS |
| SAMUEL E. WYLY and DONALD R. MILLER, JR., in his capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr., | |
| Defendants. | |

## PLAINTFF SECURITIES AND EXCHANGE COMMISSION'S PROPOSED SUBSTANTIVE JURY INSTRUCTIONS (2d REVISION)

Plaintiff Securities and Securities Exchange ("SEC") submits its second revision of its proposed substantive instructions to be given to the jury at the conclusion of the trial of the above-styled cause.

| NUMBER | PROPOSED INSTRUCTION | PAGE |
|---|---|---|
| 1 | STATUTORY PURPOSE OF THE SECURITIES LAWS ............................. | 2 |
| 2 | OVERVIEW OF THE VIOLATIONS CHARGED ................................... | 4 |
| 3 | SECTION 10(B) AND RULE 10B-5---SECURITIES FRAUD .................... | 8 |
| 4 | SECTION 17(A) OF THE SECURITIES ACT--SECURITIES FRAUD ELEMENTS | 19 |
| 5 | SECTION 5(A) AND 5(C) – SALE OF UNREGISTERED SECURITIES ............. | 24 |
| 6 | SECTION 4(1) EXEMPTION FROM REGISTRATION ............................. | 27 |
| 7 | SECTION 13(D) AND RULES 13D-1 & 13D-2-DISCLOSURE OF BENEFICIAL OWNERSHIP .............................................................. | 30 |
| 8 | SECTION 14(A) AND RULES 14A-3 & 14A-9--DISCLOSURE OF BENEFICIAL OWNERSHIP ............................................................... | 35 |
| 9 | SECTION 16(A) AND RULES 16A-2 & 16A-3--DISCLOSURE OF BENEFICIAL OWNERSHIP ............................................................... | 39 |
| 10 | AIDING AND ABETTING SECURITIES LAW VIOLATIONS ........................ | 42 |
| 12A | CREDIBILITY OF WITNESSES - INTEREST IN OUTCOME ..................... | 48 |

**SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 1**
STATUTORY PURPOSE OF THE SECURITIES LAWS

The SEC alleges that Sam Wyly and Charles Wyly engaged in illegal conduct in violation of two federal statutes and several rules that the SEC has adopted under those statutes. The two statutes at issue in this case are the Securities Act of 1933, which I will refer to as " the Securities Act," and the Securities Exchange Act of 1934, which I will refer to as "the Exchange Act."

Congress passed the Securities Act to protect the investing public in the purchase of securities. The Securities Act prohibits fraud, and requires full and fair disclosure of all important facts, by those who offer and sell securities so that investors can make informed investment decisions.

Congress passed the Exchange Act to ensure fair dealing and outlaw deceptive and inequitable practices by those who buy or sell securities.  The SEC has passed Rules under the Securities Act and the Exchange Act.  Those Rules have the force of law and must be followed. Among the primary objectives of the Exchange Act are the maintenance of fair and honest securities markets and the elimination of manipulative practices that tend to distort the fair price of a stock. The Exchange Act and rules under it are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that are contrary to a climate of fair dealing. Congress recognized that any deceptive or manipulative practice that related to trading activity could undermine the function and purpose of a free market and the integrity of securities transactions.[1]  The public disclosures

---

[1] *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) ("preserving the integrity of the securities markets was one of the purposes animating" the Exchange Act, as was the intent "to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face") (quotation and citation omitted); *Lowe v. SEC*, 472 U.S. 181,

required by officers and directors of public companies are not mere technical reporting provisions.[2]  Section 13(d) disclosure is premised on the understanding that shareholders and potential investors should know who is buying or selling large amounts of stock in a company so they can make informed decisions about whether they should buy or sell the stock.[3]  Section 16(a) reports were designed to prevent the insider from taking advantage of information to sell or buy shares ahead of the release of information to the public about the company.[4]

---

199-200 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-877 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry").

[2] *SEC v. Drexel Burnham Lambert Inc.*, 837 F.Supp. 587, 607 (S.D.N.Y. 1993) ("Section 13(d) is not a mere 'technical' reporting provision; it is, rather, the 'pivot' of a regulatory scheme that may represent  'the only way that corporations, their shareholders and others can adequately evaluate ... the possible effects of a change in substantial shareholdings.'")(*quoting SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230, 1230 n. 21 (D.C.Cir.1989) (*quoting* statement of Senator Williams, sponsor of the Williams Act, 113 Cong. Rec. 855 (January 18, 1967)).

[3] *U.S. v. Bilzerian*, 926 F.2d 1285, 1297 (2d Cir. 1991).

[4] *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 522, n.31(1976) (*quoting* statement from Senator Corcoran, spokesman for the legislative drafters of Section 16).

## SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 2
### OVERVIEW OF THE VIOLATIONS CHARGED

The plaintiff in this case is the Securities and Exchange Commission, which I will refer to as the SEC. The SEC is a government agency that enforces the federal securities laws.

The SEC filed this lawsuit against Samuel E. Wyly and his brother, Charles J. Wyly Jr. After this lawsuit was filed, Charles Wyly passed away, so Donald R. Miller, Jr. has been substituted as a defendant as the legal representative of Charles Wyly's estate. Although Mr. Miller has been substituted as a defendant, the SEC does not allege that he personally engaged in any misconduct. So when I refer to allegations against "defendants" here, I am referring to the SEC's allegations against Sam and Charles Wyly, not against Mr. Miller.

The SEC's claims against the defendants arise under two federal statutes and several rules that the SEC has adopted under those statutes. The two statutes are the Securities Act of 1933 (often referred to as the "Securities Act") and the Securities and Exchange Act of 1934 (often referred to as the "Exchange Act"). These statutes and the rules promulgated by the SEC thereunder require, among other things, certain public disclosures about the securities of public companies.

Under these laws, officers, directors, and major shareholders of public companies are required to make certain disclosures about their purchases, sales, and holdings of those companies' securities to the SEC in filings that are available to the public to use, if they wish, in making investment decisions.

The SEC's claims can be categorized into four types: securities fraud claims, registration claims, reporting and disclosure claims, and aiding and abetting claims.

The Fraud Claims: The SEC brings its fraud claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 17(a) of the Securities Act. With

the Section 10(b) claims, the SEC alleges that the defendants, through the use of trusts and companies established in the Isle of Man (the "Isle of Man entities"), employed a device, scheme, or artifice to defraud; made material misstatements or omissions; and engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit; all in connection with the purchase or sale of securities issued by Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish Re Group Limited.

Similarly, the SEC alleges that the defendants violated Section 17(a) of the Securities Act by employing a device, scheme, or artifice to defraud; by obtaining money or property by means of material misstatements or omissions; and by engaging in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser; all in the offer or sale of shares of Sterling Software, Sterling Commerce, Michaels Stores, and Scottish Re.

The defendants contend that they did not make any false statements or omissions of material facts, and that they acted reasonably and in good faith in attempting to comply with the various reporting requirements.

The Registration Claims: The SEC brings a non-fraud claim under Section 5, subsections (a) and (c), of the Securities Act, alleging that the defendants sold or offered for sale unregistered sales of Michaels Stores stock, when no exemption from registration applied.

The defendants contend that the Isle of Man entities sold stock pursuant to one or more valid exemptions, and thus registration was not required.

The Reporting and Disclosure Claims: The SEC brings several claims that allege non-fraud violations of various reporting requirements, all of which are based on the defendant's alleged control of or power over the securities held by the Isle of Man entities.

First, the SEC alleges that the defendants were "beneficial owners" of the securities held by the Isle of Man entities and, therefore, violated Section 13(d) of the Exchange Act by submitting certain filings that understated the number of shares that the defendants beneficially owned, any by failing to make other filings. The defendants assert that the trustees of the Isle of Man trusts had the sole power over disposition and voting of trust securities and that they, the defendants, were not beneficial owners of those shares.

Second, the SEC alleges that the defendants violated Section 16(a) of the Exchange Act, again by failing to make certain filings regarding beneficial ownership. The defendants contend that they made all Form 4 filings required under the law, and that they certainly did not advertently fail to make any filings.

Third, the SEC alleges that Sam and Charles Wyly violated Section 14(a) of the Exchange Act by negligently soliciting or allowing their names to be used to solicit a proxy via a proxy statement that materially misstated their beneficial ownership. The defendants contend that the proxy materials were accurate as to all material facts and that to the extent they were involved in reviewing or approving those statements, they acted reasonably at all times.

Aiding and Abetting Claims: The last type of claims brought by the SEC are aiding and abetting claims, under which the SEC alleges that the defendants knowingly provided substantial assistance to another person's primary violation of a securities law. The defendants contend not only that the companies and trusts complied with their respective reporting requirements, but also that the defendants never knowingly provided any assistance to a securities law violation.

