UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | :   No. 1:10-cv-5760-SAS : |
| SAMUEL WYLY, DONALD R. MILLER, JR., in his Capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr., MICHAEL C. FRENCH, AND LOUIS J. SCHAUFELE III, | :   ECF Case : : : : |
| Defendants. | : : |

**MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S PROPOSED CHARGE**

We write in advance of the charge conference scheduled for this Monday, May 5, 2014, to explain Defendants' positions on a few substantive issues likely to arise at the conference, based upon the draft version of the jury charge provided by the Court to the parties.

I.     **BENEFICIAL OWNERSHIP UNDER SECTION 13: "SHARING" THE POWER.**

The Court's current proposed charge includes the following sentence to describe the concept of "shared power" under Rule 13d-1: "'Sharing the power' means the person has a meaningful role (although not necessarily a decisive one) in exercising the power to vote or dispose of the security." (Court's Proposed Charge v2, at 38.)

This instruction is not supported by any law and contradicts the statutory language it purports to explain. Under this charge, any person who plays a "role" in "exercising" the power to vote or dispose is converted into a beneficial owner. Such a person does not have to have any "power," which the statutory language requires. The use of the adjective "meaningful" provides little guidance and the parenthetical undercuts whatever significance "meaningful" provides because the jury is told the role need not even be "decisive." Putting aside the lack of legal support for this interpretation, this instruction would convert a broad array of third parties into "beneficial owners" of securities because they play a meaningful role in the exercise of the power to sell securities, such as brokers for even non-discretionary accounts, bankers, clearing houses.

The only support for this proposed instruction cited by the SEC is a treatise on the Williams Act, and a close review of the cited treatise reveals that the sentence has been ripped from its context. The treatise's reference to a person who has a "meaningful role (although not necessarily a decisive one)" must be read in context. The treatise discusses a situation where a trust has three trustees. Although each trustee has the power to sell, none can do so

1

unilaterally—each trustee needs the consent of at least one other to exercise the power. Arnold S. Jacobs, *The Williams Act -- Tender Offers & Stock Accum.* § 2:12, at 3. It is in this context that the treatise concludes that "sharing the power means the person has a meaningful role (although not necessarily a decisive one) in exercising the power to vote or dispose of the security." *Id.* In this situation, however, each trustee possesses the power to make a decision to sell subject to the consent of another who has the same exact power. The treatise goes on to provide other examples of shared power that are consistent with the understanding the holder of "shared" power must have some decisive power—*e.g.,* co-general partners, co-trustees, parent and subsidiary corporations.

If the Court wishes to provide an instruction to explain the concept of shared power (Defendants believe the word "shared" is self-explanatory), Defendants propose the following language that also comes from the Jacobs treatise: "'Shares' the power means the person in question and at least one other person can make the decision." *Id.*

## II. BENEFICIAL OWNERSHIP UNDER SECTION 16: SETTLORS AND INVESTMENT POWER

The second substantive issue Defendants wish to explain relates to the Court's current instructions regarding "beneficial ownership" under Section 16. The Court's charge currently proposes to instruct the jury as follows:

> Under Section 16, an officer or director is a beneficial owner if he "directly or indirectly . . . has or shares a direct or indirect pecuniary [monetary] interest" in the securities. An officer or director who is the beneficiary of a trust that holds shares of the company's stock is a beneficial owner if he has, or shares, investment control over those securities.

Defendants object to this instruction because it oversimplifies and broadens the test. First, the instruction implies that "investment control" is merely one way to establish the existence of a "pecuniary interest" over trust-held securities. That is incorrect: Where securities

2

are held in a trust and the defendant is not the trustee, Section 16 requires the existence of "investment control" to find "pecuniary interest."

Second, with regard to the trusts of which the defendant is merely the settlor but not the trustee *or* beneficiary (which is the case for the 1992 trusts), the analysis ends if the trust is irrevocable—investment control is irrelevant and does not convert the settlor into a beneficial owner.

### A. Unless certain exceptions apply, trust shares are reportable by the trustee only under Section 16.

The proposed instruction says that shares are reportable by an officer or director if he or she has a "pecuniary interest" in the shares. While that statement is generally correct, the instruction then suggests the *one* way to find pecuniary interest is where the defendant is a beneficiary of a trust and has or shares investment control. In fact, where shares are held in trust, a finding of investment control is *required* in order for any reporting obligation to attach. To the extent the instruction would permit the jury to find Defendants had to report shares held in a trust under Section 16 merely because they had a "pecuniary interest" in the securities without exercising investment control, the instruction is wrong as a matter of law.

