SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 5100
901 MAIN STREET
DALLAS, TEXAS 75202-3775
(214) 754-1900
FAX (214) 754-1933
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 950 | SUITE 3800 | 15TH FLOOR |
| 1000 LOUISIANA STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE | 560 LEXINGTON AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10022-6828 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

DAVID D. SHANK
DIRECT DIAL (214) 754-1935

E-MAIL DSHANK@SUSMANGODFREY.COM

May 7, 2014

VIA ECF AND E-MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, NY 1007-1312

Re:   *SEC v. Wyly*, 1:10-cv-5760-SAS

Dear Judge Scheindlin:

I write in response to the SEC's May 5, 2014 letter, and in opposition to the SEC's last-minute attempt to shift to an upleaded insider trading theory.

The SEC concedes that a finding by the jury that the Wylys did not control the Isle of Man entities precludes any claim that the Wylys *traded* on material non-public information. There is no dispute that the Wylys did not trade in their own accounts—the SEC's only allegation is that the Wylys *recommended* the swap. As explained below, this concession matters.

In order to pursue a claim or theory at trial, the live pleading must provide the defendant "fair notice of what the claim is and the grounds upon which it rests." *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 603 (S.D.N.Y. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The fact that an unpleaded claim is related to a pleaded claim, or even arises from the same statutory provision, is not enough to constitute fair notice. *See id.* (holding that pleading a "passing off" theory under § 1125 of the Lanham Act did not also give fair notice of a "false promotion" theory under the same section).

A *trading* theory of liability is substantively different from a *tipper* theory, which the SEC has never pleaded. A *trading* claim requires proof that the defendant (a)

May 7, 2014
Page 2

possessed material, non-public information, (b) traded on the basis of that information, and (c) acted with scienter (*i.e.*, knew that the information was non-public and material or acted with reckless disregard for that fact). *SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 249 (S.D.N.Y. 2013) (citing *SEC v. Obus*, 693 F.3d 276, 284 (2d Cir. 2012)). A *tipper* claim requires further proof that the tipper (d) disclosed information to someone else, (e) in exchange for a personal benefit. *See Obus*, 693 F.3d at 286.

The SEC has never alleged that the Wylys disclosed material non-public information to the trustees. The SEC claims that tipper liability does not actually require such a conveyance of inside information—a recommendation based on such information is enough, it says. In so arguing, the SEC cites footnotes from two cases, neither of which supports that proposition. In *SEC v. Tome*, 638 F. Supp. 596 (S.D.N.Y. 1986), the tippee claimed that he received only a hint to buy stock, and no underlying information. The court rejected this argument *not* because a mere hint to trade is a "tip," but because the court concluded *as a factual matter* that the tippee did in fact receive the information. *See id.* at 614–15. The second case, *United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012), is not even an insider trading case. It is a First Amendment case—and the SEC omits to mention that its citation is to the dissent, not the majority opinion. *See id.* at 175 n.5 (Livingston, J., dissenting).

To be sure, in *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) (en banc), the Second Circuit stated that an insider "must abstain from trading in or recommending the securities concerned while . . . inside information remains undisclosed." *Id.* at 848. But the Second Circuit has never decided a case in which the *only* alleged "tip" was a bald recommendation. And at least one district court has suggested that may not be enough. *Camelot Indus. v. Vista Resources, Inc.*, 535 F. Supp. 1174, 1182–83 (S.D.N.Y. 1982) (stating that "there is no evidence that [the tipee] received direct knowledge" of an upcoming tender offer).

Turning to the next element of a tipper claim, neither the SEC's complaint nor the joint pretrial order alleges the Wylys obtained any personal benefit for making a recommendation to the Isle of Man trustees. The only benefit that the Wylys are alleged to have obtained in connection with the swap transaction is based on the notion that trading profits earned by the trusts are akin to profits earned by the Wylys. That notion, in turn, is based on the SEC's allegation that the Wylys controlled the trusts. If the jury finds that the Wylys did not control the trusts, there will be no basis left for concluding that the profits earned by the independent trusts constituted a personal benefit to the Wylys.

The SEC has not provided fair notice of any tipper theory of liability, much less one that is not based on the allegation that the Wylys controlled the Isle of Man

May 7, 2014
Page 3

entities. Had they done so, Defendants would have obtained testimony (for instance, from the trustees) showing that no material non-public information was disclosed prior to the swap agreements. Defendants would also have conducted discovery to establish that the Wylys obtained no personal benefit from the recommendation to engage in the swap transaction.

Apparently recognizing that it has not sufficiently pleaded a tipper claim, the SEC argues that it should be granted leave to amend the complaint "to conform to the evidence" under Federal Rule Civil Procedure 15(b)(2). The SEC misrepresents the law by suggesting that the only relevant inquiry for a Rule 15(b)(2) amendment is prejudice. To the contrary, "the crucial test [for amendment under 15(b)(2)] is whether the parties have *consented* to litigation of the issue; it must have been tried by their express or implied consent." *Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd.*, 780 F.2d 1082, 1089 (2d Cir. 1986) (emphasis added). This consent requirement is *in addition to* the prejudice question. *See Silverstein*, 522 F. Supp. 2d at 604 ("In deciding whether to allow amendment under Rule 15(b), the essential questions are 'whether the new issues were tried by the parties' express or implied consent *and* whether the defendant 'would be prejudiced by the implied amendment . . . .'" (emphasis added) (quoting *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir. 1989))).

The SEC does not even attempt to address the consent element, and for good reason: there is no indication that Defendants have consented to an amendment. There certainly is no express consent. *See Luria Bros.*, 780 F.2d at 1089. Nor is there any indicated of implied consent. *See id.* The SEC has not sought to introduce any evidence, other than evidence of control, that would be relevant *only* to a tippee claim. *See id.* (holding that consent will not be implied from the failure to object to evidence that is relevant to both pleaded and unpleaded issues, unless it was somehow obvious that the party offering the evidence was attempting to raise the unpleaded issue). The SEC has failed to address, much less meet, its burden to show consent by Defendants to a trial amendment.

Sincerely,

/s/

David D. Shank

cc:   All counsel of record (via ECF)
      Ester Murdukhayeva (via email)

3156418v2/012798