# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:10-cv-5760-SAS |
| | : | |
| SAMUEL WYLY, DONALD R. MILLER, JR., in his Capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr., MICHAEL C. FRENCH, AND LOUIS J. SCHAUFELE III, | : | ECF Case |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE SEC'S "TOTAL PROFITS" THEORY OF DISGORGEMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENTS & AUTHORITIES ...........................................................................1

    I.     The SEC's Theory is Unsupported in Law ..................................................1

         A.     *Teo* Does Not Support the SEC's Theory. ...................................2

               1.     *Teo* Does Not Endorse the SEC's Theory.........................2

               2.     *Teo* Does Not Announce a *Per Se* Rule Regarding "Total Profits".........................................................3

               3.     *Teo* Reaffirms the Defense's Right to Rebut the SEC's Calculation ...................................................5

         B.     The SEC's Theory Is Contrary to Second Circuit Law ...........8

         C.     The SEC Is Seeking Punishment, Not a Remedy ....................9

    II.    The SEC's Theory is Untimely...............................................................11

    III.   The SEC's Theory Would Require a Longer Trial..................................14

CONCLUSION......................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) .................................................................... 12, 13

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*,
   04 CIV. 3854RCCAJP, 2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) .................................... 12

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) .................................................................................... 10

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.*,
   No. 1:00-cv-1898, 2014 WL 494522 (S.D.N.Y. Feb. 6, 2014) ......................................... 11, 12

*Johnson v. SEC*,
   87 F.3d 484 (D.C. Cir. 1996) ........................................................................... 9

*SEC v. Cavanagh*,
   445 F.3d 105 (2d Cir. 2006) ........................................................................... 10

*SEC v. Contorinis*,
   743 F.3d 296 (2d Cir. 2014) .......................................................................... 8, 9

*SEC v. First City Fin. Corp., Ltd.*,
   890 F.2d 1215 (D.C. Cir. 1989) ....................................................................... 11

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ........................................................................... 8

*SEC v. Great Am. Tech. Inc.*,
   2010 WL 1416121 (S.D.N.Y. Apr. 8, 2010) ............................................................... 8

*SEC v. Jones*,
   476 F. Supp. 2d 374 (S.D.N.Y. 2007) ................................................................. 8, 11

*SEC v. Kelly*,
   765 F. Supp. 2d 301 (S.D.N.Y. 2011) ................................................................. 9, 11

*SEC v. MacDonald*,
   699 F.2d 47 (1st Cir. 1983) ............................................................................ 7

*SEC v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972) ........................................................................... 7

*SEC v. Razmilovic*,
   822 F. Supp. 2d 234 (E.D.N.Y. 2011), *aff'd,* 738 F.3d 14 (2d Cir. 2013) ............................... 9

*SEC v. Resnick,*
    604 F. Supp. 2d 773 (D. Md. 2009) ........................................................................ 9

*SEC v. Teo,*
    04-CV-01815, 2011 WL 4074085 (D. N.J. Sept. 12, 2011) ...................................... 4

*SEC v. Teo,*
    746 F.3d 90 (3d Cir. 2014) ............................................................................... passim

*SEC v. Texas Gulf Sulfur,*
    312 F. Supp. 77 (S.D.N.Y. 1970), *aff'd,* 446 F.2d 1301 (2d Cir. 1971) ................... 7

*SEC v. Tourre,*
    10 CIV. 3229 KBF, 2014 WL 969442 (S.D.N.Y. Mar. 12, 2014) ....................... 8, 9

*SEC v. Universal Express, Inc.,*
    646 F. Supp. 2d 552 (S.D.N.Y. 2009) .................................................................... 8

*Wechsler v. Hunt Health Sys., Ltd.,*
    No. 94 Civ. 8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ............................ 13

*Zacharias v. SEC,*
    569 F.3d 458 (D.C. Cir. 2009) ............................................................................ 10

**Statutes**

28 U.S.C. § 2462 ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 37(c)(1) ............................................................................... 10, 11, 12

Defendants respectfully submit this memorandum of law in support of their motion, first made in a letter brief dated June 11, 2014 [ECF No. 387],  renewed during the telephonic hearing held June 23, 2014, and formally noticed in a motion filed concurrently herewith [ECF No. 403], to preclude the SEC's "total profits" theory of disgorgement.

