**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:10-cv-05760-SAS** |
| **SAMUEL E. WYLY and DONALD R. MILLER, JR., in his capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr.,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES**
**AND EXCHANGE COMMISSION'S MOTION *IN LIMINE***
**TO EXCLUDE PART OF THE TESTIMONY OF DEFENSE EXPERT MCCONNELL**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Memorandum Of Law In Support Of Its Motion *In Limine* To Exclude Part Of The Proposed Opinion Testimony Of Defense Expert John J. McConnell.

## I.    INTRODUCTION

The SEC moves to exclude that portion of Professor McConnell's proposed testimony that addresses the measure of disgorgement for the Wylys' violation of Exchange Act Section 5 as a result of their sale of millionsof unregistered securities in Michaels Stores.  *See* Declaration of John D. Worland, Jr. ("Worland Decl.") at Exhibit 1, the "Expert Report of John J. McConnell" ("McConnell Report"), at pp. 20-24.

The SEC challenges the relevance of Professor McConnell's opinion because it proffers a measure of disgorgement for the Section 5 violation that is completely inconsistent with governing law.  As Professor McConnell described his assignment:

> I have been asked to calculate the economic benefit, if any, that the Wylys experienced above and beyond what they would have experienced had the shares been properly registered.  The economic benefit accruing to the Wylys as a result of violations of Section 5 can be evaluated by comparing the actual trading profits of the IOM Corporations with an estimate of what the profits would have been had there been no violations.

McConnell Report, p. 21 at ¶ 89.

Putting aside the speculative nature of what the Professor proposes, his proposed measure of disgorgement for the Wylys' Section 5 violation is disregarded by applicable case law.  Those cases hold that, for Section 5 violations, the proper measure of disgorgement is the profits made from the illegal trades – that is the profits from the sale of unregistered securities.  The jury has already established that such illegal trades occurred in this case.  Thus, the only issue for disgorgement is – what profits did the Wylys make?  This is not a hypothetical calculation, as Professor McConnell mistakenly presumes.  It is, instead, a straightforward process of measuring the proceeds from the illegal sales, and deducting any directly related costs.  This is what the SEC has done by having Ms. Yasmine Misuraca calculate the sales proceeds for the illegally sold shares in the appropriate brokerage account statements, and then trace the shares back to find their original acquisition costs.

Rather than challenging Ms. Misuraca's calculations by claiming she made an error or by alleging additional acquisition costs should be subtracted from the SEC's profit calculation, the Defendants have chosen to offer an expert to support an alternative measure of disgorgement, which is highly favorable to the Defendants.  However, this alternative measure is unsupported by law, and for this reason, Professor McConnell's proposed testimony on Section 5 disgorgement should be excluded as irrelevant.

## II.    DISCUSSION

"Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct."  *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014). Disgorgement satisfies "the equitable principle that wrongdoers should not benefit from their misdeeds, and thus should relinquish **any** profits obtained from them."  *Id*., at 302, (emphasis added).

The Second Circuit has clearly stated the policy behind this equitable principle:

> The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws. *See, e.g., SEC v. Wang,* 944 F.2d 80, 85 (2d Cir.1991); *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2d Cir.1978). "The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d at 1104; …

*SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1997), *cert. denied*, 522 U.S. 812 (1997).

Defendants reject this established law.  Instead, they propose a completely different and legally unsupported approach.  Defendants assert that they should only have to disgorge an amount that can be tied to a hypothetical cure for their illegal behavior.  Professor McConnell proposes three alternative methods for assessing this amount:

1.    assume that a registration statement in this case would have had the effect of notifying the market that the Wylys intended to sell the shares, and use academic studies to assess the impact of such announcements on share prices (Worland Decl., Ex. 1, at ¶¶ 90-91);

2.    assume that a registration statement in this case would have had an effect on stock prices equivalent to the effect found in academic studies concerning secondary, or "seasoned equity offerings" (*Id.* at ¶¶ 94-95); and

3.      assume that a registration statement in this case would have had an effect on stock prices equivalent to the effect found in academic studies concerning expiration of the lock-up periods after Initial Public Offerings. (*Id.* at ¶¶ 96-98).

Now, to be completely fair to Professor McConnell, he makes it clear that "I do not believe these other events [methods 2 and 3 above] are sufficiently similar to the current case to conclude that the price reaction in the current case would have been the same." *Id.* at ¶ 93.  The SEC, of course, does not believe that any of his methods are sufficiently like the current case to justify any conclusion at all.

But the issue is not the adequacy of one form of hypothetical or the other.  The issue is whether the sales were illegal – which the jury has already found.  If illegal, the Wylys cannot keep **any** of the profits from those sales.  In *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998), the defendant tried to argue that his disgorgement in an insider trading case should be measured, not by his actual profits, but by another measure that filtered out "other" market factors.  The Second Circuit rejected this effort, stating that such matters were "irrelevant" to the rules of disgorgement for insider trading which "seek to prevent and take the profit out of such trading." *Id.*

