**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

                       Plaintiff,

      - against -

SAMUEL E. WYLY and DONALD R. MILLER,
JR., in his capacity as the Independent Executor of
the Will and Estate of Charles J. Wyly, Jr.,

                      Defendants.

10 Civ. 5760 (SAS)


**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**


PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile: (212) 637-2686
Email: joseph.cordaro@usdoj.gov


JOSEPH N. CORDARO
Assistant United States Attorney
    - Of Counsel -

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND INTEREST OF THE UNITED STATES ............................ 1

I.   THE SEC IS NOT ASSESSING OR COLLECTING TAXES .............. 3

II.   THE GRANTOR TRUST PROVISIONS ................................. 6

    A.   History of the Provisions ................................................... 6

    B.   Section 674 – Power to Affect Beneficial Enjoyment ................... 8

        1.   Section 674(a) – The General Rule .................................... 9

        2.   Section 674(c) – The Independent Trustee Exception ...... 11

    C.   Section 679 – Foreign Trusts ....................................... 15

III.   COMMON LAW DOCTRINES ............................................. 19

    A.   The Substance Over Form Doctrine............................................. 19

    B.   The Economic Substance Doctrine ............................................. 21

CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page**

*Altria Group, Inc. v. United States*,
    658 F.3d 276 (2d Cir. 2011) ............................................................................. 20

*Altria Group, Inc. v. United States*,
    694 F. Supp. 2d 259 (S.D.N.Y. 2010) ............................................................. 22

*Audano v. United States*,
    428 F.2d 251 (5th Cir. 1970) ..................................................................... 14, 21

*Badaracco v. Commissioner*,
    464 U.S. 386 (1984) ......................................................................................... 24

*Coltec Industrial, Inc. v. United States*,
    454 F.3d 1340 (Fed. Cir. 2006) ...................................................................... 21

*Commissioner v. Court Holding Co.*,
    324 U.S. 331 (1945) ......................................................................................... 20

*Corliss v. Bowers*,
    281 U.S. 376 (1930) ........................................................................................... 6

*DeMartino v. Commissioner*,
    862 F.2d 400 (2d Cir. 1988) ............................................................................ 22

*Estate of Goodwyn v. Commissioner*,
    35 T.C.M. (CCH) 1026 (1976) .................................................................. 12, 13

*Frank Lyon Co. v. United States*,
    435 U.S. 561 (1978) ......................................................................................... 20

*Gilman v. Commissioner*,
    933 F.2d 143 (2d Cir. 1991) ............................................................................ 22

*Goldstein v. Commissioner*,
    364 F.2d 734 (2d Cir. 1966) ............................................................................ 22

*Gregory v. Helvering*,
   293 U.S. 465 (1935) ......................................................................... 20

*Helvering v. Clifford*,
   309 U.S. 331 (1940) ........................................................................... 7

*In re Gartenberg*,
   636 F.2d 16 (2d Cir. 1980) ................................................................. 6

*In re John Doe Corp.*,
   675 F.2d 482 (2d Cir. 1982) ............................................................... 6

*Jacobson v. Commissioner*,
   915 F.2d 832 (2d Cir. 1990) ............................................................. 22

*Kanter v. Commissioner*,
   590 F.3d 410 (7th Cir. 2009) ............................................................. 8

*Kaplan v. Commissioner*,
   107 T.C.M. (CCH) 1226 (2014) ....................................................... 10

*Kirst v. Commissioner*,
   45 T.C.M. (CCH) 1053 (1983) ......................................................... 10

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   133 S. Ct. 1351 (2013) ..................................................................... 19

*Markosian v. Commissioner*,
   73 T.C. 1235 (1980) ......................................................................... 23

*Midlantic National Bank v. N.J. Dep't of Environmental Prot.*,
   474 U.S. 494 (1986) ......................................................................... 19

*Morse v. Commissioner*,
   419 F.3d 829 (8th Cir. 2005) ............................................................. 4

*Muhich v. Commissioner*,
   77 T.C.M. (CCH) 2143 (1999) .................................................... 22, 23

*New Jersey v. Anderson*,
   203 U.S. 483 (1906) ........................................................................... 4

*Nicole Rose Corp. v. Commissioner*,
   320 F.3d 282 (2d Cir. 2002) ............................................................ 22

*PPL Corp. v. Commissioner*,
   133 S. Ct. 1897 (2013) ................................................................... 20

*Raymond v. United States*,
   355 F.3d 107 (2d Cir. 2004) ........................................................... 19

*SEC v. Fischbach Corp.*,
   133 F.3d 170 (2d Cir. 1997) ............................................................. 4

*SEC v. Patel*,
   61 F.3d 137 (2d Cir. 1995) ............................................................... 5

*SEC v. Tome*,
   833 F.2d 1086 (2d Cir. 1988) ........................................................ 4, 5

*SEC v. Wang*,
   944 F.2d 80 (2d Cir. 1991) ............................................................... 4

*United States v. Atkins*,
   869 F.2d 135 (2d Cir. 1989) ........................................................... 19

*United States v. Barbera*,
   No. 02 Cr. 1268 (RWS),
   2005 WL 2709112 (S.D.N.Y. Oct. 21, 2005) ...................................... 4

*United States v. Butler*,
   297 U.S. 1 (1936) ............................................................................ 4

*United States v. Cadet*,
   664 F.3d 27 (2d Cir. 2011) ............................................................... 4

*United States v. Helmsley*,
   941 F.2d 71 (2d Cir.1991) ................................................................ 5

*United States v. Maynard*,
   743 F.3d 374 (2d Cir. 2014) ............................................................. 5

*United States v. New York*,
    315 U.S. 510 (1942) ................................................................................ 4

*United States v. Ratfield*,
    No. 01-8816-CIV-MARRA,
    2004 WL 3174420 (S.D. Fla. Nov. 30, 2004) ........................................... 14, 21

