SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

15TH FLOOR

560 LEXINGTON AVENUE

NEW YORK, NEW YORK 10022-6828

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

_____

| SUITE 5100<br>1000 LOUISIANA STREET<br>HOUSTON, TEXAS 77002-5096<br>(713) 651-9366 | SUITE 5100<br>901 MAIN STREET<br>DALLAS, TEXAS 75202-3775<br>(214) 754-1900 | SUITE 950<br>1901 AVENUE OF THE STARS<br>LOS ANGELES, CALIFORNIA 90067-6029<br>(310) 789-3100 | SUITE 3800<br>1201 THIRD AVENUE<br>SEATTLE, WASHINGTON 98101-3000<br>(206) 516-3880 |
|---|---|---|---|

Stephen D. Susman
Direct Dial (713) 653-7801

E-Mail SSUSMAN@susmangodfrey.com

October 14, 2014

**VIA ECF AND E-MAIL**

Hon. Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *SEC v. Wyly*, No. 1:10-CV-5760

Dear Judge Scheindlin:

I write in response to the SEC's October 8, 2014 letter requesting a pre-motion conference regarding a proposed asset freeze, financial discovery, and an accounting of assets. The SEC's request came as a surprise, since my firm has been negotiating with the SEC toward an agreement since they first contacted us about these issues on September 30, 2014. These negotiations had not reached any impasse when the SEC filed its unexpected letter. *See* Oct. 7, 2014, 3:21 PM EST email from Jack Worland to Terry Oxford (attached as Exhibit A).

We do not object to a reasonable accounting procedure and asset monitoring. We do, however, have three major disagreements with what the SEC has abruptly demanded. We take issue with the scope of the proposed asset freeze; with the expedited discovery schedule; and with the miniscule carve-out the SEC offers for living and litigation expenses.

I.   The proposed order is too broad

We cannot agree to the SEC's demand for an order that would freeze the assets of all Wyly family members and all Wyly-related entities. Defendants and their counsel cannot agree to bind individuals and entities that the SEC has not yet even identified, let alone contacted or served, and who would be entitled to select their own counsel once identified.

Hon. Shira A. Scheindlin
October 14, 2014
Page 2

The only case cited by the SEC does not justify the extraordinary scope of the SEC's request. Quite the opposite, in fact—*SEC v. Heden*, 51 F. Supp. 2d 296, 296 (S.D.N.Y. 1999), involved <u>*specifically named relief defendants*</u>. There, the SEC carried its evidentiary burden of demonstrating the amounts of proceeds from specific securities transactions that were then transferred to these named relief defendants. *Id.* at 301-02. The Court's decision carefully distinguished between the specific proceeds to be frozen and the untainted funds held by the same defendants. That distinction is, of course required by Second Circuit precedent. *Id.* (citing *SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998)). Here, the SEC has made no effort whatsoever to name any relief defendants, much less to show what assets (if any) are traceable to the securities violations found by the jury.

  II. <u>There is no need for an expedited discovery process</u>

The SEC's proposed discovery process is as extraordinary as it is unnecessary. Absent a true emergency, requiring document production within 10 days, interrogatory responses within 10 days, and unlimited Monday through Saturday depositions on 10 days' notice is simply harassment, not discovery.

We have told the SEC the true extent of the Defendants' assets on three occasions: at a settlement conference on February 28, 2014; again in a renewed settlement offer on the eve of trial; and then again in the last three weeks following the Court's disgorgement order. On each occasion, we have offered to open our clients' books to the SEC. Our representations were confirmed by the sworn testimony, given in the August remedies hearing, that described Defendants' current assets and their inability to pay the judgment sought.

The SEC suggests (without proof) that the Defendants have kept their financial status secret, and have "move[d] and conceal[ed]" assets. That is not true. The truth is that the SEC wrongly assumed, at the outset of this case, that it was suing a billionaire, and then refused to listen to any evidence to the contrary, no matter how many times we told them.

  III. <u>The carve-out is far too low</u>

The SEC's proposed $10,000 monthly carve-out for living expenses and legal expenses is absurdly low. Ten thousand dollars per month is plainly insufficient to cover the Defendants' reasonably foreseeable needs. That amount would prevent Defendants from defending themselves in what remains of the district court case; from effectively appealing a questionable remedial decision; and from paying the necessary medical expenses of an 80-year-old man who is in poor health. The Court should balance the equities to permit the Defendants to

Hon. Shira A. Scheindlin
October 14, 2014
Page 3

pay for the necessities of life and the costs of litigating a case against a powerful government entity.  *See SEC v. McGinnis*, No. 13-CV-1047 (ACV), 2013 WL 6500268, at *6 (D. Conn. Dec. 11, 2013); *SEC v. Schiffer*, No. 97 Civ. 5853(RO), 1998 WL 307375, at *7 (S.D.N.Y. June 11, 1998).

