

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
Washington, D.C. 20549

**DIVISION OF**
**ENFORCEMENT**

October 22, 2014

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

      Re:    *SEC v. Wyly, et al.* 1:10-cv-5760

Dear Judge Scheindlin:

      I write to address the potential impact of the bankruptcy filing by Sam Wyly on October 19, 2014, and to address the letter filed by bankruptcy counsel for Mr. Wyly addressing the same issue (ECF 490).  The bankruptcy filing should have no impact on the Commission's case against the Estate of Charles Wyly and the Commission's request for a temporary asset freeze, expedited discovery, and full accounting with respect to the Estate of Charles Wyly.  With respect to Defendant Sam Wyly, we do not yet know the long term impact of the bankruptcy case because we have not yet determined whether it was filed in good faith.  As previously noted, Sam Wyly possesses sufficient global assets to pay the anticipated judgment by this Court.  His bankruptcy filing appears to be designed, in part, to mount a collateral attack against the findings of this Court and to shift any efforts to collect this Court's judgment to a different forum that has not had the benefit of overseeing the jury trial or reviewing the evidence presented during the course of the remedies hearing.  ECF 490 at 4-5 (the effect of the bankruptcy case "is to accept and fulfill the invitation of this Court for *another court* to make a *judicial determination* of the liability and exact amount that may be due to the IRS" and noting that tax claims are something "the speedy bankruptcy court is highly experienced in doing").

      The bankruptcy petition also appears to be motivated by the SEC's request for a temporary asset freeze and to delay providing an accounting of Sam Wylys' assets.  The petition was filed within days of the SEC's most recent letter in support a temporary asset freeze and the documents filed in support of the petition acknowledge the express goal of avoiding a temporary asset freeze.  *See* Exh. 1, Expedited Motion For Order On Estate Administration at ¶28 ("Both the Debtor and his non-SEC creditors face a serious detriment in the alternative, and chaotic, pathway if, but for the automatic stay, the SEC were to unilaterally race to pursue its pecuniary and collection remedies in the District Court in New York through such non-statutory remedies and procedures as 'asset freezes' and other steps to attempt to collect on its money judgment") and ¶29 (the "trusts and their assets are or may be the property of the Debtor's bankruptcy estate" and is therefore "protected by the automatic stay").[1]

---

[1]    Mr. Wyly's bankruptcy filings seek expeditious relief for himself.  He seeks an extension of time, however, to file the required financial schedules, including a schedule of assets and

Mr. Wyly's concerns that the SEC would be advantaged over other creditors appear misplaced. Mr. Wyly's Voluntary Petition, attached as Exhibit 2, lists his purported creditors. The SEC and the IRS are the two largest creditors. The Department of Justice attorney representing the IRS in the bankruptcy proceeding advised the Commission that they support its motion for a temporary asset freeze. Many of the remaining creditors appear to be Mr. Wyly's corporate alter egos (he apparently owes $44 million to the Wrangler Trust and Security Capital, presumably based on loans to himself), or friends with relatively small claims. For example, Sam Wyly has hundreds of millions of dollars but owes the Dallas Country Club $383.20. Similarly, Mr. Wyly owes $4,530.71 to Bickel & Brewer – a law firm that would have received a significant portion of the $100 million Mr. Wyly spent litigating against the government.

