UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,

                        **Plaintiff,**

      - against -

SAMUEL WYLY, and DONALD R. MILLER,
JR., in his Capacity as the Independent Executor
of the Will and Estate of Charles J. Wyly, Jr.,

                        **Defendants,**

and

CHERYL WYLY, EVAN ACTON WYLY,
LAURIE WYLY MATTHEWS, DAVID
MATTHEWS, LISA WYLY, JOHN GRAHAM,
KELLY WYLY O'DONOVAN, ANDREW
WYLY, CHRISTIANA WYLY, CAROLINE D.
WYLY, MARTHA WYLY MILLER, DONALD
R. MILLER, JR., in his individual capacity,
CHARLES J. WYLY III, EMILY WYLY
LINDSEY, JENNIFER WYLY LINCOLN,
JAMES W. LINCOLN, and PERSONS, TRUSTS,
LIMITED PARTNERSHIPS, AND OTHER
ENTITIES KNOWN AND UNKNOWN,

                   **Relief Defendants.**
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/3/14

**OPINION AND
ORDER**

**10-cv-5760 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.       **BACKGROUND**

1

On October 8, 2014, the Securities and Exchange Commission requested that the Court enter an order for a temporary asset freeze, financial discovery, and an accounting of Samuel Wyly's and the Estate of Charles Wyly's assets to preserve the SEC's ability to enforce a final judgment[1]. This request was opposed by the Wylys, as well as eleven family members (the "Family Members") whose assets were implicated by the request. On October 19, 2014, while this application was pending, Sam Wyly filed a voluntary Chapter 11 petition in bankruptcy court in the Northern District of Texas. On October 23, Caroline D. Wyly, the widow of Charles Wyly and the primary beneficiary of the Charles Wyly probate estate, also filed a voluntary Chapter 11 petition.

Bankruptcy counsel for Sam Wyly and Caroline Wyly contend that the Chapter 11 filing automatically stays the SEC's proposed asset freeze as to the properties of the bankruptcy estate[2]. The SEC argues that the bankruptcy filing has

---

[1] *See* 10/8/14 Letter from Bridget Fitzpatrick, Counsel for the SEC, to the Court, at 1. The SEC's proposed order also enjoins the Wylys from altering or destroying any financial documents. *See id.* Exhibit 1, at 1; 10/16/14 Letter from Bridget Fitzpatrick, Counsel for the SEC, to the Court, Exhibit 1, at 1; 10/27/14 Proposed Order Temporarily Freezing Assets and Granting Other Relief at 1.

[2] *See* 10/21/14 Letter from Josiah Daniel, Bankruptcy Counsel for Sam Wyly, to the Court, at 1; 10/25/14 Letter from Judith Ross, Bankruptcy Counsel for Caroline Wyly, to the Court, at 1–2.

no impact on the SEC's request.[3]  Finally, counsel for the Family Members join the

Wylys' arguments and further argue that the proposed asset freeze is too broad in

scope.

## II.   DISCUSSION

### A.   Effect of the Bankruptcy Filing

Section 362(a) of the Bankruptcy Code implements an automatic stay

on most proceedings to protect the property of the estate.[4]  The policy of this

section is to grant relief to the debtor from creditors, and to prevent the dissipation

of the debtor's assets.[5]  Section 362(b) provides several exceptions to the automatic

stay.  Section 362(b)(4) provides an exception for

> the commencement or continuation of an action or proceeding by
> a governmental unit . . . to enforce such governmental unit's . . .
> police and regulatory power, including the enforcement of a
> judgment other than a money judgement, obtained in an action or
> proceeding by the governmental unit to enforce such
> governmental unit's . . . police or regulatory power.[6]

The exclusion "other than a money judgment" is known as "the exception to the

---

[3]      *See* 10/22/14 Letter from Bridget Fitzpatrick, Counsel for the SEC, to
the Court, at 1.

[4]      *See* 11 U.S.C. § 362(a).

