UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

  - against -

SAMUEL WYLY, and DONALD R.
MILLER, JR., in his Capacity as the
Independent Executor of the Will and Estate
of Charles J. Wyly, Jr.,

                Defendants,

and

CHERYL WYLY, EVAN ACTON WYLY,
LAURIE WYLY MATTHEWS, DAVID
MATTHEWS, LISA WYLY, JOHN
GRAHAM, KELLY WYLY O'DONOVAN,
ANDREW WYLY, CHRISTIANA WYLY,
CAROLINE D. WYLY, MARTHA WYLY
MILLER, DONALD R. MILLER, JR., in his
individual capacity, CHARLES J. WYLY III,
EMILY WYLY LINDSEY, JENNIFER
WYLY LINCOLN, JAMES W. LINCOLN,
and PERSONS, TRUSTS, LIMITED
PARTNERSHIPS, AND OTHER ENTITIES
KNOWN AND UNKNOWN,

                Relief Defendants.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/15

**MEMORANDUM**
**OPINION AND ORDER**

10 Civ. 5760 (SAS)

1

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This Court issued an Opinion and Order on December 19, 2014 ("the December 19 Order") imposing an alternate measure of disgorgement on Samuel and Charles Wyly (the "Wylys").[1]  On December 23, 2014, the Wylys filed a motion for reconsideration of the December 19 Order.[2]  The Wylys contend that this Court was "misled" by the SEC's expert, Dr. Chyhe Becker, and erroneously concluded that Dr. Becker accounted for the difference between the rate of return on options and the rate of return on stocks in concluding that the SEC had established a reasonable approximation of the profits causally connected to the Wylys' securities laws violations.[3]  The Wylys argue that, in fact, Dr. Becker did not account for this difference, and therefore the SEC did not establish a reasonable approximation of the Wylys' ill-gotten gains.  For the following reasons, the Wylys' motion is DENIED.

**II.   DISCUSSION**

---

[1]   *See SEC v. Wyly*, No. 10 Civ. 5760, 2014 WL 7238271 (S.D.N.Y. Dec. 19, 2014).  Familiarity with the facts and procedural history of the case is presumed.

[2]   *See* Memorandum of Law in Support of Defendants' Motion to Reconsider this Court's Opinion and Order Granting Disgorgement of "Gains in Excess of Buy and Hold Benchmark ("Def. Mem.").

[3]   *Id.* at 10.


### A. Legal Standard

The standard for granting a motion for reconsideration is strict. "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[4] "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"[5] Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[6]

### B. Comparison of the Rate of Return on Options to the Rate of Return on Stocks

The Wylys contend that the Court was "misled by Dr. Becker's highly confusing testimony" regarding the comparison of the Wylys' rate of return to that

---

[4] *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

[5] *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

[6] *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).

of a buy-and-hold investor in stock.[7] They point to evidence showing that Dr. Becker did not, in fact, fully account for that difference, and then proceed to repeat the same arguments made during the three-day hearing to argue that this comparison is inaccurate and therefore not a reasonable approximation of the Wylys' ill-gotten gains.

The Court was not misled by Dr. Becker's testimony. In the December 19 Order, I described the steps Dr. Becker took to compare the Wylys' rate of return with that of a buy-and-hold investor in the underlying stock.[8] *First*, Dr. Becker treated the transfer of the option as a "purchase" for the value of the option. *Then*, on the date of exercise, she treated the exercise price as an additional purchase. I stated that "[i]n this way, Dr. Becker accurately tracks the amounts of capital that the Wylys had tied up in the offshore system."[9] I then concluded that this comparison was accurate.

The Wylys contend that the December 19 Order did not address the difference in the rates of return due solely to the *timing* of the payment of the exercise price. That is, the Wylys argue that I did not account for the fact that the

---

[7] Def. Mem. at 2.

[8] *See* December 19 Order, 2014 WL 7238271, at *14.

[9] *Id.*

ability to delay the payment of the exercise price led to a higher rate of return than that of a buy-and-hold investor in stock, even though Dr. Becker credited the value of the option as a "purchase" on the starting date of the holding period and the payment of the exercise price on the exercise date. Therefore, the Wylys contend, although Dr. Becker's method results in the same *amount of gain* for the Wylys and an investor in stock, because of the timing discrepancy, the *rates of return* are not the same. The Wylys correctly note that this difference is not explicitly noted in the December 19 Order. This omission, however, does not indicate a misunderstanding. The Wylys clearly and forcefully elicited this point in their direct examination of their expert, Daniel Fischel, as well as in their summation.[10] Dr. Becker also clarified in her testimony, cited in the December 19 Order, that she was "calculating the benefit [the Wylys got] from the ability to delay the payment" of the exercise price. Thus Dr. Becker explicitly recognized that although the rates of return *did* differ, she still considered the comparison to be accurate because the Wylys were able to delay the actual payment of the exercise price and benefitted from that delay.

The Wylys argue that Dr. Becker's own report shows that her calculation was flawed. They point to her Measure 1A, which imagines a

---

[10] *See* Transcript of Second Remedies Hearing ("Rem. Tr. II") at 282–288, 468.

hypothetical and counter-factual world in which the Wylys exercised their options before transferring them to the offshore system. This measure calculates ill-gotten gains that are approximately $100 million lower than those calculated in her Measure 1 (the measure used in the December 19 Order). The Wylys contend that this $100 million is due *solely* to the difference between the rate of return on options and the rate of return on stock. Thus, they argue that Measure 1 is not a reasonable approximation.

