UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,

                 Plaintiff,

    - against -

SAMUEL WYLY, and DONALD R.
MILLER, JR., in his Capacity as the
Independent Executor of the Will and Estate
of Charles J. Wyly, Jr.,

                 Defendants,

and

CHERYL WYLY, EVAN ACTON WYLY,
LAURIE WYLY MATTHEWS, DAVID
MATTHEWS, LISA WYLY, JOHN
GRAHAM, KELLY WYLY O'DONOVAN,
ANDREW WYLY, CHRISTIANA WYLY,
CAROLINE D. WYLY, MARTHA WYLY
MILLER, DONALD R. MILLER, JR., in his
individual capacity, CHARLES J. WYLY III,
EMILY WYLY LINDSEY, JENNIFER
WYLY LINCOLN, JAMES W. LINCOLN,
and PERSONS, TRUSTS, LIMITED
PARTNERSHIPS, AND OTHER ENTITIES
KNOWN AND UNKNOWN,

                 Relief Defendants.

-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2|26|15__

MEMORANDUM
OPINION AND ORDER

10 Civ. 5760 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Following a jury verdict on May 12, 2014, this Court's Opinion and

Order of September 25, 2014 (the "September Order"), and this Court's Opinion

and Order of December 19, 2014 (the "December Order"), the SEC now moves for

the entry of Final Judgment against Defendants Samuel E. Wyly and Donald R.

Miller, Jr., in his capacity as the Independent Executor of the Will and Estate of

Charles J. Wyly, Jr. ("the Wylys"). The Wylys do not oppose this request, but

object to certain aspects of the SEC's proposed Final Judgment. For the following

reasons, the SEC's motion is GRANTED. A separate Order imposing the Final

Judgment is issued simultaneously with this Opinion and Order.

## II.   DISCUSSION

The parties' dispute centers on (1) the amount of the offset the Wylys

may be entitled to in the event of a future adverse IRS determination, (2) how the

offset should be structured, and (3) the language regarding payment of the

judgment.

### A.   Amount of Offset

In the September Order, I measured disgorgement based on the

amount of taxes the Wylys avoided. In that Order, I provided that "any amounts

disgorged in this case should be credited towards any subsequent tax liability determined in an IRS civil proceeding as a matter of equity."[1]  Subsequently, I allowed the SEC to present an alternative measure of disgorgement based on the difference between the Wylys' trading profits and those of an ordinary buy-and-hold investor.  I imposed this measure of disgorgement in the alternative, and held that "disgorgement based on trading profits may only be imposed in the event that a higher court disagrees with the measure of disgorgement imposed by the September 25 Order . . . ."[2]

The SEC contends that the measure of ill-gotten gains in the December Order "has no connection to the Defendants' tax liability and, as a matter of equity, should not be included in an offset against Defendants' potential additional tax liability for 1992-2004."[3]  Therefore, the SEC contends that the amount of the offset should equal any amount paid to the IRS in excess of the measure of disgorgement in the December Order.  The Wylys, on the other hand, contend that this violates the doctrine of election of remedies as it would allow the

---

[1]      See SEC v. Wyly, No. 10 Civ. 5760, 2014 WL 4792229, at *18 (S.D.N.Y. Sept. 25, 2014) (the "September Order").

[2]      See SEC v. Wyly, No. 10 Civ. 5760, 2014 WL 7238271, at *2 (S.D.N.Y. Dec. 19, 2014) (the "December Order").

[3]      2/6/15 Letter from Bridget M. Fitzpatrick, Counsel for the SEC, to the Court, at 2.

SEC to "in effect obtain _both_ the tax disgorgement measure _and_ the alternative

measure through the same judgment . . . ."[4]

I conclude as a matter of equity[5] that the measure of disgorgement in

the December Order does not provide a "floor" for the offset. The December

Order is only imposed "in the event that a higher court disagrees with the measure

of disgorgement imposed by the September 25 Order . . . ."[6] That is, while the

September Order is in effect, the December Order is a nullity. The measure of

disgorgement in the December Order only exists, therefore, if the September Order

is vacated. As a result, there is no basis to import any part of the December Order

into the September Order. While it is arguably true that the December Order

measures gains that are unrelated to the gains measured by tax avoidance, I

determined in the December Order that the SEC was not entitled to both measures.