You should note that while, as explained above, you will in some cases have to determine if a certain fact would have been "material" to a reasonable investor, or whether certain conduct

would have deceived or operated as a fraud on a person, the SEC does not need to prove that a

specific investor suffered any damages or harm as a result of the defendants' alleged conduct.

**SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 3**
**SECTION 10(B) AND RULE 10B-5---SECURITIES FRAUD**

First I will describe the fraud claims.   The SEC alleges that the defendants committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10-b(5). Specifically, the SEC alleges that the defendants engaged in a 13-year fraudulent scheme to use their offshore trust system to conceal and trade tens of millions of securities of public companies while they were members of the boards of directors of those companies, without disclosing their ownership and their trading of those securities as required by the federal securities laws.

The SEC alleges that the Wylys' committed securities fraud through various means.  The SEC alleges that the Wylys' public filings created the impression that their holdings and trading of securities were limited to the fraction that they held and traded domestically, while failing to disclose their beneficial ownership of the securities held offshore.

The  SEC  also  alleges  that  the  Wylys  lied  in  Director  and  Officer  (or  "D&O") questionnaires that they signed and sent to their companies, Michaels Stores, Sterling Software, Sterling Commerce and Scottish Re.   In particular, the SEC alleges that, in those D&O questionnaires, the Wylys deceived their companies by failing to disclose the Wylys' beneficial ownership of stock in the offshore trusts they had created.   This caused those companies to mislead their shareholders in company annual reports and filings.

The SEC further alleges that the Wylys directed the offshore trusts to sell securities in illegal unregistered transactions, and through undisclosed trading in company securities before the announcement of an anticipated sale of the company.

Moreover, the SEC alleges that the defendants made misrepresentations and material omissions when they, among other things, misrepresented their beneficial ownership and omitted

to disclose their beneficial ownership in hundreds of filings required to be publicly filed with the SEC, sought exemption from registration when the trusts sold large quantities of securities based on the misrepresentation that the trusts were not affiliates of the company, and falsely disclaimed their beneficial interest in securities held by the trusts.

In order to prevail on its Section 10(b) and Rule 10b-5 claims against each defendant, the SEC must prove the each of following elements by a preponderance of the evidence:

First, the SEC must prove that the defendants did any one or more of the following in connection with the purchase or sale of a security:

1.    Employed a device, scheme or artifice to defraud; or

2.    Made an untrue statement of material fact or omitted to state a material fact that made what was said, under the circumstances, misleading; or

3.    Engaged in a fraudulent act, practice or course of business.

Second, the SEC must prove that the defendant acted with the intent to deceive, manipulate, or defraud—that is, that a defendant knew his conduct, statements or omissions were deceptive or that he acted with reckless disregard for the truth.

As I mentioned before, although you will have to determine if a certain fact would have been "material" to a reasonable investor, or whether certain conduct would have deceived or operated as a fraud on a person, the SEC does not need to prove that a specific investor suffered any damages or harm as a result of the defendants' alleged conduct.

I will now explain each of these elements.

## SECTION 10(B) AND RULE 10B-5---THE FIRST ELEMENT: FRAUD

The <u>first</u> element that the SEC must prove is that in connection with the purchase or sale of securities, a defendant did any one or more of the following:

1.     Employed any device, scheme or artifice to defraud; or

2.     Made any untrue statement of material fact or omitted to state a material fact that was necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.     Engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.[5]

It is not necessary for the SEC to establish all three types of unlawful conduct.  If you find that a defendant's conduct fits into any one of these categories, then the SEC has satisfied this element.[6]  Conduct may fit more than one category.  Let me now tell you about each of the categories.

The first type of fraud is a "device, scheme or artifice to defraud." This includes any means of deceiving someone and covers all ingenious efforts and means that individuals can devise to take advantage of others or to deceive others.[7]  Thus, fraud may involve false or fraudulent pretenses, untrue statements or omissions of material facts (which I will say more about in a moment), representations, promises, and patterns of conduct calculated to deceive.[8]

Second, the SEC may also prove that defendants committed fraud by making one or

---

[5] Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5].

[6] *Id.*

[7] *SEC v. Capital Solution Monthly Income Fund*, 10-3995, ECF No. 354 (court's jury instructions) at 15 (D. Minn. Oct. 23, 2013).

[8] *SEC v. Tourre*, 1:10-cv-3229-KBF, ECF 465 (court's jury instructions) at 17-18 (S.D.N.Y. Aug. 15, 2013).

more misrepresentations of material fact or by omitting to state a material fact that would be necessary to make their other statements not misleading.[9]

A misrepresentation is simply a statement that is not true when it is made.[10] Fraud may include omissions---or leaving out---information that makes other statements misleading under the circumstances.  That would include what are sometimes called "half-truths"— literally true statements that create a materially misleading impression.[11]  A material misstatement or omission may also be part of a device, scheme, or artifice to defraud.[12]

To find that the defendants made a misrepresentation, you must find that they had ultimate authority over the contents of the misrepresentation and how to communicate it.

Third, the SEC may also prove the first element by proving that defendants engaged in any act, practice or course of business that operated, or would operate, as a fraud or deceit upon any person.  The word "would" in the phrase "would operate as a fraud or deceit" means that the acts, practices or courses of business could have succeeded in defrauding someone even if they did not actually succeed in defrauding that person.[13]

You may find that a defendant violated this provision by engaging in a single act or in repeated conduct over a period of time that did succeed, or could have succeeded, in defrauding someone. The SEC need not prove, however, that each particular defendant engaged

---

[9] Rule 10b-5(b) [17 C.F.R. 240.10b-5(b)].

[10] *SEC v. Capital Solution Monthly Income Fund*, 10-3995, ECF No. 354 (court's jury instructions) at 15-16 (Oct. 23, 2013).

[11] *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 133 S.Ct. 1216 (2013).

[12] *SEC v. Tourre*, ECF 465 at 18.

[13] *SEC v. Life Partners Holdings, Inc*., 1:12-cv-00033-JRN, ECF No. 247 at 14-15 (W.D. Tex. Feb. 3, 2014).

in every instance of the repeated conduct over the period of time.[14]

If you find that one or more of the defendants engaged in any of three types of conduct that I just described, you must next determine whether their deceptive conduct was material under the circumstances, or whether their misrepresentations or omissions involved material facts.[15] Information or conduct is "material" if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. In other words, there must be a substantial likelihood that the disclosure of the information or the conduct would have been viewed by the reasonable investor as having significantly altered the total mix of information that was publicly available.[16] The fact that information is required to be revealed in public disclosures is evidence of its materiality.[17]

If you find that one or more of the defendants engaged in deceptive conduct that was material, or made misrepresentations or misleading omissions of material facts, you must next determine whether the deceptive conduct was "in connection with" the purchase or sale of securities. This element is satisfied if you find there was some connection or relationship between the deceptive conduct and the sale or purchase of securities. You need not find that a defendant actually participated in any securities transaction in order to find that the deceptive conduct was "in connection with" the purchase or sale of securities.[18] Statements

---

[14] *Id.*

[15] 4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS-CIVIL § 82.02, Instruction 82-4 (2013).

[16] *SEC v. Pirate Investor LLC*, 580 F.3d 233, 251 n.19 (4th Cir. 2009); *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972); *SEC v. Great Am. Indus., Inc.*, 407 F.2d 453, 459-60 (2d Cir. 1968); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 379 n.146 (S.D.N.Y. 2003).

[17] *U.S. v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991).

[18] 4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS-CIVIL § 82.02, Instruction 82-4 (2013).

made in public filings made with the SEC are "in connection with" securities transactions that happen after those filings.[19]

The SEC is not required to establish that defendants were successful in their alleged deceptive conduct; however, if you find that one or more of the defendants profited from the alleged fraud, you may consider that in relation to the third element of intent, which I will discuss in a moment.[20]

### SECTION 10(B) AND RULE 10B-5---THE SECOND ELEMENT: STATE OF MIND

The second element that the SEC must establish by a preponderance of the evidence is that the defendant acted with the intent to deceive, manipulate, or defraud.  To establish this, the SEC must show that a defendant knew his conduct, statements or omissions were deceptive or that he acted with reckless disregard for the truth.[21]

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently.