Rule 16 has a specific rule governing shares in held in a trust. Under Rule 16a-8(b), the general rule is that trust holdings are reported by the trustee. These holdings, however, "may be reportable by other parties" if certain requirements are met:

> Holdings and transactions in the issuer's securities held by a trust shall be reported by the trustee on behalf of the trust, if the trust is subject to section 16 of the Act, *except as provided below*. Holdings and transactions in the issuer's securities held by a trust (whether or not subject to section 16 of the Act) *may be reportable by other parties as follows:* . . .

17 C.F.R. § 240.16a-8(b) (emphasis added). That is, "except as provided below" in the provisions that "follow" this general rule, holdings and transactions in trust-held securities are

3

reportable by the trustee alone. As outlined in detail below, the subsequent provisions make two points clear: (1) the existence of "investment control" is a prerequisite to reporting of trust-held securities; and (2) for trusts where the defendant is merely the settlor, the irrevocability of the trust is sufficient to preclude reporting.

To be sure, "pecuniary interest" is the general definition of beneficial ownership for purposes of determining which holdings and transactions must be reported by a Section 16 filer. But that does not change the express edict of Rule 16a-8 that, absent an exception, only the trustee must report holdings and transactions in trust-held securities.

The SEC suggests that Rule 16a-8 is not the exclusive means for determining beneficial ownership when securities are held in a trust. The SEC's argument is based on the fact that Rule 16a-1(a)(2)(ii) states, "[t]he term indirect pecuniary interest in any class of equity securities shall include, *but not be limited to*" several enumerated forms of indirect pecuniary interest, including "(E) A person's interest in securities held by a trust, as specified in [Rule 16a-8(b)]." 17 C.F.R. § 240.16a-1 (emphasis added). The SEC suggests that the phrase "but not limited to" implies that Rule 16a-8(b) does not provide the exclusive rules for determining when securities that are held in a trust must be reported. That is a clear misreading of the regulations. The phrase "but not limited to" means there may be other forms of indirect pecuniary interest beyond through trusts, partnership, or any others listed. It does not mean that there are many non-enumerated ways to have a pecuniary interest in trust-held securities. To the contrary, Rule 16a-1 expressly states that an interest in a trust will amount to an indirect pecuniary interest (and thus beneficial ownership) "as specified in Rule 16a-8(b)." And as just explained above, Rule 16a-8(b) provides that, absent an exception, only trustees must report holdings and transactions in trust-held securities.

Here, it is undisputed that Defendants were not trustees of the trusts in question. Rather, they were the beneficiaries of some trusts, and the settlors of the others. Therefore, the question is whether Defendants meet the exceptions for beneficiaries or settlors.

**B.  Trust beneficiaries must have or share investment control to be Section 16 beneficial owners of trust-held securities.**

With regard to trust beneficiaries (Defendants were beneficiaries of trusts created after April 1992), only a beneficiary of a trust who has or shares "investment control" over securities held by the trust is the beneficial owner of those securities for Section 16 purposes. 17 C.F.R. § 240.16a-8(b)(3). The Court's current instruction does not make clear that "investment control" is required where the defendant is the beneficiary. As a result, it incorrectly suggests that investment control is just one way that Defendants could have a "pecuniary interest" in the securities held by trusts of which Defendants are beneficiaries. That suggestion is contrary to the law and should be eliminated from the charge.

**C.  Trust settlors must have or share investment control and have the ability to unilaterally revoke the trust to be Section 16 beneficial owners of trust-held securities.**

With regard to trusts settlors (Defendants were *settlors only* of the 1992 trusts—they were not beneficiaries), Defendants are the beneficial owners of the securities only if (1) the trust was revocable and (2) investment control existed.  The proposed instruction ignores the fact that the jury must find the 1992 trusts were revocable—which is contrary to any facts (Defendants will move for judgment as a matter of law).  Additionally, the proposed instruction fails to make clear that "investment control" is required.

Rule 16a-8 says that trust-held securities may be reportable by others as provided in the "follow[ing]" sections.  The relevant provision for trust settlors (where the settlor is neither trustee nor beneficiary) says:

5

> (4) Settlors. If a settlor subject to section 16 of the Act reserves the right to revoke the trust without the consent of another person, the trust holdings and transactions shall be attributed to and reported by the settlor instead of the trust; *Provided, however*, That if the settlor does not exercise or share investment control over the issuer's securities held by the trust, the trust holdings and transactions shall be attributed to and reported by the trust instead of the settlor.

17 C.F.R. § 240.16a–8(b)(4) (emphasis added). Accordingly, in order to find Defendants to be Section 16 beneficial owners of securities held by the 1992 trusts (of which the Defendants were only settlors, and not the beneficiaries), two conditions must be present: (1) the trust must be revocable by the Defendant without the consent of another, and (2) Defendants must have or share investment control over the securities.