## PRELIMINARY STATEMENT

During the June 23, 2014 conference, the SEC refined its "total profits" disgorgement theory, explaining that it believed the law required disgorgement of all profits regardless of whether the defendant could show some portion of the profit was unrelated to the securities violation.  June 23, 2014 Hearing Tr., at 24-26.  The SEC's new theory is based on an alleged legal rule that an insider must "disclose or abstain from the trade."  *Id.*; *see also id.* at 24 ("Our theory is, really, if you're an insider and you're trading in secret, you have to disgorge the proceeds of those trades.").  In support for this argument, the SEC cites the Third Circuit's recent decision in *SEC v. Teo,* 746 F.3d 90 (3d Cir. 2014), *application to extend time to file a petition for cert. granted,* No. 13A1134 (U.S. May 15, 2014).

The SEC's theory is unsupported by any caselaw, including *Teo*.  The SEC's untimely disclosure of its theory is a separate (and wholly sufficient) reason to preclude it.

## ARGUMENTS & AUTHORITIES

I.    The SEC's Theory is Unsupported in Law

The SEC's latest "insider secrecy" version of its "total profits" disgorgement theory is unsupported by any law.  The SEC's theory apparently is that unlike other securities law violations (ranging from all other non-disclosure violations to insider trading), an insider who trades without properly disclosing the trades must disgorge all profits, even if some portion of those profits had nothing to do with the non-disclosure.

A.      *Teo* Does Not Support the SEC's Theory.

The only case mentioned by the SEC to support this "insider secrecy" theory is *SEC v. Teo*.  The SEC is badly misreading *Teo*.

To begin with, *Teo* is not binding precedent on this Court, and to the extent *Teo* purports to eliminate the causation requirement in disgorgement cases, it is inconsistent with Second Circuit and Southern District of New York precedent (in fact, it would inconsistent with all prior law in this area).  *See infra*, at 8-9.

Moreover, the actual holding of *Teo* does not support the SEC's theory here, for three separate reasons.  First, *Teo* does not even address, much less endorse, the SEC's novel "insider secrecy" theory; second, *Teo* does not announce a rule that all profits must be disgorged *per se*, but rather reaffirms the principle that the SEC must first show that the violation was a "but for" cause of the portion of profits the SEC seeks to disgorge; and third, *Teo* makes clear that—contrary to the SEC's position here—the defense retains the right to produce evidence to show that some other factor was the cause of the profits.

1.      *Teo* Does Not Endorse the SEC's Theory

Here, the SEC's "but for" causation theory apparently is that but for the non-disclosure, an insider could not make a profit because he or she could not trade.  That, we take it, is what the SEC means by "abstain or disclose."  Hearing Tr., at 24.  Obviously, *Teo* does not endorse such a theory because it did not even involve an insider—the defendant was an outside investor who owned more than 5% of the shares of the target company, Musicland.  *Teo*, 746 F.3d at 93-94.

The SEC's theory in *Teo* also had nothing to do with a special legal rule requiring disclosure or abstention (whether by an insider or a 13D filer) and everything to do with but-for causation as a factual matter.  Musicland had in place a "poison pill," but never activated it because Teo did not disclose his true ownership.  *Id*. at 94 ("[S]ince Teo's filings never disclosed

2

his ownership of Musicland stock to be at or above the poison pill threshold, Musicland was kept in the dark about this fact and it never activated this plan. This was Teo's intent for filing the false reports.").  Thus, but for the non-disclosure violation, Teo either could not have acquired the stock or would have acquired it on vastly different price terms.  *Id.* at 108-09 ("While the Appellants were amassing Musicland shares,  their collective misreporting and Teo's flagrant fraud insulated the valuation of the Appellants' Musicland stock holdings from the effects of a poison pill that could have been activated if the extent of their holdings in the company had been known.").  As a result, the SEC argued that in the actual factual world that would have existed but for the securities violation, the defendant could not have earned the profit generated when the shares were sold.  The SEC's theory did not turn on a legal rule requiring disclosure or abstention from trading.