The rule is the same for sales of unregistered securities.  In *SEC v. Universal Express, Inc.*, 438 Fed. Appx. 23, 26 (2d Cir. 2011), the Second Circuit stated that, in Section 5 cases in this Circuit, courts have "consistently" accepted the deduction of "direct transaction costs" from the proceeds of the unregistered securities sales, *id. citing SEC v. McCaskey,* No. 98 Civ. 6153, 2002 WL 850001, at *4 (S.D.N.Y. Mar.26, 2002), but only if the defendant could show that the alleged adjustment "reflected a direct transaction cost."  See *SEC v. Elliot*, No. 09-civ-7594, 2012 WL 2161647, *12-13 (S.D.N.Y. June 12, 2012) (ordering disgorgement of profits from

unregistered sales); *SEC v. Stone*, No. 06-Civ-6528, 2009 WL 82661, *4 (S.D.N.Y. Jan. 13, 2009) (ordering defendants to disgorge their "net profits" by subtracting the amount the defendants paid for the unregistered shares from the amount of proceeds they earned from their subsequent unregistered sales);  *accord, Zacharias v. SEC*, 569 F.3d 458, 472 (D.C. Cir. 2009); *SEC v. Platforms Wireless International Corporation*, 617 F.3d 1072, 1096-97 (9th Cir. 2010).

Indeed, when defendants do not submit evidence of any direct transaction costs, such as purchase costs of the unregistered shares, courts in this Circuit typically order disgorgement of the defendants' full proceeds from the illegal sales.  *See e.g. SEC v. Cavanaugh*, No. 98-Civ-1818, 2004 WL 1594818, *30 (S.D.N.Y. July 16, 2004), *aff'd* 443 F.3d 105 (2d Cir. 2006) (holding that "defendants are not entitled to deduct costs associated with their illegal acts."); *SEC v. Verdiramo*, 907 F. Supp.2d 367, 375 (S.D.N.Y. 2012) (ordering disgorgement of full proceeds).

The Wylys are not trying to identify additional "direct transaction costs" through Professor McConnell.  To the contrary, they are not disputing the accuracy of any aspect of the calculation provided by the SEC's expert, Ms. Misuraca. Instead, they offer a counter-factual hypothetical as an alternative to the uniformly accepted measure of disgorgement in Section 5 cases.  This should not be allowed.

Two different District Courts have confronted almost exactly the same argument that the defendants are attempting to pursue here. In *SEC v. Olins*, 762 F.Supp.2d 1193 (N.D.Ca. 2011), the District Court rejected an attempt by the defendants to limit disgorgement for the sale of unregistered securities by reference to what the stock price would have been had they complied with Rule 144.  The District Court stated: "defendants cite no authority, and the Court is aware of none, to support a reduction based on such speculation." *Id* at 1198.

Similarly, in *SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp.2d 923, 970 (S.D. Ohio 2009), *aff'd*. 712 F.3d 321 (6th Cir. 2013), the District Court specifically rejected the concept promoted by defendants in this case.  In *Sierra Brokerage*, the SEC moved for summary judgment on its Section 5, Section 13d, and Section 16a claims in a case involving stock promoters who, among other things, received unregistered shares and sold them illegally.  The SEC calculated the profits from the illegal sales, and asserted a claim for disgorgement in the traditional fashion.  Certain of the defendants in *Sierra Brokerage* argued that "their failure to report their beneficial ownership" and any other disclosure violations "were not casually related to their profits" for the sale of the unregistered sales.  The defendants in *Sierra Brokerage*, like the Wylys here, argued that their disgorgement should only reflect inflation in the stock price that was present in those sales. The District Court was not having any of that, stating:

> Courts are not required to engage in counterfactual scenarios to speculate about how much a defendant's disclosure violation inflated the market price of a security.

*Id*., 608 F. Supp.2d at 970.

**III.      CONCLUSION**

This Court has a lot on its plate. It should not have to listen to expert testimony that does not have any relevance to the applicable legal standards for claims at issue in this case.  For this reason, based on the arguments set forth above, the SEC respectfully requests that this Court exclude the proposed testimony of Professor John J. McConnell relating to the SEC's Section 5 claim.


Dated:  July 18, 2014                                                 Respectfully submitted,


/s/ *John D. Worland, Jr.*
John D. Worland, Jr. (JDW-1962)
Bridget Fitzpatrick
Martin Zerwitz (MZ-9765)
Hope Hall Augustini
Daniel Staroselsky
Gregory N. Miller (GM-5922)
Counsel for Plaintiff
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4438 (Worland)
(202) 772-9292 (fax)
worlandj@sec.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 18th day of July 2014, copies of the Memorandum of Law in Support of Plaintiff Securities and Exchange Commission's Motion *In Limine* to Exclude Part of the Testimony of Defense Expert McConnell were served in .pdf format on the following parties via the Court's ECF system:

Stephen D. Susman
SUSMAN GODFREY
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096

Terrell W. Oxford
David D. Shank
SUSMAN GODFREY
901 Main Street, Suite 5100
Dallas, Texas  75202-3775

Mark Hatch-Miller
Steven M. Shepard
SUSMAN GODFREY
560 Lexington Avenue
15th Floor
New York, NY 10022-6828
**Counsel for Defendants Sam Wyly and Donald R. Miller Jr.**

Michael L. Smith
BICKEL & BREWER
767 Fifth Avenue
50th Floor
New York, New York  10153
**Counsel for Defendant Samuel E. Wyly**

*/s/ John D. Worland, Jr.*
John D. Worland, Jr.
Counsel for Plaintiff