*United States v. Reorganized CF & I Fabricators of Utah, Inc.*,
    518 U.S. 213 (1996) ................................................................................ 4

*United States v. Scheuneman*,
    712 F.3d 372 (7th Cir. 2013) ................................................................. 4

*United States v. Scott*,
    37 F.3d 1564 (10th Cir. 1994) ............................................................... 21

*Wesenberg v. Commissioner*,
    69 T.C. 1005 (1978) ............................................................................... 10

*Winthrop v. Meisels*,
    281 F.2d 694 (2d Cir. 1960) .................................................................. 8

*Zmuda v. Commissioner*,
    79 T.C. 714 (1982) ................................................................................. 22, 23

**STATUTES**

18 U.S.C. § 3556 ............................................................................................. 5

Internal Revenue Code, 26 U.S.C. § 1, *et seq.*

    26 U.S.C. § 267(b) ............................................................................... 18

    26 U.S.C. § 453(b)(1) ........................................................................... 17

    26 U.S.C. § 671 .................................................................................... 8

    26 U.S.C. § 672(a) ............................................................................... 9

    26 U.S.C. § 672(c) ............................................................................... 11, 12

26 U.S.C. § 674(a) ................................................................................................ 9

26 U.S.C. § 674(b) ................................................................................................ 9

26 U.S.C. § 674(c) ............................................................................................ 9, 11

26 U.S.C. § 674(d) ................................................................................................ 9

26 U.S.C. § 679(a)(1) .......................................................................................... 15

26 U.S.C. § 679(a)(2)(B) ..................................................................................... 17

26 U.S.C. § 679(a)(3)(A) ..................................................................................... 18

26 U.S.C. § 679(a)(3)(C) ..................................................................................... 18

26 U.S.C. § 679(c) ............................................................................................... 16

26 U.S.C. § 679(c)(1) .......................................................................................... 16

26 U.S.C. § 679(c)(1)(A) ..................................................................................... 16

26 U.S.C. § 707(b) ............................................................................................... 18

26 U.S.C. § 6103 ................................................................................................. 24

26 U.S.C. § 6201(a) .............................................................................................. 3

26 U.S.C. § 6201(a)(4) .......................................................................................... 5

26 U.S.C. § 6301 ................................................................................................... 3

26 U.S.C. § 6501(c)(1) ........................................................................................ 24

26 U.S.C. § 6501(c)(2) ........................................................................................ 24

26 U.S.C. § 6501(c)(3) ........................................................................................ 24

26 U.S.C. § 7401 ................................................................................................... 3

26 U.S.C. § 7701(a)(30) ................................................................ 15

26 U.S.C. § 7701(a)(30)(E) .......................................................... 15

26 U.S.C. § 7701(o)(1) ................................................................. 22

28 U.S.C. § 517 ............................................................................. 1

HIRE Act, Pub. L. 111-147, § 531, 124 Stat. 71 (2010) ............................ 17

## REGULATIONS AND TREASURY DECISIONS

T.D. 5488, 1946-1 C.B. 19 (Dec. 29, 1945) ................................... 7

Treas. Reg. § 1.671-2(a) ............................................................... 8

Treas. Reg. § 1.671-2(b) ............................................................... 8

Treas. Reg. § 1.671-2(e)(1) ......................................................... 10

Treas. Reg. § 1.671-2(e)(2)(i) ...................................................... 10

Treas. Reg. § 1.672(a)-1(a) ........................................................... 9

Treas. Reg. § 1.672(a)-1(b) ........................................................... 9

Treas. Reg. § 1.674(a)-1(a) ........................................................... 9

Treas. Reg. § 1.679-4(b)(1) ......................................................... 18

Treas. Reg. § 1.679-4(b)(2)(i) ...................................................... 18

Treas. Reg. § 1.679-4(b)(2)(ii) ..................................................... 18

Treas. Reg. § 301.6201-1 .............................................................. 3

Treas. Reg. § 301.6301-1 .............................................................. 3

## LEGISLATIVE HISTORY

H.R. Rep. No. 83-1337 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017 .................. 8, 12

S. Rep. No. 83-1622 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621 ...................... 8, 12

S. Rep. No. 94-938 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3438 ........................... 16

## MISCELLANEOUS

Boris I. Bittker & Lawrence Lokken, *Federal Taxation of
    Income, Estates and Gifts* (2014) ..............................................................*passim*

Robert T. Danforth, Norman H. Lane & Howard M. Zaritzy,
    *Federal Income Taxation of Estate and Trusts* (2014)..................................... 12

Myron Kove, George G. Bogert & George T. Bogert,
    *The Law of Trusts and Trustees* (2013)...................................................... 7, 12

Walter L. Nossaman & Joseph L. Wyatt, Jr.,
    *Trust Administration and Taxation* (2014)........................................................ 7

David Westfall, *Nonjudicial Settlement of Trustees' Accounts,*
    71 Harv. L. Rev. 40 (1957)................................................................................ 11

David Westfall, *Trust Grantors and Section 674:
    Adventures in Income Tax Avoidance,*
    60 Colum. L. Rev. 326 (1960)........................................................................... 13

David Westfall, et al., *Estate Planning Law & Taxation* (2014) ................................ 14

Harry Yohlin, *The Short-Term Trust—A Respectable
    Tax Saving Device,* 14 Tax L. Rev. 109 (1958) ................................................ 10

## INTRODUCTION AND INTEREST OF THE UNITED STATES

Pursuant to 28 U.S.C. § 517, the United States of America respectfully submits this Statement of Interest to state the United States' position on two issues pertaining to the Securities and Exchange Commission's request for disgorgement measured by taxes that Defendants avoided in connection with their violations of the securities laws.[1]  *First*, as the Court already has found, calculating disgorgement in this manner does not constitute a collection of tax liabilities that the Internal Revenue Code ("IRC") reserves solely to the Department of the Treasury.  *Second*, in fixing the appropriate amount of disgorgement, if any, the Court should interpret the relevant Code provisions and regulations concerning trust taxation, as well as the relevant common law tax doctrines, in a manner consistent with their purpose—placing the burdens of taxation on individuals who use the trust form without giving up effective control of trust assets.