      Rather than decide the precise amount of the appropriate carve-out now, the Court should instead set a standard—i.e, freeze assets except those needed for "reasonable and necessary legal, medical, and living expenses"—and then monitor the actual expenses on a periodic basis.  *Schiffer*, 1998 WL 307375, at *7 (court to monitor legal expenses).  The Defendants have reputable counsel to assist them in legal matters, and will submit to such monitoring voluntarily.  If the Court is inclined to set aside a specific amount in advance, then the Defendants respectfully request the opportunity to brief the issue.  Ten thousand dollars a month is unjust and unworkable.

Sincerely,

*[signature]*

Stephen D. Susman

cc:    SEC Counsel via ECF and Email

# EXHIBIT A

**Leize A. Nand**

| | |
|---|---|
| **From:** | Worland, John <WorlandJ@SEC.GOV> |
| **Sent:** | Tuesday, October 07, 2014 3:21 PM |
| **To:** | Terry Oxford; Steve Susman; Harry Susman; David Shank; Steven Shepard; Mark Hatch-Miller |
| **Cc:** | Zerwitz, Martin; Miller, Gregory N; Augustini, Hope Hall; Staroselsky, Daniel; Massey, Marsha C; Roessner, Michael; Mroski, Brad; Brown, Dwayne; Fitzpatrick, Bridget |
| **Subject:** | RE: SEC v. Wyly |

FBAR = Foreign Bank and Financial Accounts Report.

---

**From:** Terry Oxford [mailto:TOXFORD@SusmanGodfrey.com]
**Sent:** Monday, October 06, 2014 7:40 PM
**To:** Worland, John; Steve Susman; Harry Susman; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Miller, Gregory N; Augustini, Hope Hall; Staroselsky, Daniel; Massey, Marsha C; Roessner, Michael; Mroski, Brad; Brown, Dwayne; Fitzpatrick, Bridget
**Subject:** RE: SEC v. Wyly

John -- I'll get you a full response later, but I have a few comments. (a) There are a couple of items that I'm not sure we can produce. As I mentioned on the call, we'll have to get back tyou.

(b) I'm not sure whose accounts #5 refers to.

(c) Sorry I'm foggy on this, but what is "FBAR"?

Thanks,
Terry

---

**From:** Worland, John [mailto:WorlandJ@SEC.GOV]
**Sent:** Monday, October 06, 2014 4:33 PM
**To:** Steve Susman; Harry Susman; Terry Oxford; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Miller, Gregory N; Augustini, Hope Hall; Staroselsky, Daniel; Massey, Marsha C; Roessner, Michael; Mroski, Brad; Brown, Dwayne; Fitzpatrick, Bridget
**Subject:** RE: SEC v. Wyly

Terry,

Based on our telephone call last Friday, and incorporating what Steve Susman agreed to produce in his prior e-mail to Bridget, we would like to receive the following material before our anticipated trip to Dallas. If we have misunderstood what is available, please let us know promptly. Thank you and Ms. Hennington for your cooperation.

Jack

**List for Production by Wyly Family Office:**

1. List of all Family Office employees, with title and role;
2. List of all persons and entities who use the Family Office address as their official address;
3. Family financial statements, monthly from 2005 -2008, annual through 2013;
4. Annual financial statements for all trusts, LLCs, partnerships, subsidiaries, etc.;
5. List of Bank and Brokerage accounts;
6. Brokerage and Bank statements for Sam and the Estate (or Charles);
7. Brokerage and Bank statements for trusts, LLCs, partnerships, subsidiaries, etc.;
8. Tax returns prepared for all Wyly family members;
9. All records concerning Charles Wyly's Estate and its tax return;
10. Bank records concerning FBARs;
11. Copies of trust agreements for Gemini and JWL Trusts;
12. List of Sam's and Charles' real and personal property;
13. Information regarding asset transfers by Sam and Charles Wyly;
14. Estimate and itemized breakdown of Sam's monthly living expenses;
15. Copy of Charles' second to die insurance policy in the Family Limited Partnership;
16. Copies of insurance policies for real property, personal property, or life insurance for Sam and Charles or any of the trusts that hold real or personal property.

---

**From:** Steve Susman [mailto:SSusman@SusmanGodfrey.com]
**Sent:** Friday, October 03, 2014 5:35 AM
**To:** Fitzpatrick, Bridget; Harry Susman; Terry Oxford; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Worland, John; Miller, Gregory N
**Subject:** RE: SEC v. Wyly
**Importance:** High

# To address items 1-4 on Bridget's list:
1.   List of accounts – Keeley can provide this by the end of next week
2.   F/S since the end of 2005 – she can provide this by the end next week
3.   Type of records held in the Dallas office – can get this next week once Keeley has discussed the details with the SEC
4.   List of all Family office employees – Keeley can get this early next week

2

Keeley has the ability to provide any financial data regarding the trust and IOM companies she has in her possession. She believes she has balance sheets from 2005-2008 on a monthly basis and unaudited financial statements for 2009-2013.  She also can request data from the trustees through their counsel, however we cannot make any assurances that the trustees or their counsel will provide the information.