However, Mr. Wyly's effort to avoid an asset freeze is based on a false legal premise. The Bankruptcy Code's automatic stay provisions do nothing to divest this Court of jurisdiction over the Commission's claims against Sam Wyly and the Commission disputes that its "proposed asset-freeze motion is automatically stayed as to the properties of the Sam Wyly bankruptcy estate."[2] ECF 490 at 1. As the defense acknowledged, the Bankruptcy Code explicitly permits the Commission to continue its action through judgment. *See* 11 U.S.C. § 362(b)(4). Specifically, any act otherwise stayed under Sections 362(a)(1), (2), (3) or (6) is not stayed with respect to "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … judgment other than a monetary judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]" 11 U.S.C. § 362(b)(4). Congress specifically amended the governmental exception to the stay in 1998 to make clear that governmental regulatory actions are explicitly excepted from Section 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(b)(4) (specifically referencing section (a)(3) in describing exception to stay for actions by governmental unit). Thus, the Commission's request for an asset freeze, an accounting, and additional discovery are not affected by the bankruptcy filing and this Court continues to have the jurisdiction to enforce such orders. *SEC v. Reynolds*, No. 08-CV-438-B, 2011 WL 903395, at *4 (N.D. Tex. March 16, 2011) (holding that neither asset freeze nor contempt proceedings for violating asset freeze was stayed by defendant's bankruptcy filing); *SEC v. Wolfson*, 309 B.R. 612, 617-22 (D. Utah 2004) (same); *SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) ("Requiring an accounting of assets does not violate the automatic stay."); *see also SEC v. First Fin. Group of Texas,* 645 F.2d

---

liabilities and statement of his financial affairs – information that the SEC would seek immediately were this Court to order an accounting. [Expedited Motion Seeking Extension of Time to File Schedules, Statement of Financial Affairs, and Statement of Current Monthly Income at 3-4] [ECF Doc. 7].

[2]   This Court has jurisdiction to determine the extent to which Section 362 limits the relief requested by the SEC in this case. *In re Baldwin-United Corporation Litig.*, 765 F.2d 343, 347 (2d Cir. 1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."); *SEC v. Thrasher*, No. 92-CIV-6987 (JKF), 2002 WL 523279, *1 (S.D.N.Y. April 8, 2002).

429, 436-40 (5th Cir. 1981) (affirming district court's appointment of a receiver after petition for bankruptcy was filed); *cf. SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000).[3]

Moreover, the defense's argument that "the filing of the Chapter 11 case alleviate[s] any need for 'asset freezing,'" lacks any foundation in fact. Sam Wyly is acting as the debtor in possession in his bankruptcy proceeding which gives him control over the property of the estate and its assets. No third party fiduciary has been appointed such as a separate trustee in bankruptcy or receiver. "Although debtors-in-possession are supposed to act as fiduciaries and stand in the shoes of a trustee in bankruptcy, the Court cannot find that this 'duty' alone offers sufficient protection of the assets." *F.T.C. v. R.A. Walker & Associates, Inc.*, 37 B.R. 608, 612 (D.D.C. 1983). Given the unfettered control of assets held in the off-shore entities enjoyed by Sam Wyly, we believe that it is essential that all of the assets associated with the Debtor should be under the control of an objective third party, either pursuant to an asset freeze in the District Court action or a Chapter 11 Trustee. For example, Mr. Wyly's proposed budget is attached as Exhibit 3 and allows for the following expenses in the first 6 months: (1) $684,350 towards Wyly Family Office (line 26), and (2) $194,724 "to individuals who provide assistance on the Debtor's writing and publishing projects," presumably ghost writers (line 28). According to the budget, Mr. Wyly intends to spend $1.285 million in the next six month *before* legal expenses are taken into account (and $3.72 million including legal expenses).[4]

Moreover, the bankruptcy proceeding does not address the potential dissipation of offshore assets by third parties. This is an Article III Court that has the inherent equitable power to issue an injunction that encompasses conduct by third parties. This is particularly important in the present case where the majority of the assets that could be used to satisfy the Court's anticipated judgment are offshore and it is unclear whether they will be included in the bankruptcy estate. The Commission applauds any effort to domesticate these assets and include them in Sam Wyly's estate as part of a bankruptcy proceeding.[5] However, with no asset freeze

---

[3] In *SEC v. Brennan*, 230 F.3d at 71, the Circuit held that Section 362(b)(4) permits the continued prosecution of the government's action to include entry of money judgment against the debtor in a proceeding to enforce the government's police or regulatory power, but that an order requiring defendant to repatriate assets in an offshore trust after the money judgment had been entered was not permitted. That is not the case here. There has been no final judgment entered in this case and the SEC therefore is not seeking to enforce a money judgment. As the Second Circuit explicitly recognized, "up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police and regulatory capacity." 230 F.3d at 73. Unlike *Brennan*, the SEC is not seeking to exercise control over assets, nor is it seeking an order requiring any payment of money.