[5]      *See SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000).

[6]      11 U.S.C. § 362(b)(4).

exception."

In *SEC v. Brennan*, the Second Circuit held that the repatriation of offshore trusts was an effort to enforce a monetary judgment, and was thus precluded by the automatic stay. The court noted that the purpose of the exception "is to prevent a debtor from 'frustrating necessary governmental functions by seeking refuge in bankruptcy court.'"[7] Therefore, where a governmental unit is using its police and regulatory power to protect the public by "curb[ing] certain behavior," the exception applies.[8] However, the court concluded that while an entry of monetary judgment was permitted, "*anything beyond the mere entry of a money judgment* against a debtor is prohibited by the automatic stay" including "[s]teps *preparatory to money collection.* . . ."[9] The court explained that "[t]he collection of [a money] judgment *after entry* . . . is not authorized . . . and requires a separate application to the bankruptcy court."[10] The court drew the line between police and regulatory power and enforcement of a money judgment at the entry of

---

[7]     230 F.3d at 71 (quoting *City of New York v. Exxon*, 932 F.2d 1020, 1024 (2d Cir. 1991)).

[8]     *Id.* at 72.

[9]     *Id.* at 71–72 (emphasis in original) (internal quotations and citations omitted).

[10]    *Id.* at 72 (emphasis and alterations in original) (internal quotations and citations omitted).

4

judgment:

> Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity—in the public interest, it is burdening certain conduct so as to deter it. However, once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate its own interest in collecting its judgment. Except in an indirect and attenuated manner, it is no longer attempting to deter wrongful conduct. It is therefore no longer acting in its "police or regulatory" capacity . . .[11]

The SEC has cited several cases that have upheld asset freezes and contempt orders based on violations of asset freezes where the defendants had filed for bankruptcy. However, in these cases, the asset freezes were in place *before* the defendants filed for bankruptcy.[12] The Court is not aware of any case in this circuit that has addressed the imposition of a temporary asset freeze *after* a bankruptcy filing, but *before* the entry of a money judgment, although there is support elsewhere.[13]

---

[11]    *Id.* at 73.

[12]    *See SEC v. First Fin. Grp.*, 645 F.2d 429 (5th Cir. 1981) (allowing appointment of a receiver to enforce preliminary injunction issued prior to bankruptcy filing); *SEC v. Reynolds*, No. 08-CV-438-B, 2011 WL 903395 (N.D. Tex. Mar. 16, 2011) (holding that automatic stay did not bar contempt proceeding for violating asset freeze); *SEC v. Wolfson*, 309 B.R. 612 (D. Utah 2004) (same).

[13]    *See SEC v. Tyler*, No. CivA.3:02 CV 0282, 2002 WL 32538418 (N.D. Tex. Feb. 21, 2002) (issuing order for asset freeze after bankruptcy filing); *SEC v. Morriss*, No. 4:12-CV-80 (CEJ), 2012 WL 2154903, at *1 (E.D. Mo. June 13, 2012) (noting that asset freeze was issued against relief defendant after bankruptcy

The SEC argues that *Brennan* is inapplicable here, as no final judgment has been entered. As such, the SEC contends that it cannot be seeking to enforce a money judgment, and is therefore acting in its police and regulatory capacity. Moreover, the SEC argues that an asset freeze is necessary to prevent dissipation of the assets, as no third-party fiduciary has been appointed in the bankruptcy proceeding. The Wylys disagree, and assert that the SEC is seeking to control property of the bankruptcy estate, which falls within the exception to the exception. Further, the Wylys contend that an asset freeze is unnecessary because all property of the bankruptcy estate is under the control and supervision of the bankruptcy judge.

This Court has jurisdiction to determine whether the automatic stay applies.[14] Though the question is close, I conclude that the SEC is acting in its police and regulatory capacity, and thus the automatic stay does not apply. There are many similarities between this case and *Brennan*; however, two primary distinctions allow for the entry of a temporary asset freeze here.