Again, the Wylys are attempting to relitigate an issue already decided. The Court questioned Dr. Becker on this very issue, asking whether, in essence, the Court should use the measurement of ill-gotten gains Dr. Becker calculated in Measure 1A.[11] Dr. Becker disagreed, and explained her reasons for determining that Measure 1 was a more reasonable approximation of the Wylys' ill-gotten gains. She stated:

> Although it's true that of course the rate of return is higher because they are investing less up front, because the value of the option is clearly less than the value of the underlying security, at the same time, you know, if the option was worth only $5, the Wylys only had $5 of their capital tied up in the security. So their actual — what my calculation reflects is their actual holding period weighted by the actual dollars that they had invested at the time. So I think at some core level, the fact that the Wylys only had the value of the option tied up as opposed to the . . . equity amount . . . is clearly a more correct reflection of their

---

[11]   *See id.* at 108.

investment.[12]

Thus, Dr. Becker acknowledged the discrepancy between the rates of return, and explained why, even with the difference in rates of return, the calculation was still a reasonable approximation. The December 19 Order recognized this and agreed.[13]

Finally, the Wylys suggest that Dr. Becker should have employed a comparison to a buy-and-hold investor in options, instead of a buy-and-hold investor in the underlying stocks. This comparison, they contend, would have solved the "apples-and-oranges" problem.[14] However, Dr. Becker could not have made this comparison, because there is no market for the types of options in which the Wylys traded. Dr. Becker explained that, with regard to the transfer of Sterling Commerce options in 1996, an ordinary buy-and-hold investor could not have purchased an option for a price as low as $24. The Court recognized this at the time: "[S]he's saying there is no comparison in the real world that can be made. There's no stranger buyer who could have walked in and gotten an option [with an

---

[12] *Id.* at 109.

[13] *See, e.g.*, December 19 Order, 2014 WL 7238271, at *14 (approving of the method because it accurately tracks the time during which the Wylys' capital was tied up in the offshore system).

[14] Def. Mem. at 8.

exercise] price of $24."[15]  Thus the Wylys contention that a better comparison existed is without merit.

It is true that some part of the difference in the Wylys' rate of return as compared to that of a buy-and-hold investor is due to the difference in the rates of return between options and stocks.  Nonetheless, I understood that at the time of the December 19 Order and considered it when I concluded that the SEC had met its burden of establishing a reasonable approximation of the Wylys' profits that were causally connected to their securities laws violations.  The Wylys offer no new arguments that would support reconsideration of that Order.

## III.  CONCLUSION

For the foregoing reasons, the Wylys' motion for reconsideration of the December 19 Order is DENIED.  In the event that a higher court disagrees with the measure of disgorgement imposed by this Court on September 25, 2014,[16] Sam Wyly must disgorge $83,444,775, plus $35,804,154 in pre-judgment interest, for a total of $119,248,930.  Charles Wyly must disgorge $39,129,605, plus

---

[15]  Rem. Tr. II at 234–235.  *See also id.* at 204 (testimony of Dr. Becker) ("[T]he term 'market value' is a little bit inappropriate here because these options actually are not traded on markets . . . these are not exchange traded options.").

[16]  *See SEC v. Wyly*, No. 10 Civ. 5760, 2014 WL 4792229 (S.D.N.Y. Sept. 25, 2014).

$16,589,026 in pre-judgment interest, for a total of $55,718,631.[17] The Clerk of Court is directed to close this motion (Dkt. No. 566).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         February 2, 2015

---

[17] *See* Notice of Securities and Exchange Commission's Recalculations of Ill-Gotten Gains and Pre-Judgment Interest, at 2.

- Appearances -

**For the SEC:**

Bridget Fitzpatrick, Esq.
Hope Augustini, Esq.
Gregory Nelson Miller, Esq.
John David Worland, Jr., Esq.
Martin Louis Zerwitz, Esq.
Daniel Staroselsky, Esq.
Angela D. Dodd, Esq.
Marsha C. Massey, Esq.
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4474

**For Defendants:**

Stephen D. Susman, Esq.
Harry P. Susman, Esq.
Susman Godfrey LLP
1000 Louisiana Street, Ste. 5100
Houston, TX 77002
(713) 653-7801

David D. Shank, Esq.
Terrell Wallace Oxford, Esq.
Susman Godfrey LLP
901 Main Street, Ste. 5100
Dallas, TX 75202
(214) 754-1935

Steven M. Shepard, Esq.
Mark Howard Hatch-Miller, Esq.
Susman Godfrey LLP
560 Lexington Avenue
New York, NY 10022

(212) 336-8332

**For Samuel Wyly:**
Josiah M. Daniel III, Esq.
Vinson & Elkins LLP
2001 Ross Avenue, Ste. 3700
Dallas, TX 75201
(214) 220-7718

**For Caroline D. Wyly:**
Judith W. Ross, Esq.
Law Offices of Judith W. Ross
700 N. Pearl Street, Ste. 1610
Dallas, TX 75201
(214) 377-7879

**For Donald R. Miller, Jr., John Graham, Cheryl Wyly, Evan Wyly, Martha Miller, David Matthews, Laurie Matthews, Lisa Wyly, Kelly Wyly O'Donovan, Andrew Wyly, Christiana Wyly, Emily Wyly Lindsey, Charles J. Wyly, III, James W. Lincoln, and Jennifer Wyly Lincoln:**
David L. Kornblau, Esq.
Eric Hellerman, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1084

**For Jennifer Wyly Lincoln:**
Chaim Zev Kagedan, Esq.
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5598