Using the measure in the December Order as the floor for the offset contemplated

---

[4]   2/13/15 Letter from Stephen D. Susman, Counsel for the Wylys, to the Court, at 2.

[5]   The doctrine of election of remedies is inapplicable here, as it "only applies 'where the second remedy is clearly inconsistent with the first.'" "[T]he mere fact of 'different theories of recovery relating to the same injury does not present an election of remedies problem.'" _Motorola Credit Corp. v. Uzan_, No. 02 Civ. 666, 2007 WL 1098689, at *1 (S.D.N.Y. Apr. 11, 2007) (quoting _Siderpali, S.P.A. v. Judal Indus., Inc._, 833 F. Supp. 1023, 1028 (S.D.N.Y. 1993)), _aff'd_, 561 F.3d 123 (2d Cir. 2009).

[6]   _See_ December Order, 2014 WL 7238271, at *2.

by the September Order would allow the SEC to in effect gain the benefit of both

Orders. Nevertheless, the disgorgement for the Section 5 violations separately

addressed in the September Order is unrelated to any tax-avoidance benefit.

Therefore, the Wylys are entitled to an offset for any amount in excess of the

measure of disgorgement for the Section 5 violations.[7]

## B.   Structure of the Offset

The Wylys contend that the offset should be structured so that any

amounts paid to the IRS that are attributable to gains on the IOM Trust-held

securities at issue should go toward satisfying the judgment in this case.

Additionally, the Wylys point to language in the September Order stating that in

the event that "another court determines that the IOM Trusts are in fact[] tax-

exempt . . . defendants may pursue all available remedies in this Court, including a

motion to vacate the final judgment . . . ."[8] Based on this language, the Wylys

argue that amounts paid to the SEC should be refunded in the event of a future

determination by the tax authorities that the Wylys are not personally liable for

---

[7]     It follows that if the September Order is vacated, and the December
Order is affirmed, the Wylys are not entitled to *any* offset in the event of an
adverse IRS determination because this measure of damages results from
calculating ill-gotten gains based on trading profits rather than any measure based
on tax avoidance.

[8]     September Order, 2014 WL 4792229, at *18 n.205.

taxes on gains on IOM Trust-held securities.  Finally, the Wylys contend that any

amounts paid to the SEC should be paid to the IRS on that defendant's behalf if

there is an assessment or settlement under which the defendant is taxed on such

gains.

The SEC argues that the language in the September Order did not

contemplate a refund, but instead allowed the Wylys to move to vacate the

judgment if there is a judicial determination that the IOM trusts are tax-exempt.

The SEC contends that the Wylys' proposed formulation is too broad, as it would

require the SEC to refund the Wylys' disgorgement if, for example, a court

determined that certain IOM transactions were outside the statute of limitations.

Further, the SEC would be required to pay money to the IRS if taxes were assessed

for transactions that did not form the basis of the disgorgement award.  The SEC

argues that its proposed judgment is more appropriate because it focuses on events

that have occurred, instead of hypothetical situations.  Moreover, the SEC states

that if a double recovery in fact came to pass, it would not oppose a motion to

vacate the Final Judgment and reopen the record as to the appropriate amount of

disgorgement.

I agree with the SEC's proposed final judgment regarding the

structure of the offset.  The September Order never contemplated a refund to the

6

Wylys, but instead provided that the Wylys could pursue all available remedies should another court determine that the IOM Trusts are tax-exempt. As it stands now, there has been no IRS determination. In the event that there is, the IRS may take notice of this Court's conclusion that there should be an offset for amounts paid to the SEC, even though the IRS is not a party here. Should the IRS disregard that language, the Wylys may return to this Court and move to vacate the final judgment, as contemplated in the September Order. Nevertheless, I agree with the Wylys and strike the SEC's proposed language that, by making payment to the SEC, "Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant."[9] This language is unnecessary and fails to acknowledge the possibility that the Wylys' appeal may prove successful.

## C. Payment of the Judgment

Bankruptcy counsel for Sam Wyly and Carloline D. Wyly raise concerns regarding language that provides for this Court's enforcement of the judgment amount, with post-judgment interest, at any time after 14 days following entry of the final judgment, as well as language that "seeks rulings by the District

---

[9] Proposed Final Judgment, Attachment 1 to Notice of SEC's Motion for Disgorgement and Injunctive Relief, at § XV.