Conduct is "reckless" if it represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that a defendant must have been aware of it.  Similarly, evidence that a defendant failed to review or check information that he had a duty to monitor, or ignored obvious signs of fraud, and hence should have known that he was misrepresenting material facts constitutes a

---

[19]   *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 608 (S.D.N.Y. 1993) ("The 'in connection with requirement' … is satisfied by the filing of a Schedule 13(D)."); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1171 (D.C. Cir. 1978) ("[S]ection 10(b)'s 'in connection with' requirement is satisfied by the filing of the Schedule 13D, coupled with the public trading in Savoy stock."); *see generally SEC v. Pirate Investor LLC*, 580 F.3d 233, 250 (4th Cir. 2009) (*per curiam*) ("in connection with" requirement is met in cases involving "SEC filings").

[20] 4 L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL § 57.03, Instruction 57-21 (2013).

[21] *See SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012).

showing of recklessness.[22] If a defendant either actually knew about the danger of misleading investors *or* that the risk that investors would be misled was so obvious that the defendant must have been aware of it, then you may find the defendant liable even if he denies that he intended to mislead anyone.[23] Thus, a defendant who is aware of facts that make his conduct objectively and materially misleading acts recklessly even if he genuinely believes that his conduct does not create a risk of misleading investors.[24]

A defendant who acts in good faith cannot be liable for securities fraud. The defendants, however, do not have the burden to establish that they acted in good faith. Rather, the burden is on the SEC to prove by a preponderance of the evidence that the defendants acted knowing that their conduct was deceptive or that they acted with reckless disregard for the truth. If the SEC makes that showing, that means that it has proven that the defendants did not act in good faith. This is because a person who knowingly engages in deceptive conduct or who acts in reckless disregard of the truth does not act in good faith.[25]

State of mind may be established by circumstantial evidence, including the person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[26]

### ADVICE OF LAWYERS

---

[22] *SEC v. Tecumseh Holdings Corp.*, 765 F.Supp.2d 340, 349-50 (S.D.N.Y. 2011).

[23] *Gould v. Winstar Communications, Inc.*, 692 F.3d 148, 158-59 (citing *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000)); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1046 (7th Cir. 1977).

[24] *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d at 1046; *see also SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d at 1094; *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008).

[25] *See generally Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976).

[26] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983).

Defendants argue that they did not have the necessary state of mind to commit securities fraud and other securities violations because they relied on the advice of their lawyers.   Reliance on the advice of lawyers is not a complete defense to a charge of fraud; however, it is a factor that you may consider in deciding whether the defendants acted knowingly, recklessly, or negligently[27].  It is proper for you to consider evidence that the defendants relied on the advice of their lawyers in deciding whether the defendants acted knowingly, recklessly, or negligently only if you conclude that:

> (a)   The defendant sought advice of a lawyer as to the legality of his conduct;
>
> (b)    The defendant made complete disclosure of the relevant facts to his lawyer;
>
> (c)   The defendant received advice that his conduct was legal; and
>
> (d)   The defendant relied on that advice in good faith. [28]

All four factors must be present.  A defendant cannot rely on advice in good faith if the defendant knows, or is reckless in not knowing, that his conduct violates the law, notwithstanding what the lawyer advised.  Also, in considering whether a defendant relied on counsel's advice in good faith, you may consider whether he reasonably believed that his lawyer was in a position to give objective and impartial advice, and whether the substance of the lawyer's advice was motivated by the lawyer's self-interest.[29]  In other words, the lawyer on

---

[27] *Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir. 1994); *see also Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972).

[28] *Markowski*, 34 F.3d at 104-05; *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908)); *see also United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012).

[29] *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181-82 (2d Cir. 1976) (Friendly, J.); *see also C.E. Carlson, Inc. v. SEC¸* 859 F.2d 1429, 1436 (10th Cir. 1988) ("We agree with SEC that counsel also must be independent."); *Sorrell v. SEC*, 679 F.2d 1323, 1327 (9th Cir. 1982) ("A broker

whom the defendants claim to rely must be disinterested and independent.[30]

In this context, receiving "advice of counsel" means that a lawyer provided the defendant actual advice;[31] simply meeting with or consulting counsel does not constitute

---

may not rely on counsel's advice when the attorney is an interested party."). As Judge Friendly reasoned in rejecting the advice of counsel defense in *Arthur Lipper*, 547 F.2d at 181-82:

> We likewise reject petitioners' argument that there was no violation of Rule 10b-5 because they acted on the advice of their counsel, Mr. Conwill. … It is a sufficient answer that, with all respect for Mr. Conwill's knowledge and experience, he was not in a position to give petitioners wholly disinterested advice and petitioners could not have reasonably have thought he was. Although Cowett of IOS apparently was the architect of the plan here attacked, Conwill was counsel for IOS and his primary concern lay, as petitioners must have known, in promoting its interests by assisting Cowett. Petitioners say it was natural for them to turn to him, since he was so familiar with IOS' settlement with the SEC. But this familiarity could have been at the disposal of independent counsel retained by petitioners; alternatively petitioners could have retained Mr. Conwill and then had independent outside counsel check his advice. Petitioners also note that, in addition to being counsel for IOS, Conwill was a director of FOF so that they were justified in believing that he was giving proper heed to the interests of the funds. We cannot regard the wearing of this additional hat as relieving Conwill of the interest he had as IOS' counsel in giving his sanction to an arrangement so advantageous to it. Petitioners' reliance on his advice goes not to the violation, but to the penalty.

*See also Thompson v. Glenmede Trust Co.*, 1994 WL 683378, at *3 (E.D. Pa.1994) (counsel who stands "to gain a great deal for giving favorable advice" is not independent); *Western Elec. Co., Inc. v. Stewart-Warner Corp.*, 631 F.2d 333 (4th Cir. 1980) ("The fact that the attorney was in-house counsel, of course, should be weighed along with all the other evidence in the case as to whether or not [defendant] was acting in good faith.").

[30] *In re the Reserve Fund Sec. and Derivative Litig.*, No. . 09 MD.2011(PGG), 2012 WL 4774834, at *2 (S.D.N.Y. Sept. 12, 2012)(quoting *Markowski v. SEC,* 34 F.3d 99, 104–05 (2d Cir.1994)), *and quoted in*, SEC. v. Wyly, 950 F.Supp.2d 547, 566, n. 135 (S.D.N.Y. 2013)[ECF No. 190 at 40]; *see also SEC v. Melchior*, No. 90–C–1024J, 1993 WL 89141, at *20 (D.Utah Jan. 14, 1993)(finding that "[d]efendants cannot claim to reasonably rely on the advice of counsel where counsel has a pecuniary interest in the offering and thus participated in the allegedly violative scheme.").

[31] *SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer.") (citing *Markowski*, 34 F.3d at 105); *see also United States v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006)

receiving advice of counsel.  In addition, silence of counsel is not advice of counsel.[32]  And

compliance with federal securities laws cannot be avoided simply by retaining outside counsel to

prepare required documents.[33]

Although good faith reliance on advice of counsel is a factor that you may consider in

deciding whether a defendant acted knowingly or recklessly, a person cannot knowingly violate

the law and excuse himself from the consequences of his conduct by pleading that he followed

the advice of his lawyer.[34]  Thus, you may conclude that the defendants acted knowingly or

---

(advice-of-counsel instruction not warranted where defendant argued that "he consulted an attorney" with respect to the facts at issue "and had counsel at all meetings, including the meeting at which he made the false statement" because "a defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction").

[32] *SEC v. Nat'l Student Marketing Corp.*, 457 F. Supp. 682, 711 n.68 (D.D.C. 1978) (finding that defendant "did not rely upon actual advice of counsel, but, if at all, on counsel's silence, and this despite the fact that he never asked for a specific opinion on the legality" of the issue, and that this "blind inaction hardly constitute[d] good faith reliance on counsel"); *United States v. Bowden*, 542 F.App'x. 299, 301 (5th Cir. 2013) ("Bowden's reliance on [lawyer's] silence … failed to give an evidentiary basis upon which an advice-of-counsel instruction could be based."); *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (reliance on advice of counsel instruction not warranted where defendant "did not produce evidence suggesting that his attorney advised him to act in any particular way" even though there was evidence that attorney "knew of (or should have known of)" underlying facts).

[33] *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981); *SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001).  In *Howard*, 376 F.3d at 1147, the D.C. Circuit characterized as dictum *Savoy*'s statement that reliance on the advice of counsel is a formal defense.  Nevertheless, the principle that "compliance with federal securities laws cannot be avoided simply by retaining outside counsel to prepare required documents" is fully consistent with *Howard*'s recognition that reliance on advice of counsel is not a defense, but only a "relevant consideration in evaluating a defendant's scienter."  376 F.3d at 1147.