Defendants propose the following instruction in place of the first two sentences of the Court's proposed instruction on Section 16 beneficial ownership:

> Under Section 16, there are two tests that potentially apply for whether shares of a company held by a trust are reportable by an officer or director of that company. The tests differ depending on whether the Defendants were merely settlors of the trusts or also beneficiaries of the trusts. The Defendants were settlors only of the Bulldog and Pitkin Trusts. The Defendants were beneficiaries of the remaining trusts. With regard to the trusts where Defendants were *only settlors* (and not also beneficiaries), securities held by those trusts were reportable if (1) the trusts were revocable by Defendants without the consent of another; *and* (2) Defendants had or shared investment control over the company's securities held by the trust. With regard to trusts where the Defendants were *beneficiaries*, the securities in those trusts would be reportable if, and only if, Defendants had or shared investment control over those shares of stock.

In the event the Court grants Defendants' motion for judgment on the 1992 trusts, Defendants requests that the Court expressly instruct the jury that Defendants had no Section 16 reporting requirements for those shares.

### III. FORM 144: THIS DEFENSE IS AVAILABLE EVEN IF THE TRUSTS WERE "AFFILIATES"

The current instruction omits one defense that covers more than half the sales of unregistered securities. Namely, even if the trusts were deemed affiliates, there is a fact issue

6

whether the trusts complied with Rule 144 for the sale of 1.8 million shares where Form 144s were filed. This exception is available to affiliates and non-affiliates alike. 17 C.F.R. § 230.144(b) (1996) (emphasis added) ("*Any affiliate* . . . shall be deemed not to be engaged in a distribution of such securities . . . if all of the conditions of this section are met.").

The SEC has previously stipulated or otherwise agreed that all but one of the "conditions of this section" were, in fact, met, for 1.8 million unregistered shares sold between June 1997 and December 1997. As to these 1.8 million shares, there is only one remaining "condition" in dispute: paragraph (h) of Rule 144. Paragraph (h) requires an affiliate to file a Form 144 with the SEC at the time of the resale of the unregistered security.

The Isle of Man entities did file Forms 144, as required by paragraph (h). But the SEC contends that these Forms 144 were inadequate because one box was filled out incorrectly: box number 2(c), which is labeled "Relationship to Issuer."

The SEC has contended that the law required complete accuracy on the form. In fact, the regulation existing at the time provided: "Failure to disclose *the information requested by Form 144* would make an exception under § 230.144 of this chapter [Rule 144] unavailable . . . ." 17 C.F.R. § 239.144(c)(1) (emphasis added).

The defense contends that the responses provided on the Isle of Man entities' Forms 144 were adequate because the instructions on these Forms did not, in fact, "request[]" any additional information that the Isle of Man entities then "[f]ail[ed] to disclose." *Id.* The instructions for box 2(c) read, in full: "Such person's relationship to the issuer (E.G., officer, director, or member of immediate family of any of the foregoing)." Those instructions simply do not communicate, to a reasonable person, what the SEC now claims they communicate. Under the facts and circumstances of this case, that response ("N/A") was not a failure to disclose any information

7

that had actually been requested by the Form 144. The Isle of Man entities are not officers or directors of Michael's stores. Nor are they "immediate family of any of the foregoing." "N/A" is therefore a reasonable response, in these circumstances, to those instructions. At a minimum, there is a disputed issue of fact. (Even if the regulations required "complete accuracy," there would be a disputed issue of fact whether the form was accurate given that the instructions do not expressly call for the filer to indicate "affiliate" status in the box and the response was merely "N/A.")

Defendants' proposed Rule 144 instruction can be found at page 29 of their instructions (ECF No. 314).

## IV. CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court give the Defendants' requested instructions.

Dated: May 4, 2014

Respectfully submitted:

SUSMAN GODFREY, L.L.P.

By:
/s/ David D. Shank
Stephen D. Susman (SS8591)
Mark H. Hatch-Miller (MH4981)
Steven M. Shepard (*pro hac vice*)
560 Lexington Avenue, 15th Floor
New York, New York  10022-6828
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Terrell W. Oxford
David D. Shank
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

8

Telephone: (214) 754-1900
Facsimile: (214) 754-1933

*Attorneys for Samuel E. Wyly and Donald R. Miller, Jr.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2014, a true and correct copy of the foregoing Memorandum of Law in in Response to the Court's Proposed Charge was served upon all counsel of record via the ECF filing system.

/s/ David D. Shank_____
David D. Shank