Moreover, the SEC's "insider secrecy" theory makes little sense.  The disclosure requirements governing insider trades are after-the-fact disclosure requirements; the insider must report trades after the trades have occurred.  Since the trade comes first and the disclosure second, it makes no sense that the non-disclosure could be a "but for" cause of the trade in every case.  While one could posit ways in which "but for" the subsequent non-disclosure the trade might not have occurred or would have occurred on different terms (as in *Teo*), the SEC does not attempt to articulate a theory for the Wylys' situation.

2.     *Teo* Does Not Announce a *Per Se* Rule Regarding "Total Profits"

*Teo* does not announce a rule that all profits, however remote from the violation, must be disgorged *per se*.  To the contrary, *Teo* endorses the well-settled rule that the amount subject to disgorgement is limited to the amount caused by the violation, and more importantly, that the defendant is afforded an opportunity to show that a portion of the profits was obtained due to causes unrelated to the violation.

3

First, the *Teo* court expressly reaffirmed that the SEC initially must come forward with evidence that "but for" the violation, the defendant would not have obtained the profits.  *Teo*, 746 F.3d at 105 ("[T]he SEC is required to produce evidence . . . essentially satisfying a but-for standard."); *id.* at 107 ("the SEC must . . . prove but-for causation").    As just discussed, the SEC's "but for" theory in *Teo* was that the non-disclosure allowed the defendant to obtain the stock in the first instance.

Second, the *Teo* court did <u>not</u> order disgorgement of all the defendant's sale profits.  The SEC did not even seek disgorgement of the profits Teo earned on shares he acquired earlier than July 1998, which is the date when he began concealing his holdings—even though he later sold those shares during the period of non-disclosure.  The SEC did not ask for that additional disgorgement, no doubt, because it could not advance any "but for" causation theory as to those earlier-acquired shares.  *SEC v. Teo*, 04-CV-01815, 2011 WL 4074085 (D. N.J. Sept. 12, 2011) (describing SEC's request). This distinction—between shares causally connected to the violation and those not connected—was key to the Third Circuit's decision affirming the disgorgement award.  *Teo*, 746 F.3d at 107 n.31 (by not disgorging profits on the earlier-acquired shares, the district court "properly distinguished between legal and illegal profit").

For these two reasons, *Teo* undermines rather than supports the SEC's "total profits" calculation here.  Here, the SEC calculates total profits based on the sum of hundreds of separate sales of securities by the IOM entities.  For each sale, the SEC takes the sale price and subtracts from it the cash amount that the IOM entities paid for the security.  Thus, to take one typical example: Sam Wyly was granted an option by Michael's Stores in 1986, as part of his compensation.  The option's exercise price was set at $3.  Six years later, in April 1992, Sam Wyly transferred the option to an IOM entity.  One month after that, in May 1992, the IOM

entity paid the exercise price ($3), obtained the corresponding share, and sold that share at the then-market price of $22.  The SEC calculates the "total profit" to be disgorged as $19.  See Stipulations of Fact Attachment B, Ex. 3A, 4A; Supplemental Expert Report of Yasmine Misuraca dated June 5, 2014 (summing up these gains by year, from 1992 through 2004).   The only securities law violation that relates to this $19 profit (and all the other sale profits) is this: Sam Wyly ceased reporting beneficial ownership over the option when it was transferred to the IOM entity in April 1992, one month before it was sold.

Obviously, a huge portion of the $19 profit was earned well before any securities violation, and thus could not be causally related to the violation in any way.  Indeed, the profit earned on these shares closely resembles the profit earned by *Teo* on shares bought before his securities violation but sold afterward.   As noted above, the *Teo* court did not require disgorgement on these amounts.  Finally, given that the disclosure violations occurred <u>after</u> the sales were completed, it is hard to imagine how those violations could be the but-for cause of profits that the IOM entities already earned.