After a month-long trial, a jury found Charles and Samuel Wyly (the "Wylys" or "Defendants") liable for nine securities violations in connection with transactions related to the Wylys' offshore trusts—transactions that spanned more than a decade and yielded profits of over $550 million.  No one can dispute that the Wylys' offshore trust system was tax-motivated, and Samuel Wyly conceded on the stand that Defendants' securities filings assisted their tax benefits.  The jury found that those

---

[1]      28 U.S.C. § 517 authorizes the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

filings violated the securities laws.  In the remedies phase, which is being tried to the

Bench, the SEC seeks, among other things, disgorgement measured by the taxes that

Defendants avoided on Issuer transactions as a result of their misconduct.  The Court

has recognized that the SEC's request may necessitate an interpretation of the tax laws

in determining the appropriate disgorgement amount for the securities violations.  As

the federal agency charged with enforcing the tax laws, the Internal Revenue Service

has an interest in how the Court interprets the IRC, its regulations, and common law

doctrines in reaching its decision.

The SEC's request for an order of disgorgement measured by Defendants'

unpaid taxes raises the question of whether such an order would impermissibly

infringe on the exclusive authority of the Department of the Treasury under IRC

sections 6201 and 6301 to assess and collect federal taxes.  The answer to the question

is "no"—as the Court held in its Opinion and Order dated June 13, 2013.  A federal

tax, as the Supreme Court repeatedly has held, is a monetary burden that Congress

imposes for the support of the Government.  Disgorgement is an equitable remedy

intended to deprive lawbreakers of unjust enrichment and to deter other would-be

violators.  In addition, the SEC is not seeking to collect taxes.  Rather, the SEC

requests that the Court use unpaid tax as a yardstick to determine the amount of

disgorgement.

In order to decide the issue of disgorgement, the Court likely will have to

analyze IRC sections 671 through 679, which address the taxation of "grantor trusts,"

the regulations interpreting those IRC sections, and relevant common law doctrines. These rules place the burdens of taxation on individuals who use the trust form without relinquishing control of the assets. The Court should interpret the relevant statutes and regulations to give effect to this overarching purpose. In addition, regardless of whether the taxpayer literally complies with the relevant statutes and regulations, the Court should apply anti-abuse common law doctrines to characterize the transactions for tax purposes according to their true nature, thereby preventing subversion of the legislative purpose of the tax laws.

## I.     THE SEC IS NOT ASSESSING OR COLLECTING TAXES

An order of disgorgement measured by Defendants' unpaid taxes would not constitute an assessment or collection of taxes. The statutory authority to assess and collect taxes rests with the Department of the Treasury and has been delegated to the IRS. 26 U.S.C. §§ 6201(a), 6301; Treas. Reg. §§ 301.6201-1, 301.6301-1. An action for the collection or recovery of taxes requires the Secretary's authorization and the Attorney General's direction that proceedings be commenced. 26 U.S.C. § 7401. The SEC's proposed remedy does not run afoul of these authorities.

As the Court has recognized, the SEC is not seeking to recover taxes. The request is for the Court to order a *remedy* measured by the amount of taxes avoided. *See* Opinion and Order dated June 13, 2013 ("June 13 Order") at 8. The distinction drawn by the Court is important. The Supreme Court repeatedly has held that "'a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting

3

the Government.'" *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (quoting *United States v. New York*, 315 U.S. 510, 515 (1942) and *New Jersey v. Anderson*, 203 U.S. 483, 492 (1906)); *see also United States v. Butler*, 297 U.S. 1, 61 (1936) ("A tax, in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the government."). Disgorgement is an equitable remedy intended "to deprive the defendants of their ill-gotten gains to effectuate the deterrence objectives of the securities laws." *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991); *see also SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) (same); *see SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1988) ("The paramount purpose of . . . ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing."). Disgorgement, even when measured by unpaid taxes, is not *itself* a tax.

Measuring damages through tax attributes is not unprecedented. In criminal tax cases, for example, the restitution that must be paid to the Government in compensation for the crime is frequently measured by the tax loss, or the amount that the Government lost as a result of the tax crime. *See, e.g., United States v. Cadet*, 664 F.3d 27, 34 (2d Cir. 2011); *see also United States v. Scheuneman*, 712 F.3d 372, 380 (7th Cir. 2013); *United States v. Barbera*, No. 02 Cr. 1268 (RWS), 2005 WL 2709112, at *11 (S.D.N.Y. Oct. 21, 2005). Tax loss is not a calculation of the defendant's civil tax liability. *Morse v. Comm'r*, 419 F.3d 829, 834 (8th Cir. 2005) (stating that in a criminal tax case, the jury is not asked to determine the specific tax

4

liability) (internal citations omitted); *see also United States v. Helmsley,* 941 F.2d 71, 102 (2d Cir.1991) (where tax evader is required to pay restitution for tax loss, the government may also seek to collect "unpaid taxes, penalties and interest in a civil proceeding," but must give credit for restitution payment).

The IRC now specifically authorizes the IRS to assess and collect the amount of restitution in a criminal case for failure to pay taxes, as if such amount were a tax. 26 U.S.C. § 6201(a)(4); *see* 18 U.S.C. § 3556 (orders of restitution as part of sentencing). The existence of section 6201(a)(4) does not transform criminal restitution into a tax; similarly, an order of disgorgement in a civil case measured by unpaid taxes does not itself constitute a tax.