We can do a conference call with Keeley and one lawyer from our side at 2pm CT today.  Please dial 888.887-4221 password ▮

**Steve Susman**
**560 Lexington Ave, 15th Floor**
**New York, NY 10022**
**212-336-8331  713-653-7801**
**Cell 713-478-6444**
www.susmangodfrey.com
ssusman@susmangodfrey.com

See Steve's talk on Juries on Oct. 22, 2013, to Yale Law School Chapter of the American Constitution Society

Watch Steve's interview with LTN

See Steve's Penn Law School Lecture on Joy of Lawyering

**Founder of**
http://trialbyagreement.com

---

**From:** Fitzpatrick, Bridget [mailto:FitzpatrickBr@SEC.GOV]
**Sent:** Thursday, October 02, 2014 1:59 PM
**To:** Steve Susman; Harry Susman; Terry Oxford; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Worland, John; Miller, Gregory N
**Subject:** RE: SEC v. Wyly

Steve,

Thanks for getting back to me.  How quickly do you believe you can get us the items enumerated in numbers one through four below?  Also, with respect to number 3, we are happy to discuss the amount of detail required with Ms. Hennington but cannot call her directly since she is a represented party.  Could you arrange a time for us to speak with her this afternoon or tomorrow morning?  I want to confirm that your clients have the ability to obtain records

3

concerning all of the Isle of Man Trusts and related entities, will do so, and plan to make those records available to the SEC.  Finally, what do the living expenses you suggest look like?

Regards,

Bridget

---

**From:** Steve Susman [mailto:SSusman@SusmanGodfrey.com]
**Sent:** Thursday, October 02, 2014 9:49 AM
**To:** Fitzpatrick, Bridget; Harry Susman; Terry Oxford; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Worland, John; Miller, Gregory N
**Subject:** RE: SEC v. Wyly
**Importance:** High

**Donnie has now approved this:  Here's email I was about to send (Sam has approved, but Donnie is traveling and I want to make sure he agrees).  I should hear today.  See below for particular responses.  One clarification:  my clients cannot provide you with the financial statements of family members other than themselves.**

**Steve Susman
560 Lexington Ave, 15th Floor
New York, NY 10022
212-336-8331  713-653-7801
Cell 713-478-6444
www.susmangodfrey.com
ssusman@susmangodfrey.com**

**See Steve's talk on Juries on Oct. 22, 2013, to Yale Law School Chapter of the American Constitution Society**

**Watch Steve's interview with LTN**

**See Steve's Penn Law School Lecture on Joy of Lawyering**

**Founder of
http://trialbyagreement.com**

---

**From:** Fitzpatrick, Bridget [mailto:FitzpatrickBr@SEC.GOV]
**Sent:** Thursday, October 02, 2014 8:35 AM
**To:** Steve Susman; Harry Susman; Terry Oxford; David Shank; Steven Shepard; Mark Hatch-Miller
**Cc:** Zerwitz, Martin; Worland, John; Miller, Gregory N
**Subject:** SEC v. Wyly

Steve,

As I mentioned on the phone, we intend to move for a temporary order to preserve any assets that may be used to satisfy an eventual judgment and to obtain discovery as to what assets exist, including an accounting.  My understanding from our conversation is that you do not object to a temporary asset freeze to the extent it would impact Sam Wyly or the Estate of Charles Wyly, but that you cannot agree to the extent it would address any potential dissipation stemming from the conduct of third parties, including the Wylys' agents, servants, employees, family members, heirs, assigns, attorneys, or trustees.   I would appreciate it if you could confirm that this is your position.  *[Steve Susman]* Yes, subject to allowing them to pay for living and legal expenses.

Also, it is my understanding that the Wylys would permit SEC accountants to access all relevant records at the Wyly family Office in Dallas.  We would like to adequately prepare our people for any trip to Dallas to ensure that we can be as efficient as possible.  To this end, would you mind sending us the following:

(1) A list of assets and accounts held by Sam Wyly and the Estate of Charles Wyly over which an agreed, temporary asset freeze would apply and the locations of those assets and accounts;*[Steve Susman]*  Fine
(2) All Wyly family financial statements that have been created since the end of 2005;*[Steve Susman]* fine
(3) A list of the types of records held in Dallas and the entities to which they pertain; *[Steve Susman]* I don't think this is a problem.  I would urge you and Keeley to talk about how much detail is required.and
(4) A list of all Wyly Family Office employees with a brief description of their responsibilities.*[Steve Susman]* fine

Does the Wyly Family Office have records detailing the activities of the Isle of Man entities and all subsidiary entities wherever domiciled over the last 8-9 years, as well as their current holdings?  If not, where are such records held?  I assume your agreement to voluntarily provide us access extends to any locations where the relevant records may be kept but please confirm.*[Steve Susman]*   Yes, location is not an issue if my clients have custody of the documents or can get them upon request.

Regards,

Bridget Fitzpatrick

5