[4] Since he has only filed his proposed budget which purports to disclose his monthly income – and not the additional financial schedules listing his assets and liabilities – the bankruptcy proceeding is no substitute for the accounting of his assets that the SEC has requested in this case.

[5] The position Mr. Wyly is taking with respect to these assets in the bankruptcy proceeding is not entirely clear. He continues to aver, contrary to the jury's verdict, that he does not control or beneficially own these assets. However, he also assets that, if the Commission's position is correct, the assets are part of his bankruptcy estate and thus exempt from any collection activity in this action. Samuel Wyly's Expedited Motion for Order on Estate Administration in the Northrn District of Texas at ¶29 (attached hereto as Exhibit 1).

in place, third parties could direct the offshore trustees to transfer, distribute or otherwise deplete the trusts' assets before they can be domesticated and included in Mr. Wyly's Chapter 11 estate. Even if the assets were domesticated rather quickly, they would be under Mr. Wyly's control as a debtor-in-possession. In this circumstance, the District Court's injunctive power is a necessary complement to the powers of the bankruptcy court.

Sam Wyly is proposing a process where, as a debtor-in-possession in a Chapter 11 case, he will both control his assets and enjoy the right to propose his own Chapter 11 plan to distribute those assets. He plans to exercise that control by spending more than $1.7 million a year on personal employees and autobiographers while simultaneously claiming to be incapable of paying this Court's anticipated judgment or the IRS.[6] It is well-recognized that when a defendant is ordered to pay disgorgement, "he must pay what he is capable of paying, even if making the payment results in a diminution of his income or his relatively comfortable standard of living." *SEC v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993).

As the Court noted in *F.T.C. v. R.A. Walker & Associates, Inc.*, 37 B.R. at 612, "Given the freedom of a debtor-in-possession and the charges which are involved in this case, to lift the freeze order without a trustee or receiver to take control would be to leave the defendants free to dispose of their assets virtually at will." The Commission and the IRS represent Mr. Wyly's two largest creditors and both support a temporary asset freeze in this case. While the Commission acknowledges that an experienced jurist has been appointed to oversee the bankruptcy case, and the Commission is willing to engage in global settlement discussions with Mr. Wyly and the IRS, neither development should be used to permit Sam Wyly to spend millions on unnecessary and lavish personal expenses. This Court should exercise its authority to preserve the status quo by issuing an asset freeze. Such a freeze would not represent an order requiring any payment of money (which would implicate the Circuit's opinion in *Brennan*). "The purpose of the freeze is to prevent dissipation of the assets. ... [T]he freeze is the best way—indeed the only way—to accomplish this purpose at this time." *Id*. Appropriate carve outs to the asset freeze can be negotiated after full disclosure has taken place.

Respectfully submitted,

*/s/ Bridget M. Fitzpatrick*

Bridget M. Fitzpatrick
Supervisory Trial Counsel
(202) 551-4678
fitzpatrickbr@sec.gov

cc via e-mail:  all counsel of record
  David L. Kornblau, Esq.
  Stewart H. Thomas, Esq.

---

[6] For the purposes of this Letter, the SEC has focused on the larger line items but many of the other expenses included in Mr. Wyly's proposed budget are exorbitant and unjustified, including more than $13,500 in monthly household expenses. Moreover, he is proposing to pay family expenses from the bankruptcy estate such as over $29,000 a month for the mortgage on his wife's bookstore, $19,000 a year in landscaping costs, and nearly $7,000 a month to support unspecified family and friends.

4

Josiah M. Daniel, III

5