*First*, there has been no final judgment. *Brennan* explicitly drew the line at entry of judgment, and explained that all actions taken by the government

---

filing).

[14]    *See In re Baldwin-United Corp. Litig*, 765 F.2d 343, 347 (2d Cir. 1985).

6

"up to the moment" when judgment is entered are actions within the government's police or regulatory capacity.[15]  The exception to the exception is only implicated after final judgment has been entered and the government is acting to "vindicate its own interest in collecting its judgment."[16]  In *Brennan*, the SEC was seeking repatriation of offshore assets for the purpose of enforcing a judgment.  There is, as yet, no judgment to be enforced here.  The SEC is merely seeking an asset freeze in anticipation of a judgment.  It is not seeking to repatriate any assets located abroad.[17]  Because the SEC is not seeking to enforce a money judgment, it is therefore acting in its police and regulatory capacity.

    *Second*, the SEC is not seeking control over any asset.  In *Brennan*, the SEC sought to repatriate offshore trusts.  This involved "the *return of assets* transferred by Brennan so as to preserve them for the benefit of all potential claimants."[18]  Though the court denied the SEC's request to repatriate—or control—assets, it did so because it concluded that the SEC was acting to preserve its claim in preparation for enforcing a judgment that had been entered.  By

---

[15]    *See Brennan*, 230 F.3d at 72–73.

[16]    *Id.* at 73.

[17]    Oct. 23, 2014 Hearing Transcript at 19.

[18]    *Id.* at 69 (emphasis added).

contrast, no asset here will be modified in any way.  The SEC seeks to preserve the status quo in anticipation of a final judgment.  *Preserving* assets in anticipation of a judgment is not equivalent to *controlling* those assets in an effort to enforce a judgment already entered.

Therefore, I conclude that the automatic stay does not apply to the SEC's request for a temporary asset freeze, expedited discovery, preservation of financial documents, and an accounting.

**B.      Temporary Asset Freeze and Other Relief**

**1.      The Wylys' Assets**

Having determined that the automatic stay does not apply, I conclude that a temporary asset freeze, expedited discovery, preservation of financial documents, and an accounting are warranted.  With regard to the property that is part of the bankruptcy estate, no third party has yet been appointed to ensure that no assets are transferred or otherwise depleted.  Therefore, Sam Wyly and Caroline Wyly, as beneficiary of the probate estate of Charles Wyly, remain in control of their assets.  Though they are required to act as fiduciaries, this does not ensure that assets will be protected.[19]  The Wylys contend that subjecting domestic

---

[19]      *See F.T.C. v. R.A. Walker & Assoc.*, 37 B.R. 608, 612 (D.D.C. 1983) ("Although debtors-in-possession are supposed to act as fiduciaries and stand in the shoes of a trustee in bankruptcy, the Court cannot find that this 'duty' alone offers sufficient protection of the assets.").

8

property to an asset freeze interferes with the bankruptcy process.   However, once these assets are accounted for and under the jurisdiction and control of the Bankruptcy Court, the asset freeze order will be dissolved  as to those assets.

Further, the bankruptcy proceeding does not address potential dissipation of offshore assets by third parties.  As Sam Wyly appears to contest, contrary to the jury's verdict, that he has control or beneficial ownership of these assets,[20] they may not be included in his bankruptcy estate.  Thus, third parties could potentially transfer or deplete these assets without an order in place that compels the Wylys to direct the protectors and trustees of all IOM trusts to refrain from taking any action to dissipate foreign assets.

---

There is additional evidence of assets being monetized on an ongoing basis.  Sam Wyly sold his New York City apartment in late September 2014, after the jury had found him liable for violating securities laws and after the initial disgorgement hearing.  *See* October 23, 2014 Hearing Transcript at 43.  He also entered into an agreement to sell several pieces of art through auction at Christie's Inc. in late August, and acknowledged on October 15 that the pieces would be sold on October 27.  The auction took place as scheduled on October 27, after he filed for bankruptcy, without his bankruptcy counsel's prior knowledge. *See* 10/28/14 Letter from Bridget Fitzpatrick, Counsel for the SEC, to the Court.  Thus, though the value of the assets remain, the assets themselves have been liquidated.