Court about the effect of the automatic stay after the judgment's entry."[10]  Caroline

Wyly argues that because the "vast bulk of the Probate Estate [of Charles Wyly]

comprise her property, the Bankruptcy Court has jurisdiction over those Probate

Estate assets, and further, that the automatic stay applies to stop collection of the

judgment against those Probate Estate assets."[11]

Regarding Sam Wyly, the Final Judgment includes language stating

that the paragraph regarding immediate payment of the judgment is only applicable

to the extent that the automatic stay triggered by his bankruptcy proceeding is no

longer in effect or has been determined with finality not to apply.  Thus, it does not

violate the automatic stay, as Sam Wyly need only pay the judgment when the stay

is lifted.  Moreover, while the SEC's proposed language arguably sought a ruling

that the Final Judgment should not be construed as an act of collection, I have

altered the language to make clear that this Court does not construe it as an act of

collection.[12]

---

[10]     2/13/15 Letter from Josiah M. Daniel III, Bankruptcy Counsel for
Sam Wyly, at 3.

[11]     2/13/15 Letter from Judith W. Ross, Counsel for Caroline Wyly, at 1.

[12]     As bankruptcy counsel for Sam Wyly recognizes, an entry of final
judgment does not violate the automatic stay. *See SEC v. Brennan*, 230 F.3d 65,
71 (2d Cir. 2000) ("[A]nything *beyond* the mere entry of a money judgment
against a debtor is prohibited by the automatic stay.") (emphasis added).
Additionally, post-judgment interest, which bankruptcy counsel contends is a type

As to Caroline Wyly, the SEC notes that the automatic stay protects only the debtor and property of the debtor. It does not protect non-debtor parties or their property. Thus, to the extent that there are assets that are part of Charles Wyly's probate estate that are not the property of Caroline Wyly, the automatic stay is inapplicable. Nevertheless, in the interest of clarity, the Final Judgment includes language that specifies that the paragraph regarding immediate payment applies only to property that is *not* part of Caroline Wyly's bankruptcy estate.

## III.   CONCLUSION

For the foregoing reasons, the SEC's motion for final judgment is granted. A separate Order imposing the Final Judgment is issued simultaneously with this Opinion and Order. The Clerk of Court is directed to close this motion (Dkt. No. 581).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 2**, 2015

---

of claim-collection activity, is required by statute. *See* 28 U.S.C. § 1961; *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("[W]e have consistently held that an award of postjudgment interest is mandatory . . . .").

9

## - Appearances -

**For the SEC:**

Bridget Fitzpatrick, Esq.
Hope Augustini, Esq.
Gregory Nelson Miller, Esq.
John David Worland, Jr., Esq.
Martin Louis Zerwitz, Esq.
Daniel Staroselsky, Esq.
Angela D. Dodd, Esq.
Marsha C. Massey, Esq.
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4474

**For Defendants:**

Stephen D. Susman, Esq.
Harry P. Susman, Esq.
Susman Godfrey LLP
1000 Louisiana Street, Ste. 5100
Houston, TX 77002
(713) 653-7801

David D. Shank, Esq.
Terrell Wallace Oxford, Esq.
Susman Godfrey LLP
901 Main Street, Ste. 5100
Dallas, TX 75202
(214) 754-1935

Steven M. Shepard, Esq.
Mark Howard Hatch-Miller, Esq.
Susman Godfrey LLP
560 Lexington Avenue
New York, NY 10022

(212) 336-8332

**For Samuel Wyly:**
Josiah M. Daniel III, Esq.
Vinson & Elkins LLP
2001 Ross Avenue, Ste. 3700
Dallas, TX 75201
(214) 220-7718

**For Caroline D. Wyly:**
Judith W. Ross, Esq.
Law Offices of Judith W. Ross
700 N. Pearl Street, Ste. 1610
Dallas, TX 75201
(214) 377-7879

**For Donald R. Miller, Jr., John Graham, Cheryl Wyly, Evan Wyly, Martha Miller, David Matthews, Laurie Matthews, Lisa Wyly, Kelly Wyly O'Donovan, Andrew Wyly, Christiana Wyly, Emily Wyly Lindsey, Charles J. Wyly, III, James W. Lincoln, and Jennifer Wyly Lincoln:**
David L. Kornblau, Esq.
Eric Hellerman, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1084

**For Jennifer Wyly Lincoln:**
Chaim Zev Kagedan, Esq.
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5598