[34] *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989); *United States v. Roti*, 484 F.3d 934, 935 (7th Cir. 2007) ("That two people cooperate to swindle a third does not excuse either of the schemers, even if one of them is a lawyer.").

recklessly even if you also find that they relied on advice of counsel.[35]

---

[35] *See Markowski*, 34 F.3d at 105; *Manor Nursing Centers, Inc.*, 458 F.2d at 1101.

**SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 4**
SECTION 17(A) OF THE SECURITIES ACT---SECURITIES FRAUD ELEMENTS

The SEC also alleges that the defendants engaged in deceptive conduct that violated Section 17(a) of the Securities Act. This claim is based on the same conduct as that alleged in the SEC's claim that defendants violated Section 10(b) and Rule 10b-5.

To establish a Section 17(a) violation, the SEC must prove by a preponderance of the evidence that the defendant, directly or indirectly, did any one or more of the following in the offer or sale of securities:

1.      Employed any device, scheme, or artifice to defraud. This is Section 17(a)(1) of the Securities Act;

2.      Obtained money or property for himself or a third party by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement statements made, in the light of the circumstances under which they were made, not misleading. This is Section 17(a)(2) of the Securities Act; or,

3.      Engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. This is Section 17(a)(3) of the Securities Act.

As under Section 10(b) and Rule 10b-5, it is not necessary for the SEC to establish all three types of unlawful conduct. If you find that a defendant's conduct fits into any one of these categories, then the SEC has satisfied this element because conduct may fit more than one category. Let me now tell you about each of the categories.

**SECTION 17(A)(1)**

In order to meet its burden of proof under Section 17(a)(1), the SEC must prove

19

that in the offer or sale of securities, a defendant employed any "device, scheme, or artifice to defraud."  I have previously defined for you the term "device, scheme, or artifice to defraud" and you should apply that definition here.

If you find that a defendant employed any device, scheme, or artifice to defraud, you must determine whether his conduct was "in the offer or sale" of securities.  The phrase "in the offer or sale" is expansive enough to encompass the entire selling process.  It is not necessary that the fraud occur in any particular phase of the selling transaction.[36]

An "offer" is every attempt or offer to dispose of, or solicitation of an offer to buy, a security.[37]  In other words, an "offer" includes negotiations to sell securities,[38] publicity efforts that stimulate investor interest in the security,[39] or attempts to produce the sale by urging or persuading another to act.[40]

A "sale" occurs when title to a security is transferred.[41]   The SEC must prove that the fraud was in either an offer or a sale of securities in the United States,[42]  which means

---

[36]  *United States v. Naftalin*, 441 U.S. 768, 773 n.4 (1978) (noting that Congress and the Supreme Court have used the terms "in the offer or sale" and "in connection with" interchangeably").

[37]  Section 2(a)(3) of the Securities Act [15 U.S.C. § 77b(a)(3)] (defining an "offer"); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 165 (S.D.N.Y. 2011).

[38]  *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998).

[39]  *In the Matter of Carl M. Loeb, Rhoades & Co.*, Exchange Act Release No. 5870, 38 S.E.C. 843 (Feb. 9, 1959).

[40]  *Meadows v. SEC*, 119 F.3d 1219, 1225 (5th Cir. 1997).

[41]  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62, 67-69 (2d Cir. 2012).

[42]  *Morrison v. National Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010). The SEC proposes a domesticity instruction at this time, but expects to make a motion pursuant to Federal Rule of Civil Procedure 50(a) to resolve this issue at the close of the evidence.

20

that the offer must either be made from the United States or to a person in the United States.[43]

It is not necessary for the SEC to prove that an offer in the United States resulted in a sale in the United States.[44]

To find a defendant liable for violating this provision, you must find that he acted knew his conduct, statements or omissions were deceptive or that he acted with reckless disregard for the truth.  I have previously instructed you on the meaning of those terms, and you should apply those instructions here.

## SECTION 17(A)(2)

To establish liability under Section 17(a)(2), the SEC must prove by a preponderance of the evidence that a defendant directly or indirectly, in the offer or sale of securities:

1. Obtained money or property by means of any untrue statement of a material fact or failing to state a material fact which made what was said, under the circumstances misleading;

2. Did so knowingly, recklessly, or negligently.

I have previously instructed you on the meaning of the phrases "material untrue statement of material fact or omission" and "in the offer or sale," and you should apply the same instructions here.

To show that a defendant directly or indirectly "obtained money or property," it is enough to show that a defendant obtained money or property for himself or for a third

---

[43] *United States v. Vilar*, 729 F.3d 62, 77 n.11 (2d Cir. 2013) (interpreting Section 10(b) under the Exchange Act and Rule 10b-5 thereunder).

[44] *See id.*; *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d. 147, 164 (S.D.N.Y. 2011) (quoting *SEC v. Tambone*, 550 F.3d 106, 122 (1st Cir. 2008) (noting that "because section 17(a) applies to both sales and offers to sell securities, the SEC need not base its claim of liability on any completed transaction at all")).

party; it is not necessary for the SEC to show that a defendant personally obtained money or property.

Finally, under Section 17(a)(2), the SEC must show that defendants acted knowingly, recklessly, or negligently.  I have previously defined what it means for conduct to be "knowing" and "reckless," and you should apply those instructions  here.  Under Section 17(a)(2), the SEC may prevail even if it does not show that the defendants acted knowingly or recklessly, so long as the SEC shows that the defendants acted negligently.

"Negligence" is different from "knowledge" and "recklessness." "Negligence" is the failure to use ordinary care under the circumstances.  Reasonably prudent people exercise "ordinary care" to avoid injury to themselves or their property, or to avoid injury to  persons  or the  property of others.

The controlling standard is what a reasonably prudent person in the defendant's position would do under like circumstances.  In deciding whether ordinary care was exercised in a given case, you should view conduct in the light of all of the surrounding circumstances as shown by the evidence of this case.  You may find that the defendants acted negligently with respect to any of the alleged false or misleading statements or omissions or deceptive conduct if you find that he failed to exercise ordinary or reasonable care or competence in making those statements or in engaging in deceptive conduct.  In determining whether the defendants were negligent, you may consider whether they exercised reasonable care in obtaining and communicating information, and whether they undertook appropriate investigation before making statements.[45]

---

[45] *SEC v. Stoker*, 1:11-cv-7388-JSR, ECF 89 (court's jury instructions) at 13 (S.D.N.Y. July 31, 2012).

## SECTION 17(A)(3)

To meet its burden of proof on Section 17(a)(3), the SEC must show by a preponderance of the evidence that a defendant directly or indirectly, in the offer or sale of securities:

1. engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser of securities; and

2. did so knowingly, recklessly, or negligently.

I instructed you previously on the meaning of the phrases "fraud or deceit," "in the offer or sale," and "knowingly, recklessly, or negligently," and you should apply those definitions here.

## RELIANCE IS NOT AN ELEMENT

As I mentioned before, although you will have to determine if a certain fact would have been "material" to a reasonable investor, or whether certain conduct would have deceived or operated as a fraud on a person, the SEC does not need to prove that a specific investor suffered any damages or harm as a result of the defendants' alleged conduct.[46]

---

[46] *SEC v. Credit Bancorp, Ltd*., 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) ("The SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b) of the Exchange Act, Rule 10b-5, or Section 17(a) of the Securities Act.").

### SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 5
#### SECTION 5(A) AND 5(C) – SALE OF UNREGISTERED SECURITIES

The next set of claims involves the SEC's allegations that the defendants sold unregistered securities involving Michael's Stores, in violation of the federal securities laws.

The SEC alleges that Sam Wyly and Charles Wyly directly or indirectly sold securities issued by Michael Stores that were not covered by a registration statement in violation of Sections 5(a)[47] and 5(c)[48] of the Securities Act. It is undisputed that the 1,800,000 shares of Michaels Stores stock sold by four of the offshore trusts between June 1997 and December 1997 were not accompanied by a registration statement. [Stipulation 77.]

The Securities Act requires full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sales thereof.[49] It requires that companies disclose important information about their offered securities through registration statements filed with the SEC, and prospectuses summarizing the information in the registration statement which is available to potential investors., unless an exemption applies.[50] Sections 5(a) and 5(c) of the Securities Act make it unlawful for a person to directly or indirectly sell or offer to sell securities for which no registration statement was filed with the SEC, unless an exemption applies.

---

[47] 15 U.S.C. § 77e(a).

[48] 15 U.S.C. § 77e(c).

[49] *SEC v. Ralston Purina Co*., 346 U.S. 119, 124-25, n.10 (1953).

[50] Section 6 of the Securities Act [15 U.S.C. § 77f].