### 3.      *Teo* Reaffirms the Defense's Right to Rebut the SEC's Calculation

Here, the SEC takes the position that <u>nothing</u> the defense could show would rebut the SEC's "insider secrecy" theory.  That, too, is contrary to *Teo*.  *Teo* makes clear that a defendant can rebut the SEC's theory of but-for causation by proving that factors other than the violation caused some portion of the profits.  *Id.* at 107-08 (describing the kinds of "specific evidence" that defendants could have (but did not) "adduce" in order to show "other cause[s] for the profits").  In *Teo*, the defendant failed to seize his rebuttal opportunity, however, and produced insufficient evidence.  Although the defense pointed to an intervening cause (the buyout of Musicland by a third party) the defense did not do enough to show why the increase in price associated with that buyout was due to factors other than the defendant's violation.  *Id.*

Here, the SEC takes the position that "total profits" should be disgorged, and that nothing the defense can put forward would alter the "total profits" calculation.  This position appears to be based on dicta in *Teo* which suggests that disgorgement would be proper even if the defendant had shown every dollar of profit was caused by an intervening event.  *See id*. at 108 ("[E]ven if the Appellants had provided evidentiary support that the Best Buy tender offer was the direct cause of all of their profits, it would not have changed our conclusion that the District Court was within its discretion to grant the SEC's motion for disgorgement.").  The Court provided various justifications for this reasoning, including that the non-disclosure violation was extensive and intentional.  *Id*.  This discussion was dicta: As the *Teo* court had already noted, the defendant had failed to make his case that the entire profit was caused by the intervening event (the buyout).

The SEC apparently interprets this dicta to announce a rule that the causation requirement can be suspended altogether where a non-disclosure violation is egregious.  The SEC is misreading *Teo*.  The *Teo* discussion did not address whether causation principles should be suspended entirely.  Instead, the Court was addressing whether an intervening cause (the buyout) could preclude disgorgement where the SEC has already established but-for causation (Teo's initial purchase of the shares would have been impossible but for his non-disclosure).  In other words, the Court was addressing whether a defendant, who but for the violation would not have made any profit, could avoid disgorgement because the actual profit ultimately derived from a fortuitous event.  The Court opined that the intervening cause would not necessary preclude disgorgement for various reasons, including the fact that the existence of but-for causation was factually undisputed and the amount of disgorgement was narrowed to only the "but for" amount.  *Id.* at 104-08.

6

Here, this dicta does not provide an answer to the defense's argument.  The Wylys do not rely, for purposes of the current motion, on the intervening cause doctrine; rather, the Wylys dispute that the SEC's "insider secrecy" theory suffices to establish but-for causation for the vast majority of the profits earned offshore.  In fact, the Wylys contend that, but for the violations, their profits would have been exactly the same.  Nothing in *Teo* addresses that argument, because in *Teo* it was readily apparent that the SEC had demonstrated but-for causation.

Moreover, even if the SEC's reading of *Teo*'s dicta were correct, this part of *Teo* would be inconsistent with Second Circuit law.  The Second Circuit has held that an intervening cause <u>does</u> limit the disgorgement amount, even where the SEC has established initial but-for causation.  In the case of promoters who fraudulently induced investors to buy shares in a public offering, based on a misleading prospectus—a classic example of a "but for" cause of the proceeds of the offering—the Second Circuit has held that the SEC is <u>only</u> entitled to disgorge the proceeds of the public offering, and may <u>not</u> disgorge the subsequent profits and interest that defendants earned on those proceeds.  *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972).  For similar reasons, the First Circuit has held that in the case of an insider who purchases stock in his company based on positive non-public information—another classic example of a "but for" cause of the insider's later profit on the purchased shares—the SEC may only disgorge the portion of profits earned <u>before</u> the inside information becomes public.  Subsequent profits may not be disgorged—even though those profits, too, are the effect of the insider's initial purchase.  *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983) (en banc); *accord SEC v. Texas Gulf Sulfur*, 312 F. Supp. 77, 93 (S.D.N.Y. 1970) (in seminal insider-purchase case, SEC only requested disgorgement of profits realized as of the date the inside information became public, and not later), *aff'd in relevant part*, 446 F.2d 1301 (2d Cir. 1971).  Put another

way, in these insider-purchase cases, courts apply a conclusive presumption that any rise in stock price that occurs <u>after</u> the release of the inside information must be due to some other (intervening) cause, and thus need not be disgorged.