Restitution and disgorgement, of course, have different goals. As discussed above, disgorgement remedies unjust enrichment and serves a deterrent purpose. *See Tome*, 833 F.2d at 1096. Restitution is intended to compensate a crime victim for the victim's loss. *See United States v. Maynard*, 743 F.3d 374, 377-378 (2d Cir. 2014). But both can be measured by tax attributes. In this case, disgorgement measured by unpaid taxes need only be a "reasonable approximation of the profits causally connected to the violation." *SEC v. Patel*, 61 F.3d 137, 139-40 (2d Cir. 1995). Any risk of uncertainty "fall[s] on the wrongdoer whose illegal conduct created th[e] uncertainty." *Id.* at 140 (citation and internal quotation marks omitted). As the Court recognized, there is no express limitation in the IRC on the SEC's ability to disgorge a

reasonable approximation of profits connected to the violations.  June 13 Order at 9 (citing authorities).

Finally, the "[f]ederal securities laws put a price of disclosure upon access to interstate capital markets."  *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982). Investors who flout this basic rule endanger the market.  The weapons at the SEC's disposal to combat securities law violations protect the public interest.  *See In re Gartenberg*, 636 F.2d 16, 17 (2d Cir. 1980).  As the Court already has indicated, disgorgement measured by unpaid taxes is a "potentially powerful arrow in [the SEC's] quiver."  June 13 Order at 12.  Nothing in the tax laws prevents the SEC from requesting this remedy, or the Court from ordering it.  For the foregoing reasons, and for the additional reasons cited in the Court's June 13 Order, the IRC does not prohibit measuring disgorgement by unpaid taxes.

## II.  THE GRANTOR TRUST PROVISIONS

A grantor trust is a trust in which the law treats the grantor as the "owner" of the trust in whole or in part.  The taxation of grantor trusts has been a focus of the law for many decades, as discussed below.

### A.  <u>History of the Provisions</u>

Over eighty years ago, in a case involving a trust, Justice Holmes wrote that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378 (1930).  This issue came into focus ten years

6

later in *Helvering v. Clifford*, 309 U.S. 331 (1940), which involved a short-duration

trust for the benefit of the grantor's wife.  The Supreme Court found that the grantor

owned the assets for income tax purposes, reasoning: "So far as [the grantor's]

dominion and control were concerned it seems clear that the trust did not effect any

substantial change.  In substance his control over the corpus was in all essential

respects the same after the trust was created, as before."  *Id.* at 335.  In the wake of

*Clifford*, the concept of *dominion and control* was the underlying force that animated

the evolution of the law pertaining to the taxation of trusts.

One important development was the Department of the Treasury's issuance of

the "*Clifford* Regulations" in the 1940s and 1950s to aid the courts in determining

how much "control" would trigger ownership for tax purposes.  *See, e.g.,* T.D. 5488,

1946-1 C.B. 19 (Dec. 29, 1945); Walter L. Nossaman & Joseph L. Wyatt, Jr., *Trust

Administration and Taxation* § 42A.01 (2014).  In some cases, the regulations "went

further than the prior case law in establishing presumptions that the grantor was the

owner within the meaning of the *Clifford* rules and was therefore taxable on the trust

income."  Myron Kove, George G. Bogert & George T. Bogert ("Bogert"), *The Law

of Trusts and Trustees* § 268.15 (2013).

In 1954, Congress codified many of the principles of the *Clifford* Regulations

in sections 671 through 678 of the Internal Revenue Code.  *See id.*  The legislative

history makes clear that Congress' intent was to provide for "taxing to the grantor the

income of a trust over which he has retained substantial dominion and control."

S. Rep. No. 83-1622 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 5005; H.R. Rep.

No. 83-1337 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4089, 4350.  Just six years

later, the Second Circuit invoked a familiar theme in describing the recently enacted

statute: "I.R.C. 1954, §§ 671-678 . . . provides for taxing to the grantor the income of

a trust over which he retained substantial dominion and control."  *Winthrop v.*

*Meisels*, 281 F.2d 694, 697 (2d Cir. 1960); *see also* Treas. Reg. 1.671-2(b) (general

principle underlying statute is that income should be taxed to grantor or other person

who exercises "substantial dominion and control" over trust).[2]

Section 671 states the general rule that a grantor or other person who is treated

as an "owner" of any portion of a trust must be taxed on the income of the trust

attributed to that portion of the trust.  26 U.S.C. § 671; Treas. Reg. 1.671-2(a); *see*

*Kanter v. Comm'r*, 590 F.3d 410, 422 (7th Cir. 2009) ("The default rule . . . is that

owners are taxed for trust income, and generally the grantor is treated as the owner.").

Sections 673 to 679 describe various situations that result in "ownership."  The

Government understands from the prior proceedings that sections 674 and 679 of the

IRC are the grantor trust provisions at issue in this case.

### B.      Section 674 – Power to Affect Beneficial Enjoyment

Section 674 begins with the general proposition that a grantor shall be treated

as the owner of any portion of a trust over which the grantor (or a nonadverse party)

---

[2]      The Tax Reform Act of 1986 made certain changes to the 1954 grantor trust
provisions, but those changes are not relevant to this Statement of Interest.

has a "power of disposition" over beneficial enjoyment of the trust corpus or income. 26 U.S.C. § 674(a). The statute then sets forth several "powers" that do not trigger ownership under the general rule. *Id.* § 674(b)(1)-(8), (c), (d). In this case, it appears that the applicability of section 674(a) is at issue with respect to certain trusts; for others, the applicability of section 674(a) is conceded, but the issue is whether the section 674(c) exception applies. *See* Defs.' Remedies Hrg. Memo of Law (Docket No. 430) at 9.

### 1.    Section 674(a) – The General Rule

Section 674(a) provides that a grantor "shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party." 26 U.S.C. § 674(a).[3] The relevant Treasury regulation confirms the broad reach of this statutory language: "Section 674(a) . . . states in general terms that the grantor is treated as the owner in every case in which he or a nonadverse party can affect the beneficial enjoyment of a portion of a trust." Treas. Reg. 1.674(a)-1(a).