[20]      *See* Expedited Motion for Order on Estate Administration ¶ 29 *In re Samuel Wyly*, No. 14-35043 (N.D. Tex. Oct. 19, 2014); Oct. 23, 2014 Hearing Transcript at 7 (stating that Samuel Wyly's assets would include "to the extent applicable any offshore assets . . . . It's unclear to me what Mr. Wyly's exact interest in those assets is.").  However, counsel appeared later to concede this point.  *See id.* at 21 (stating that all offshore trust assets would be included).

Finally, I conclude that expedited discovery, preservation of financial documents, and an accounting are necessary to enable the SEC to ascertain the full extent of the Wylys' assets and determine which of these assets would be subject to disgorgement.

### 2.    The Family Members' Assets

The Family Members contend that the scope of the proposed asset freeze is too broad. They object to the SEC's refusal to name specific assets or limit the freeze to specific family members.[21] They additionally object to the SEC serving notice of the asset freeze directly on any financial institution without specific permission from this Court based on a specific finding for each account.

"A federal court has the authority to freeze the assets of a party not accused of wrongdoing where that party: '(1) has received ill-gotten funds; and (2)

---

[21]     The Family Members also raise claims based on the Due Process Clause of the Fifth Amendment and the prohibition against unreasonable searches and seizures in the Fourth Amendment. As the SEC has amended its complaint to name specific family members as relief defendants, the Family Members are now formally on notice. Further, the Family Members had an opportunity to be heard at the October 23, 2014 conference addressing this issue, even before they had been named as relief defendants. Therefore, the Due Process challenge fails. The Fourth Amendment claim is similarly without merit. Even assuming *arguendo*, that the Fourth Amendment applied, the *Cavanagh* standard requiring a showing that the party has received ill-gotten funds and has no legitimate claim to those funds renders the seizure reasonable.

does not have a legitimate claim to those funds.'[22]  Because an asset freeze is a

provisional remedy to ensure that an asset will be available to satisfy a judgment, if

the SEC prevails, the SEC's burden of proof is lower than it would be for an

injunction.  To obtain an asset freeze against a third party, the SEC must show only

that it is likely to succeed on the merits[23]  In this context, the SEC must show that

it is likely to succeed in its disgorgement claims against the Family Members.

   The SEC has not met this burden with respect to an order that could

potentially freeze *any* account held by *any* of the Family Members.  Such a broad

sweep could interfere with Family Members' assets that are completely unrelated

to any wrongdoing.  As the SEC cannot show, and does not contend, that *all* of the

Family Members' assets are ill-gotten, an order that would potentially encompass

every asset held by the Family Members does not satisfy the *Cavanagh* test.

   However, to the extent that the SEC identifies specific assets of

specific Family Members that can be traced to transfers from the Wylys during the

course of the SEC investigation and litigation or distributions from the IOM trusts,

the SEC has shown that it is likely to succeed.  Moreover, the SEC has provided

sufficient evidence of recent transfers to establish a risk of dissipation of these

---

   [22] *SEC v. Byers*, No. 08 Civ 7104, 2009 WL 33434, at *2 (S.D.N.Y. Jan. 7, 2009) (Chin, J.) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)).

   [23] *See Cavanagh*, 155 F.3d at 136.