### SECTION 5---DIRECT OR INDIRECT OFFER OR SALE

In order to prevail on the claim under Sections 5(a) and 5(c) against a defendant, the SEC must prove that the defendant directly or indirectly, sold or offered to sell the securities of Michaels Stores for which no registration statements was filed with the SEC.[51] Section 5 does not limit liability only to persons who actually sell a security.  Rather, a person who is not a seller is liable for the distribution of unregistered securities if that person was a "substantial participant'" in the sale, and has not shown a valid exemption for such sale.

Being a "substantial participant" means that the person's acts were necessary to, and a substantial factor in, the sales transaction.  For example, a person who is not a seller but has an extensive role in facilitating the sale of unregistered securities may be a substantial participant and therefore be liable in the same manner as the seller himself. In other words, a defendant is a substantial participant if, but for his participation, the sale transaction would not have taken place.[52]  Even where a person does not have individual contact with the purchasers of the securities, that person has indirectly offered or sold the security to the public if he has employed or directed others to sell or offer them, or has conceived of and planned the scheme by which the securities were offered or sold in an unregistered transaction. Liability for violations of Section 5 extends to those who are engaged in steps necessary to the distribution of securities.[53]

---

[51] *Id*. at ECF No. 92 at 8-9; *SEC v. Cavanagh*,  445 F.3d 105, 111, n. 13 (2d Cir. 2006); *SEC v. Universal Express, Inc.*, 475 F.Supp.2d 412, 422 (S.D.N.Y. 2007).

[52] *Id*. at 10; *SEC v. Alternative Green Tech., Inc.*,1:11-cv-09056-SAS, 2012 WL 4763094, at *7 (S.D.N.Y. Sept. 24, 2012); *SEC v. Universal Express, Inc.*, 475 F.Supp.2d at 422; *SEC v. Chinese Consol. Benev. Ass'n Inc.*, 120 F.2d 738, 741 (2d Cir.1941); *SEC v. Murphy*, 626 F.2d 633, 651–52 (9th Cir.1980); *SEC v. Int'l Chem. Dev. Corp.*, 469 F.2d 20, 30 (10th Cir.1972).

[53] *SEC v. Shulman*, ECF No. 92 at 11.

### STATE OF MIND IS NOT RELEVANT

In order to prove a violation of Section 5, the SEC need not prove that the defendants acted knowingly, or in reckless disregard of the facts, or even negligently.  Unlike the fraud claims that I described earlier, state of mind is not relevant to a Section 5 violation.  Consequently, "reliance on counsel" is irrelevant to a Section 5 claim, so you cannot consider reliance on the advice of counsel when deciding if defendants are liable on this claim.

### REGISTRATION STATEMENT EXEMPTIONS

There are limited exemptions from the Securities Act's requirement that each sale of a security be covered by an effective registration statement.  These exemptions are narrowly construed to further the purpose of the Act, that is, to provide full and fair disclosure of the character of the securities, and to prevent fraud in the sale thereof.  I already instructed you that the SEC has the burden of proving each element of each of its claims.

However, when it comes to whether there is an exemption to the rule requiring registration statements, the law is different.  It is the *defendant* who has the burden of proving by a preponderance of the evidence that an exemption from the registration requirement applied to the sales of securities under all the facts and circumstances of the case. Thus, if you determine that the SEC has proved by a preponderance of the evidence that defendants  Sam Wyly and/ or Charles Wyly sold or offered to sell, directly or indirectly, unregistered securities, you must then consider whether the defendants met their burden of proving, by a preponderance of the evidence, that an exemption to the registration requirement applies to those specific securities transactions.[54]

---

[54] *SEC v. Shulman*, ECF No. 92 at 9-10; *SEC v. E. L. Aaron & Co., Inc.*, No. 76 Civ. 907, 1977 WL 1013, at *7 (S.D.N.Y May 5, 1977).

**SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 6**
**SECTION 4(1) EXEMPTION FROM REGISTRATION**

As I said, there are limited exemptions from the Securities Act's requirement that each

sale[55] of a security be covered by an effective registration statement.  These exemptions are

narrowly construed to further the purpose of the Act, that is, to provide full and fair disclosure of

---

[55] The Commission adheres to its view that this Court may decide as a matter of law that the sales at issue were in connection with a distribution or "public offering."  A distribution is "the entire process by which in the course of a public offering the block of securities is dispersed and ultimately comes to rest in the hands of the investing public."  *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005) (*quoting R.A. Holman & Co., Inc. v. SEC,* 366 F.2d 446, 449 (2d Cir.1966) (*quoting Lewisohn Copper Corp.,* 38 S.E.C. 226, 234 (1958)).  Where an offer is not confined to those whose special circumstances make the protection of registration unnecessary, it is a "public offering," --- a distribution.  The offers and sales here were not confined to a few institutional investors who make their own investigation and who were in a position to negotiate the details of the transaction with the control persons behind these sales.  Indeed, defendants cannot even identify the investors to whom offers were made.

We recognize that this Court previously found it appropriate to permit the defendants to present evidence on whether investors who bought the securities at issue were in "such a position with respect to the issuer that they either actually have such information as a registration statement would have disclosed, or have access to such information."  March 28, 2014 Order, ECF 292 (hereinafter "Order").  At the close of evidence, if the record shows that investors did not receive the information a registration statement would provide, the SEC will seek a judgment as a matter of law under Rule 50(a).  A ruling that there was a distribution as a matter of law will obviate the need for any instruction to the jury on this question.  In the event that this Court finds that the jury must determine whether the sales were made in a public offering, the SEC proposes the following instruction:

> To establish that these transactions were exempt, the defendants must show by a preponderance of the evidence that at the time of the offers and sales, public investors actually had such information as a registration statement would have disclosed, or had access to such information.  A registration statement discloses facts about the proposed sale transactions, including the identity of the seller and their relationship to the company and relationship with control persons of the company.  It is not sufficient to find that investors had access to information in other public filings made by Michaels Stores if those filings did not provide the information about the sales transactions at issue here.  If you find that investors who bought the securities were not supplied with the kind of information required to be set forth in a registration statement, and were not in a position to have access to such information, then you must proceed to question 2.

the character of the securities transactions.  The defendants bear the burden of proving by a preponderance of the evidence that an exemption from the registration requirement applied to the sales of securities under all the facts and circumstances of the case.  Thus, if you determine that the SEC has proved by a preponderance of the evidence that a defendant sold or offered to sell, directly or indirectly, unregistered securities, you must then consider whether the defendant met his burden of proving, by a preponderance of the evidence, that an exemption to the registration requirement applies to those securities transactions.[56]

To establish that these transactions were exempt, the defendant must show by a preponderance of the evidence that at the time of the offers and sales, that the Isle of Man entities were not controlled by the Wylys, and not under direct or indirect control with Michaels Stores and the Wylys.  "Control" is a question of fact which depends upon the totality of the circumstances including an appraisal of the influence upon management and policies of a corporation by the person involved. [57]  Control does not turn on who had legal control.  Control is established if the Wylys dominated and controlled the affairs of the Isle of Man entities.[58]

If you find that the Isle of Man entities were controlled by the Wylys, or under common control with Michaels Stores and the Wylys, you must find that the securities sales were not

---

[56] *SEC v. Shulman*, ECF No. 92 at 9-10; *SEC v. E. L. Aaron & Co., Inc.*, No. 76 Civ. 907, 1977 WL 1013, at *7 (S.D.N.Y May 5, 1977).

[57] *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976).  "It is a factual determination which …depends upon a careful appraisal of the overall effect of the various relationships and other circumstances present in the particular case."  *SEC v. Amer. Beryllium & Oil Corp.*, 303 F. Supp. 912, 915 (S.D.N.Y. 1969); *see also SEC v. Int'l Chem. Dev. Corp.*, 469 F.2d 20, 28 (10th Cir. 1972) ("Control is a question of fact.").

[58] *Kern*, 425 F.3d at 150.

exempt under Section 4(1), and defendants are liable for violating Section 5.[59]

.