To the extent *Teo*'s dicta is contrary to those holdings, it is also contrary to Second Circuit law.  As outlined below, the Second Circuit clearly requires proof of causation to support an award of disgorgement.  The Second Circuit limits the amount of disgorgement to the portion of the profit derived from the violation.  No Second Circuit authority endorses a general rule that the total profits must be disgorged regardless of the facts about the true cause of those profits.

   B.    <u>The SEC's Theory Is Contrary to Second Circuit Law</u>

Under Second Circuit authority, the burden is on the SEC, as plaintiff, to show that its "total profits" calculation of disgorgement is "a reasonable approximation of profits <u>causally connected to the violation.</u>" *SEC v. Contorinis,* 743 F.3d 296, 305 (2d Cir. 2014) (emphasis added) (quoting *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1475 (2d Cir. 1996)).  Cases within this Circuit routinely recognize that a defendant must be given the opportunity to show that the profits were obtained due to forces unrelated to the violation.  *SEC v. Tourre*, 10 CIV. 3229 KBF, 2014 WL 969442, at *8-9 (S.D.N.Y. Mar. 12, 2014) (defendant given opportunity to "rebut" SEC's evidence that a portion of his bonus was causally connected to fraudulent transaction he set up); *SEC v. Great Am. Tech. Inc.*, 2010 WL 1416121, at *2 (S.D.N.Y. Apr. 8, 2010) (defendant given opportunity to "contradict the SEC's numbers"); *cf. SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 564-65 (S.D.N.Y. 2009) (permitting defendant opportunity to offer evidence that the payment he made to his fraudulent company was a "direct transaction cost" that should be "disregarded in establishing the appropriate amount of disgorgement").

The SEC's "total profits" theory is contrary to numerous cases denying the SEC's requests for employees to disgorge their "total compensation" during the time that they were

committing fraud on the job.  These cases refute a "total profits" measurement because they demonstrate that insiders—even insiders who conceal evidence of wrongdoing and fraud—are not required to disgorge all of their salary and bonus.  The burden is on the SEC, rather, to come forward with a specific account of one portion of the compensation that is causally linked to the wrongdoing.  Where the SEC fails to carry that burden, nothing need be disgorged.  *SEC v. Jones,* 476 F. Supp. 2d 374, 386 (S.D.N.Y. 2007) (granting summary judgment to defendants because SEC was "unable to provide the Court with any guideposts for determining the proper amount of Defendants' compensation subject to disgorgement"); *SEC v. Kelly*, 765 F. Supp. 2d 301, 325-26 (S.D.N.Y. 2011) (granting summary judgment for defendants because "the SEC has proffered no evidence this Court could use to reasonably approximate the percentage of [defendants'] compensation that was causally connected to the alleged violations" of falsely inflating advertising income); *see also Tourre*, 2014 WL 969442, at *8-9 (S.D.N.Y. Mar. 12, 2014) (only one-ninth of defendant's bonus, awarded during the year he worked on fraudulent transaction, was causally connected to that transaction); *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 250, 254 (E.D.N.Y. 2011) (even though CEO of company was directly responsible for fraudulent accounting scheme, the SEC failed to prove that CEO's entire base salary during the fraud period was causally linked to his unlawful conduct), *aff'd in relevant part*, 738 F.3d 14 (2d Cir. 2013); *SEC v. Resnick*, 604 F. Supp. 2d 773, 783 (D. Md. 2009) (declining to order disgorgement of the defendant's entire salary "because it is reasonable to assume that [he] performed various functions of value to the company other than the fraudulent activities which inflated earnings").

      C.      The SEC Is Seeking Punishment, Not a Remedy

By seeking disgorgement of more than the amount causally connected to the disclosure violations, the SEC is seeking to punish the Wylys, not merely "return them" to their "status quo prior to the wrongdoing."  *Contorinis*, 743 F.3d at 309.  That is impermissible.  To the extent the

SEC reads *Teo* to eliminate the causation requirement, that reading is inconsistent with the well-established principle that meting out punishment is not an authorized function of disgorgement. At least three separate doctrines depend upon disgorgement not being considered a punishment.