---

[3]    An "adverse party" is "a person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses concerning the trust." 26 U.S.C. § 672(a). Trustees are not adverse parties simply because they are trustees; beneficiaries usually are adverse parties. Treas. Reg. 1.672(a)-1(a), (b).

A "grantor" is any person who "creates a trust, or directly or indirectly makes a gratuitous transfer [*i.e.,* not for fair market value] . . . of property to a trust."  Treas. Reg. § 1.671-2(e)(1), (e)(2)(i).  If a person or entity is a "grantor", then the Court must determine whether that grantor should be considered an "owner" for tax purposes. Under section 674(a)'s general rule, subject to exceptions, the power of disposition over beneficial enjoyment of trust corpus or income confers ownership.

The terms "power of disposition" and "beneficial enjoyment" are not defined in the statute.  Nevertheless, section 674(a) broadly encompasses the power to control trust income or principal.  *See Kaplan v. Comm'r*, 107 T.C.M. (CCH) 1226 (2014) (section 674(a) triggered when grantor retains "dominion and control" over trust property); *Kirst v. Comm'r*, 45 T.C.M. (CCH) 1053 (1983) (grantors were owners under section 674(a) because they retained powers over beneficial enjoyment); *Wesenberg v. Comm'r*, 69 T.C. 1005, 1012-13 (1978) (grantor held an owner under section 674(a) because, *inter alia*, he used a trust for to pay for a rent-free residence and personal expenses); *see also* Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 80.6.1 (2014) ("Because of the breadth of the general rule of § 674(a) and the particularity of the exceptions, it is impossible to compile an exhaustive list of powers generating tax liability for a grantor."); Harry Yohlin, *The Short-Term Trust—A Respectable Tax Saving Device*, 14 Tax L. Rev. 109, 124 (1958) (quoted in Bittker, *supra*, § 80.6.1) ("The [general rule of § 674(a)] is stated broadly.  If anyone, except an adverse party, has the power to control the

10

disposition of income or principal, the trust income is taxable to the grantor.").  The power to control a trust's investments falls within the broad scope of section 674(a). Bittker, *supra*, ¶ 80.6.1 (trust's investment policies, "even if exercised fairly, necessarily affect[ ] the relative positions of income and remainder beneficiaries") (citing David Westfall, *Nonjudicial Settlement of Trustees' Accounts*, 71 Harv. L. Rev. 40 (1957)).

To the extent the parties dispute the applicability of section 674(a) to any trust at issue, the Court should construe the statute consistent with the plain language, the regulations, case law, and commentary—all of which make clear that section 674(a) applies broadly to individuals who maintain dominion and control over trust assets.

## 2.    Section 674(c) – The Independent Trustee Exception

Section 674(c), the independent trustee exception, provides that section 674(a) "shall not apply to a power solely exercisable (without the approval or consent of any other person) by a trustee or trustees, none of whom is the grantor, and no more than half of whom are related or subordinate parties who are subservient to the wishes of the grantor" to (i) "distribute, apportion, or accumulate income" to or for beneficiaries, or (ii) "pay out corpus" to or for beneficiaries.  26 U.S.C. § 674(c). "Related or subordinate parties" include the grantor's spouse (if they live together), certain family members, and certain corporations or employees with connections to the grantor.  *Id.* § 672(c).  Such parties are presumed to be "subservient to the wishes

of the grantor" unless a contrary showing is made by a preponderance of the evidence.
*Id.*

As the legislative history makes clear, trustee independence is the focus of the
section 674(c) exception.  *See* S. Rep. No. 83-1622 (1954), *reprinted in* 1954
U.S.C.C.A.N. 4621, 5010 ("Subsection (c) of section 674 provides a broader
exception for powers exercisable by independent trustees."); H.R. Rep. No. 83-1337
(1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4355 (same).  Commentators have
taken the same view.  *See* Bogert, *supra*, § 268.15 ("A grantor who wishes to give
broad powers to accumulate or distribute income, apportion income among the
beneficiaries or to distribute corpus, and avoid being taxed on trust income must give
these discretionary powers to independent trustees."); Robert T. Danforth, Norman H.
Lane & Howard M. Zaritzy, *Federal Income Taxation of Estate and Trusts* ¶
9.04[3][a] (2014) ("It would certainly violate the purpose of the independent trustee
rule to require an independent trustee to act with the consent of the grantor or a related
or subordinate person.").

For this reason, the Court should decline to follow the reasoning of *Estate of*
*Goodwyn v. Comm'r*, 35 T.C.M. (CCH) 1026 (1976).  In *Goodwyn*, the IRS
contended that the grantor/decedent's "relationship to the trust res through its
management and to the administration of these trusts generally is such that he should

be deemed to be a trustee." *Id.* [4]   The Tax Court acknowledged that "[t]he decedent kept all the records, made all of the investments and decided the amount to be distributed to beneficiaries.  The trustees merely acquiesced in these actions." *Id.* The court also found that the grantor "made all decisions with respect to the purchase and sale of trust assets and the investment of any proceeds and determined the amounts, if any, to be distributed to the respective beneficiaries." *Id.*  The court found, however, that the trustees were not "related or subordinate parties" under section 672(c), and thus "these trustees were independent trustees within the meaning of section 674(c)." *Id.*  The court noted that *Helvering* and the Clifford Regulations "might well warrant the attribution of the income from these trusts to the decedent. However, to the extent these previous principles are not embodied in . . . the Code, they must be considered no longer applicable." *Id.*

*Goodwyn* flies in the face of Congress' purpose in enacting section 674(c), which was to create an exception to section 674(c) directed to powers exercised by *independent* trustees.  In an article published in 1960, a Harvard Law professor noted that section 674(c) "reflect[s] a remarkably naïve set of assumptions with respect to the effect of exercise of control by a grantor."  David Westfall, *Trust Grantors and Section 674: Adventures in Income Tax Avoidance*, 60 Colum. L. Rev. 326, 339

---

[4]      Unfortunately, the Westlaw version of *Goodwyn* has no pin cites.  To assist the Court, the Government will include a direct quote with every reference to the case, which will enable the Court to use either a "Locate in Result" command in Westlaw, or the "Find on this Page" command in the web browser.