11

assets. For example, IOM entities associated with Charles Wyly distributed $27 million to three of his children this year, as well as $10 million to one of his children to create a trust in the Cook Islands[24]

With regard to the first *Cavanagh* factor, the SEC is likely to succeed in showing that the Family Members are in possession of ill-gotten funds. The jury found the Wylys liable on nine violations of the securities laws. The IOM trusts were funded entirely by the various options transferred and exercised by the Wylys. These trusts have made distributions to the Family Members. Thus, the Family Members are likely in possession of ill-gotten funds. The order enjoins the Family Members from transferring or in any way dissipating these assets, and only these assets. The order also encompasses assets directly transferred from the Wylys during the course of the SEC investigation and litigation. Although it is possible that some of these transfers are not "tainted" funds, they cannot at this point be disentangled: "'a freeze order need not be limited only to funds that can be directly traced to defendant's illegal activity' for the reason that 'the defendant should not benefit from the fact that he commingled his illegal profits with other assets.'"[25]

---

[24]     Trial transcript, Aug. 5, 2014, at 3609–3610.

[25]     *Byers*, 2009 WL 33434, at *3 (quoting *SEC v. Sekhri*, No. 98 Civ. 2320 (RPP), 2000 WL 1036295 (S.D.N.Y. July 26, 2000).

12

As to the second *Cavanagh* factor, the Family Members likely have no legitimate claim to the assets to be frozen. Again, the only assets encompassed by the temporary asset freeze are those that have been funded, in whole or in part, by the IOM trusts or assets that came directly from the Wylys during the course of the litigation and the SEC investigation. As discussed above, the IOM trusts made distributions to the Family Members. To the extent that those assets and distributions are now in the possession of the Family Members and possibly commingled with other assets, I conclude that these commingled assets have been "inextricably intertwined" with the profits traceable to the Wylys' violations of the securities laws.[26] As such, the Family Members may be enjoined from disposing of these assets to ensure that they will be available upon entry of a final judgment.

## III.   CONCLUSION

For the foregoing reasons, the SEC's requests are GRANTED. A separate Order imposing the temporary asset freeze and other relief is issued simultaneously with this Opinion and Order.

---

[26]     *See id.* at *4.

13

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           November 3, 2014

14

**- Appearances -**

**For the SEC:**

Bridget Fitzpatrick, Esq.
Hope Augustini, Esq.
Gregory Nelson Miller, Esq.
John David Worland, Jr., Esq.
Martin Louis Zerwitz, Esq.
Daniel Staroselsky, Esq.
Angela D. Dodd, Esq.
Marsha C. Massey, Esq.
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4474

**For Defendants:**

Stephen D. Susman, Esq.
Harry P. Susman, Esq.
Susman Godfrey LLP
1000 Louisiana Street, Ste. 5100
Houston, TX 77002
(713) 653-7801

David D. Shank, Esq.
Terrell Wallace Oxford, Esq.
Susman Godfrey LLP
901 Main Street, Ste. 5100
Dallas, TX 75202
(214) 754-1935

Steven M. Shepard, Esq.
Mark Howard Hatch-Miller, Esq.
Susman Godfrey LLP
560 Lexington Avenue
New York, NY 10022

15

(212) 336-8332

**For Samuel Wyly:**
Josiah M. Daniel III, Esq.
Vinson & Elkins LLP
2001 Ross Avenue, Ste. 3700
Dallas, TX 75201
(214) 220-7718

**For Caroline D. Wyly:**
Judith W. Ross, Esq.
Law Offices of Judith W. Ross
700 N. Pearl Street, Ste. 1610
Dallas, TX 75201
(214) 377-7879

**For Cheryl Wyly, Evan Wyly, and Martha Miller:**
David L. Kornblau, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1084

**For Laurie Matthews, Lisa Wyly, Kelly O'Donovan, Andrew Wyly, Christiana Wyly, Emily Wyly, Charles J. Wyly, III, and Jennifer Lincoln:**
Stewart H. Thomas, Esq.
Hallet & Perrin, P.C.
1445 Ross Avenue, Ste. 2400
Dallas, TX 75202
(214) 953-0053

**For Jennifer Lincoln:**
Kostas D. Katsiris, Esq.
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5500