---

[59] In light of this Court's March 28 Order, the SEC believes it is unnecessary to instruct the jury on Rule 144.  As this Court stated at p. 5:

> If the jury determines that there was a distribution, it should proceed to the question of control.  If the jury finds that the Wylys controlled the trusts, then the Wylys and the trusts are issuers, Schaufele is an underwriter and neither the Section 4(1) exception nor the Rule 144 safe harbor would apply

### SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 7
#### SECTION 13(D) AND RULES 13D-1 & 13D-2---DISCLOSURE OF BENEFICIAL OWNERSHIP

Next I will instruct you on the SEC's disclosure claims.  Section 13(d) of the Exchange Act requires any person who is the beneficial owner of more than five percent of stock in a public company to publicly disclose in SEC filings known as schedule 13Ds information about that person's beneficial ownership.  The securities laws recognize that a person who has the power to control or influence the voting or disposition of substantial amounts of a public company's securities has the ability to change or influence control of that company.  Public disclosure of beneficial ownership, therefore, ensures that investors obtain important information about changes in identity of those who are able as a practical matter, to influence or exert control over the company.[60]  Under Section 13(d), any person who becomes the "beneficial owner" of more than five percent of any class of stock in a public company must, within ten days, file with the SEC a form known as a Schedule 13D in which the person must disclose:

1.  The background, and identity of the filing person, and the nature of such beneficial ownership, and

2.  The number of shares of such security which are beneficially owned.[61]

The information disclosed on a Schedule 13D enables corporations, their shareholders and others to evaluate the possible effects on a company when people accumulate substantial quantities of a company's stock and when there is a change in

---

[60]  *SEC v. First City Financial Corp.*, Ltd., 688 F. Supp. 705, 721 (D.D.C. 1998) (quoting A.A. Sommer, Jr., Securities Law Techniques §70.07[2][c] 1987);  *See also* Arnold S. Jacobs, The Williams Act, § 2:12 (Jan. 2014)(noting that beneficial ownership is construed liberally so that the public can receive disclosure from all persons "who have the ability to change or influence control.).

[61]  Section 13(d)(1) [15 U.S.C. § 78m(d)(1)]; 17 C.F.R. § 240.13d–101 "Schedule 13D-- Information to be included in statements filed pursuant to § 240.13d–1(a) and amendments thereto filed pursuant to § 240.13d–2(a)."

substantial shareholdings.[62] Section 13(d) is satisfied only by the filing of complete, accurate and timely reports.[63]

**BENEFICIAL OWNERSHIP OF SECURITIES**

A person is a "beneficial owner" of a security if that person directly or indirectly has or shares voting power or investment power for the security. "Voting power" includes the power to vote, or to direct the voting, of a stock.[64] "Investment power" includes the power to dispose, or to direct the disposition of a stock.[65] "Directly or indirectly has or shares" investment or voting power means that a person can be a beneficial owner not only when he or she has sole exclusive power to vote or invest, but also when he or she shares that power with someone else.[66] The ability to "share" power means that the person in question and at least one other person can make the decision. Sharing the power means the person has a meaningful role (although not necessarily a decisive one) in exercising the power to vote or dispose of the security.[67] Beneficial ownership does not turn on who owns legal title to the stock, or who is the registered

---

[62] *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993) (" The purpose of section 13(d) is to alert the marketplace to large, rapid accumulations of securities which might represent a potential shift in corporate control."), a*ff'd sub nom. SEC v. Posner*, 16 F.3d 520 (2nd Cir.1994); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989).

[63] *SEC v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978); *GAF Corp. v. Milstein*, 453 F.2d 709, 720 (2d Cir. 1971).

[64] Rule 13d-3 [17 C.F.R. § 240.13d-3]; *SEC v. Teo*, No. 04 Civ. 01815 (SDW) (MCA), Court's Instruction No. 27 at 36 (2011).

[65] Rule 13d-3 [17 C.F.R. § 240.13d-3]; *SEC v. Teo*, No. 04 Civ. 01815 (SDW) (MCA), Court's Instruction No. 27 at 36 (2011).

[66] Arnold S. Jacobs, The Williams Act, §2:12 (Jan. 2014).

[67] Arnold S. Jacobs, The Williams Act, §2:12 (Jan. 2014).

owner, or in whose name the stock is held.[68]

Beneficial ownership can be obtained through "any contract, arrangement, understanding, relationship or otherwise," which includes more than written contracts and express agreements.[69] You should consider any relationship that, as a factual matter, confers on a person a significant ability to affect how voting power or investment power will be exercised.[70] Substance governs over form.[71] Evidence that recommendations are followed as a matter of course is evidence of beneficial ownership.[72]

The determination of whether one is a beneficial owner focuses on the person's power over investing or voting of the security. Although the word "beneficial" might in ordinary usage denote some connection to whether a person will obtain benefits associated with the security, you should not infer such a connection here. A person can have or share investment or voting power over securities and thus be a beneficial owner of those securities even if that person has no right to enjoy the sales proceeds and other benefits associated with those securities. Conversely, one may have the sole right to the benefits associated with securities yet lack the investment or voting power necessary to make that person a beneficial owner.

---

[68] *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993); *SEC v. Levy*, 706 F. Supp. 61, 69 (D. D.C. 1989); *SEC v. Savoy Indus., Inc.*, 587 F.2d at 1163; *Wellman v. Dickinson*, 682 F.2d 355, 366 (2d Cir. 1982).

[69] Rule 13d-3(a) [17 C.F.R. § 240.13d-3(a)].

[70] *SEC v. Sierra Brokerage Services, Inc.,* 608 F. Supp. 2d 923, 956 (S.D. Ohio 2009) (*aff'd* 712 F.3d 321 (6th Cir. 2013)).

[71] Arnold S. Jacobs, The Williams Act, §2:12 (Jan. 2014).

[72] *Wellman v. Dickinson*, 682 F.2d 355, 366-67 (2d Cir. 1982) ("[W]e are convinced that the directors routinely followed Eberstadt M & D's recommendation in directing the disposition of the Becton stock, which permitted Eberstadt M & D to control the shares held by the Funds from the outset.").

In the alternative, a person may be considered the beneficial owner of a security if he directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose or effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of Section 13(d). [73]

---

[73] *Id.*; Rule 13d-3(b).

<u>**ELEMENTS**</u>

For the SEC to meet its burden of proof on its 13(d) claims against either defendant, the SEC must establish by a preponderance of the evidence that:

<u>First</u>, the defendant was a beneficial owner of stock held in their offshore trusts because:

      a.     he had either direct or indirect investment power or voting power over the securities held in their offshore trusts -- you need not find both investment and voting power; or

      b.     he created or used any one of his offshore trusts with the purpose or effect of divesting himself of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of Section 13(d); and

<u>Second</u>, the defendants filed Schedule 13Ds, which are listed in the appendix, that contained false and/or incomplete information or there was one or more material changes to report but defendants failed to file Schedule 13D amendments reporting those changes.

With regard to changes in the percentage ownership of shares of stock, the purchase or sale of one percent or more of a company's outstanding shares of stock is "material." Changes in ownership of less than one percent may be material depending on the facts and circumstances.[74]

As I instructed you earlier, a statement or omission is "material" if there is a substantial likelihood that a reasonable shareholder would consider it important or, in other words, there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable shareholder as having significantly altered the total mix of information available.

---

[74] Rule 13d-2(a).

## SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 8
### SECTION 14(A) AND RULES 14A-3 & 14A-9---DISCLOSURE OF BENEFICIAL OWNERSHIP

Another one of the SEC's disclosure claims involves Section 14(a) of the Exchange Act, and Rules 14a-3 and 14a-9.

The SEC alleges that the Wylys caused their public companies - Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish Annuity & Life Holdings Ltd. - to include in their proxy statements, tables which materially misrepresented the number of securities they beneficially owned, and used false disclaimers stating that they were not beneficial owners of the shares owned by the Isle of Man entities, in violation of Section 14(a) of the Exchange Act[75] and SEC Rules 14a-3,[76] and 14a-9.[77]

### PROXY STATEMENTS

Public companies are required to send proxy statements—often called Schedules 14A—to shareholders whenever their votes are being solicited for the companies' proposals, including the election of company directors.  These proxy statements are required to contain accurate and complete information about the number of shares of stock beneficially owned by each director and officer of the company.[78]  A proxy statement is an authorization granted by the holder of securities to vote that stock.[79]  Because shareholders often do not attend shareholder meetings in person, most of the votes cast at those meetings are cast through proxies that have been

---

[75] 15 U.S.C. § 78n.

[76] 17 C.F.R.  § 240.14a-3.

[77] 17 C.F.R.  § 240.14a-9.

[78] Item 403, Regulation S-K and Schedule 14A, 17 C.F.R. 240.14a-101.

[79] *SEC v. Das*, 8:10-cv-00102-LSC-FG3, ECF No. 217 (Court's Jury Instr. No. 7) at 11 (D.Neb. March 1, 2012).

obtained from shareholders through a proxy solicitation.[80]   The term "solicitation" is defined broadly to include any communication to shareholders under circumstances reasonably calculated to result in the procurement, withholding, or revocation of a proxy.