First, disgorgement has only been held to be outside the five-year catch-all statute of limitations because it is not a "penalty" within the meaning of that statute. *Compare Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996) (SEC administrative action barred by 28 U.S.C. § 2462 because "the sanctions imposed by the SEC—censure and a six-month suspension—clearly resemble punishment in the ordinary sense of the word"), *with Zacharias v. SEC*, 569 F.3d 458, 471 (D.C. Cir. 2009) (although "[i]n theory, a disgorgement order might amount to a penalty if it was not causally related to the wrongdoing at issue," disgorgement not a time-barred penalty in that case because "[p]etitioners do not dispute that the order against them was causally related to their wrongdoing").

Second, similar logic informed this Court's decision to substitute the Estate as a party, even though all of the SEC's claims for <u>punishment</u> (i.e., penalties) were extinguished upon Charles Wyly's death. *SEC v. Wyly*, Order Granting SEC Motion to Substitute, at 18 [ECF No. 89] (granting motion to substitute in part because, in its disgorgement claims, "the government is not imposing any penalty but rather seeking to restore the defendant, or his estate, to the position he or it would have been in absent any wrongdoing").

Third, the only reason that disgorgement comes within the scope of the federal courts' equitable powers, under Section 11 of the 1789 Judiciary Act, is because disgorgement is a "remedy" that is similar to the "ancient remedies of accounting, constructive trust, and restitution." *SEC v. Cavanagh*, 445 F.3d 105, 119 (2d Cir. 2006) (applying *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999)); *see also id.* at 117 &

n.25 ("The [disgorgement] remedy consists of factfinding by a district court to determine the amount of money acquired through wrongdoing . . . . Because the remedy is remedial rather than punitive, the court may not order disgorgement above this amount.").

II.      The SEC's Theory is Untimely

The SEC's egregious and inexplicable delay in disclosing the "total profits" theory is a separate, and wholly sufficient, reason for this Court to preclude the theory under Federal Rule of Civil Procedure 37(c).  The defense served a contention interrogatory on the SEC nearly two years ago, requesting the SEC to identify its theories of disgorgement.  The SEC first responded on October 26, 2012.[1]  Not until nineteen months later—on June 6, 2014—did the SEC disclose the "total profits" new theory.[2]  This improper delay gave the SEC advantages in this litigation. First, its delay allowed the SEC to avoid having to defend this theory at summary judgment, instead forcing the defense to scramble to address it in an already tight remedies schedule.  *Cf. Kelly*, 765 F. Supp. 2d at 325-26 (granting summary judgment to defense because SEC failed to produce evidence to justify "total compensation" theory of disgorgement); *Jones*, 476 F. Supp. 2d 374, 386 (same). Second, the "total profits" theory would, if the Court permits it, force the defense to spend yet more time and resources on expert assistance in order to respond to it.

*Teo*'s recency—it was decided on February 14, 2014—does not excuse the SEC's delay. First, *Teo* announced no new principle that applies to this case.  As discussed above, the defendant in *Teo* was not an insider, so that case contributes nothing to the SEC's "disclose or abstain" theory of causation.  Second, the SEC was a party to *Teo*, and had prevailed on its theory at the district court, which issued its opinion in 2011.  Nothing in the Third Circuit's

---

[1] SEC's Responses and Objections to Defendant Samuel E. Wyly's Interrogatories 6-7 (dated and served October 26, 2012).

[2] SEC Revised Responses and Objections to Defendant Samuel E. Wyly's Interrogatory Number 4, at 2 (dated and served June 6, 2014).

affirmance of the district court added a new point of law that was not available to the SEC in this case, when responding to the defense interrogatories in 2012.  Third, *Teo* is not a Second Circuit decision, so it is not, by definition, a change in controlling law.

Because the SEC failed to timely disclose its "total profits" theory, the SEC should be precluded from relying on it at the remedies hearing.  *See* Fed. R. Civ. P. 37(c)(1); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, No. 1:00-cv-1898, 2014 WL 494522, at *2 (S.D.N.Y. Feb. 6, 2014) ("Contention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers."); *id.* at *4 ("[A]n undisclosed theory will be precluded 'unless the failure [to disclose] was substantially justified or is harmless.'"); *see also Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, 04 CIV. 3854RCCAJP, 2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) (precluding damages theory first disclosed in an untimely supplemental disclosure).