(1960).  More recently, a well-known treatise on trusts pointed out that *Goodwyn* was

an "illustration of [Professor Westfall's] point."  Bittker, *supra*, ¶ 80.1.4 & n.90; *see*

*also* David Westfall, et al., *Estate Planning Law & Taxation* ¶ 17.03[4] (2014)

(*"Estate of Goodwyn* provides support for the formalistic interpretation of the term

"independent" in this context.").  The Tax Court failed to recognize that literal

compliance with the dictionary definitions of the grantor trust provisions is not

dispositive when it frustrates the purpose of the statute.

More recently, a district judge confronted a similar situation and applied the

correct analysis.  In *United States v. Ratfield*, No. 01-8816-CIV-MARRA, 2004 WL

3174420 (S.D. Fla. Nov. 30, 2004), the court found that the trusts at issue were shams,

but conducted a grantor trust analysis in the alternative.  *Id.* at *15.  The court

recognized that each trust had "purportedly" independent trustees and acknowledged

the section 674(c) exception.  *Id*.  But the court also noted that "it is well settled that

the incidence of taxation depends on the substance of the transaction, not its form."

*Id.*  This was the analytical step that the *Goodwyn* court missed.  The district court

examined the record and determined that "the 'trustees' in the present case were not

independent in reality.  Instead, the trusts were subject to the dominion and control of

the individual taxpayer."  *Id.* at *16.  The court concluded that "[b]ecause the trustees

of [the] trusts [were] not really independent, the trusts violated the grantor trust

provisions in substance, if not in form."  *Id.* (citing *Audano v. United States*, 428 F.2d

14

251, 256-57 (5th Cir. 1970) (disregarding trust for tax purposes because "there never existed the normal relationship that develops when an independent trust is created")).

This Court should follow the reasoning of *Ratfield*, which takes stock of the true nature of the relationship between the trustees and the grantor, not the overly formalistic approach of *Goodwyn*. In essence, the *Ratfield* court recognized that mere compliance with section 674(c) is not the end of the story, and the court applied the substance-over-form doctrine to the trust to determine whether the trustees were in fact "independent." Answering that question in the negative, the court rejected application of the section 674(c) exception.[5]

### C.   Section 679 – Foreign Trusts

Under section 679(a), subject to certain exceptions, "[a] United States person who directly or indirectly transfers property to a foreign trust . . . shall be treated as the owner for his taxable year of the portion of such trust attributable to such property if for such year there is a United States beneficiary of any portion of such trust." 26 U.S.C. § 679(a)(1).[6] The Senate Finance Committee described the situation that section 679 was intended to address: "[T]hese [foreign] trusts generally pay no

---

[5]    The Government discusses the "substance over form" doctrine in greater detail *infra* at 19-21.

[6]    A trust is "foreign" if it is not under U.S. court supervision, *or* no United States person has the ability to control all of its substantial decisions. *See* 26 U.S.C. § 7701(a)(30)(E). A "United States person" includes U.S. citizens and residents, and domestic partnerships, corporations, estates, and trusts." *Id.* § 7701(a)(30).

15

income tax anywhere in the world.  Although the beneficiaries are taxed . . . upon any distributions out of these trusts, nevertheless the use of foreign trusts permits a grantor to provide a tax-free accumulation of income while the income remains in the trust. . . . [T]his tax-free accumulation of income is inappropriate . . . ."  S. Rep. No. 94-938, pt. 1, at 217 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3438, 3647.

Section 679(c)(1) provides that a trust will be treated as having a United States beneficiary for the taxable year unless "(A) under the terms of the trust, no part of the income or corpus of the trust may be paid or accumulated during the taxable year to or for the benefit of a United States person" *and* "(B) if the trust were terminated at any time during the taxable year, no part of the income or corpus of such trust could be paid to or for the benefit of a United States person."  26 U.S.C. § 679(c)(1).  In 2010, Congress inserted a paragraph indicating that "[f]or purposes of [section 679(c)(1)(A)], an amount shall be treated as accumulated for the benefit of a United States person even if the United States person's interest in the trust is contingent on a future event."  26 U.S.C. § 679(c) (flush language).

The 2010 amendment did not alter the existing statutory scheme; it merely clarified it.  This is clear from the plain language of the statute.  Section 679(c)(1)(A) provides that the trust will be treated as having a United States beneficiary unless no part of the income or corpus "may be accumulated" during the taxable year "to or for the benefit of a United States person."  26 U.S.C. § 679(c)(1)(A).  Nothing in this provision indicates that income or corpus cannot be "accumulated" during the taxable

16

year for a United States beneficiary with an interest contingent on a future event.  The

language added in 2010 merely clarifies this point.  Further evidence is the title of the

new section in the session laws: "*Clarifications* with Respect to Foreign Trusts Which

Are Treated as Having a United States Beneficiary."  HIRE Act, Pub. L. 111-147, §

531, 124 Stat. 71, 113 (2010) (emphasis added).

Section 679(a)(1) does not apply to "any transfer of property to a trust in

exchange for consideration of at least the fair market value of the transferred property.