<h2 style="text-align:center">DIRECTOR AND OFFICER QUESTIONNAIRES</h2>

The companies in this case provided director and officer (D&O) questionnaires to the defendants that included questions about the number of shares they beneficially owned.  The SEC alleges that the defendants provided false and materially misleading information about their beneficial ownership in their D&O questionnaires by failing to disclose their beneficial ownership of company securities held by their offshore trusts, which caused the companies to incorporate that false information, either directly or by reference, into nearly every single Schedule 14A those companies filed between 1992 and 2005.   The SEC further alleges that although in their Schedules 14A the companies occasionally identified securities the defendants transferred to their offshore trusts, the information was materially misleading, because it described the defendants' offshore trusts as "independent," or repeated the defendants' false disclaimers of beneficial ownership over securities held in their offshore trusts.

<h2 style="text-align:center">ELEMENTS</h2>

Section 14(a) and Rules 14a-3 and 14a-9 of the Exchange Act provide that a proxy solicitation may not contain any statement that is false or misleading with respect to any material fact, or that omits to state any material fact necessary in order to make the statements made not false or misleading.

---

[80]  *Id.*

In order to show that either of the defendants violated these provisions, the SEC must establish by a preponderance of the evidence that:

First, by means of a proxy statement, the defendant solicited or allowed his name to be used to solicit, a proxy with respect to a security.[81]

Second, that the proxy statement contained an untrue statement of material fact, or omitted a material fact that, under the circumstances, was needed to make statements contained in the proxy statement not false or misleading.[82]

In this context, this means that there must be a substantial likelihood that a reasonable investor would have considered the information important in deciding how to vote. It is not necessary, however, to show that accurate disclosure would have caused a shareholder to act or vote differently.

Third, that the defendant acted negligently when approving or signing the proxy statement that contained the misrepresentation or omission. As I previously described to you, negligence is the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under the circumstances. To establish a violation of Section 14(a) and Rules 14a-3 and 14a-9, the SEC is not required to establish that the defendant acted knowingly or recklessly. The SEC only needs to show that the defendant acted negligently.

Fourth, that the proxy solicitation was an essential link in the accomplishment of a corporate action or transaction. A proxy solicitation is an essential link in the accomplishment of a corporate action or transaction if the votes of the shareholders solicited were required to effect

---

[81] *Id.*

[82] *Id.*

a corporate action or transaction.[83]   If a defendant has previously made false or inaccurate statements in the proxy solicitation regarding material facts, there is a duty to correct those statements if it is later discovered that those statements were not true when made and those statements remain material to a shareholder's investment decision.

---

[83] *SEC v. Das*, 8:10-cv-00102-LSC-FG3, ECF No. 217 (Court's Jury Instr. No. 7) at 12 (D.Neb. March 1, 2012).

### SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 9
### SECTION 16(A) AND RULES 16A-2 & 16A-3---DISCLOSURE OF BENEFICIAL OWNERSHIP

The SEC has also asserted a disclosure claim under Section 16(a) of the Exchange Act and Rules 16a-2 and 16a-3.

The SEC alleges that the Wylys filed false SEC reports regarding their beneficial ownership of securities, and failed to disclose changes to their beneficial ownership of securities, held in their offshore trusts in violation of Section 16(a)[84] and Rules 16a-2[85] and 16a-3[86] of the Exchange Act.

Officers and directors are required to disclose their beneficial ownership of company securities, and to subsequently, file a Form 4, reporting and disclosing any transactions that results in a change of their beneficial ownership of the company's stock.[87]  The purpose of section 16(a) is to provide investors with information as to purchases and sales by officers and directors which may indicate such person's private opinion as to the prospects of the company so that shareholders and other market participants may determine the importance, if any, of that information.[88]  Forms 4 filed with the SEC are made available to the public in order to alert investors to transactions by a company's officers and directors.[89]  The failure to file a Form 4

---

[84] 15 U.S.C. § 78p(a).

[85] 17 C.F.R. § 240.16a-2.

[86] 17 C.F.R. § 240.16a-3.

[87] Section 16(a)(1) [15 U.S.C. 78p(a)(1)]; Rule 16a-2 [17 C.F.R. § 240.16a-2]; Rule 16a-3(a) [17 C.F.R. § 240.16a-3(a)]; Form 4 [17 C.F.R. § 249.104].

[88] *CSX Corp. v. The Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d at 290 (quoting  H.R. Rep. No. 73–1383, at 13, 24 (1934)).

[89] Section 16(a)(4) [15 U.S.C. 78p(a)(4)]; 4 THOMAS LEE HAZEN, TREATISE ON THE LAW OF SECURITIES REGULATION § 13.1, at 558-559 (6th ed. 2009).

statement, or the filing of materially inaccurate or incomplete Form 4 statement, constitutes a violation of section 16(a).[90]

**BENEFICIAL OWNERSHIP**

Under Section 16, if an officer or director of a company is a beneficiary of a trust that holds shares of that company's stock, and the officer or director has or shares investment control with the trustee, then he must disclose securities transactions by the trust in the company's stock.

The term "investment control" means the power to direct or cause the direction of the management and policies of the trust's investments. If the officer or director is the settlor, and not a named beneficiary of the trust, he is a beneficial owner if he in fact has or shares investment power and an indirect pecuniary interest..[91] Pecuniary interest means the opportunity directly or indirectly, to profit or share in any profit derived from a securities transaction.

As I instructed you under Section 13(d), the ability to "share" power means that the person in question and at least one other person can make the decision. Sharing the power means the person has a meaningful role (although not necessarily a decisive one) in exercising the power to dispose of the security.

---

[90] *SEC v. Shattuck Denn Mining Corp.*, 297 F.Supp. 470, 477 (S.D.N.Y. 1968); *see also SEC v, Mercury Interactive LLC*, No. 3:07-cv-02822-WHA, 2009 WL 2984769, at *3 (N.D.Cal. Sept. 15, 2009)(court agreed with SEC that Section 16(a) and Rule 16a-3 require that "information regarding changes in beneficial ownership provided in the Forms 3 and 4 must be accurate").

[91] Section 16 focuses on whether an officer or director derives a direct or indirect pecuniary interest in the securities transaction. Rule 16a-1(a)(2). Rule 16a-1(a)(2)(ii) provides that "indirect pecuniary interest" ... "shall include, but not be limited to: [enumerated forms of indirect pecuniary interest, including "(E) A person's interest in securities held by a trust, as specified in 240.16a-8(b)"]. By including the underlined language, the Commission made clear that the enumerated forms were not exclusive.

The SEC alleges that the defendants had, or shared, investment control of the shares held by their Isle of Man trusts and companies, and, therefore, they violated section 16(a) by failing to file Form 4s disclosing transactions by their Isle of Man trusts and companies in those shares.

**E<small>LEMENTS</small>**

To establish a violation of Section 16(a) by either defendant, the SEC must show by a preponderance of the evidence that:

<u>First</u>, the defendant was a beneficial owner of securities issued by companies for whom he was an officer or director;

<u>Second</u>, the defendant failed to file Form 4s that disclosed changes in his beneficial ownership in such securities;[92] and

<u>Third</u>, the defendant's filing of an inaccurate Form 4 was not inadvertent.[93]

In order to prove a violation of Section 16(a), the SEC need not prove that the defendant acted knowingly, or in reckless disregard of the facts, or negligently. State of mind is not relevant to a Section 16(a) violation.  Consequently, reliance on the advice of counsel is irrelevant to this claim and you may not consider it in deciding  if defendants are liable on this claim.

---

[92] *Id.*

[93] *SEC v. Blackwell*, 477 F.Supp.2d 891, 905 (S.D.Ohio 2007).

**SEC PROPOSED SUBSTANTIVE JURY INSTRUCTION NO. 10**
**AIDING AND ABETTING SECURITIES LAW VIOLATIONS**

In addition to the violations about which I have just instructed you, the SEC also alleges that defendants aided and abetted various violations of the securities laws in violation of Section 20(e) of the Exchange Act.

A defendant violates Section 20(e) of the Securities Exchange Act by knowingly providing substantial assistance to someone who commits a securities law violation.

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently. An aider and abettor "substantially assists" in a securities law violation if he in some way associated himself with the venture, participated in it as in something that he wished to bring about, and sought by his action to make it succeed.[94]

**AIDING AND ABETTING VIOLATIONS OF SECTION 13(a) AND RULES 13a-1**

Section 13(a) of the Exchange Act and Exchange Act Rule 13a-1 requires companies to file accurate annual reports with the Commission on Form 10-K. Those annual reports are required to contain complete and accurate disclosures about officers' and directors' beneficial holdings of the company's securities.