As the dilatory party, the SEC bears the burden to prove (1) its delay was justified or (2) its delay was harmless. *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).  The SEC cannot show, and has not even attempted to show, either.  First, there can be no justification, substantial or otherwise, for waiting nineteen months to disclose a disgorgement theory that relies on no new evidence or previously unknown information.  The SEC was asked repeatedly to identify its theories of disgorgement, and it repeatedly failed to disclose its new theory, going so far as to represent to the Court that it had no other theories of disgorgement. (Hearing Tr. 14, Jan. 9, 2013, ECF No. 122 (Mr. Miller: "I don't have anything to proffer to the Court at this point.").).

Second, the SEC has not tried to and cannot show that its failure to disclose was "harmless." A failure to comply with Rule 26(e) "'is harmless when there is no prejudice to the

party entitled to the disclosure.'" *Am. Stock Exch.*, 215 F.R.D. at 93. But "prejudice is not required for preclusion under Rule 37(c)(1)." *MTBE Prods. Liab. Litig.,* 2014 WL 494522, at *3. In fact, "'[t]he estoppel principles applied in [the Second] Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters his position.'" *Id.* at *3 n.34 (second alteration in original) (emphasis added) (quoting *Wechsler v. Hunt Health Sys., Ltd.,* No. 94 Civ. 8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999)).

By injecting a new disgorgement theory into this case over one year after the close of fact discovery and on the eve of the remedies trial, the SEC has deprived Defendants of the opportunity to plan for and conduct needed expert discovery, as well as retain its own expert to rebut the SEC's new theory, unless it seeks and is granted a substantial delay in the case. *See Am. Stock Exch.*, 215 F.R.D. at 94.  As it stands now, Defendants have only recently identified and hired an expert, Professor Daniel Fischel.  Mr. Fischel would need a continuance in order to be able to produce an opinion for use at the hearing.  Moreover, the Wylys are not sure at this point that Mr. Fischel's work would represent a complete rebuttal of the SEC's position since Mr. Fischel only began working recently, and the SEC's theory remains to this date something of a moving target.  It is simply unfair to force the Wylys to respond, under a rushed schedule, to new theories from the SEC, especially since the Wylys long ago took the appropriate steps to ascertain the SEC's theories so that they would have adequate time to prepare a defense, and yet the SEC failed to disclose its theories in a timely fashion.  In any event, the delay and expense of responding to the SEC's late-disclosed theory are sufficient reasons to preclude the SEC from offering it.

III.   The SEC's Theory Would Require a Longer Trial

At the scheduling hearing held immediately after the jury's verdict in this case, the defense and the Court agreed with the SEC that three days would provide sufficient time for the remedies hearing.  Trial Tr. 3318-320 (May 12, 2014).  The defense's agreement was based on the SEC's representations to us about its theories of disgorgement.  If the Court were to permit the SEC to seek this additional, late-disclosed theory of disgorgement—which we first learned about almost a month later, on June 6—then additional trial time would be necessary.

The SEC's previously disclosed theories of disgorgement have already led to eight expert witnesses and fifteen fact witnesses.  Though not all of those witnesses will be called live, their testimony will still consume a significant amount of trial time.  At a minimum, Professor Fischel's extensive analysis in response to the SEC's "total profits" theory would require a significant amount of additional time.  It is difficult to imagine how his analysis could be fit into an already crowded three-day limit.

## CONCLUSION

For the foregoing reasons, the defense respectfully moves the Court to preclude the SEC's "total profits" theory.

Respectfully submitted:

SUSMAN GODFREY, L.L.P

By:

  //S//

Stephen D. Susman (SS8591)
Mark H. Hatch-Miller (MH4981)
Steven M. Shepard (*pro hac vice*)
560 Lexington Avenue, 15th Floor
New York, New York  10022-6828
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Terrell W. Oxford
David D. Shank
901 Main Street, Suite 5100
Dallas, Texas  75202-3775
Telephone: (214) 754-1900
Facsimile: (214) 754-1933

Harry S. Susman, *Pro Hac Vice*
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 653-7834
Facsimile: (713) 654-6666

*Attorneys for Samuel E. Wyly and Donald R. Miller, Jr.*

Dated:   July 2, 2014