For purposes of the preceding sentence, consideration other than cash shall be taken

into account at its fair market value."  26 U.S.C. § 679(a)(2)(B).  This provision was

enacted in 1996.  Prior to the amendment, section 679(a)(2)(B) provided that section

679(a)(1) would not apply to "any sale or exchange of property at its fair market value

in a transaction in which all of the gain to the transferor is realized at the time of the

transfer and is recognized either at such time or is returned as provided in section

453."  26 U.S.C. § 679(a)(2)(B) (1976).[7]

The current regulation, promulgated in 2001, provides guidance on the

definition of "fair market value" that should be helpful in interpreting both the pre-

1996 version of the statute and the current version.  According to the regulation:

> For purposes of this section, a transfer is for fair market value only to
> the extent of the value of property received from the trust, services

---

[7]      IRC section 453 addresses installment sales, *i.e.,* "a disposition of property
where at least 1 payment is to be received after the close of the taxable year in which
the disposition occurs.  26 U.S.C. § 453(b)(1).

> rendered by the trust, or the right to use property of the trust. For
> example, rents, royalties, interest, and compensation paid to a trust
> are transfers for fair market value only to the extent that the payments
> reflect an arm's length price for the use of the property of, or for the
> services rendered by, the trust.

Treas. Reg. § 1.679-4(b)(1). The regulation further provides that if a person makes a

transfer for less than fair market value, the exception only applies to the part of the

transfer for fair market value. *Id.* § 1.679-4(b)(2)(i). To take an example, if a U.S.

person transfers property with a fair market value of $1000 to a foreign trust in

exchange for $600, the U.S. person will be considered the transferor of $400 for

section 679(a)(1) purposes, and the section 679(a)(2)(B) exception will apply to $600.

*See* Treas. Reg. § 1.679-4(b)(2)(ii).[8]

\* \* \*

Even though the Court is ruling on disgorgement and not deciding a tax

collection dispute, the Court's interpretation of the grantor trust provisions and

implementing regulations in this case could have far-reaching effects for IRS tax

assessment and collection. The Court thus should interpret the provisions in a manner

consistent with the Congressional intent to tax those individuals who use the trust

form without giving up control of the assets. As discussed below, the Court also

---

[8]     In 1996, Congress enacted a provision stating that the fair market value
exception does not does not apply to obligations of, or guaranteed by, the trust; a
grantor; an owner; a beneficiary; or a person related to any grantor, owner, or
beneficiary. 26 U.S.C. § 679(a)(3)(A), (C). The IRC provides a list of relationships
that qualify as "related" under section 679(a)(3)(C). *See* 26 U.S.C. §§ 267(b), 707(b).

should apply common law doctrines to ensure that literal compliance with the relevant statutes and regulations does not subvert the purpose of the law.

## III.   COMMON LAW DOCTRINES

In addition to the grantor trust provisions in the IRC and the relevant regulations, the Court should look to certain anti-abuse common law doctrines that have been developed to ensure that transactions and entities are taxed in accordance with their true nature.  Of relevance to the instant case are the substance over form doctrine and the sham transaction doctrine, also known as the economic substance doctrine.  Nothing in sections 671 through 679 indicates any Congressional intent to abrogate these common law doctrines.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013) ("[W]he a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law."); *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").  As discussed below, courts have continued to apply these judicial doctrines since the codification of the grantor trust rules in IRC sections 671 to 679.

### A.   **The Substance Over Form Doctrine**

In tax law, "substance rather than form determines tax consequences." *Raymond v. United States*, 355 F.3d 107, 108 (2d Cir. 2004) (citations omitted); *United States v. Atkins*, 869 F.2d 135, 139 (2d Cir. 1989) (the "doctrine of substance

19

versus form is well ensconced in tax law").  "[E]ven when a transaction's form

matches the dictionary definitions of each term used in the statutory definition of the

tax provision, it does not follow that Congress meant to cover such a transaction and

allow it a tax benefit."  *Altria Group, Inc. v. United States*, 658 F.3d 276, 284 (2d Cir.

2011) (citation and internal quotation marks omitted).  "In applying this doctrine of

substance over form, the [Supreme] Court has looked to the objective economic

realities of a transaction rather than to the particular form the parties employed."

*Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978); *see also PPL Corp. v.

Comm'r*, 133 S. Ct. 1897, 1905 (2013) ("'tax law deals in economic realities, not legal

abstractions'") (citation omitted); *see Gregory v. Helvering*, 293 U.S. 465, 469 (1935)

("[T]he transaction upon its face lies outside the plain intent of the statute.  To hold

otherwise would be to exalt artifice above reality and to deprive the statutory

provision in question of all serious purpose.").  The Supreme Court "has never

regarded 'the simple expedient of drawing up papers' . . . as controlling for tax

purposes when the objective economic realities are to the contrary." *Frank Lyon*, 435

U.S. at 573.  "To permit the true nature of a transaction to be disguised by mere

formalisms, which exist solely to alter tax liabilities, would seriously impair the

effective administration of the tax policies of Congress."  *Comm'r v. Court Holding

Co.*, 324 U.S. 331, 334 (1945); *Altria*, 658 F.3d at 284.

Accordingly, in the instant case, even if the trustees at issue satisfy the literal

definitions of the grantor trust provisions, the Court should determine whether a

review of the "economic realities" of the transactions is necessary to give effect to the

purpose of the law.  For example, if the Court finds, based on the facts and

circumstances, that a trustee is not truly independent, the independent trustee

exception should not apply regardless of whether that trustee satisfies the literal

definitions of section 674(c).  *See Ratfield*, 2004 WL 3174420, at *15-*16 (citing

*Audano* 428 F.3d at 256-57).  The doctrine also applies to foreign trusts that could fall

within section 679.  *See United States v. Scott*, 37 F.3d 1564, 1572 (10th Cir. 1994)

(applying substance-over-form analysis and finding the purchaser, who also was the

trustee and beneficiary the "true grantor" of the trusts and thus subject to federal

income tax under, *inter alia*, section 679).  This analysis forecloses the absurdity that

would result if taxpayers were rewarded for using mere formalism to circumvent the

purpose of the grantor trust provisions.