The SEC alleges that the defendants provided their companies - Michaels Stores, Sterling Software, Sterling Commerce, Scottish Annuity & Life Holdings Ltd. - with director and officer ("D&O") questionnaires that omitted their beneficial ownership of, and trading in, securities held in their offshore trusts. The SEC further alleges the companies' annual reports failed to disclose that securities of the companies held in the Wylys' Isle of Man trusts and companies were beneficially owned by the Wylys. To prove its claim against either of the defendants, the SEC

---

[94] *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012), *cert denied,* 133 S.Ct. 2855, 186 L.Ed.2d 910 (2013).

must establish a number of elements by a preponderance of the evidence:

First, the SEC must establish that Michaels Stores, Sterling Software, Sterling Commerce, or Scottish Annuity &

Life Holdings Ltd. violated Section 13(a) and Rule 1a-1, which requires a showing that:

1.    the companies filed Forms 10-K with the SEC; and

2.    the Forms 10-K omitted information that the Wylys were beneficial owners of securities of the companies held in the Wylys' Isle of Man trusts and companies; and

3.    the omissions were material.[95]   As I said earlier, an omission is "material" if there is a substantial likelihood that a reasonable shareholder would consider it important or, in other words, there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable shareholder as having significantly altered the total mix of information available.[96]

Second, the SEC must establish that the defendant knew of the companies' Section 13(a) and Rule 13a-1 violations; and

Third, the SEC must establish that the defendant substantially assisted in the violations. A person is a "beneficial owner" of a security if that person directly or indirectly has or shares voting power or investment power for the security.  "Voting power" includes the power to vote,

---

[95] *SEC v. Life Partners Holdings, Inc.*, 1:12-cv-00033-JRN, ECF No. 247 (Court's Jury Charge) at 29 (W.D.Tex. Feb. 3, 2014).

[96] *SEC v. Pirate Investor LLC*, 580 F.3d 233, 251 n.19 (4th Cir. 2009); *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972); *SEC v. Great Am. Indus., Inc.*, 407 F.2d 453, 459-60 (2d Cir. 1968); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 379 n.146 (S.D.N.Y. 2003).

or to direct the voting, of a stock.[97]  "Investment power" includes the power to dispose, or to direct the disposition of a stock.[98]  "Directly or indirectly has or shares" investment or voting power means that a person can be a beneficial owner not only when he or she has sole exclusive power to vote or invest, but also when he or she  shares that power with someone else. Beneficial ownership does not turn on who owns legal title to the stock, or who is the registered owner, or in whose name the stock is held.[99]

Beneficial ownership can be obtained through "any contract, arrangement, understanding, relationship or otherwise," which includes more than written contracts and express agreements.[100] You should consider any relationship that, as a factual matter, confers on a person a significant ability to affect how voting power or investment power will be exercised.[101]

In the alternative, a person should be considered the beneficial owner of a security if he directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose or effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part

---

[97] Rule 13d-3 [17 C.F.R. § 240.13d-3]; *SEC v. Teo*, No. 04 Civ. 01815 (SDW) (MCA), Court's Instruction No. 27 at 36 (2011).

[98] Rule 13d-3 [17 C.F.R. § 240.13d-3]; *SEC v. Teo*, No. 04 Civ. 01815 (SDW) (MCA), Court's Instruction No. 27 at 36 (2011).

[99] *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993); *SEC v. Levy*, 706 F. Supp. 61, 69 (D. D.C. 1989); *SEC v. Savoy Indus., Inc.*, 587 F.2d at 1163; *Wellman v. Dickinson*, 682 F.2d 355, 366 (2d Cir. 1982).

[100] Rule 13d-3(a) [17 C.F.R. § 240.13d-3(a)].

[101] *SEC v. Sierra Brokerage Services, Inc.,* 608 F. Supp. 2d 923, 956 (S.D. Ohio, 2009) (*aff'd* 712 F.3d 321 (6th Cir. 2013)).

of a plan or scheme to evade the reporting requirements of Section 13(d).[102]

---

[102] *Id.*; Rule 13d-3(b).

## AIDING AND ABETTING THE TRUSTS' VIOLATIONS OF SECTION 13(d), RULE 13d-1 AND 13d-2

The SEC alleges that the Wylys aided and abetted violations of Section 13(d) of the Exchange Act and Rules 13d-1, and 13d-2 by trustees of the Wylys' offshore trusts, who filed Schedule 13Ds with the SEC, falsely stating that the trustees alone possessed "sole dispositive power" over the securities held in those offshore trusts.

To prove this claim against either of the defendants, the SEC must establish by a preponderance of the evidence that:

<u>First</u>, one or more of the trustees of the Wylys' offshore trusts violated Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2, which requires a showing that:

1.     Schedule 13Ds were filed by the trustees in which they represented that they alone possessed "sole dispositive power" over securities held in the offshore trusts for which they were trustees, and

2.     the representation was false and/or incomplete information or there were one or more material changes to report but the trustees failed to file Schedule 13D amendments reporting those changes.

<u>Second</u>, the defendant knew of the trustees' Section13(d) and Rules 13d-1 and 13d-2 violations; and

<u>Third</u>, the defendant substantially assisted in the violations.

## AIDING AND ABETTING VIOLATIONS OF SECTION 14(a) AND RULES 14a-3 AND 14a-9

The SEC also alleges that the Wylys aided and abetted violations of Section 14(a) and Rules 14a-3 and 14a-9 of the Exchange Act violations of Section 14(a) of the Exchange Act, and violations of SEC Rules 14a-3, and 14a-9 by Sterling Software, Inc., Sterling Commerce, Inc., Michaels Stores, Inc., and Scottish Annuity & Life Holdings Ltd. through those companies'

filing of proxy statements, which included tables omitted the number of securities the Wylys beneficially owned.

To prove this claim against either of the defendants, the SEC must establish by a preponderance of the evidence that:

First, Michaels Stores, Sterling Software, Sterling Commerce, or Scottish Annuity & Life Holdings Ltd. violated Section 14(a) of the Exchange Act and Rules 14a-3, and 14a-9, which requires a showing that:

       1.    the companies issued proxy statements with respect to a security; and

       2.    that the proxy statement contained an untrue statement of material fact, or omitted a material fact that, under the circumstances, was needed to make statements contained in the proxy statement not false or misleading. Again, a statement or omission is "material" if it would have been significant to a reasonable investor's investment decision.[103]

Second, the defendant knew of the companies' Section 14(a) of the Exchange Act and Rules 14a-3, and 14a-9 violations; and

Third, the defendant substantially assisted in the violations.

---

[103] *SEC v. Pirate Investor LLC*, 580 F.3d 233, 251 n.19 (4th Cir. 2009); *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972); *SEC v. Great Am. Indus., Inc.*, 407 F.2d 453, 459-60 (2d Cir. 1968); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 379 n.146 (S.D.N.Y. 2003).

**SEC PROPOSED FINAL JURY INSTRUCTION NO. 12A**
**Credibility of Witnesses - Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness's own interest. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Keep in mind, however, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based upon your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

Dated:  April 29, 2014                          Respectfully submitted,


                                                 ___/s/ *Gregory N. Miller*___
                                                Gregory N. Miller (GM-5922)
                                                Hope Hall Augustini
                                                Bridget M. Fitzpatrick
                                                Daniel Staroselsky
                                                John D. Worland, Jr. (JDW-1962)
                                                Martin L. Zerwitz (MZ-9765)
                                                Counsel for Plaintiff
                                                U.S. Securities and Exchange
                                                Commission
                                                100 F Street, N.E.
                                                Washington, D.C. 20549
                                                (202) 551-4469 (Miller)
                                                millergn@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of April 2014, copies of the SEC's Proposed

Substantive Jury Instructions (2d Revision) were served in .pdf format on the following parties

via the Court's ECF system:

Stephen D. Susman                          Michael L. Smith
SUSMAN GODFREY                             BICKEL & BREWER
1000 Louisiana, Suite 5100                 767 Fifth Avenue
Houston, Texas 77002-5096                  50th Floor
                                           New York, New York  10153
Terrell W. Oxford                          **Counsel for Defendant Samuel E. Wyly**
David D. Shank
SUSMAN GODFREY
901 Main Street, Suite 5100
Dallas, Texas  75202-3775


Mark Hatch-Miller
Steven M. Shepard
SUSMAN GODFREY
560 Lexington Avenue
15th Floor
New York, NY 10022-6828                    ___/s/ *Gregory N. Miller*
**Counsel for Defendants Sam Wyly and**    Gregory N. Miller
**Donald R. Miller Jr.**                   Counsel for Plaintiff