### B.     The Economic Substance Doctrine

The Court has an additional analytical tool at its disposal—the economic

substance doctrine, also known as the sham transaction doctrine.  "[T]he economic

substance doctrine is . . . a judicial tool for effectuating the underlying Congressional

purpose that, despite literal compliance with the [tax laws], tax benefits not be

afforded [if they are] based on transactions lacking in economic substance."  *Coltec*

*Indus., Inc. v. United States*, 454 F.3d 1340, 1354 (Fed. Cir. 2006).  Under this

doctrine, the tax consequences of a transaction may be disregarded if the transaction

"can not with reason be said to have purpose, substance, or utility apart from [its]

anticipated tax consequences." *Goldstein v. Comm'r*, 364 F.2d 734, 740 (2d Cir. 1966). The economic substance doctrine is a flexible two-pronged inquiry focusing on both the taxpayer's business purpose and the objective economic effects of the transaction. *See Gilman v. Comm'r*, 933 F.2d 143, 148 (2d Cir. 1991); *Altria Group, Inc. v. United States*, 694 F. Supp. 2d 259, 282 (S.D.N.Y. 2010) (noting Second Circuit's endorsement of flexible analysis in *Gilman*), *aff'd*, 658 F.3d 276 (2d Cir. 2011). The Second Circuit consistently has held that a transaction will be disregarded "if it has no business purpose *or* economic effect other than the creation of tax deductions." *Nicole Rose Corp. v. Comm'r*, 320 F.3d 282, 284 (2d Cir. 2002) (emphasis added); *see also DeMartino v. Comm'r*, 862 F.2d 400, 406 (2d Cir. 1988); *Gilman*, 933 F.2d at 147; *Jacobson v. Comm'r*, 915 F.2d 832, 837 (2d Cir. 1990). If a transaction will be disallowed when the taxpayer fails to meet either prong of the test, it follows that the taxpayer must prove both prongs.[9]

Notwithstanding the existence of the grantor trust provisions, the sham transaction doctrine is applicable to trusts. If the creation of a trust does not alter cognizable economic relationships, even if the entity is a trust in form, it will be disregarded and treated as a nullity for federal income tax purposes. *See, e.g., Muhich v. Comm'r*, 77 T.C.M. (CCH) 2143 (1999), *aff'd*, 238 F.3d 860 (7th Cir. 2001); *Zmuda v. Comm'r*, 79 T.C. 714, 720 (1982), *aff'd*, 731 F.2d 1417 (9th Cir. 1984);

---

[9]     The economic substance doctrine was codified in 2009. Under the statute, taxpayers must satisfy both prongs of the analysis. *See* 26 U.S.C. § 7701(o)(1).

*Markosian v. Comm'r*, 73 T.C. 1235, 1241, 1245 (1980). "In these situations, because the defects are more fundamental than the retention of dominion and control found objectionable in the *Clifford* case, these decisions do not contravene § 671." Bittker, *supra*, ¶ 80.1.6.

The Tax Court typically considers four factors when analyzing whether a trust is a sham: (1) whether the taxpayer's relationship, as grantor, to the property differed materially before and after the trust's formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer felt bound by any restrictions imposed by the trust itself or the law of trusts. *See, e.g., Muhich*, 77 T.C.M. (CCH) 2143; *Zmuda*, 79 T.C. at 720-22; *Markosian*, 73 T.C. at 1243-45.

The United States has not found a case from an Article III court that utilizes the Tax's Court analysis. Nevertheless, the Tax Court's four-part test takes into account both the objective and subjective components of the economic substance test applied in this Circuit, and may serve as a helpful guidepost for application of the sham transaction doctrine to the trusts in this case, if necessary. The Court has discretion to conduct the statutory analysis first and reach the sham transaction doctrine as needed, or (as the Tax Court often does) *vice versa*. *See, e.g., Muhich*, 77 T.C.M. (CCH) 2143; *Zmuda*, 79 T.C. at 719-22; *Markosian*, 73 T.C. at 1244-46. Of greater concern to the United States in this case would be any argument that sections 671 to 679

abrogated the economic substance/sham transaction doctrine.  This argument is incorrect, and the Court should reject it.

## CONCLUSION

The SEC's request for disgorgement is not a collection of taxes reserved to the Department of the Treasury.  To the extent the Court must interpret the relevant provisions of the IRC and implementing regulations in order to arrive at a ruling on disgorgement, the Court should do so in a manner consistent with the Congressional intent to place the burden of taxation on individuals who use the trust form while continuing to control the assets.  Furthermore, regardless of whether the taxpayer literally complied with the tax laws, the Court should apply common law doctrines to ensure that the legislative purpose of the tax laws is not subverted.[10]

---

[10]     In its June 13 Order, the Court sought the Government's view as to whether the IRC statute of limitations would prevent IRS action against the Wylys at this time. Because of the restrictions imposed by 26 U.S.C. § 6103, the undersigned is unable to address this precise issue with respect to the Wylys.  However, there are provisions in the IRC that provide for an unlimited period for the assessment of tax, or commencement of a proceeding in court for the collection of tax.  *See, e.g.*, 26 U.S.C. § 6501(c)(1) ("false or fraudulent return with the intent to evade tax"); *id.* § 6501(c)(2) ("willful attempt in any manner to defeat or evade tax"); *id.* § 6501(c)(3) ("failure to file a return"); *see also Badaracco v. Comm'r*, 464 U.S. 386, 394 (1984) ("§ 6501(c)(1) permits assessment at any time in fraud cases regardless of a taxpayer's later repentance").

Dated:  New York, New York
       August 9, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By:     */s/ Joseph N. Cordaro*
          JOSEPH N. CORDARO
          Assistant United States Attorney
          86 Chambers Street, 3rd Floor
          New York, New York 10007
          Telephone: (212) 637-2745
          Facsimile:  (212) 637-2686
          Email: joseph.cordaro@usdoj.gov